# 26-943-cr(L), 26-944-cr(CON)

*To be Argued by:*
ALEXANDRA A.E. SHAPIRO

# United States Court of Appeals

*for the*

# Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

RACHEL CHERWITZ, NICOLE DAEDONE,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## APPENDIX

## Volume I of VII (Pages A-1 to A-288)

ALEXANDRA A.E. SHAPIRO
ALICE BUTTRICK
CHRISTOPHER JOHNSON
WILLIAM TAYLOR
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Floor
New York, New York 10036
(212) 257-4880

*Attorneys for Defendants-Appellants*
*Rachel Cherwitz & Nicole Daedone*

## TABLE OF CONTENTS


**Page**

District Court Docket Entries in *United States v. Cherwitz et al.*, No. 23-cr-146 (DG) (E.D.N.Y) ........ A-1

Indictment, filed April 3, 2023 (Dkt. 1) .................................... A-77

Excerpts of May 3, 2024 Pre-Trial Conference Transcript ................................................... A-85

Declaration of Adam Goldberg, dated May 31, 2024 (Dkt. 287-2) ........................... A-89

Declaration of Joanna Van Vleck, dated August 1, 2024 (Dkt. 287-1) ......................... A-91

Excerpts of September 27, 2024 Pre-Trial Conference Transcript ............................................ A-96

Government Letter Supplementing Record, filed October 7, 2024 (Dkt. 163) .......................... A-106

Excerpts of November 15, 2024 Pre-Trial Conference Transcript .......................................... A-108

Declaration of Paul Pelletier, dated December 20, 2024 (Dkt. 287-5) ................ A-113

Joint Requests to Charge, filed December 9, 2024 (Dkt. 223) ........................ A-120

Joint Letter Supplementing Requests to Charge, filed April 16, 2025 (Dkt. 326) ............................ A-192

Joint Letter Supplementing Requests to Charge, filed May 24, 2025 (Dkt. 389) .............................. A-211

Excerpts of February 26, 2025 Pre-Trial Conference Transcript .......................................... A-220

Excerpts of Trial Transcript ...................................... A-225

## Government Exhibits

GX56: Photo of Front of Reese Jones Townhouse ........ A-1389

GX57: Photo of Side of Reese Jones Townhouse ........ A-1390

GX58: Photo From Deck of Reese Jones Townhouse ........ A-1391

GX59: Photo From Deck of Reese Jones Townhouse ........ A-1392

GX60: Photo of Inside of Reese Jones Townhouse ........ A-1393

GX826: March 2011 OneTaste Organizational Chart ........ A-1394

GX853: Summary Chart of Nicole Daedone Reported Wages And Income Received from OneTaste ........ A-1396

GX856: Summary Chart of Select Individuals Reported Wages Received from OneTaste ........ A-1397

GX862: Summary Chart of Rachel Cherwitz Reported Wages And Income Received from OneTaste ........ A-1398

GX1013: September 21-23, 2008 Emails from Reese Jones And Bryan Franklin ........ A-1399

GX1045R: September 27-28, 2011 Emails from Michelle Wright And Robert Kandell ........ A-1403

GX3120: How to OM Manual ........ A-1407

GX3147: OneTaste Fear Inventory Manual ........ A-1420

GX3164: Plan to Fulfillment – OneTaste Curriculum Slideshow ........ A-1422

GX3212R: July 10, 2008 Darshan Transcript ........ A-1429

GX3224: OneTaste Coach And Trainer Association Code of Conduct, Signed January 12, 2013 ................................................ A-1446

GX3234: OneTaste Coaching & OM Training Program Packet.................................................. A-1452

GX3500RW12: OM Residential Living Handbook ......................................................... A-1465

GX3608: OneTaste Resignation of Nicole Daedone, Effective March 3, 2017 .......... A-1470

GX3743: Employment Agreement of Lianna Lifson................................................................ A-1471

GX3767: OneTaste – Rachel Cherwitz Separation Agreement And Release, Signed May 14, 2018..................................................... A-1485

GX3768: Employment Agreement of Rebecca Halpern................................................ A-1496

GX3772: Employment Agreement of Michelle Wright................................................. A-1513

GX3875 (produced in native format): August 23-25, 2013 Video of OneTaste Coaching Program – Nicole Daedone Lecture .................. A-1521

GX3879 (produced in native format): February 21-24, 2013 Video of OneTaste Coaching Program – Beast Exercise .................. A-1522

GX4056: OneTaste Inc. Stock Purchase Agreement, Dated March 3, 2017 ...................... A-1523

GX4513AR: July 10-12, 2015 Text Messages Between Michal Neria and Rachel Cherwitz ...... A-1579

GX4514AR: June 8-11, 2015 Text Messages Between Michal Neria And Rachel Cherwitz ..... A-1585

**Defense Exhibits**

DX1AB: OneTaste Code of Conduct, Dated February 20, 2014 .......... A-1589

DX1AN: October 2006 OneTaste Release of Liability Form .......... A-1597

DX1BG: 1080 Folsom Handbook .......... A-1600

DX1BS: October 2013 OneTaste Employee Handbook .......... A-1602

DX1X: OneTaste Coach Association Code of Conduct, Dated April 22, 2011 .......... A-1629

DX3AR: Photo of Michelle Wright And Others .......... A-1632

DX3AS: Photo of Michelle Wright And Audrey Wright .......... A-1633

DX3AZ: Photo of Michelle Wright .......... A-1634

DX3DU: Photo of Michelle Wright And Others .......... A-1635

DX3DW: Photo of Michelle Wright And Others .......... A-1636

DX3DY: Photo of Michelle Wright And Eric Swanson .......... A-1637

DX3EA: October 1, 2013 Chat Log Between Nicole Daedone And Michelle Wright .......... A-1638

DX3Z: Photo of Michelle Wright And Others .......... A-1639

DX4A4: Photo of Inside of Center .......... A-1640

DX9FD1 (produced in native format): Lyndsi Keves Audio Recording from February 9, 2017 Nicole Daedone Coaching Circle Weekend .......... A-1641

DX9FD1T: Transcript of Lyndsi Keves Audio Recording from February 9, 2017 Nicole Daedone Coaching Circle Weekend .................... A-1642

DX11EP (produced in native format): Video of Michal Neria and Misha Safyan...................... A-1643

DX11FS: 2013 Coaching Program Sales & Business Dev. Guide........................................... A-1644

DX11R: OneTaste Refund Policy And Release, Signed December 27, 2014 ................... A-1652

DX12AI: Photo of Anthia Gillick, Michelle Wright, And Aubrey Fuller................................. A-1657

DX12BY: OneTaste Coach And Trainer Association Code of Conduct And Release (September 2013) ............................................... A-1658

DX12Q: Photo of Rachel Cherwitz and Anthia Gillick ..................................................... A-1666

DX13BA: Photo of Margaret Pixley And Others ................................................................. A-1667

DX13K: Photo of Margaret Pixley...................... A-1668

DX20AE: OneTaste Release of Liability Form, Signed September 8, 2012 ........................ A-1669

DX20AW: Photo of Dana Gill, Lianna Lifson, And Others ............................................. A-1671

DX21AL: Photo of Rebecca Halpern And Chelsea Hunter .................................................. A-1672

DX21AM: Photo of Rebecca Halpern And Others ................................................................. A-1673

DX21AN: Photo of Rebecca Halpern And Others ................................................................. A-1674

DX171-1: Photo of Rebecca Halpern And Others ........ A-1675

DX21AP: Photo of Rebecca Halpern, Margaret Pixley, And Chelsea Hunter ........ A-1676

DX21AQ: Photo of Rebecca Halpern And Others ........ A-1677

DX21AS: Photo of Rebecca Halpern And Others ........ A-1678

DX21J: OneTaste Release of Liability Form, Signed September 8, 2012 ........ A-1679

DX21L: Rebecca Halpern Financial Agreement And Cancellation Policy re Coaching Program (January 2013) ........ A-1681

Memorandum And Order Denying Rule 29 Motion, dated August 11, 2025 (Dkt. 429) ........ A-1683

Letter Motion for Forfeiture of Property, filed December 10, 2025 (Dkt. 481) ........ A-1688

Order Granting Forfeiture Motion and Preliminary Order of Forfeiture, filed March 18, 2026 (Dkt. 504) ........ A-1699

Excerpts of Daedone Sentencing Transcript, dated March 30, 2026 ........ A-1710

Cherwitz Judgment, filed March 31, 2026 (Dkt. 523) ........ A-1714

Daedone Judgment, filed March 31, 2026 (Dkt. 521) ........ A-1721

Cherwitz Notice of Appeal, filed April 10, 2026 (Dkt. 528) ........ A-1728

Daedone Notice of Appeal, filed April 10, 2026 (Dkt. 529) ........ A-1729

**FILED UNDER SEAL**

Declaration of Joanna Van Vleck, dated June 1, 2024 (Dkt. 127-1) .......................... A-1730

Declaration of Mitchell Aidelbaum, dated July 31, 2024 (Dkt. 141-1) ......................... A-1734

Declaration of Kevin Williams, dated August 1, 2024 (Dkt. 113-3) ...................... A-1741

Declaration of Rachel Caine, dated August 1, 2024 (Dkt. 113-5) ...................... A-1747

Government Opposition to Defendants' Motion to Dismiss, filed August 15, 2024 (Dkt. 118) ...... A-1751

Filter Team Letter Supplementing Government Opposition to Motion to Dismiss, dated August 15, 2024 (Dkt. 127) ................................ A-1790

Defendants' Reply In Support of Motion to Dismiss, filed September 6, 2024 (Dkt. 141) ...... A-1798

Government Letter Supplementing Record, filed September 20, 2024 (Dkt. 154) .................. A-1825

FBI 302, filed September 20, 2024 (Dkt. 156-1) ............... A-1829

FBI Notes, filed September 20, 2024 (Dkt. 156-2) ............... A-1833

APPEAL,CUSTAPP,MAG

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CRIMINAL DOCKET FOR CASE #: 1:23-cr-00146-DG-RML All Defendants

Case title: USA v. Cherwitz et al

Date Filed: 04/03/2023

Date Terminated: 03/31/2026

---

**Movant**

**Bloomberg L.P.**

represented by **Dori Ann Hanswirth**
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
212-836-8095
Email: Dori.Hanswirth@arnoldporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Michael Kim Krouse**
Arnold & Porter Kaye Scholer LLP
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9719
212-836-7750
Email: michael.krouse@arnoldporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**Netflix, Inc.**

represented by **Alyssa Bell**
Cohen Williams LLP
724 South Spring St.,
9th Floor
Los Angeles, CA 90014
213-232-5144
Email: abell@cohen-williams.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Michael V Schafler**
Cohen Williams LLP
724 S. Spring St.
Ste 9th Floor

Los Angeles, CA 90014
213-232-5146
Fax: 213-232-5167
Email: mschafler@cohen-williams.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

Assigned to: Judge Diane Gujarati
Referred to: Magistrate Judge Robert M. Levy

**Defendant (1)**

**Rachel Cherwitz**
*TERMINATED: 03/31/2026*

represented by

**Arthur L. Aidala**
Aidala, Bertuna & Kamins, P.C.
546 Fifth Avenue
New York, NY 10036
212-486-0011
Email: aidalaesq@aidalalaw.com
*TERMINATED: 01/15/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Duncan Patrick Levin**
Levin & Associates, PLLC
44 Court Street
Suite 905
Brooklyn, NY 11201
(212) 330-7626
Email: dlevin@tuckerlevin.com
*TERMINATED: 09/04/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Jennifer Ann Bonjean**
Bonjean Law Group, PLLC
233 Broadway
Suite 707
New York, NY 10279
718-875-1850
Fax: 718-230-0582
Email: jennifer@bonjeanlaw.com
*TERMINATED: 05/09/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Jenny Rebeca Kramer**
Alston & Bird LLP
90 Park Avenue
New York, NY 10016

212-210-9400
Fax: 212-210-9444
Email: jenny.kramer@alston.com
*TERMINATED: 05/17/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Alexandra Shapiro**
Shapiro Arato Bach LLP
1140 Avenue of the Americas,
17th Floor
New York, NY 10036
212-257-4881
Email: ashapiro@shapiroarato.com
*ATTORNEY TO BE NOTICED*

**Celia Cohen**
Ballard Spahr LLP
1675 Broadway
19th Floor
New York, NY 10019
212-223-0200
Email: cohenc@ballardspahr.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Imran H. Ansari**
Aidala, Bertuna & Kamins, P.C.
546 Fifth Avenue
New York, NY 10036
212-486-0011
Email: iansari@aidalalaw.com
*TERMINATED: 01/15/2025*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Kelly Lenahan-Pfahlert**
Ballard Spahr LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103
215-861-7311
Email: lenahanpfahlertk@ballardspahr.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Kelly Lin**
Ballard Spahr LLP
1675 Broadway 19th floor
New York, NY 10019
646-346-8031
Email: link@ballardspahr.com

*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Michael T Jaccarino**
Aidala Bertuna & Kamins
546 5th Avenue
6th Floor
New York, NY 10036
718-238-9898
Email: jaccarino@aidalalaw.com
*TERMINATED: 01/15/2025*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Michael P. Robotti**
Ballard Spahr LLP
1675 Broadway
Ste 19th Floor
New York, NY 10019
646-346-8020
Email: MichaelRobotti@eversheds-sutherland.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Rachel Finkel**
Alston & Bird LLP
90 Park Avenue
New York, NY 10016
212-210-9400
Email: rachel.finkel@alston.com
*TERMINATED: 05/17/2024*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Schuyler La Barge**
Ballard Spahr LLP
1675 Broadway
Ste 19th Floor
New York, NY 10014
646-346-8047
Email: labarges@ballardspahr.com
*TERMINATED: 09/08/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1594(d); 21:853(p) - FORCED LABOR CONSPIRACY (1) | Imprisonment of seventy-eight (78) months; Supervised Release of two (2) years; Restitution in the amount of $887,877.64; and Special Assessment of $100. No fine imposed and no forfeiture ordered. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

Assigned to: Judge Diane Gujarati
Referred to: Magistrate Judge Robert M. Levy

**Defendant (2)**

**Nicole Daedone**
*TERMINATED: 03/31/2026*

represented by

**Jennifer Ann Bonjean**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Julia Gatto**
Steptoe LLP
1114 Avenue of the Americas
New York
New York, NY 10036
212-506-3900
Fax: 212-506-3950
Email: jgatto@steptoe.com
*TERMINATED: 05/17/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Reid Henry Weingarten**
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
202-429-3000
Fax: 202-429-3902
Email: rweingarten@steptoe.com
*TERMINATED: 05/17/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Alexandra Shapiro**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Ashley Blair Cohen**
P.O. Box 14
Cold Spring Harbor, NY 11724
516-987-4700
Email: abcohen2@gmail.com
*TERMINATED: 12/12/2025*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Gabriella Alexandra Orozco**
Bonjean Law Group, PLLC
233 Broadway
Suite 707
New York, NY 10279
718-875-1850
Email: gabriella@bonjeanlaw.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Kelsey Hipp Killion**
Bonjean Law Group, PLLC
303 Van Brunt Street
1st Floor
Brooklyn, NY 11231
718-875-1850
Fax: 718-230-0582
Email: kelsey@bonjeanlaw.com
*TERMINATED: 08/11/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Rachel Caine**
1275 4th Street
Santa Rosa, CA 95404
415-994-9650
Email: rachel.caine@onetaste.us
*TERMINATED: 02/17/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1594(d); 21:853(p) - FORCED LABOR CONSPIRACY<br>(1) | Imprisonment of one hundred eight (108) months; Supervised Release of two (2) years; Restitution in the amount of $887,877.64; Forfeiture; and Special Assessment of $100. No fine imposed. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Interested Party**

**Ezra Landes** represented by **Matthew D. Umhofer**
Umhofer, Mitchell & King LLP
767 S. Alameda St.
Suite 270
Los Angeles, CA 90021
213-394-7979
Fax: 213-529-1027
Email: matthew@umklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Plaintiff**

**USA** represented by **Gillian Kassner**
DOJ-USAO
EDNY - Criminal Division
271A Cadman Plaza East
Brooklyn, NY 11201
718-254-6224
Email:
Gillian.Kassner@thomsonreuters.com
*TERMINATED: 03/28/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

**Jonathan Siegel**
U.S. Attorney's Office
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, NY 11201
718-254-7000
Email: jonathan.siegel@usdoj.gov
*TERMINATED: 03/28/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

*Designation: Government Attorney*

**Lauren Howard Elbert**
United States Attorney's Office, EDNY
271 Cadman Plz E
Brooklyn, NY 11201
718-254-7577
Fax: 718-254-6076
Email: lauren.elbert@usdoj.gov
*TERMINATED: 05/06/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

**Devon Lash**
DOJ-USAO
271-A Cadman Plaza East
Brooklyn, NY 11201
718-254-6014
Email: devon.lash@usdoj.gov
*TERMINATED: 03/28/2025*
*ATTORNEY TO BE NOTICED*

**Kaitlin Teresa Farrell**
US Attorney's Office for the Eastern District of New Yo
271a Cadman Plaza East
Brooklyn, NY 11201
718-254-6072
Fax: 718-254-6076
Email: kaitlin.farrell@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

**Kayla C Bensing**
U.S. Attorney's Office, EDNY
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6279
Fax: 718-254-6076
Email: Kayla.Bensing@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Nina C. Gupta**
DOJ-USAO
271-A Cadman Plaza East
Brooklyn, NY 11217
718-254-6257
Email: nina.gupta@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Sean Michael Fern**
United States Attorney's Office for the

Eastern Distric
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6195
Email: sean.fern2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Shannon Cassandra Jones**
United States Attorneys Office
Criminal Division
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820
(718) 254-6379
Fax: (718) 254-6481
Email: shannon.jones@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/03/2023 | 1 | SEALED INDICTMENT as to Rachel Cherwitz (1) count(s) 1, Nicole Daedone (2) count(s) 1. (Attachments: # 1 Criminal Information Sheet, # 2 Sealing Cover Sheet, # 3 Indictment Sealing Form) (FP) (Entered: 04/04/2023) |
| 06/06/2023 | 4 | Government Letter dated June 6, 2023 as to Deft Rachel Cherwitz in support of its motion for the Court to impose appropriate conditions of release to reasonably assure the appearance of defendant Rachel Cherwitz in court as required and the safety of other persons and the community. (EF) (Entered: 06/06/2023) |
| 06/06/2023 | 5 | Order to Unseal Case as to Rachel Cherwitz, Nicole Daedone. Ordered by Magistrate Judge Sanket J. Bulsara on 6/6/2023. (IH) (Entered: 06/06/2023) |
| 06/12/2023 | 8 | Rule 5(c)(3) Documents Received as to Rachel Cherwitz (IH) (Entered: 06/13/2023) |
| 06/12/2023 | | Arrest of Rachel Cherwitz in Northern District of California. (IH) (Entered: 06/13/2023) |
| 06/13/2023 | 6 | NOTICE OF ATTORNEY APPEARANCE: Reid Henry Weingarten appearing for Nicole Daedone (Weingarten, Reid) (Entered: 06/13/2023) |
| 06/13/2023 | 7 | NOTICE OF ATTORNEY APPEARANCE: Julia Gatto appearing for Nicole Daedone (Gatto, Julia) (Entered: 06/13/2023) |
| 06/13/2023 | 9 | Letter *Proposing Conditions of Release* as to Nicole Daedone (Kassner, Gillian) (Entered: 06/13/2023) |
| 06/13/2023 | 10 | Minute Entry for proceedings held before Magistrate Judge Lois Bloom: Arraignment as to Nicole Daedone (2) Count 1 held on 6/13/2023, Plea entered by Nicole Daedone (2) Count 1 Not Guilty on All Counts. (FTR Log #2:28-2:52.) (IH) (Entered: 06/13/2023) |
| 06/13/2023 | 11 | ORDER TO CONTINUE - Ends of Justice as to Nicole Daedone. Time excluded from 6/13/2023 until 6/21/2023. Ordered by Magistrate Judge Lois Bloom on 6/13/2023. (IH) (Entered: 06/13/2023) |
| 06/13/2023 | 12 | ORDER Setting Conditions of Release as to Nicole Daedone (2) $1,000,000.00. Ordered by Magistrate Judge Lois Bloom on 6/13/2023. (IH) (Entered: 06/13/2023) |
| 06/13/2023 | 13 | REDACTION as to Nicole Daedone re: 12 1 - Sealed Document CR, Order Setting Conditions of Release (IH) (Entered: 06/13/2023) |

| | | |
|---|---|---|
| 06/13/2023 | 14 | ORDER: This order is entered pursuant to Federal Rule of Criminal Procedure 5(f) to confirm the prosecution's disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations as to Nicole Daedone. Ordered by Magistrate Judge Lois Bloom on 6/13/2023. (IH) (Entered: 06/13/2023) |
| 06/14/2023 | | **NOTICE OF HEARING** -- An Initial Status Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) will be held on June 21, 2023 at 10:00 a.m. in Courtroom 4B South before Judge Diane Gujarati. (KA) (Entered: 06/14/2023) |
| 06/20/2023 | 15 | Consent MOTION to Modify Conditions of Release *to extend deadline by which property must be posted.* by Nicole Daedone. (Gatto, Julia) (Entered: 06/20/2023) |
| 06/20/2023 | 16 | Minute Entry for proceedings held before Magistrate Judge Cheryl L. Pollak: Arraignment as to Rachel Cherwitz (1) Count 1 held on 6/20/2023, Plea entered by Rachel Cherwitz (1) Count 1. Not Guilty on All Counts. Status Conference set for 6/21/2023 at 10:00 AM before Judge Diane Gujarati. (FTR Log #11:39-11:59.) (IH) (Entered: 06/20/2023) |
| 06/20/2023 | 17 | ORDER TO CONTINUE - Ends of Justice as to Rachel Cherwitz. Time excluded from 6/20/2023 until 6/21/2023. Ordered by Magistrate Judge Cheryl L. Pollak on 6/20/2023. (IH) (Entered: 06/20/2023) |
| 06/20/2023 | 18 | ORDER Setting Conditions of Release as to Rachel Cherwitz (1) $300,000.00. Ordered by Magistrate Judge Cheryl L. Pollak on 6/20/2023. (IH) (Entered: 06/20/2023) |
| 06/20/2023 | 19 | REDACTION as to Rachel Cherwitz re: 18 Order Setting Conditions of Release, 1 - Sealed Document CR (IH) (Entered: 06/20/2023) |
| 06/20/2023 | 20 | ORDER: This order is entered pursuant to Federal Rule of Criminal Procedure 5(f) to confirm the prosecution's disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations as to Rachel Cherwitz. Ordered by Magistrate Judge Cheryl L. Pollak on 6/20/2023. (IH) (Entered: 06/20/2023) |
| 06/20/2023 | | ORDER granting 15 Consent MOTION to Modify Conditions of Release *to extend deadline by which property must be posted* -- Defendant Daedone's motion, which indicates that the Government consents to the requested relief, *see* ECF No. 15 at 1, is granted and the deadline for the posting of property is extended to June 28, 2023. Ordered by Judge Diane Gujarati on 6/20/2023. (KA) (Entered: 06/20/2023) |
| 06/21/2023 | 21 | Joint MOTION for Protective Order by USA as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Proposed Order) (Kassner, Gillian) (Entered: 06/21/2023) |
| 06/21/2023 | 22 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Nicole Daedone held on 6/13/2023, before Magistrate Judge Lois Bloom. Court Reporter/Transcriber ARIA SERVICES, INC.. Email address: Aria@leinen.net. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 7/12/2023. Redacted Transcript Deadline set for 7/24/2023. Release of Transcript Restriction set for 9/19/2023. (AJ) (Entered: 06/21/2023) |
| 06/21/2023 | 23 | NOTICE OF ATTORNEY APPEARANCE: Jenny Rebeca Kramer appearing for Rachel Cherwitz (Kramer, Jenny) (Entered: 06/21/2023) |

| | | |
|---|---|---|
| 06/21/2023 | 24 | NOTICE OF ATTORNEY APPEARANCE: Rachel Finkel appearing for Rachel Cherwitz (Finkel, Rachel) (Entered: 06/21/2023) |
| 06/21/2023 | 25 | Minute Entry for proceedings held before Judge Diane Gujarati: Initial Status Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on June 21, 2023 before Judge Diane Gujarati. Gillian Kassner and Lauren Howard Elbert appeared on behalf of the Government. Paralegal Anna November also present. Jenny Kramer, who was instructed to file a notice of appearance, appeared on behalf of Defendant Rachel Cherwitz (1). Reid Henry Weingarten and Julia Gatto appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. The Government was reminded to comply with all applicable victim notification requirements. For the reasons set forth on the record, the period from June 21, 2023 to July 26, 2023 was excluded from the computation of the time within which the trial of this matter must commence, pursuant to 18 U.S.C. § 3161(h)(7)(A). Next Status Conference set for July 26, 2023 at 10:30 a.m. before Judge Diane Gujarati in Courtroom 4B South. (Court Reporter Rivka Teich) (KA) (Entered: 06/21/2023) |
| 06/21/2023 | | ORDER TO CONTINUE - Ends of Justice as to Rachel Cherwitz (1) and Nicole Daedone (2). Time excluded from June 21, 2023 until July 26, 2023. Ordered by Judge Diane Gujarati on 6/21/2023. (KA) (Entered: 06/21/2023) |
| 06/26/2023 | 26 | ORDER granting 21 Joint MOTION for Protective Order as to Rachel Cherwitz (1) and Nicole Daedone (2) -- Good cause having been shown, the proposed Protective Order, ECF No. 21-1, is So Ordered. SEE ATTACHED ORDER. Ordered by Judge Diane Gujarati on 6/26/2023. (KA) (Entered: 06/26/2023) |
| 06/27/2023 | 27 | NOTICE *Requesting Endorsed Proposed Order* as to Nicole Daedone (Attachments: # 1 Proposed Order Providing Information Required to Record a Lien on Property) (Gatto, Julia) (Entered: 06/27/2023) |
| 06/27/2023 | 28 | Letter *Respectfully Requesting that the Court Modify Defendant Rachel Cherwitz 's Conditions of Release* as to Rachel Cherwitz, Nicole Daedone (Kramer, Jenny) (Entered: 06/27/2023) |
| 06/28/2023 | 29 | Letter *Disclosing Rule 16 Discovery* as to Nicole Daedone (Kassner, Gillian) (Entered: 06/28/2023) |
| 06/28/2023 | 30 | Letter *Disclosing Rule 16 Discovery* as to Rachel Cherwitz (Kassner, Gillian) (Entered: 06/28/2023) |
| 06/29/2023 | 31 | ORDER Providing Information Required to Record a Lien as to Nicole Daedone. So Ordered by Magistrate Judge Marcia M. Henry on 6/27/2023. (TLH) (Entered: 06/29/2023) |
| 06/30/2023 | | ORDER granting 28 Letter *Respectfully Requesting that the Court Modify Defendant Rachel Cherwitz's Conditions of Release* -- Defendant Cherwitz requests modification of the conditions of release "to also allow for travel within the Continental United States," and represents that the Government and Pretrial Services consent to the requested modification provided that notice is provided in advance of any such travel. *See* ECF No. 28 at 1. The request is granted. Advance notice of travel shall be provided to both the Government and Pretrial Services. Counsel is reminded that any request for relief must be filed as a motion on ECF. *See* Individual Practice Rule I.A.4. Ordered by Judge Diane Gujarati on 6/30/2023. (KA) (Entered: 06/30/2023) |
| 07/05/2023 | 32 | Letter *regarding Motion for a Bill of Particulars* as to Rachel Cherwitz, Nicole Daedone (Kramer, Jenny) (Entered: 07/05/2023) |
| 07/11/2023 | | Email Notification Test - DO NOT REPLY (VM) (Entered: 07/11/2023) |

| | | |
|---|---|---|
| 07/13/2023 | 33 | Letter *Disclosing Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 07/13/2023) |
| 07/20/2023 | 34 | Letter *Disclosing Supplemental Rule 16* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 07/20/2023) |
| 07/21/2023 | 35 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 07/21/2023) |
| 07/26/2023 | 36 | Minute Entry for proceedings held before Judge Diane Gujarati: Status Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on July 26, 2023 before Judge Diane Gujarati. Gillian Kassner and Lauren Howard Elbert appeared on behalf of the Government. Jenny Rebeca Kramer appeared on behalf of Defendant Rachel Cherwitz (1). Reid Henry Weingarten and Julia Gatto appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. For the reasons set forth on the record, the period from July 26, 2023 to October 3, 2023 was excluded from the computation of the time within which the trial of this matter must commence, pursuant to 18 U.S.C. § 3161(h)(7)(A). Next Status Conference set for October 3, 2023 at 10:30 a.m. before Judge Diane Gujarati in Courtroom 4B South. (Court Reporter Charleane Heading) (KA) (Entered: 07/26/2023) |
| 07/26/2023 | | ORDER TO CONTINUE - Ends of Justice as to Rachel Cherwitz (1) and Nicole Daedone (2). Time excluded from July 26, 2023 until October 3, 2023. Ordered by Judge Diane Gujarati on 7/26/2023. (KA) (Entered: 07/26/2023) |
| 07/27/2023 | 37 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz held on 6/20/2023, before Magistrate Judge Cheryl L. Pollak. Court Reporter/Transcriber Fiore Reporting and Transcription Service, Inc.. Email address: cmfiore@sbcglobal.net. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/17/2023. Redacted Transcript Deadline set for 8/28/2023. Release of Transcript Restriction set for 10/25/2023. (AJ) (Entered: 07/27/2023) |
| 08/11/2023 | 38 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 06/21/23, before Judge GUJARATI. Court Reporter/Transcriber RIVKA TEICH, Telephone number (718)613-2268. Email address: RIVKATEICH@GMAIL.COM. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/1/2023. Redacted Transcript Deadline set for 9/11/2023. Release of Transcript Restriction set for 11/9/2023. (Teich, Rivka) (Entered: 08/11/2023) |
| 08/16/2023 | 39 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 08/16/2023) |
| 08/22/2023 | 40 | Letter *Stating Bill of Particulars for Forfeiture of Property* as to Nicole Daedone (Kassner, Gillian) (Entered: 08/22/2023) |
| 09/06/2023 | 41 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 09/06/2023) |
| 09/13/2023 | 42 | Letter *by the government, dated September 13, 2023, advising the Court as to potential conflicts of interest* as to Rachel Cherwitz, Nicole Daedone (Elbert, Lauren) (Entered: |

| | | |
|---|---|---|
| | | 09/13/2023) |
| 09/15/2023 | | ORDER re 42 Letter -- Defendants are directed to respond by September 20, 2023 to the Government's September 13, 2023 letter, ECF No. 42. Ordered by Judge Diane Gujarati on 9/15/2023. (IH) (Entered: 09/15/2023) |
| 09/18/2023 | 43 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 09/18/2023) |
| 09/20/2023 | 44 | Letter *responding to government's 9/13/23 letter re: potential conflicts of interest* as to Nicole Daedone (Gatto, Julia) (Entered: 09/20/2023) |
| 09/20/2023 | 45 | Letter *Rachel Cherwitz's letter response to government's September 13, 2023 letter* as to Rachel Cherwitz, Nicole Daedone (Kramer, Jenny) (Entered: 09/20/2023) |
| 09/22/2023 | 46 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 09/22/2023) |
| 09/22/2023 | 47 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 09/22/2023) |
| 09/22/2023 | | ORDER re 44 , 45 Letters -- The Government is directed to respond by September 27, 2023 to Defendant Nicole Daedone's September 20, 2023 letter, ECF No. 44, and Defendant Rachel Cherwitz's September 20, 2023 letter, ECF No. 45. Ordered by Judge Diane Gujarati on 9/22/2023. (AJ) (Entered: 09/22/2023) |
| 09/25/2023 | 48 | Letter *Reply to Response to Government Disclosure of Potential Conflicts of Interest* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 09/25/2023) |
| 09/29/2023 | 49 | Letter *in advance of next status conference re: proposed motion schedule* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Gatto, Julia) (Entered: 09/29/2023) |
| 09/29/2023 | 50 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 09/29/2023) |
| 10/03/2023 | 51 | Minute Entry for proceedings held before Judge Diane Gujarati: Status Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on October 3, 2023 before Judge Diane Gujarati. Jonathan Siegel appeared on behalf of the Government. Paralegal Anna November also present. Jenny Rebeca Kramer and Rachel Finkel appeared on behalf of Defendant Rachel Cherwitz (1). Reid Henry Weingarten and Julia Gatto appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. The Court scheduled a *Curcio* hearing for October 25, 2023 at 10:30 a.m. and directed the parties to, by October 11, 2023, jointly propose questions to be asked of the Defendants at the hearing. For the reasons set forth on the record, the period from October 3, 2023 to October 25, 2023 was excluded from the computation of the time within which the trial of this matter must commence, pursuant to 18 U.S.C. § 3161(h)(7)(A). (Court Reporter Leeann Musolf) (AJ) (Entered: 10/03/2023) |
| 10/03/2023 | | ORDER TO CONTINUE - Ends of Justice as to Rachel Cherwitz (1) and Nicole Daedone (2). Time excluded from October 3, 2023 until October 25, 2023. Ordered by Judge Diane Gujarati on 10/3/2023. (AJ) (Entered: 10/03/2023) |
| 10/06/2023 | 52 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 10/06/2023) |
| 10/06/2023 | 53 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz (Kassner, Gillian) (Entered: 10/06/2023) |

| | | |
|---|---|---|
| 10/11/2023 | 54 | Letter *jointly proposing Curcio colloquies in advance of the October 25, 2023 Curcio hearing* as to Rachel Cherwitz, Nicole Daedone (Siegel, Jonathan) (Entered: 10/11/2023) |
| 10/20/2023 | 55 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 10/20/2023) |
| 10/20/2023 | 56 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 10-03-2023, before Judge Diane Gujarati. Court Reporter/Transcriber Leeann Musolf, Telephone number (718) 613-2489. Email address: leeann_musolf@nyed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 11/10/2023. Redacted Transcript Deadline set for 11/20/2023. Release of Transcript Restriction set for 1/18/2024. (Musolf, Leeann) (Entered: 10/20/2023) |
| 10/25/2023 | 57 | Minute Entry for proceedings held before Judge Diane Gujarati: *Curcio* hearing as to Rachel Cherwitz (1) and Nicole Daedone (2) held on October 25, 2023 before Judge Diane Gujarati. AUSAs Gillian Kassner and Lauren Howard Elbert appeared on behalf of the Government. Paralegal Anna November also present. Jenny Rebeca Kramer appeared on behalf of Defendant Rachel Cherwitz (1). Celia Cohen also present. Reid Henry Weingarten and Julia Gatto appeared on behalf of Defendant Nicole Daedone (2). Aaron Mysliwiec also present. Both defendants present and on bond. Continued *Curcio* hearing set for November 17, 2023 at 11:00 a.m. before Judge Diane Gujarati in Courtroom 4B South. For the reasons set forth on the record, the period from October 25, 2023 to November 17, 2023 was excluded from the computation of the time within which the trial of this matter must commence, pursuant to 18 U.S.C. § 3161(h)(7)(A). (Court Reporter Michele Lucchese) (IH) (Entered: 10/25/2023) |
| 10/25/2023 | | ORDER TO CONTINUE - Ends of Justice as to Rachel Cherwitz (1) and Nicole Daedone (2). Time excluded from October 25, 2023 until November 17, 2023. Ordered by Judge Diane Gujarati on 10/25/2023. (IH) (Entered: 10/25/2023) |
| 10/26/2023 | 58 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 10/26/2023) |
| 11/13/2023 | 59 | Letter *Requesting Entry of Proposed Order Directing Release of Certain Seized Funds* as to Nicole Daedone (Attachments: # 1 Proposed Order) (Kassner, Gillian) (Entered: 11/13/2023) |
| 11/16/2023 | 60 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 11/16/2023) |
| 11/17/2023 | 61 | Minute Entry for proceedings held before Judge Diane Gujarati: Continued *Curcio* hearing and Status Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on November 17, 2023 before Judge Diane Gujarati. AUSAs Gillian Kassner and Lauren Howard Elbert appeared on behalf of the Government. Paralegal Anna November also present. Jenny Rebeca Kramer appeared on behalf of Defendant Rachel Cherwitz (1). Reid Henry Weingarten and Julia Gatto appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. *Curcio* hearing continued. Defendant Cherwitz waived her right to conflict-free counsel. Defendant Daedone waived her right to conflict-free counsel. Status conference then held. The parties were directed to file, by December 1, 2023, a joint letter proposing a briefing schedule for pretrial motions. For the reasons set forth on the record, the period from November 17, 2023 to February 1, 2024 was excluded from the computation of the time within which the trial of this matter must commence, pursuant to 18 U.S.C. § 3161(h)(7)(A). Next status conference set for |

| | | |
|---|---|---|
| | | February 1, 2024 at 10:30 a.m. before Judge Diane Gujarati in Courtroom 4B South. (Court Reporter Avery Armstrong) (AD) (Entered: 11/17/2023) |
| 11/17/2023 | | ORDER TO CONTINUE - Ends of Justice as to Rachel Cherwitz (1) and Nicole Daedone (2). Time excluded from November 17, 2023 until February 1, 2024. Ordered by Judge Diane Gujarati on 11/17/2023. (AD) (Entered: 11/17/2023) |
| 11/22/2023 | | ORDER re 59 Letter *Requesting Entry of Proposed Order Directing Release of Certain Seized Funds* -- The parties shall submit, by November 28, 2023, the stipulation referenced in the Government's November 13, 2023 letter and in the Proposed Order. *See* ECF No. 59 at 2; ECF No. 59-1 at 3. Ordered by Judge Diane Gujarati on 11/22/2023 (MB) (Entered: 11/22/2023) |
| 11/28/2023 | 62 | Letter *dated November 28, 2023, on behalf of the parties, submitting a proposed briefing schedule* as to Rachel Cherwitz, Nicole Daedone (Elbert, Lauren) (Entered: 11/28/2023) |
| 11/28/2023 | | ORDER re 62 Letter -- The parties are directed to adhere to the following briefing schedule with respect to pretrial motions: Any pretrial motions shall be filed by January 16, 2024; any oppositions shall be filed by February 16, 2024; and any replies shall be filed by March 1, 2024. Ordered by Judge Diane Gujarati on 11/28/2023. (AD) (Entered: 11/28/2023) |
| 11/28/2023 | 63 | STIPULATION by USA as to Nicole Daedone (Elbert, Lauren) (Entered: 11/28/2023) |
| 11/29/2023 | | ORDER re 59 Letter *Requesting Entry of Proposed Order Directing Release of Certain Seized Funds* as to Nicole Daedone (2), 63 Stipulation as to Nicole Daedone (2) -- Upon consideration of the Government's November 13, 2023 letter, ECF No. 59, the Proposed Order, ECF No. 59-1, and the Stipulation dated November 7, 2023, ECF No. 63, the Court directs the release of funds in accordance with numbered paragraph 1 of the Proposed Order, *see* ECF No. 59-1 at 4. Ordered by Judge Diane Gujarati on 11/29/2023. (AD) (Entered: 11/29/2023) |
| 12/18/2023 | 64 | Joint MOTION to Quash *Grand Jury Subpoena Issued to OneTaste, Inc.* by Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit) (Gatto, Julia) (Entered: 12/18/2023) |
| 12/20/2023 | 65 | NOTICE OF ATTORNEY APPEARANCE Devon Lash appearing for USA. (Lash, Devon) (Entered: 12/20/2023) |
| 01/02/2024 | 66 | MEMORANDUM in Opposition re 64 Joint MOTION to Quash *Grand Jury Subpoena Issued to OneTaste, Inc. & MOTION to Compel Production of Grand Jury Materials (filed under seal)* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G) (Lash, Devon) (Entered: 01/02/2024) |
| 01/10/2024 | 67 | Consent MOTION for Leave to File Document *and Set Schedule for Defendants' Reply to Government's Opposition to Motion to Quash* by Rachel Cherwitz, Nicole Daedone. (Gatto, Julia) (Entered: 01/10/2024) |
| 01/11/2024 | | ORDER granting 67 Consent MOTION for Leave to File Document *and Set Schedule for Defendants' Reply to Government's Opposition to Motion to Quash* -- Defendants shall file their reply by January 19, 2024. Ordered by Judge Diane Gujarati on 1/11/2024. (AD) (Entered: 01/11/2024) |
| 01/16/2024 | 68 | Joint MOTION to Dismiss *or, in the alternative, Motion for a Bill of Particulars* by Rachel Cherwitz, Nicole Daedone. (Gatto, Julia) (Entered: 01/16/2024) |
| 01/16/2024 | 69 | MEMORANDUM in Support re 68 Joint MOTION to Dismiss *or, in the alternative, Motion for a Bill of Particulars* (Attachments: # 1 Exhibit) (Gatto, Julia) (Entered: 01/16/2024) |

| | | |
|---|---|---|
| 01/19/2024 | 70 | RESPONSE in Support re 64 Joint MOTION to Quash *Grand Jury Subpoena Issued to OneTaste, Inc.* , REPLY TO RESPONSE to Motion re 64 Joint MOTION to Quash *Grand Jury Subpoena Issued to OneTaste, Inc.* (Gatto, Julia) (Entered: 01/19/2024) |
| 01/23/2024 | 71 | AFFIDAVIT in Opposition re 64 Joint MOTION to Quash *Grand Jury Subpoena Issued to OneTaste, Inc.* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46) (Gatto, Julia) (Entered: 01/23/2024) |
| 01/29/2024 | | ORDER -- At the Status Conference scheduled for February 1, 2024, the Court will address, *inter alia*, the pending motions. The parties are directed to file, by January 30, 2024 at 5:00 p.m., a joint letter indicating their trial length estimate(s). Ordered by Judge Diane Gujarati on 1/29/2024. (AD) (Entered: 01/29/2024) |
| 01/30/2024 | 72 | Letter *(from all parties) estimating trial length* as to Rachel Cherwitz, Nicole Daedone (Lash, Devon) (Entered: 01/30/2024) |
| 02/01/2024 | | Minute Entry for proceedings held before Judge Diane Gujarati: Status Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on February 1, 2024 before Judge Diane Gujarati. AUSAs Devon Lash, Lauren Howard Elbert, and Jonathan Siegel appeared on behalf of the Government. Jenny Rebeca Kramer appeared on behalf of Defendant Rachel Cherwitz (1). Julia Gatto appeared on behalf of Defendant Nicole Daedone (2). Paul Pelletier, counsel for OneTaste, Inc., also present. Both defendants present and on bond. Defendants withdrew their motion to quash, ECF No. 64. The Government withdrew its motion to compel, ECF No. 66. As set forth on the record, the Court granted the Government's sealing request with respect to ECF No. 66. The Court set the following briefing schedule for the Government's anticipated motion to compel: motion due February 8, 2024; any opposition due February 22, 2024; and any reply due February 29, 2024. The Court set a tentative trial date of January 13, 2025. All parties consented to jury selection by a Magistrate Judge. For the reasons set forth on the record, the period from February 1, 2024 to January 13, 2025 was excluded from the computation of the time within which the trial of this matter must commence, pursuant to 18 U.S.C. § 3161(h)(7)(A). Next status conference set for April 4, 2024 at 11:00 a.m. before Judge Diane Gujarati in Courtroom 4B South. (Court Reporter Nikki Barna) (AD) (Entered: 02/01/2024) |
| 02/01/2024 | | ORDER TO CONTINUE - Ends of Justice as to Rachel Cherwitz (1) and Nicole Daedone (2). Time excluded from February 1, 2024 until January 13, 2025. Ordered by Judge Diane Gujarati on 2/1/2024. (AD) (Entered: 02/01/2024) |
| 02/08/2024 | 73 | MOTION to Compel *OneTaste to Comply with January 2, 2024 Grand Jury Subpoena* by USA as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G) (Lash, Devon) (Entered: 02/08/2024) |
| 02/14/2024 | 74 | Minute Entry for proceedings held before Magistrate Judge Vera M. Scanlon: Bail modification Hearing as to Nicole Daedone held on 2/14/2024. (FTR Log #11:17-11:33.) (IH) (Entered: 02/14/2024) |

| | | |
|---|---|---|
| 02/14/2024 | 75 | AMENDED ORDER Setting Conditions of Release as to Nicole Daedone (2) $1,000,000.00. Ordered by Magistrate Judge Vera M. Scanlon on 2/14/2024. (IH) (Entered: 02/14/2024) |
| 02/14/2024 | 76 | REDACTION as to Nicole Daedone re: 75 Order Setting Conditions of Release, 1 - Sealed Document CR (IH) (Entered: 02/14/2024) |
| 02/16/2024 | 77 | MEMORANDUM in Opposition re 68 Joint MOTION to Dismiss *or, in the alternative, Motion for a Bill of Particulars* (Elbert, Lauren) (Entered: 02/16/2024) |
| 02/29/2024 | 79 | REPLY TO RESPONSE to Motion re 73 MOTION to Compel *OneTaste to Comply with January 2, 2024 Grand Jury Subpoena (filed under seal)* (Lash, Devon) (Entered: 02/29/2024) |
| 03/01/2024 | 80 | RESPONSE in Support re 68 Joint MOTION to Dismiss *or, in the alternative, Motion for a Bill of Particulars* (Gatto, Julia) (Entered: 03/01/2024) |
| 03/07/2024 | | ORDER re 73 MOTION to Compel -- The Government shall submit, by March 14, 2024, the *ex parte* letter referenced in footnote three of the Government's February 8, 2024 motion to compel. *See* ECF No. 73 at 7 n.3. Ordered by Judge Diane Gujarati on 3/7/2024. (AD) (Entered: 03/07/2024) |
| 03/14/2024 | 81 | RESPONSE in Support by USA as to Rachel Cherwitz, Nicole Daedone re 73 MOTION to Compel *OneTaste to Comply with January 2, 2024 Grand Jury Subpoena (ex parte) (under seal)* (Attachments: # 1 Exhibit H) (Lash, Devon) (Entered: 03/14/2024) |
| 03/22/2024 | 82 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 2/1/2024, before Judge Diane Gujarati. Court Reporter/Transcriber Andronikh Barna, Telephone number 718-613-2178. Email address: ambarna.crr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 4/12/2024. Redacted Transcript Deadline set for 4/22/2024. Release of Transcript Restriction set for 6/20/2024. (Barna, Andronikh) (Entered: 03/22/2024) |
| 03/28/2024 | | ORDER -- At the Status Conference scheduled for April 4, 2024, the Court will address, *inter alia*, the Government's Motion to Compel, ECF No. 73. In addition, oral argument will be heard on Defendants' Joint Motion, ECF No. 68. The Government is directed to provide a copy of this Order to counsel for OneTaste, Inc. Ordered by Judge Diane Gujarati on 3/28/2024. (AD) (Entered: 03/28/2024) |
| 03/28/2024 | 83 | MOTION for Leave to File Document */Set Briefing Schedule related to 3/20/24 Seizure Warrant* by Nicole Daedone. (Attachments: # 1 Exhibit) (Gatto, Julia) (Entered: 03/28/2024) |
| 04/04/2024 | | Minute Entry for proceedings held before Judge Diane Gujarati: Status Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on April 4, 2024 before Judge Diane Gujarati. AUSAs Lauren Howard Elbert, Gillian Kassner, and Jonathan Siegel appeared on behalf of the Government. Paralegal Anna November also present. Jenny Rebeca Kramer appeared on behalf of Defendant Rachel Cherwitz (1). Julia Gatto appeared on behalf of Defendant Nicole Daedone (2). Paul Pelletier, counsel for OneTaste, Inc., also present. Both defendants present and on bond. As set forth on the record, the Government's Motion to Compel, ECF No. 73, was GRANTED. Also as set forth on the record, the Court permitted the filings at ECF Nos. 73, 78, 79, and 81 to remain under seal. Oral argument was heard on Defendants' Joint Motion, ECF No. 68, and the Joint Motion was taken under advisement. Defendant Daedone's request for a briefing |

| | | |
|---|---|---|
| | | schedule, *see* ECF No. 83, was granted and the Court set a briefing schedule for Defendant Daedone's anticipated motion. Defendant Daedone's motion shall be filed by April 12, 2024 and the Government's response shall be filed by April 19, 2024. Next Status Conference set for May 3, 2024 at 10:30 a.m. before Judge Diane Gujarati in Courtroom 4B South. (Court Reporter Anthony Frisolone.) (AD) (Entered: 04/04/2024) |
| 04/11/2024 | 84 | Letter *re: motion schedule and vacated Seizure Warrant* as to Nicole Daedone (Attachments: # 1 Exhibit) (Gatto, Julia) (Entered: 04/11/2024) |
| 04/17/2024 | 85 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 04/17/2024) |
| 05/03/2024 | | Minute Entry for proceedings held before Judge Diane Gujarati: Status Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 3, 2024 before Judge Diane Gujarati. AUSAs Gillian Kassner and Devon Lash appeared on behalf of the Government. Jenny Rebeca Kramer and Rachel Finkel appeared on behalf of Defendant Rachel Cherwitz (1). Julia Gatto appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. As set forth on the record, Defendants' Joint Motion, ECF No. 68, was DENIED. The Court informed the parties that the trial date of January 13, 2025 is now a firm date. Next Status Conference set for November 15, 2024 at 10:30 a.m. before Judge Diane Gujarati in Courtroom 4B South. (Court Reporter Charleane Heading.) (AD) (Entered: 05/03/2024) |
| 05/03/2024 | | **SCHEDULING ORDER:** Jury selection and trial are scheduled to commence on January 13, 2025 at 9:30 a.m. Ordered by Judge Diane Gujarati on 5/3/2024. (AD) (Entered: 05/03/2024) |
| 05/06/2024 | 86 | **SCHEDULING ORDER:** In connection with the trial scheduled to begin on January 13, 2025, the parties are directed to adhere to the schedule and procedures set forth in the attached Order. Ordered by Judge Diane Gujarati on 5/6/2024. (AD) (Entered: 05/06/2024) |
| 05/06/2024 | 87 | NOTICE OF ATTORNEY APPEARANCE Kayla C Bensing appearing for USA. (Bensing, Kayla) (Entered: 05/06/2024) |
| 05/09/2024 | 88 | MOTION to Substitute Attorney by Nicole Daedone. (Bonjean, Jennifer) (Entered: 05/09/2024) |
| 05/09/2024 | 89 | STIPULATION by Nicole Daedone to 88 MOTION to Substitute Attorney filed by Nicole Daedone (Bonjean, Jennifer) (Entered: 05/09/2024) |
| 05/10/2024 | 90 | MOTION to Substitute Attorney by Rachel Cherwitz. (Attachments: # 1 Exhibit) (Levin, Duncan) (Entered: 05/10/2024) |
| 05/13/2024 | | **SCHEDULING ORDER:** A conference regarding substitution of counsel will be held on May 17, 2024 at 3:30 p.m. in Courtroom 4B South before Judge Diane Gujarati. Ordered by Judge Diane Gujarati on 5/13/2024. (AD) (Entered: 05/13/2024) |
| 05/17/2024 | 91 | NOTICE OF ATTORNEY APPEARANCE: Duncan Patrick Levin appearing for Rachel Cherwitz (Levin, Duncan) (Entered: 05/17/2024) |
| 05/17/2024 | 92 | NOTICE OF ATTORNEY APPEARANCE: Jennifer Ann Bonjean appearing for Nicole Daedone (Bonjean, Jennifer) (Entered: 05/17/2024) |
| 05/17/2024 | 93 | NOTICE OF ATTORNEY APPEARANCE: Gabriella Alexandra Orozco appearing for Nicole Daedone (Orozco, Gabriella) (Entered: 05/17/2024) |
| 05/17/2024 | 94 | NOTICE OF ATTORNEY APPEARANCE: Ashley Blair Cohen appearing for Nicole Daedone (Cohen, Ashley) (Entered: 05/17/2024) |

| | | |
|---|---|---|
| 05/17/2024 | | Minute entry for proceedings held before Judge Diane Gujarati: Conference regarding substitution of counsel as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 17, 2024 before Judge Diane Gujarati. AUSAs Gillian Kassner and Devon Lash appeared on behalf of the Government. Paralegal Anna November also present. Jenny Rebeca Kramer appeared on behalf of Defendant Rachel Cherwitz (1). Julia Gatto appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. Duncan Levin, Jennifer Bonjean, Ashley Cohen, and Gabriella Orozco also present. Discussion held. The Motions to Substitute, ECF Nos. 88 and 90, were GRANTED and the parties were informed that the substitutions would go into effect upon the filing of Notices of Appearance by incoming counsel. (Court Reporter Charleane Heading.) (AD) (Entered: 05/17/2024) |
| 06/05/2024 | 95 | MOTION to Dismiss *Pre-motion letter to the Court on behalf of both defendants requesting a briefing schedule on a motion to dismiss due to the Prosecution Team's misuse of and reliance on a highly privileged document in violation of the defendants' Fifth and Sixth Amendment rights under the U.S. Constitution* by Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit Exhibit B) (Levin, Duncan) (Entered: 06/05/2024) |
| 06/07/2024 | | ORDER re 95 MOTION -- The Government is directed to respond by June 12, 2024 to the letter filed by Defendants Cherwitz and Daedone on June 5, 2024, ECF No. 95. Ordered by Judge Diane Gujarati on 6/7/2024. (AD) (Entered: 06/07/2024) |
| 06/11/2024 | 96 | MOTION to Dismiss *Letter calling the Court's attention to serious new evidence discovered yesterday that the FBI has instructed a key witness to delete emails and asking the Court to expand the scope of the Defendants' motion to dismiss to address this misconduct* by Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit Exhibit A) (Levin, Duncan) (Entered: 06/11/2024) |
| 06/12/2024 | 97 | RESPONSE in Opposition re 95 MOTION to Dismiss *Pre-motion letter to the Court on behalf of both defendants requesting a briefing schedule on a motion to dismiss due to the Prosecution Team's misuse of and reliance on a highly privileged document in violation of the defend (Bensing, Kayla) (Entered: 06/12/2024)* |
| 06/13/2024 | | ORDER re 96 MOTION -- The Government is directed to respond by June 18, 2024 to the letter filed by Defendants Cherwitz and Daedone on June 11, 2024, ECF No. 96. Ordered by Judge Diane Gujarati on 6/13/2024. (AD) (Entered: 06/13/2024) |
| 06/17/2024 | 98 | MOTION to Dismiss *Letter Providing the Court Supplemental Information in Requesting Immediate Hearing into Evidence that the FBI has Instructed a Key Witness to Delete Emails [See ECF No. 96]* by Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit ECF No. 49-2) (Bonjean, Jennifer) (Entered: 06/17/2024) |
| 06/17/2024 | 99 | MOTION to Dismiss *Letter Providing the Court Supplemental Information in Requesting Immediate Hearing into Evidence that the FBI has Instructed a Key Witness to Delete Emails [See ECF No. 96](Corrected)* by Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit ECF No. 49-2) (Bonjean, Jennifer) (Entered: 06/17/2024) |
| 06/18/2024 | 100 | MEMORANDUM in Opposition re 99 MOTION to Dismiss *Letter Providing the Court Supplemental Information in Requesting Immediate Hearing into Evidence that the FBI has Instructed a Key Witness to Delete Emails [See ECF No. 96](Corrected)*, 98 MOTION to Dismiss *Letter Providing the Court Supplemental Information in Requesting Immediate Hearing into Evidence that the FBI has Instructed a Key Witness to Delete Emails [See ECF No. 96]*, 96 MOTION to Dismiss *Letter calling the Court's attention to serious new evidence discovered yesterday that the FBI has instructed a key witness to delete emails and asking the Court to expand the scope of the Defendants' motion to dismiss t (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4) (Lash, Devon) (Entered: 06/18/2024)* |

| | | |
|---|---|---|
| 06/20/2024 | | **SCHEDULING ORDER:** A conference regarding the parties' recent filings, *see* ECF Nos. 95, 96, 97, 98, 99, and 100, will be held on July 3, 2024 at 11:00 a.m. in Courtroom 4B South before Judge Diane Gujarati. Ordered by Judge Diane Gujarati on 6/20/2024. (AD) (Entered: 06/20/2024) |
| 06/26/2024 | 101 | NOTICE of Change of Address by Rachel Cherwitz, Nicole Daedone Once the filing has been made, you must login to www.pacer.gov and update your account. (Orozco, Gabriella) (Entered: 06/26/2024) |
| 06/27/2024 | 102 | MOTION to Continue *Status Conference until June 12, 2024* by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 06/27/2024) |
| 06/27/2024 | 103 | MOTION to Continue *Status Conference until July 12, 2024* by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 06/27/2024) |
| 06/28/2024 | | ORDER denying 103 MOTION to Continue *Status Conference until July 12, 2024* -- The motion to adjourn the conference scheduled for July 3, 2024 is denied. Ordered by Judge Diane Gujarati on 6/28/2024. (AD) (Entered: 06/28/2024) |
| 07/01/2024 | 104 | REPLY TO RESPONSE to Motion re 95 MOTION to Dismiss *Pre-motion letter to the Court on behalf of both defendants requesting a briefing schedule on a motion to dismiss due to the Prosecution Team's misuse of and reliance on a highly privileged document in violation of the defend (Levin, Duncan) (Entered: 07/01/2024)* |
| 07/01/2024 | 105 | REPLY TO RESPONSE to Motion re 99 MOTION to Dismiss *Letter Providing the Court Supplemental Information in Requesting Immediate Hearing into Evidence that the FBI has Instructed a Key Witness to Delete Emails [See ECF No. 96](Corrected)* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Bonjean, Jennifer) (Entered: 07/01/2024) |
| 07/03/2024 | | Minute Entry for proceedings held before Judge Diane Gujarati: Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on July 3, 2024 before Judge Diane Gujarati. AUSA Kayla C. Bensing appeared on behalf of the Government. FBI Special Agent Daniel Schmidt also present. Duncan Patrick Levin appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. Discussion held. Defendants' request for a briefing schedule, *see* ECF Nos. 95, 96, 98, 99, was granted and the Court set a briefing schedule for Defendants' anticipated motion to dismiss. Defendants' motion shall be filed by July 17, 2024; the Government's opposition shall be filed by July 31, 2024; and any reply shall be filed by August 14, 2024. As set forth on the record, the Government's request made at ECF No. 100 at 1 n.1 was denied without prejudice. (Court Reporter Kristi Cruz.) (AD) (Entered: 07/03/2024) |
| 07/12/2024 | 106 | Letter *Requesting Court to modify briefing schedule* as to Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 07/12/2024) |
| 07/15/2024 | | ORDER re 106 Letter *Requesting Court to modify briefing schedule* -- The request to modify the briefing schedule is granted. Defendants' motion shall be filed by August 1, 2024; the Government's opposition shall be filed by August 15, 2024; and any reply shall be filed by August 26, 2024. Counsel is reminded that any request for relief must be filed as a motion on ECF. *See* Individual Practice Rule I.A.4. Ordered by Judge Diane Gujarati on 7/15/2024. (AD) (Entered: 07/15/2024) |
| 07/17/2024 | 107 | MOTION to Quash *Defendants' July 3, 2024 Subpoenas to Media Companies* by USA as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit A (filed under seal)) (Lash, Devon) (Entered: 07/17/2024) |

| | | |
|---|---|---|
| 07/17/2024 | 108 | MOTION to Quash *Defendants' July 3, 2024 Subpoenas to Media Companies (filed under seal)* by USA as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit A) (Lash, Devon) (Entered: 07/17/2024) |
| 07/17/2024 | 109 | Letter *to the Court, dated July 17, 2024, from Bloomberg L.P.* as to Rachel Cherwitz, Nicole Daedone (Krouse, Michael) (Entered: 07/17/2024) |
| 07/22/2024 | 110 | MOTION for Leave to File Document *response to Dkts 107, 108 and 109 by August 5* by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Cohen, Ashley) (Entered: 07/22/2024) |
| 07/23/2024 | | ORDER REFERRING 107 , 108 , 109 , 110 -- The submissions at ECF Nos. 107, 108, 109, and 110 are respectfully referred to Magistrate Judge Robert M. Levy. Ordered by Judge Diane Gujarati on 7/23/2024. (AD) (Entered: 07/23/2024) |
| 07/23/2024 | | SCHEDULING ORDER: A telephone conference is scheduled for **July 25, 2024 at 11:00 a.m.**, before the Hon. Robert M. Levy, USMJ. Parties are directed to dial 571-353-2301; and use Guest ID: 623827231. The U.S. Attorneys Office is requested confirm with opposing counsel that all necessary participants are aware of the date and time of scheduled conference. Ordered by Magistrate Judge Robert M. Levy on 7/23/2024. (JM) (Entered: 07/23/2024) |
| 07/30/2024 | 111 | Letter *Providing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 07/30/2024) |
| 07/31/2024 | 112 | Letter *Regarding Potential Witnesses* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 07/31/2024) |
| 07/31/2024 | | ORDER deferring ruling on 107 , 108 , 109 , 110 Motions to Quash. The parties will meet and confer to tailor the scope of the subpoenas. To the extent that any disagreements remain, the parties are directed to file a proposed briefing schedule for the Court's consideration. Motion Hearing held on 7/25/2024 re 107 , 108 , 109 , 110 Motions to Quash. (FTR Log #11:00-12:00 (approx).) Ordered by Magistrate Judge Robert M. Levy on 7/31/2024. (AM) (Entered: 07/31/2024) |
| 08/01/2024 | 113 | MOTION to Seal Document , MOTION for Leave to File Excess Pages , MOTION to Dismiss by Rachel Cherwitz, Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Memorandum in Support of Motion to Dismiss, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q) (Cohen, Ashley) (Entered: 08/02/2024) |
| 08/05/2024 | | ORDER re 112 Letter *Regarding Potential Witnesses* -- Defendants shall, by August 9, 2024, file under seal any response to the Government's letter of July 31, 2024, ECF No. 112. Ordered by Judge Diane Gujarati on 8/5/2024. (AD) (Entered: 08/05/2024) |
| 08/05/2024 | | ORDER re 113 MOTION to Seal Document, MOTION for Leave to File Excess Pages, MOTION to Dismiss -- By joint letter filed (*ex parte*) on August 1, 2024, Defendants Cherwitz and Daedone (1) seek leave to file a forty-page memorandum of law; (2) represent that the Government does not object to the request to file a forty-page memorandum of law as long as the Government is permitted to file a memorandum of law of the same length; (3) seek leave "to file a redacted memorandum of law and file under seal certain declarations that contain information that is protected by the attorney-client privilege;" and (4) represent that Defendants will provide to the Filter Team prosecutors "[a]n unredacted version of the memorandum of law and the supporting declarations" and that the Government does not object to this proposed procedure. *See* ECF No. 113 at 1-2. Defendants' request for leave to file a forty-page memorandum of |

| | | |
|---|---|---|
| | | law is granted. The Government also is granted leave to file a forty-page memorandum of law. Defendants shall, by August 6, 2024, serve on the Government the redacted version of the filing at ECF No. 113 and serve on the Filter Team prosecutors the unredacted version of the filing at ECF No. 113. Pending resolution of the Government's request at ECF No. 112, Defendants shall refrain from filing the redacted version of the filing at ECF No. 113. Ordered by Judge Diane Gujarati on 8/5/2024. (AD) (Entered: 08/05/2024) |
| 08/09/2024 | 114 | Letter *in opposition to Government's July 31, 2024 letter [Dkt. 112]* as to Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 08/09/2024) |
| 08/12/2024 | 115 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 08/12/2024) |
| 08/13/2024 | 116 | Letter *Reply In Support of July 31, 2024 Letter Regarding Potential Witnesses* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit A) (Kassner, Gillian) (Entered: 08/13/2024) |
| 08/14/2024 | 117 | MOTION to Withdraw as Attorney *for defendant Rachel Cherwitz* by Duncan Levin. by Rachel Cherwitz. (Attachments: # 1 Proposed Order) (Levin, Duncan) (Entered: 08/14/2024) |
| 08/14/2024 | | Order re 117 MOTION to Withdraw as Attorney *for defendant Rachel Cherwitz* -- Counsel for Defendant Cherwitz shall, by August 16, 2024, supplement his Motion to Withdraw, ECF No. 117, to satisfy all of the requirements of Local Civil Rule 1.4 – which applies to criminal proceedings, *see* Local Criminal Rule 1.1(b) – including the requirement of service upon Defendant Cherwitz and the requirement that counsel indicate whether or not he is asserting a retaining or charging lien. Also by August 16, 2024, counsel for Defendant Cherwitz shall submit *ex parte* additional information regarding the conflict of interest referenced in the Motion to Withdraw. *See* ECF No. 117 at 1 (offering to provide information *ex parte*). Ordered by Judge Diane Gujarati on 8/14/2024. (AD) (Entered: 08/14/2024) |
| 08/15/2024 | 118 | MEMORANDUM in Opposition re 113 MOTION to Seal Document MOTION for Leave to File Excess Pages MOTION to Dismiss *(filed under seal)* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit) (Lash, Devon) (Entered: 08/15/2024) |
| 08/15/2024 | 119 | MOTION for Protective Order *Modification and Other Relief* by USA as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N) (Bensing, Kayla) (Entered: 08/15/2024) |
| 08/16/2024 | 120 | AFFIDAVIT/AFFIRMATION by Rachel Cherwitz Order,,, (Levin, Duncan) (Entered: 08/16/2024) |
| 08/16/2024 | | **SCHEDULING ORDER**: A conference regarding the 117 Motion to Withdraw as Attorney will be held on August 20, 2024 at 10:00 a.m. in Courtroom 4B South before Judge Diane Gujarati. Ordered by Judge Diane Gujarati on 8/16/2024. (AD) (Entered: 08/16/2024) |
| 08/17/2024 | 121 | MOTION for Hearing *Letter motion respectfully requesting that Tuesday's conference be held telephonically given travel logistics for defendant Cherwitz, who is in California* by Rachel Cherwitz. (Levin, Duncan) (Entered: 08/17/2024) |
| 08/18/2024 | 122 | MOTION for Hearing *Letter motion respectfully requesting to appear telephonically* by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 08/18/2024) |

| | | |
|---|---|---|
| 08/19/2024 | | ORDER denying 121 , 122 -- By letter filed on August 17, 2024, Defendant Cherwitz requests that the conference scheduled for August 20, 2024 be held telephonically. *See* ECF No. 121 at 1. By letter filed on August 18, 2024, Defendant Daedone joins in that request and, in the alternative, requests that the Court waive her in-person appearance. *See* ECF No. 122 at 1. The requests are denied. The conference regarding the 117 Motion to Withdraw as Attorney will be held in person and all parties are expected to be present at the conference. The Court will, however, entertain a request for a short adjournment of the conference. Any party that wishes to request an adjournment shall do so by 3:00 p.m. today. Ordered by Judge Diane Gujarati on 8/19/2024. (IH) (Entered: 08/19/2024) |
| 08/19/2024 | 124 | MOTION to Continue *status conference until Friday, August 23, 2024* by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 08/19/2024) |
| 08/19/2024 | | ORDER re 124 MOTION to Continue -- The conference scheduled for August 20, 2024 is rescheduled for August 27, 2024 at 3:00 p.m. Ordered by Judge Diane Gujarati on 8/19/2024. (IH) (Entered: 08/19/2024) |
| 08/20/2024 | 125 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 7/3/24, for hearing type Status Conference, before Judge Gujarati. Court Reporter/Transcriber Kristi Cruz, Telephone number 718-613-2676. Email address: kristi.edny@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/10/2024. Redacted Transcript Deadline set for 9/20/2024. Release of Transcript Restriction set for 11/18/2024. (Cruz, Kristi) (Entered: 08/20/2024) |
| 08/21/2024 | 126 | *Ex Parte* Affidavit of Duncan Levin, Esq. in support of 117 Motion to Withdraw as Attorney (EF) (Entered: 08/21/2024) |
| 08/21/2024 | 127 | Filter Team Submission Supplementing 118 Memorandum in Opposition, *Filed Under Seal* (Attachments: # 1 FT Exhibit 1, # 2 FT Exhibit 2, # 3 FT Exhibit 3) (EF) (Entered: 08/21/2024) |
| 08/21/2024 | | ORDER granting 123 *SEALED* MOTION for Leave to Electronically File Document under Seal -- The request to file under seal the Filter Team's letter to the Court dated August 15, 2024 and accompanying exhibits, *see* ECF No. 123, is granted. Although a presumption of public access ordinarily attaches to judicial documents, sealing or redacting such documents can be justified when necessary to protect countervailing interests. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). The Court finds that sealing of the Filter Team's letter to the Court dated August 15, 2024, ECF No. 127, and accompanying exhibits, ECF Nos. 127-1, 127-2, and 127-3, is warranted due to the nature of the information contained therein. Ordered by Judge Diane Gujarati on 8/21/2024. (IH) (Entered: 08/21/2024) |
| 08/22/2024 | 128 | MOTION to Continue *the filing of Defendants' reply to government's opposition to Defendants' motion to dismiss until after next week's status hearing* by Nicole Daedone. (Bonjean, Jennifer) (Entered: 08/22/2024) |
| 08/23/2024 | | ORDER re 128 MOTION to Continue -- Defendants' deadline for filing their reply is extended to August 30, 2024. Ordered by Judge Diane Gujarati on 8/23/2024. (BBM) (Entered: 08/23/2024) |
| 08/26/2024 | 129 | ~~RESPONSE in Opposition re 119 MOTION for Protective Order *Modification and Other Relief* (Bonjean, Jennifer)~~ **STRICKEN pursuant to Judge Diane Gujarati's Order** |

| | | |
|---|---|---|
| | | **dated August 27, 2024.** (Entered: 08/26/2024) |
| 08/26/2024 | 130 | ~~RESPONSE in Opposition re 119 MOTION for Protective Order *Modification and Other Relief and Documents 112 and 116 under seal* (Bonjean, Jennifer)~~ **STRICKEN pursuant to Judge Diane Gujarati's Order dated August 27, 2024.** (Entered: 08/26/2024) |
| 08/26/2024 | 131 | RESPONSE in Opposition re 119 MOTION for Protective Order *Modification and Other Relief Corrected* (Bonjean, Jennifer) (Entered: 08/26/2024) |
| 08/26/2024 | 132 | ~~RESPONSE in Opposition re 119 MOTION for Protective Order *Modification and Other Relief and Documents 112 and 116 under seal (Corrected)* (Bonjean, Jennifer)~~ **STRICKEN pursuant to Judge Diane Gujarati's Order dated August 27, 2024.** (Entered: 08/26/2024) |
| 08/27/2024 | 133 | RESPONSE in Opposition re 119 MOTION for Protective Order *Modification and Other Relief and Documents 112 and 166 under seal (Corrected)* (Bonjean, Jennifer) (Entered: 08/27/2024) |
| 08/27/2024 | | ORDER REFERRING 112 , 119 -- The submissions at ECF Nos. 112 and 119 are respectfully referred to Magistrate Judge Robert M. Levy. Ordered by Judge Diane Gujarati on 8/27/2024. (AD) (Entered: 08/27/2024) |
| 08/27/2024 | | Minute Entry for proceedings held before Judge Diane Gujarati: Conference regarding the 117 Motion to Withdraw as Attorney held on August 27, 2024 before Judge Diane Gujarati. AUSAs Kayla C. Bensing and Devon Lash appeared on behalf of the Government. Duncan Patrick Levin appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. Discussion held. As set forth on the record, the Court (1) set a deadline of September 3, 2024 for new counsel for Defendant Cherwitz to enter a Notice of Appearance; (2) extended to September 6, 2024 Defendants' deadline for filing their Motion to Dismiss reply; and (3) indicated that it would strike the filings at ECF Nos. 129, 130, and 132 from the docket in light of the fact that corrected versions of those documents have been filed. (Court Reporter Kristi Cruz.) (AD) (Entered: 08/28/2024) |
| 08/27/2024 | | ORDER REFERRING CASE to Magistrate Judge Robert M. Levy as to Rachel Cherwitz, Nicole Daedone. Ordered by Judge Diane Gujarati on 8/27/2024. (AD) (Entered: 08/28/2024) |
| 08/28/2024 | 134 | RESPONSE in Opposition re 119 MOTION for Protective Order *Modification and Other Relief*, 112 MOTION to Seal *Ms. Cherwitz joins Ms. Daedone's response to the government's motion regarding potential witnesses (ECF No. 112) and motion to modify the protective order (ECF No. 119).* (Levin, Duncan) (Entered: 08/28/2024) |
| 08/28/2024 | 135 | MOTION to Appear Pro Hac Vice Filing fee $ 200, receipt number NYEDC-18223788by Netflix, Inc. as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Affidavit) (Schafler, Michael) (Entered: 08/28/2024) |
| 08/28/2024 | | ORDER temporarily denying 135 Motion for Leave to Appear Pro Hac Vice. Certificates of Good Standing must have been issued within 30 days of filing a motion to appear Pro Hac Vice. Ordered by Magistrate Judge Robert M. Levy on 8/28/2024. (AM) (Entered: 08/28/2024) |
| 08/30/2024 | 136 | REPLY TO RESPONSE to Motion re 119 MOTION for Protective Order *Modification and Other Relief (filed under seal)* (Lash, Devon) (Entered: 08/30/2024) |
| 09/03/2024 | 137 | NOTICE OF ATTORNEY APPEARANCE Sean Michael Fern appearing for USA. (Fern, Sean) (Entered: 09/03/2024) |

| | | |
|---|---|---|
| 09/03/2024 | 138 | NOTICE OF ATTORNEY APPEARANCE: Imran H. Ansari appearing for Rachel Cherwitz, Nicole Daedone (Ansari, Imran) (Entered: 09/03/2024) |
| 09/04/2024 | | ORDER granting 117 MOTION to Withdraw as Attorney *for defendant Rachel Cherwitz* -- Attorney Duncan Patrick Levin terminated. Ordered by Judge Diane Gujarati on 9/4/2024. (IH) (Entered: 09/04/2024) |
| 09/06/2024 | 139 | MOTION for Leave to File Excess Pages by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 09/06/2024) |
| 09/06/2024 | 141 | REPLY TO RESPONSE to Motion re 113 MOTION to Seal Document MOTION for Leave to File Excess Pages MOTION to Dismiss *re: Dkt. 118* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Bonjean, Jennifer) (Entered: 09/06/2024) |
| 09/09/2024 | | ORDER granting 139 MOTION for Leave to File Excess Pages -- Defendants' request for leave to file a twenty-two-page reply memorandum of law is granted. Ordered by Judge Diane Gujarati on 9/9/2024. (AD) (Entered: 09/09/2024) |
| 09/09/2024 | | ORDER re 140 , 141 -- On September 6, 2024, Defendants filed two documents titled "Memorandum of Law in Support of Defendants' Reply to the Government's Opposition to Defendants' Joint Motion to Dismiss." *See* ECF Nos. 140, 141. Defendants shall file a letter, by 5:00 p.m. today, indicating which document they intend for the Court to consider and which should be stricken from the docket. Ordered by Judge Diane Gujarati on 9/9/2024. (AD) (Entered: 09/09/2024) |
| 09/09/2024 | 142 | Letter as to Rachel Cherwitz, Nicole Daedone (Cohen, Ashley) (Entered: 09/09/2024) |
| 09/09/2024 | 143 | NOTICE OF ATTORNEY APPEARANCE: Arthur L. Aidala appearing for Rachel Cherwitz (Aidala, Arthur) (Entered: 09/09/2024) |
| 09/09/2024 | 144 | NOTICE OF ATTORNEY APPEARANCE: Michael T Jaccarino appearing for Rachel Cherwitz (Jaccarino, Michael) (Entered: 09/09/2024) |
| 09/10/2024 | | ORDER re 127 Filter Team Submission Supplementing 118 Memorandum in Opposition, *Filed Under Seal* -- The Filter Team shall, by September 11, 2024 at 5:00 p.m., provide to the Court a copy of the "27-page pdf document" referenced in the Filter Team's letter dated August 15, 2024. *See* ECF No. 127 at 1-2. Ordered by Judge Diane Gujarati on 9/10/2024. (AD) (Entered: 09/10/2024) |
| 09/10/2024 | 145 | Letter *to Court from Filter Team re: Order* as to Rachel Cherwitz, Nicole Daedone (Jones, Shannon) (Entered: 09/10/2024) |
| 09/11/2024 | 146 | MOTION to Appear Pro Hac Vice Filing fee $ 200, receipt number NYEDC-18268498by Netflix, Inc. as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Affidavit) (Schafler, Michael) (Entered: 09/11/2024) |
| 09/11/2024 | 147 | MOTION to Appear Pro Hac Vice Filing fee $ 200, receipt number NYEDC-18268530by Netflix, Inc. as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Affidavit) (Bell, Alyssa) (Entered: 09/11/2024) |
| 09/16/2024 | 148 | Letter *providing notice pursuant to Fed. R. Crim. P. 16(a)(1)(G) and Fed. R. Evid. 702, 703 and 705 for expert testimony* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit Expert Disclosure) (Lash, Devon) (Entered: 09/16/2024) |
| 09/16/2024 | | **SCHEDULING ORDER**: A conference will be held on September 27, 2024 at 10:30 a.m. in Courtroom 4B South before Judge Diane Gujarati. Ordered by Judge Diane Gujarati on 9/16/2024. (AD) (Entered: 09/16/2024) |
| 09/18/2024 | | ORDER granting 146 Motion for Leave to Appear. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a |

| | | |
|---|---|---|
| | | notice of appearance to ensure electronic notification of activity in this case. Also, the attorney shall ensure the 200 admission fee be submitted to the Clerks Office via filing the event *Pro Hac Vice Filing Fee*. as to Rachel Cherwitz (1), Nicole Daedone (2). Ordered by Magistrate Judge Robert M. Levy on 9/18/2024. (JM) (Entered: 09/18/2024) |
| 09/18/2024 | | ORDER granting 147 Motion for Leave to Appear. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance to ensure electronic notification of activity in this case. Also, the attorney shall ensure the 200 admission fee be submitted to the Clerks Office via filing the event *Pro Hac Vice Filing Fee*. as to Rachel Cherwitz (1), Nicole Daedone (2). Ordered by Magistrate Judge Robert M. Levy on 9/18/2024. (JM) (Entered: 09/18/2024) |
| 09/19/2024 | 149 | NOTICE *of Appearance of Alyssa D. Bell as to Movant Netflix, Inc.* (Bell, Alyssa) (Entered: 09/19/2024) |
| 09/19/2024 | 150 | NOTICE *of Appearance of Michael V Schafler as to Movant Netflix, Inc.* (Schafler, Michael) (Entered: 09/19/2024) |
| 09/19/2024 | 151 | Letter *Requesting Curcio Hearing* as to Rachel Cherwitz (Attachments: # 1 Exhibit A) (Kassner, Gillian) (Entered: 09/19/2024) |
| 09/19/2024 | | ORDER REFERRING 151 -- The submission at ECF No. 151 is respectfully referred to Magistrate Judge Robert M. Levy. Ordered by Judge Diane Gujarati on 9/19/2024. (AD) (Entered: 09/19/2024) |
| 09/19/2024 | | ORDER RE 151 : A Curcio Hearing has been scheduled for **September 23, 2024 at 2:30 p.m.**, before the Hon. Robert M. Levy, USMJ in Courtroom 11-B. So Ordered by Magistrate Judge Robert M. Levy on 9/19/2024. (JM) (Entered: 09/19/2024) |
| 09/19/2024 | 152 | Letter *Request for Adj of Curcio Hearing* as to Rachel Cherwitz (Aidala, Arthur) (Entered: 09/19/2024) |
| 09/20/2024 | 153 | Letter *Disclosing Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 09/20/2024) |
| 09/20/2024 | | SCHEDULING ORDER: The Curcio Hearing scheduled for Sept. 23, 2024 at 2:30 p.m. is adjourned to **Thursday, Sept. 26, 2024 at 5:00 p.m.** before the Hon. Robert M. Levy in Courtroom 11-B South. So Ordered by Magistrate Judge Robert M. Levy on 9/20/2024. (AQR) (Entered: 09/20/2024) |
| 09/20/2024 | 154 | Letter *Supplementing Factual Record as to Pending Motion (ECF Dkt. 113)* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 09/20/2024) |
| 09/20/2024 | 156 | Letter *Attaching Exhibits to ECF Dkt. No. 154* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Kassner, Gillian) (Entered: 09/20/2024) |
| 09/23/2024 | 157 | Filter Team September 20, 2024 Submission, *Filed Under Seal* (EF) (Entered: 09/23/2024) |
| 09/23/2024 | | ORDER granting 155 *SEALED* MOTION for Leave to Electronically File Document under Seal -- The request to file under seal the Filter Team's letter to the Court dated September 20, 2024, *see* ECF No. 155, is granted. Although a presumption of public access ordinarily attaches to judicial documents, sealing or redacting such documents can be justified when necessary to protect countervailing interests. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). The Court finds that sealing of the Filter Team's letter to the Court dated September 20, 2024, ECF No. 157, is warranted due to the nature of the information contained therein. Ordered by Judge Diane Gujarati on 9/23/2024. (AD) (Entered: 09/23/2024) |

| | | |
|---|---|---|
| 09/23/2024 | | ORDER re 157 Filter Team September 20, 2024 Submission, *Filed Under Seal* -- The Filter Team shall, by **5:00 p.m. today**, provide to the Court a copy of the "two Word documents" referenced in the Filter Team's letter dated September 20, 2024. *See* ECF No. 157 at 1. Ordered by Judge Diane Gujarati on 9/23/2024. (AD) (Entered: 09/23/2024) |
| 09/23/2024 | 158 | Letter *from Filter Team to Court re: order to provide two word documents for in camera review* as to Rachel Cherwitz, Nicole Daedone (Jones, Shannon) (Entered: 09/23/2024) |
| 09/23/2024 | 159 | Letter *Request for an Extension for Trial Date* as to Rachel Cherwitz (Ansari, Imran) (Entered: 09/23/2024) |
| 09/23/2024 | | ORDER re 159 Letter *Request for an Extension for Trial Date* -- Defendants' request for an adjournment of the January 13, 2025 trial date, which date was set as a firm date at the Status Conference held on May 3, 2024 (after having been set as a tentative date at the Status Conference held on February 1, 2024), is DENIED. The remaining requests for relief contained in Defendants' September 23, 2024 letter, *see* ECF No. 159, will be addressed at the September 27, 2024 conference. Counsel is reminded that any request for relief must be filed as a motion on ECF. *See* Individual Practice Rule I.A.4. Ordered by Judge Diane Gujarati on 9/23/2024. (AD) (Entered: 09/23/2024) |
| 09/26/2024 | 160 | MOTION for Discovery by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit) (Bonjean, Jennifer) (Entered: 09/26/2024) |
| 09/26/2024 | 161 | Curcio Hearing held before Magistrate Judge Robert M. Levy. (FTR Log #5:06-5:32, COURT REPORTER: Linda Marino.) (IH) The Court finds the waiver of conflict knowing and voluntary, and therefore respectfully recommends the waiver be accepted. Modified on 9/30/2024 (AQR). Modified on 10/23/2024 (LH). (Entered: 09/27/2024) |
| 09/27/2024 | | Minute Entry for proceedings held before Judge Diane Gujarati: Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on September 27, 2024 before Judge Diane Gujarati. AUSAs Gillian Kassner, Devon Lash, Kayla C. Bensing, and Sean Michael Fern appeared on behalf of the Government. Paralegals Anna November, Marlane Bosler, and Liam McNett also present. Arthur L. Aidala and Imran H. Ansari appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. As set forth on the record, Defendants' Joint Motion to Dismiss, ECF No. 113, was DENIED. The Court set a deadline of October 4, 2024 for expert disclosure. The Court also extended the motions *in limine* briefing deadlines as follows: motions *in limine*, if any, shall be filed by October 11, 2024 at 5:00 p.m.; responses, if any, shall be filed by October 18, 2024 at 5:00 p.m.; replies are not permitted. The filings at ECF Nos. 159 and 160 were addressed. The parties will confer as to various issues raised in those filings and discussed on the record. (Court Reporter Kristi Cruz.) (IH) (Entered: 09/30/2024) |
| 09/30/2024 | 162 | MOTION for Extension of Time to File *Rule 16 Expert Disclosures* by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 09/30/2024) |
| 10/01/2024 | | ORDER granting in part 162 MOTION for Extension of Time to File *Rule 16 Expert Disclosures* -- Upon consideration of Defendants' September 30, 2024 letter motion, ECF No. 162, in which Defendants represent that the parties are scheduled to meet and confer on October 2, 2024, Defendants' request for an extension of the October 4, 2024 expert disclosure deadline is granted in part. Defendants are afforded an extension to October 18, 2024. Ordered by Judge Diane Gujarati on 10/1/2024. (AD) (Entered: 10/01/2024) |
| 10/07/2024 | 163 | Letter *Disclosure Regarding Documents* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 10/07/2024) |

| | | |
|---|---|---|
| 10/09/2024 | 164 | MOTION for Leave to File Excess Pages by USA as to Rachel Cherwitz, Nicole Daedone. (Fern, Sean) (Entered: 10/09/2024) |
| 10/10/2024 | | ORDER re 164 MOTION for Leave to File Excess Pages -- The Government shall, by 3:00 p.m. today, supplement its motion to set forth with greater specificity the reasons for the Government's request to file such a lengthy memorandum of law. Ordered by Judge Diane Gujarati on 10/10/2024. (AD) (Entered: 10/10/2024) |
| 10/10/2024 | 165 | TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on July 25, 2024, before Judge Levy. Court Reporter/Transcriber Georgette K. Betts. Email address: Georgetteb25@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 10/31/2024. Redacted Transcript Deadline set for 11/11/2024. Release of Transcript Restriction set for 1/8/2025. (LH) (Entered: 10/10/2024) |
| 10/10/2024 | 166 | Letter *In Further Support Of October 9, 2024 Motion* as to Rachel Cherwitz, Nicole Daedone (Bensing, Kayla) (Entered: 10/10/2024) |
| 10/10/2024 | | ORDER granting 164 MOTION for Leave to File Excess Pages -- The motion is granted on consent. The Government is granted leave to file a memorandum of law no longer than 130 pages. Ordered by Judge Diane Gujarati on 10/10/2024. (AD) (Entered: 10/10/2024) |
| 10/11/2024 | 167 | MOTION in Limine by Rachel Cherwitz, Nicole Daedone. (Aidala, Arthur) (Entered: 10/11/2024) |
| 10/11/2024 | 168 | ~~First MOTION in Limine by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer)~~ **STRICKEN pursuant to Judge Diane Gujarati's Order dated October 15, 2024.** (Entered: 10/11/2024) |
| 10/11/2024 | 169 | MOTION in Limine by USA as to Rachel Cherwitz, Nicole Daedone. (Bensing, Kayla) (Entered: 10/11/2024) |
| 10/11/2024 | 170 | MOTION in Limine by USA as to Rachel Cherwitz, Nicole Daedone. (Bensing, Kayla) (Entered: 10/11/2024) |
| 10/12/2024 | 171 | MOTION in Limine *Corrected* by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 10/12/2024) |
| 10/12/2024 | 172 | MOTION to Strike *Dkt. 168* by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 10/12/2024) |
| 10/12/2024 | 173 | MOTION to Seal Document *Exhibits to Government Motions in limine* by USA as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit) (Kassner, Gillian) (Entered: 10/12/2024) |
| 10/12/2024 | 174 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Fern, Sean) (Entered: 10/12/2024) |
| 10/15/2024 | | ORDER granting 172 MOTION to Strike *Dkt. 168* -- The Clerk of Court is directed to strike the filing at ECF No. 168 from the docket. Ordered by Judge Diane Gujarati on 10/15/2024. (AD) (Entered: 10/15/2024) |
| 10/16/2024 | 175 | MOTION for Extension of Time to File *Opposition to Motions In Limine and for Defendants to Make Rule 16 Expert Disclosures* by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 10/16/2024) |

| | | |
|---|---|---|
| 10/16/2024 | 176 | Amended MOTION for Extension of Time to File *Oppositions to Motions In Limine as to both Defendants and the Government and Defendants' Rule 16 Expert Disclosures* by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 10/16/2024) |
| 10/17/2024 | | ORDER granting in part 176 Amended MOTION for Extension of Time to File *Oppositions to Motions In Limine as to both Defendants and the Government and Defendants' Rule 16 Expert Disclosures* -- Defendants' expert disclosure deadline is extended to October 21, 2024 at 5:00 p.m. and the motions *in limine* response deadline is extended to October 25, 2024 at 5:00 p.m. Ordered by Judge Diane Gujarati on 10/17/2024. (AD) (Entered: 10/17/2024) |
| 10/21/2024 | 177 | Letter *providing notice pursuant to Fed. R. Crim. P. 16(a)(1)(G)* as to Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 10/21/2024) |
| 10/21/2024 | 178 | REDACTION by Rachel Cherwitz, Nicole Daedone to 177 Letter (Bonjean, Jennifer) (Entered: 10/21/2024) |
| 10/24/2024 | 179 | First MOTION to Continue *Trial Exhibits Deadline* by USA as to Rachel Cherwitz, Nicole Daedone. (Bensing, Kayla) (Entered: 10/24/2024) |
| 10/25/2024 | 180 | MEMORANDUM in Opposition re 167 MOTION in Limine *to preclude the government expert witness* (Lash, Devon) (Entered: 10/25/2024) |
| 10/25/2024 | 181 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Lash, Devon) (Entered: 10/25/2024) |
| 10/25/2024 | | SCHEDULING ORDER RE 112 and 119 : A conference has been scheduled for **11/20/2024 at 12:00 PM (EST)** before the Hon. Robert M. Levy, USMJ in Courtroom 11-B (south). Ordered by Magistrate Judge Robert M. Levy on 10/25/2024. (JM) (Entered: 10/25/2024) |
| 10/25/2024 | 182 | MEMORANDUM in Opposition re 171 MOTION in Limine *Corrected* (Attachments: # 1 Exhibit A, # 2 Exhibit E, # 3 Exhibit F, # 4 Exhibit G) (Bensing, Kayla) (Entered: 10/25/2024) |
| 10/25/2024 | 183 | Letter *Providing Exhibits* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit H, # 5 Exhibit I, # 6 Exhibit J, # 7 Exhibit K) (Bensing, Kayla) (Main Document 183 identified as malformed and replaced on 11/18/2024) (TLH). (Entered: 10/25/2024) |
| 10/25/2024 | | REPORT AND RECOMMENDATION re 151 Motion for Hearing as to Rachel Cherwitz.<br><br>Curcio Hearing held on 9/26/2024 before Magistrate Judge Robert M. Levy. (FTR Log #5:06-5:32, COURT REPORTER: Linda Marino.)<br><br>The Court finds the waiver of conflict knowing and voluntary, and therefore respectfully recommends the waiver be accepted. Objections to R&R due by 11/8/2024. Signed by Magistrate Judge Robert M. Levy on 10/25/2024. (AQR) (Entered: 10/25/2024) |
| 10/25/2024 | 184 | RESPONSE in Opposition re 169 MOTION in Limine , 170 Motion in Limine, 1 - Sealed Document CR (Bonjean, Jennifer) (Entered: 10/25/2024) |
| 10/28/2024 | | ORDER granting in part and denying in part 179 First MOTION to Continue -- By letter dated October 24, 2024, the Government (1) requests an extension to December 6, 2024 of the November 8, 2024 deadline with respect to exhibits and (2) requests that the Government be permitted to file any motions pertaining to the defense expert notices "on or about November 1, 2024" and the Government represents that the Defendants do not object to the Government's requests. *See generally* ECF No. 179. The Government's first request is DENIED. The Government's second request is GRANTED. The Government |

| | | |
|---|---|---|
| | | shall file any expert-related motion by November 1, 2024 at 5:00 p.m.; any response shall be filed by November 8, 2024 at 5:00 p.m.; replies are not permitted. Ordered by Judge Diane Gujarati on 10/28/2024. (AD) (Entered: 10/28/2024) |
| 10/28/2024 | | ORDER withdrawing [ECF 161 and ECF 10/25/24] Report and Recommendations as to Rachel Cherwitz (1), as the Curcio motion is non-dispositive and was referred to me for decision. Accordingly, I reiterate my finding following a hearing held on 9/26/24,that Ms Cherwitz's waiver of conflict was knowing and voluntary. I therefore accept the waiver. Ordered by Magistrate Judge Robert M. Levy on 10/28/2024. (Levy, Robert) (Entered: 10/28/2024) |
| 10/30/2024 | 185 | Letter MOTION for Disclosure *and Modification of May 6, 2024 Scheduling Order* by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 10/30/2024) |
| 10/30/2024 | 186 | Letter *Exhibit Sealed* as to Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 10/30/2024) |
| 10/30/2024 | | ORDER REFERRING JURY SELECTION as to Rachel Cherwitz and Nicole Daedone to Magistrate Judge Joseph A. Marutollo. Ordered by Judge Diane Gujarati on 10/30/2024. (AD) (Entered: 10/30/2024) |
| 10/30/2024 | | ORDER: This matter has been referred to Magistrate Judge Joseph A. Marutollo for jury selection. A conference will be held before Magistrate Judge Marutollo in Courtroom 4B South on December 20, 2024, at 12:00 p.m. to review the parties' proposed voir dire and the protocol for jury selection. Ordered by Magistrate Judge Joseph A. Marutollo on 10/30/2024. (EG) (Entered: 10/30/2024) |
| 10/31/2024 | 187 | MOTION for Leave to File Excess Pages *in response to defendants' expert notices* by USA as to Rachel Cherwitz, Nicole Daedone. (Lash, Devon) (Entered: 10/31/2024) |
| 10/31/2024 | | ORDER granting in part 185 Letter MOTION -- In light of the recent death of Ms. Bonjean's mother, the Court grants Defendants' request for a one-week extension of certain trial-related deadlines. The new deadlines are as follows: (1) requests to charge, proposed verdict sheets, proposed *voir dire* questions, and lists of potential witnesses and of individuals, entities, places, and scientific, technical, or colloquial terms likely to be mentioned at trial are due by November 8, 2024; and (2) the parties shall exchange their exhibits with each other and provide the Court with copies of their exhibits and exhibit lists by November 15, 2024. All other deadlines remain unchanged. The Government is directed to provide a detailed response, by November 4, 2024 at 5:00 p.m., to the additional issues raised by Defendants in their October 30, 2024 letter, ECF No. 185. A Status Conference will be held on November 15, 2024 at 10:30 a.m. before Judge Diane Gujarati in Courtroom 4B South. *See* May 3, 2024 Minute Entry. Ordered by Judge Diane Gujarati on 10/31/2024. (AD) (Entered: 10/31/2024) |
| 10/31/2024 | | ORDER granting 187 MOTION for Leave to File Excess Pages -- The Government's request for leave to file a memorandum of law not to exceed 30 pages is granted. Ordered by Judge Diane Gujarati on 10/31/2024. (AD) (Entered: 10/31/2024) |
| 11/01/2024 | 188 | MOTION to Exclude *Defendants' Proposed Expert Witnesses (ECF 177) or Conduct a Daubert Hearing* by USA as to Rachel Cherwitz, Nicole Daedone. (Lash, Devon) (Entered: 11/01/2024) |
| 11/04/2024 | 189 | Letter *Response to Letter MOTION for Disclosure and Modification of May 6, 2024 Scheduling Order* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Proposed Order) (Bensing, Kayla) (Entered: 11/04/2024) |
| 11/05/2024 | 190 | Letter *Concerning Potential Curcio Conflict (filed under seal)* as to Rachel Cherwitz (Lash, Devon) (Entered: 11/05/2024) |

| | | |
|---|---|---|
| 11/08/2024 | 191 | Letter MOTION for Extension of Time to File Response/Reply as to 188 MOTION to Exclude *Defendants' Proposed Expert Witnesses (ECF 177) or Conduct a Daubert Hearing* by Rachel Cherwitz, Nicole Daedone. (Ansari, Imran) (Entered: 11/08/2024) |
| 11/08/2024 | 192 | Proposed Jury Instructions/Verdict Form by USA as to Rachel Cherwitz, Nicole Daedone (Lash, Devon) (Entered: 11/08/2024) |
| 11/08/2024 | 193 | Proposed Voir Dire by USA as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit A) (Kassner, Gillian) (Entered: 11/08/2024) |
| 11/08/2024 | 194 | Proposed Voir Dire by USA as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit A) (Kassner, Gillian) (Entered: 11/08/2024) |
| 11/08/2024 | 195 | WITNESS LIST by USA as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 11/08/2024) |
| 11/08/2024 | 196 | Proposed Jury Instructions/Verdict Form by USA as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Proposed Jury Instructions) (Bensing, Kayla) (Entered: 11/08/2024) |
| 11/08/2024 | 197 | WITNESS LIST by USA as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 11/08/2024) |
| 11/08/2024 | 198 | Proposed Voir Dire by Rachel Cherwitz, Nicole Daedone (Ansari, Imran) (Entered: 11/08/2024) |
| 11/08/2024 | 199 | WITNESS LIST by Rachel Cherwitz, Nicole Daedone (Ansari, Imran) (Entered: 11/08/2024) |
| 11/08/2024 | 200 | Proposed Jury Instructions/Verdict Form by Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 11/08/2024) |
| 11/09/2024 | | ORDER denying 191 Letter MOTION for Extension of Time to File Response/Reply -- Defendants' untimely request for an extension, *see* Individual Practice Rule I.F.3, is DENIED. Any response to the 188 MOTION to Exclude must be filed **forthwith**. Ordered by Judge Diane Gujarati on 11/9/2024. (AD) (Entered: 11/09/2024) |
| 11/12/2024 | | SCHEDULING ORDER: The conference scheduled for November 20, 2024 will be held on **November 13, 2024 at 1:00 PM**, before the Hon. Robert M. Levy, USMJ in Courtroom 11-B (south). Ordered by Magistrate Judge Robert M. Levy on 11/12/2024. (JM) (Entered: 11/12/2024) |
| 11/12/2024 | 201 | MEMORANDUM in Opposition re 188 MOTION to Exclude *Defendants' Proposed Expert Witnesses (ECF 177) or Conduct a Daubert Hearing Jointly on Behalf of Rachel Cherwitz and Nicole Daedone* (Ansari, Imran) (Entered: 11/12/2024) |
| 11/12/2024 | 202 | MOTION to Continue *November 13 conference* by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 11/12/2024) |
| 11/12/2024 | | ORDER RE 202 : The conference scheduled for 11/13/24 is adjourned to **11/15/24 at 8:45 AM** before the Hon. Robert M. Levy, USMJ in Courtroom 11-B (south). Ordered by Magistrate Judge Robert M. Levy on 11/12/2024. (JM) (Entered: 11/12/2024) |
| 11/13/2024 | 203 | Letter *Disclosing Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 11/13/2024) |
| 11/14/2024 | 204 | Letter *Disclosing Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 11/14/2024) |
| 11/14/2024 | | ORDER granting 202 Motion to Continue as to Rachel Cherwitz (1), Nicole Daedone (2)Ordered by Magistrate Judge Robert M. Levy on 11/12/2024. (Levy, Robert) (Entered: |

| | | |
|---|---|---|
| | | 11/14/2024) |
| 11/14/2024 | 205 | Letter *Re: Responses/Objections to Government's Proposed Jury Instructions* as to Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 11/14/2024) |
| 11/15/2024 | 206 | Minute Entry for proceedings held before Magistrate Judge Robert M. Levy: Motion Hearing as to Rachel Cherwitz, Nicole Daedone held on 11/15/2024. (FTR Log #8:49-9:50.) (IH) (Entered: 11/15/2024) |
| 11/15/2024 | 207 | MOTION for Protective Order by USA as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Proposed Order) (Bensing, Kayla) (Entered: 11/15/2024) |
| 11/15/2024 | | ORDER granting 207 Motion for Protective Order as to Rachel Cherwitz (1), Nicole Daedone (2)Ordered by Magistrate Judge Robert M. Levy on 11/15/2024. (Levy, Robert) (Entered: 11/15/2024) |
| 11/15/2024 | | Minute Entry for proceedings held before Judge Diane Gujarati: Status Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on November 15, 2024 before Judge Diane Gujarati. AUSAs Gillian Kassner, Devon Lash, Kayla C. Bensing, and Sean Michael Fern appeared on behalf of the Government. Arthur L. Aidala and Imran H. Ansari appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. Discussion held regarding the parties' motions *in limine* (ECF Nos. 169, 170, and 171) and expert-related motions (ECF Nos. 167 and 188) and regarding various other trial-related matters. As to the motions *in limine*, the Court issued certain rulings and provided certain guidance to the parties and the Court instructed the parties to meet and confer in an effort to resolve and/or narrow remaining disputed issues. The Court also set a deadline of December 2, 2024 for compliance with the requirements of Rule 412. As to the expert-related motions, the Court PROVISIONALLY GRANTED Defendants' Motion to Exclude the Government's Proffered Expert Witness, ECF No. 167, and the Court directed Defendants to file a letter by December 5, 2024 at 5:00 p.m. indicating whether Defendants still seek to call any of the four previously-noticed experts and, if they do, to provide in the letter more specific information about any anticipated testimony. In addition, the Court DENIED Defendants' request for certain additional disclosure, filed at ECF No. 185; set a deadline of December 5, 2024 at 5:00 p.m. for the parties to file their joint requests to charge, which document will replace the filings at ECF Nos. 196 and 200; permitted the filings at ECF Nos. 170 and 173 (with the exception of Exhibit A) and the filing at ECF No. 183 to remain under seal until further order of the Court and the filing at ECF No. 169 to maintain its redactions until further order of the Court; and reminded the parties of the importance of complying with deadlines. Defendants will provide Rule 26.2 material to the Government by November 22, 2024. Next Status Conference set for December 10, 2024 at 10:30 a.m. before Judge Diane Gujarati in Courtroom 4B South. (Court Reporter Sophie Nolan.) (AD) (Entered: 11/18/2024) |
| 11/18/2024 | 208 | Notice of Request to Submit Electronic Evidence. as to Rachel Cherwitz, Nicole Daedone. (Ansari, Imran) (Entered: 11/18/2024) |
| 11/20/2024 | 209 | MOTION to Continue *December 10 status to December 11* by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Cohen, Ashley) (Entered: 11/20/2024) |
| 11/20/2024 | | ORDER denying 209 MOTION to Continue *December 10 status to December 11* -- The motion to adjourn the status conference scheduled for December 10, 2024 is DENIED. Ordered by Judge Diane Gujarati on 11/20/2024. (AD) (Entered: 11/20/2024) |
| 11/22/2024 | 210 | Letter *Disclosing Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Fern, Sean) (Entered: 11/22/2024) |

| | | |
|---|---|---|
| 11/22/2024 | 211 | NOTICE OF ATTORNEY APPEARANCE Nina C. Gupta appearing for USA. (Gupta, Nina) (Entered: 11/22/2024) |
| 11/26/2024 | 212 | Letter *Disclosing Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Fern, Sean) (Entered: 11/26/2024) |
| 12/02/2024 | 213 | MOTION for Discovery *[Redacted]* by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 12/02/2024) |
| 12/02/2024 | 214 | MOTION for Discovery by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M) (Bonjean, Jennifer) (Entered: 12/02/2024) |
| 12/02/2024 | 215 | Supplemental MOTION in Limine *To Present Exculpatory Evidence* by Rachel Cherwitz, Nicole Daedone. (Ansari, Imran) (Entered: 12/02/2024) |
| 12/03/2024 | | ORDER re 213 , 214 , 215 -- The Government is directed to respond by December 5, 2024 to the motions filed by Defendants on December 2, 2024. *See* ECF Nos. 213, 214, and 215. Replies are not permitted. Ordered by Judge Diane Gujarati on 12/3/2024. (AD) (Entered: 12/03/2024) |
| 12/03/2024 | 216 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on November 15, 2024, before Judge Robert M. Levy. Court Reporter/Transcriber Linda A. Marino, Telephone number 718-613-2484. Email address: lindacsr@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 12/25/2024. Redacted Transcript Deadline set for 1/3/2025. Release of Transcript Restriction set for 3/3/2025. (Marino, Linda) (Entered: 12/03/2024) |
| 12/04/2024 | 217 | Letter MOTION for Extension of Time to File *Joint Requests to Charge* by USA as to Rachel Cherwitz, Nicole Daedone. (Bensing, Kayla) (Entered: 12/04/2024) |
| 12/04/2024 | 218 | RESPONSE in Opposition re 213 MOTION for Discovery *[Redacted]*, 214 MOTION for Discovery (Kassner, Gillian) (Entered: 12/04/2024) |
| 12/05/2024 | | ORDER granting in part 217 Letter MOTION for Extension of Time to File *Joint Requests to Charge* -- The deadline for the parties to file their joint requests to charge is extended to December 9, 2024 at 10:00 a.m. Ordered by Judge Diane Gujarati on 12/5/2024. (AD) (Entered: 12/05/2024) |
| 12/05/2024 | 219 | RESPONSE in Opposition re 215 Supplemental MOTION in Limine *To Present Exculpatory Evidence* (Bensing, Kayla) (Entered: 12/05/2024) |
| 12/05/2024 | 220 | RESPONSE to Motion re 188 MOTION to Exclude *Defendants' Proposed Expert Witnesses (ECF 177) or Conduct a Daubert Hearing Supplemental Response* (Bonjean, Jennifer) (Entered: 12/05/2024) |
| 12/06/2024 | 221 | Letter *Disclosing Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Fern, Sean) (Entered: 12/06/2024) |
| 12/06/2024 | | ORDER terminating 107 Motion to Quash as to Rachel Cherwitz (1), Nicole Daedone (2). Ordered by Magistrate Judge Robert M. Levy on 12/6/2024. (JM) (Entered: 12/06/2024) |

| | | |
|---|---|---|
| 12/06/2024 | | ORDER terminating 110 Motion for Leave to File as to Rachel Cherwitz (1), Nicole Daedone (2). Ordered by Magistrate Judge Robert M. Levy on 12/6/2024. (JM) (Entered: 12/06/2024) |
| 12/06/2024 | | ORDER terminating 112 Motion to Seal as to Rachel Cherwitz (1), Nicole Daedone (2). Ordered by Magistrate Judge Robert M. Levy on 12/6/2024. (JM) (Entered: 12/06/2024) |
| 12/06/2024 | | ORDER terminating 108 Motion to Quash as to Rachel Cherwitz (1), Nicole Daedone (2). Ordered by Magistrate Judge Robert M. Levy on 12/6/2024. (JM) (Entered: 12/06/2024) |
| 12/06/2024 | | ORDER terminating 119 Motion for Protective Order as to Rachel Cherwitz (1), Nicole Daedone (2). Ordered by Magistrate Judge Robert M. Levy on 12/6/2024. (JM) (Entered: 12/06/2024) |
| 12/06/2024 | 222 | MOTION to Dismiss *PORTIONS OF THE INDICTMENT RELATED TO ALLEGED NONPHYSICAL ACTS THAT COERCED LABOR* by Rachel Cherwitz, Nicole Daedone. (Ansari, Imran) (Entered: 12/06/2024) |
| 12/09/2024 | 223 | Proposed Jury Instructions/Verdict Form by USA as to Rachel Cherwitz, Nicole Daedone (Bensing, Kayla) (Entered: 12/09/2024) |
| 12/09/2024 | 224 | Supplemental MOTION in Limine *To Preclude Government Exhibits* by Rachel Cherwitz, Nicole Daedone. (Ansari, Imran) (Entered: 12/09/2024) |
| 12/09/2024 | 225 | Supplemental MOTION in Limine *as to Testifying Victim-Witnesses* by USA as to Rachel Cherwitz, Nicole Daedone. (Bensing, Kayla) (Entered: 12/09/2024) |
| 12/10/2024 | | Minute Entry for proceedings held before Judge Diane Gujarati: Status Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on December 10, 2024 before Judge Diane Gujarati. AUSAs Gillian Kassner, Kayla C. Bensing, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett also present. Arthur L. Aidala, Imran H. Ansari, and Michael T. Jaccarino appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. Discussion held regarding the parties' various motions (ECF Nos. 188, 213, 214, 215, 222, 224, and 225) and other trial-related matters. The Court set a deadline of December 17, 2024 at 5:00 p.m. for the Government to respond to Defendants' motion at ECF No. 222 and for Defendants to respond to the Government's motion at ECF No. 225; the parties withdrew without prejudice their respective motions at ECF Nos. 188, 213, and 214; and the remaining motions were resolved as set forth on the record. The Court set a deadline of December 13, 2024 at 5:00 p.m. for Defendants to provide additional expert-related disclosures and set a deadline of December 17, 2024 at 5:00 p.m. for the parties to jointly file the materials discussed on the record with respect to documents previously filed in redacted form. The Court also reminded the parties that the final pretrial conference is set for January 7, 2025 at 11:00 a.m. (Court Reporter Linda Danelcyk.) (AD) (Entered: 12/11/2024) |
| 12/11/2024 | 226 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Bensing, Kayla) (Entered: 12/11/2024) |
| 12/12/2024 | 227 | Letter MOTION for Disclosure *of communications and other materials related to Special Agent Elliot McGinnis* by Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Ansari, Imran) (Entered: 12/12/2024) |
| 12/13/2024 | 228 | Letter MOTION to Compel *Jury Questionnaire* by Rachel Cherwitz, Nicole Daedone. (Ansari, Imran) (Entered: 12/13/2024) |

| | | |
|---|---|---|
| 12/13/2024 | | ORDER re 228 : The Government shall respond to Defendants' letter motion 228 by December 17, 2024 at 5:00 p.m. Signed by Magistrate Judge Joseph A. Marutollo on 12/13/2024. (KAR) (Entered: 12/13/2024) |
| 12/17/2024 | 229 | RESPONSE to Motion re 228 Letter MOTION to Compel *Jury Questionnaire* (Fern, Sean) (Entered: 12/17/2024) |
| 12/17/2024 | 230 | MEMORANDUM in Opposition re 222 MOTION to Dismiss *PORTIONS OF THE INDICTMENT RELATED TO ALLEGED NONPHYSICAL ACTS THAT COERCED LABOR* (Lash, Devon) (Entered: 12/17/2024) |
| 12/17/2024 | 231 | Letter *Attaching Unsealed Court Filings* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Kassner, Gillian) (Entered: 12/17/2024) |
| 12/17/2024 | 232 | RESPONSE in Opposition re 227 Letter MOTION for Disclosure *of communications and other materials related to Special Agent Elliot McGinnis* (Kassner, Gillian) (Entered: 12/17/2024) |
| 12/18/2024 | 233 | RESPONSE in Opposition re 225 Supplemental MOTION in Limine *as to Testifying Victim-Witnesses* (Bonjean, Jennifer) (Entered: 12/18/2024) |
| 12/19/2024 | 234 | Letter MOTION for Leave to File Document *Motion for Leave to File Reply To Government's Memorandum in Opposition to Defendants' Motion to Dismiss Portions of the Indictment* by Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit A) (Ansari, Imran) (Entered: 12/19/2024) |
| 12/19/2024 | 235 | MOTION to Produce *and for Rule 502(d) Order* by USA as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Proposed Order Exhibit A) (Kassner, Gillian) (Entered: 12/19/2024) |
| 12/20/2024 | 236 | Letter *Supplementing Government's Proposed Voir Dire Requests* as to Rachel Cherwitz, Nicole Daedone (Gupta, Nina) (Entered: 12/20/2024) |
| 12/20/2024 | 237 | Minute Entry for proceedings held before Magistrate Judge Joseph A. Marutollo: Status conference regarding jury selection held on December 20, 2024 before Magistrate Judge Marutollo. AUSAs Gillian Kassner, Kayla C. Bensing, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Arthur L. Aidala, Imran H. Ansari, and Michael T. Jaccarino appeared on behalf of Defendant Rachel Cherwitz. Jennifer Ann Bonjean appeared on behalf of Defendant Nicole Daedone. Both defendants present and on bond.<br><br>The consent form for Magistrate Judge jury selection was distributed to the parties. Defendants were informed of their rights by the Court. The parties consented to have jury selection proceed before Magistrate Judge Marutollo. The signed consent form is attached.<br><br>The Court discussed jury selection. For the reasons stated on the record, the Court denied Defendants' letter-motion to compel a jury questionnaire 228 .<br><br>The Court ordered that a status conference regarding jury selection will be held on January 3, 2025 at 11:00 a.m. in Courtroom 4B South before Magistrate Judge Joseph A. Marutollo. Ordered by Magistrate Judge Joseph A. Marutollo. (Court Reporter Sophie Nolan.) (EG) (Entered: 12/20/2024) |
| 12/20/2024 | 238 | Letter *Disclosing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 12/20/2024) |

| | | |
|---|---|---|
| 12/23/2024 | 239 | RESPONSE to Motion re 235 MOTION to Produce *and for Rule 502(d) Order* (Attachments: # 1 Exhibit A) (Ansari, Imran) (Entered: 12/23/2024) |
| 12/23/2024 | 240 | ORDER granting in part 235 Motion -- The Government's Motion filed at ECF No. 235 is granted in part. The Court grants the Government's request for an order pursuant to Rule 502(d) of the Federal Rules of Evidence to the extent reflected in the attached Order. **SEE ATTACHED ORDER**. Ordered by Judge Diane Gujarati on 12/23/2024. (IH) (Entered: 12/23/2024) |
| 12/30/2024 | 241 | MOTION to Continue *January 13, 2025 Trial* by Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit, # 2 Exhibit) (Bonjean, Jennifer) (Entered: 12/30/2024) |
| 12/30/2024 | 242 | MOTION to Exclude *Testimony of Ayries Blanck and for an Evidentiary Hearing Concerning Fabricated Journals* by Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit, # 2 Exhibit) (Bonjean, Jennifer) (Entered: 12/30/2024) |
| 12/30/2024 | 243 | MOTION to Seal *Exhibits in Support of Motion to Exclude Ayries Blanck's Testimony* by Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit) (Bonjean, Jennifer) (Entered: 12/30/2024) |
| 12/31/2024 | 244 | RESPONSE in Opposition re 241 MOTION to Continue *January 13, 2025 Trial* (Kassner, Gillian) (Entered: 12/31/2024) |
| 12/31/2024 | 245 | Letter *Brief re Protective Order* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit A (Hearing Transcript)) (Conn, Alyssa) (Entered: 12/31/2024) |
| 12/31/2024 | 246 | RESPONSE in Opposition re 242 MOTION to Exclude *Testimony of Ayries Blanck and for an Evidentiary Hearing Concerning Fabricated Journals* (Kassner, Gillian) (Entered: 12/31/2024) |
| 12/31/2024 | 247 | Letter *Advising of Potential Conflicts and Requesting Curcio Hearing* as to Rachel Cherwitz (Gupta, Nina) (Entered: 12/31/2024) |
| 01/02/2025 | 248 | MOTION for Disclosure *Related to Particulars of Alleged Agreement(s) to Commit Forced Labor* by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 01/02/2025) |
| 01/02/2025 | 249 | Letter *Response to Governments Letter Advising of Potential Conflicts and Requesting Curcio Hearing as to Rachel Cherwitz Filed Under Docket No. 247* as to Rachel Cherwitz (Aidala, Arthur) (Entered: 01/02/2025) |
| 01/02/2025 | 250 | Letter *Supplement Advising of Potential Conflicts and Requesting Curcio Hearing* as to Rachel Cherwitz, Nicole Daedone (Bensing, Kayla) (Entered: 01/02/2025) |
| 01/03/2025 | | Case referred to Magistrate Judge Joseph A. Marutollo for purposes of jury selection. (BBM) (Entered: 01/03/2025) |
| 01/03/2025 | 251 | Proposed Voir Dire by Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 01/03/2025) |
| 01/03/2025 | | Minute Entry for proceedings held before Magistrate Judge Joseph A. Marutollo: Status conference regarding jury selection held on January 3, 2025 before Magistrate Judge Marutollo. AUSAs Gillian Kassner, Kayla C. Bensing, Sean M. Fern, and Nina C. Gupta appeared on behalf of the Government. Arthur L. Aidala appeared on behalf of Defendant Rachel Cherwitz. Jennifer Ann Bonjean appeared on behalf of Defendant Nicole Daedone. Both defendants present and on bond. The Court discussed jury selection. The parties will email Magistrate Judge Marutollo's chambers |

| | | |
|---|---|---|
| | | (marutollo_chambers@nyed.uscourts.gov) by 5 p.m. on January 7, 2025 with any updates to the list of potential names, entities, and places likely to be mentioned at trial. (Court Reporter Sophie Nolan.) (AD) (Entered: 01/03/2025) |
| 01/03/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on January 3, 2025 before Judge Diane Gujarati. AUSAs Gillian Kassner, Kayla C. Bensing, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett also present. Arthur L. Aidala appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. Discussion held regarding the *Curcio*-related filings at ECF Nos. 247, 249, and 250. Defendant Cherwitz will file the letter discussed on the record. As set forth on the record, the Court directed that a portion of the transcript be sealed. (Court Reporter Andronikh Barna.) (AD) (Entered: 01/03/2025) |
| 01/03/2025 | 252 | Letter *in Supplemental Response to Governments Letter Advising of Potential Conflicts and Requesting Curcio Hearing as to Rachel Cherwitz Filed Under Docket No. 247* as to Rachel Cherwitz (Aidala, Arthur) (Entered: 01/03/2025) |
| 01/04/2025 | | SCHEDULING ORDER: A Curcio hearing related to the issues raised in Dkt. Nos. 247, 249, 250, and 252 will be held on January 6, 2025 at 4:00 p.m. before Magistrate Judge Joseph A. Marutollo in Courtroom 4B South. Counsel for Defendant Cherwitz is instructed to ensure that conflict counsel is aware of the date and time of the Curcio hearing. Signed by Magistrate Judge Joseph A. Marutollo on 1/4/2025. (JAM) (Entered: 01/04/2025) |
| 01/06/2025 | | Minute Entry for proceedings held before Magistrate Judge Joseph A. Marutollo: Curcio hearing as to Rachel Cherwitz was held on January 6, 2025 before Magistrate Judge Marutollo. AUSAs Gillian Kassner, Kayla C. Bensing, Sean M. Fern, and Nina C. Gupta appeared on behalf of the Government. Arthur L. Aidala and Michael T. Jaccarino appeared on behalf of Defendant Cherwitz. Celica Cohen appeared as Curcio counsel for Defendant Cherwitz. Defendant Cherwitz appeared on bond.<br><br>The Court advised Defendant Cherwitz of the possible conflict involving Mr. Aidala and his law firm. Following consultation with Curcio counsel, and as discussed at the hearing, Defendant Cherwitz did not waive the conflict. In light of Defendant Cherwitz's decision not to waive the conflict, Magistrate Judge Marutollo found that there is, in fact, a potential conflict that "may result in inadequate representation of a defendant or jeopardize the federal court's institutional interest in the rendition of a just verdict" consistent with United States v. Fulton, 5 F.3d 605, 612 (2d Cir. 1993). Magistrate Judge Marutollo disqualified Mr. Aidala and his law firm from the action. The Government, Ms. Cohen, and Mr. Aidala all agreed that Mr. Aidala and his firm needed to be disqualified.<br><br>All parties, including Mr. Aidala and his law firm, shall still appear at the previously-scheduled conference before Judge Gujarati on January 7, 2025. (Court Reporter Leeann Musolf.) (EG) (Entered: 01/06/2025) |
| 01/06/2025 | | SCHEDULING ORDER: In light of the President-elect's announcement of his selection for the next U.S. Attorney for the Eastern District of New York, a continued Curcio hearing related to the issues raised in Dkt. Nos. 247, 249, 250, and 252 will be held on January 7, 2025 at 10:00 a.m. before Magistrate Judge Joseph A. Marutollo in Courtroom 4B South. Counsel for Defendant Cherwitz is instructed to ensure that conflict counsel is aware of the date and time of the Curcio hearing. Signed by Magistrate Judge Joseph A. Marutollo on 1/6/2025. (JAM) (Entered: 01/06/2025) |

| | | |
|---|---|---|
| 01/07/2025 | | Minute Entry for proceedings held before Magistrate Judge Joseph A. Marutollo: Curcio hearing as to Rachel Cherwitz was held on January 7, 2025 before Magistrate Judge Marutollo. AUSAs Gillian Kassner, Kayla C. Bensing, Sean M. Fern, and Nina C. Gupta appeared on behalf of the Government. Arthur L. Aidala and Michael T. Jaccarino appeared on behalf of Defendant Cherwitz. Celica Cohen appeared as Curcio counsel for Defendant Cherwitz. Defendant Cherwitz appeared on bond.<br><br>In light of the President-elect's announcement that Joseph Nocella, Jr., will be the next U.S. Attorney for the Eastern District of New York, the Court sua sponte reconsidered its January 6, 2025 order and found that there was no longer any conflict associated with Mr. Aidala's possible nomination. With respect to the potential legal fees conflict involving OneTaste Inc., Defendant Cherwitz fully and knowingly waived the conflict, which the Court accepted.<br><br>With respect to the potential conflict involving Mr. Jaccarino, Defendant Cherwitz did not waive the conflict. In light of Defendant Cherwitz's decision not to waive the conflict, Magistrate Judge Marutollo found that there is, in fact, a potential conflict that "may result in inadequate representation of a defendant or jeopardize the federal court's institutional interest in the rendition of a just verdict" consistent with United States v. Fulton, 5 F.3d 605, 612 (2d Cir. 1993). Magistrate Judge Marutollo disqualified Mr. Jaccarino from the action. (Court Reporter Charleane Heading.) (EG) (Entered: 01/07/2025) |
| 01/07/2025 | 253 | Letter *Disclosing Discovery* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 01/07/2025) |
| 01/07/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on January 7, 2025 before Judge Diane Gujarati. AUSAs Gillian Kassner, Kayla C. Bensing, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett also present. Arthur L. Aidala and Michael T. Jaccarino appeared on behalf of Defendant Rachel Cherwitz (1). Celia Cohen, *Curcio* counsel for Defendant Cherwitz, also present. Jennifer Ann Bonjean appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. Discussion held. The parties' pending requests for relief (including the requests at ECF Nos. 222, 225, 227, 234, 241, 242, 244, and 248 and sealing/redaction requests) were addressed as set forth on the record. The Court set a deadline of 6:00 p.m. on January 7, 2025 for submissions with respect to the representation-related issues referenced on the record. Next Conference set for January 8, 2025 at 12:00 p.m. before Judge Diane Gujarati in Courtroom 4B South. (Court Reporter Charleane Heading.) (Entered: 01/07/2025) |
| 01/07/2025 | 254 | NOTICE OF ATTORNEY APPEARANCE: Celia Cohen appearing for Rachel Cherwitz (Cohen, Celia) (Entered: 01/07/2025) |
| 01/07/2025 | 255 | Letter *re: Disqualification of Aidala, Bertuna & Kamins, P.C.* as to Rachel Cherwitz (Cohen, Celia) (Entered: 01/07/2025) |
| 01/07/2025 | 256 | Letter *For Disqualification/Withdrawal As Counsel for Defendant Rachel Cherwitz* as to Rachel Cherwitz (Aidala, Arthur) (Entered: 01/07/2025) |
| 01/08/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on January 8, 2025 before Judge Diane Gujarati. AUSAs Gillian Kassner, Kayla C. Bensing, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett also present. Arthur L. Aidala appeared on behalf of Defendant Rachel Cherwitz (1). Celia Cohen, *Curcio* counsel for Defendant Cherwitz, also present. Jennifer Ann |

| | | |
|---|---|---|
| | | Bonjean appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. As set forth on the record, the Court (1) granted the withdrawal request at ECF No. 256 and relieved attorneys Arthur L. Aidala, Imran H. Ansari, and Michael T. Jaccarino effective upon the filing of a notice of appearance by new counsel for Defendant Cherwitz; (2) set a deadline of January 15, 2025 for the filing of a notice of appearance by new counsel for Defendant Cherwitz; (3) granted the Government's motion – in which Defendants Cherwitz and Daedone joined – for an adjournment of the January 13, 2025 trial date; (4) informed the parties that an order rescheduling trial will issue shortly and that the Court's present intention is to reschedule trial for early May 2025; and (5) informed Defendant Cherwitz that new counsel must be in a position to try this case as early as April 2025. For the reasons set forth on the record, the period from January 13, 2025 to January 24, 2025 was excluded from the computation of the time within which the trial of this matter must commence, pursuant to 18 U.S.C. § 3161(h)(7)(A). Next Conference set for January 24, 2025 at 10:30 a.m. before Judge Diane Gujarati in Courtroom 4B South. (Court Reporter Charleane Heading.) (AD) (Entered: 01/08/2025) |
| 01/08/2025 | | ORDER TO CONTINUE - Ends of Justice as to Rachel Cherwitz, Nicole Daedone. Time excluded from 1/8/2025 until 1/24/2025. Ordered by Judge Diane Gujarati on 1/8/2025. (AD) (Entered: 01/08/2025) |
| 01/10/2025 | 257 | January 7, 2025 letter from Celia Cohen, *Curcio* counsel for Defendant Cherwitz, marked "*Ex Parte and In Camera*" and submitted to chambers by email, *Filed Under Seal*. (AD) (Entered: 01/10/2025) |
| 01/13/2025 | | **SCHEDULING ORDER**: Jury selection and trial are now scheduled to commence on May 5, 2025 at 9:30 a.m. Ordered by Judge Diane Gujarati on 1/13/2025. (AD) (Entered: 01/13/2025) |
| 01/15/2025 | 258 | NOTICE OF ATTORNEY APPEARANCE: Celia Cohen appearing for Rachel Cherwitz (Cohen, Celia) (Entered: 01/15/2025) |
| 01/15/2025 | 259 | NOTICE OF ATTORNEY APPEARANCE: Michael P. Robotti appearing for Rachel Cherwitz (Robotti, Michael) (Entered: 01/15/2025) |
| 01/18/2025 | 260 | MOTION to Continue *May 5, 2025 Trial* by Rachel Cherwitz. (Cohen, Celia) (Entered: 01/18/2025) |
| 01/22/2025 | | ORDER denying 260 MOTION to Continue *May 5, 2025 Trial* -- Defendant Cherwitz's request for a second adjournment of trial, *see* ECF No. 260, is DENIED. The record to date reflects that a further adjournment is neither necessary nor appropriate. Ordered by Judge Diane Gujarati on 1/22/2025. (AD) (Entered: 01/22/2025) |
| 01/24/2025 | 261 | Letter *Requesting to File Motion to Compel, for a Hearing and to Dismiss Indictment* as to Rachel Cherwitz, Nicole Daedone (Robotti, Michael) (Entered: 01/24/2025) |
| 01/24/2025 | 262 | Letter *Requesting to File Motion to Compel, for a Hearing and to Dismiss Indictment (Sealed)* as to Rachel Cherwitz, Nicole Daedone (Robotti, Michael) (Entered: 01/24/2025) |
| 01/24/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on January 24, 2025 before Judge Diane Gujarati. AUSAs Gillian Kassner, Kayla C. Bensing, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett also present. Celia Cohen appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. As set forth on the record, the Court set a deadline of January 31, 2025 for the parties to file any *Curcio*-related submissions. For the reasons set forth on the record, the period from January 24, 2025 to May 5, 2025 was excluded |

| | | |
|---|---|---|
| | | from the computation of the time within which the trial of this matter must commence, pursuant to 18 U.S.C. § 3161(h)(7)(A). (Court Reporter Michele Lucchese.) (AD) (Entered: 01/24/2025) |
| 01/24/2025 | | ORDER TO CONTINUE - Ends of Justice as to Rachel Cherwitz, Nicole Daedone. Time excluded from 1/24/2025 until 5/5/2025. Ordered by Judge Diane Gujarati on 1/24/2025. (AD) (Entered: 01/24/2025) |
| 01/27/2025 | 263 | First MOTION to Appear Pro Hac Vice Filing fee $ 200, receipt number NYEDC-18706559by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Caine, Rachel) (Entered: 01/27/2025) |
| 01/28/2025 | | ORDER re 261 , 262 -- Should the Government wish to file a response to Defendant Cherwitz's January 24, 2025 "pre-motion letter," in which Defendant Cherwitz seeks leave to move for certain relief, *see* ECF No. 261 (publicly filed); ECF No. 262 (sealed), the Government shall do so by February 3, 2025. Ordered by Judge Diane Gujarati on 1/28/2025. (AD) (Entered: 01/28/2025) |
| 01/29/2025 | 264 | MOTION for Discovery by USA as to Rachel Cherwitz, Nicole Daedone. (Kassner, Gillian) (Entered: 01/29/2025) |
| 01/29/2025 | | ORDER granting 263 Motion to Appear Pro Hac Vice. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance and ensure that they receive electronic notification of activity in this case. Also, the attorney shall ensure the $200 admission fee be submitted to the Clerk's Office via filing the event Pro Hac Vice Filing Fee. Ordered by Magistrate Judge Joseph A. Marutollo on 1/29/2025. (GWM) (Entered: 01/29/2025) |
| 01/30/2025 | 265 | Letter *Requesting to File Motion to Compel Production of Grand Jury Minutes* as to Rachel Cherwitz (Cohen, Celia) (Entered: 01/30/2025) |
| 01/31/2025 | 266 | Letter *Advising of Potential Conflicts and Requesting Curcio Hearing* as to Rachel Cherwitz, Nicole Daedone (Gupta, Nina) (Entered: 01/31/2025) |
| 01/31/2025 | 267 | Letter *Requesting to File Motion to Compel Production of Grand Jury Minutes (Redacted)* as to Rachel Cherwitz (Cohen, Celia) (Entered: 01/31/2025) |
| 01/31/2025 | 268 | MOTION to Unseal Document *267* by Rachel Cherwitz. (Cohen, Celia) (Entered: 01/31/2025) |
| 02/01/2025 | | SCHEDULING ORDER as to Rachel Cherwitz, Nicole Daedone: A Curcio hearing related to the issues raised in Dkt. No. 266 will be held on February 18, 2025 at 12:00 p.m. before Magistrate Judge Joseph A. Marutollo. The courtroom location will be set in a separate order.<br><br>Defendants shall respond to the Government's letter 266 by 5:00 p.m. on February 6, 2025. Signed by Magistrate Judge Joseph A. Marutollo on 2/1/2025. (JAM) (Entered: 02/01/2025) |
| 02/03/2025 | 269 | RESPONSE in Opposition re 261 MOTION for Leave to File Document, 262 MOTION for Leave to File Document (Bensing, Kayla) (Entered: 02/03/2025) |
| 02/04/2025 | | ORDER -- By February 7, 2025 at 5:00 p.m., the Government shall respond to that portion of Defendants' January 30, 2025 letter that addresses grand jury instructions. *See* ECF No. 265 at 18-20; ECF No. 267 at 18-20. The Government may file its response *ex parte* upon a proper showing. Ordered by Judge Diane Gujarati on 2/4/2025. (AD) (Entered: 02/04/2025) |

| | | |
|---|---|---|
| 02/04/2025 | 270 | REPLY TO RESPONSE to Motion re 261 MOTION for Leave to File Document (Robotti, Michael) (Entered: 02/04/2025) |
| 02/05/2025 | 271 | Letter *Regarding Government's Request for a Curcio Hearing* as to Rachel Cherwitz (Cohen, Celia) (Entered: 02/05/2025) |
| 02/06/2025 | 272 | Letter *in Response to Government's Letter Re: Curcio* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit, # 2 Exhibit) (Bonjean, Jennifer) (Entered: 02/06/2025) |
| 02/07/2025 | 273 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 8/27/24, for hearing type Status Conference, before Judge Gujarati. Court Reporter/Transcriber Kristi Cruz, Telephone number 718-613-2676. Email address: kristi.edny@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 2/28/2025. Redacted Transcript Deadline set for 3/10/2025. Release of Transcript Restriction set for 5/8/2025. (Cruz, Kristi) (Entered: 02/07/2025) |
| 02/07/2025 | 274 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 9/27/24, for hearing type Status Conference, before Judge Gujarati. Court Reporter/Transcriber Kristi Cruz, Telephone number 718-613-2676. Email address: kristi.edny@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 2/28/2025. Redacted Transcript Deadline set for 3/10/2025. Release of Transcript Restriction set for 5/8/2025. (Cruz, Kristi) (Entered: 02/07/2025) |
| 02/07/2025 | 275 | RESPONSE in Opposition re 268 MOTION to Unseal Document *267*, 265 MOTION to Compel, 267 MOTION to Compel (Bensing, Kayla) (Entered: 02/07/2025) |
| 02/10/2025 | | ORDER: The Curcio hearing scheduled for February 18, 2025 will take place in Courtroom 8D South. Ordered by Magistrate Judge Joseph A. Marutollo on 2/10/2025. (EG) (Entered: 02/10/2025) |
| 02/10/2025 | 276 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 1/3/2025, for hearing type Conference, before Judge Diane Gujarati. Court Reporter/Transcriber Andronikh Barna, Telephone number 718-613-2178. Email address: ambarna.crr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 3/3/2025. Redacted Transcript Deadline set for 3/13/2025. Release of Transcript Restriction set for 5/12/2025. (Barna, Andronikh) (Entered: 02/10/2025) |
| 02/10/2025 | | ORDER re 264 -- By February 12, 2025 at 5:00 p.m., Defendants shall provide to the Court an index of all material that has been produced to the Government pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure. Ordered by Judge Diane Gujarati on 2/10/2025. (AD) (Entered: 02/10/2025) |
| 02/11/2025 | 277 | REPLY TO RESPONSE to Motion re 268 MOTION to Unseal Document *267*, 265 MOTION to Compel, 267 MOTION to Compel (Cohen, Celia) (Entered: 02/11/2025) |

| | | |
|---|---|---|
| 02/12/2025 | 278 | Letter *re: 26.2 materials* as to Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 02/12/2025) |
| 02/12/2025 | 279 | RESPONSE to Motion re 264 MOTION for Discovery (Cohen, Celia) (Entered: 02/12/2025) |
| 02/17/2025 | 280 | Letter MOTION for Hearing *and for Ruling on Letter Motion Filed at Docket No. 242 that remains pending* by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit) (Bonjean, Jennifer) (Entered: 02/17/2025) |
| 02/17/2025 | 281 | Letter *Joining Motion at Dkt. No. 280* as to Rachel Cherwitz (Robotti, Michael) (Entered: 02/17/2025) |
| 02/17/2025 | 282 | First MOTION to Withdraw as Attorney by Rachel Caine.by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Caine, Rachel) (Entered: 02/17/2025) |
| 02/17/2025 | | ORDER granting 282 - Ms. Caine is terminated from this action. The Clerk of the Court is directed to update the docket accordingly. Ordered by Magistrate Judge Joseph A. Marutollo on 2/17/2025. (GWM) (Entered: 02/17/2025) |
| 02/18/2025 | | Minute Entry for proceedings held before Magistrate Judge Joseph A. Marutollo: Curcio hearing as to Rachel Cherwitz was held on February 18, 2025 before Magistrate Judge Marutollo. AUSAs Gillian Kassner, Kayla C. Bensing, Sean M. Fern, and Nina C. Gupta appeared on behalf of the Government. Celia Cohen and Michael P. Roboti appeared on behalf of Defendant Cherwitz. Defendant Cherwitz appeared on bond.<br><br>The Court advised Defendant Cherwitz as to the potential legal fees conflict involving OneTaste Inc. Defendant fully and knowingly waived the conflict, which the Court accepted.<br><br>The Court discussed scheduling related to jury selection. The Court ordered that a status conference regarding jury selection will be held on April 22, 2025 at 11:00 a.m. before Judge Marutollo in Courtroom 8D South. Ordered by Magistrate Judge Joseph A. Marutollo. (Court Reporter Victoria Butler.) (EG) Modified on 2/19/2025 to indicate location of conference (EG). (Entered: 02/18/2025) |
| 02/21/2025 | | **SCHEDULING ORDER**: A conference will be held on February 26, 2025 at 10:30 a.m. in Courtroom 4B South before Judge Diane Gujarati. Ordered by Judge Diane Gujarati on 2/21/2025. (IH) (Entered: 02/21/2025) |
| 02/21/2025 | 283 | Letter *in Further Support of Motion to Unseal (Dkt. No. 268)* as to Rachel Cherwitz (Cohen, Celia) (Entered: 02/21/2025) |
| 02/25/2025 | 284 | MOTION for Discovery *Requesting Rule 17 Subpoena (sealed)* by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Proposed Order) (Robotti, Michael) (Entered: 02/25/2025) |
| 02/25/2025 | 285 | MOTION for Discovery *Requesting Rule 17 Subpoena (unsealed* by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Proposed Order) (Robotti, Michael) (Entered: 02/25/2025) |
| 02/26/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on February 26, 2025 before Judge Diane Gujarati. AUSAs Gillian Kassner, Kayla C. Bensing, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett also present. Celia Cohen and Michael P. Robotti appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. The Court informed the |

| | | |
|---|---|---|
| | | parties that the Court would not be addressing at the conference the motion for issuance of a subpoena filed by Defendants on February 25, 2025 (ECF Nos. 284 and 285). All other pending requests for relief (including the requests at ECF Nos. 261, 262, 264, 265, 267, 268, and 280) were addressed as set forth on the record. The Court (1) set a deadline of 5:00 p.m. on February 27, 2025 for Defendant Daedone to file a list of her anticipated witnesses; (2) set a deadline of 5:00 p.m. on March 12, 2025 for the Government to file the letter discussed on the record; and (3) directed Defendant Daedone to provide certain information discussed on the record to the Government by February 27, 2025. (Court Reporter Kristi Cruz.) (AD) (Entered: 02/27/2025) |
| 02/27/2025 | 286 | Letter *Re: Tenative Defense Witness List* as to Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 02/27/2025) |
| 03/03/2025 | 287 | Letter *Requesting Stay of Proceedings Pending Petition for Writ of Mandamus* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F) (Robotti, Michael) (Entered: 03/03/2025) |
| 03/04/2025 | 288 | Letter MOTION for Reconsideration re 261 MOTION for Leave to File Document by Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit, # 2 Exhibit) (Bonjean, Jennifer) (Entered: 03/04/2025) |
| 03/05/2025 | | ORDER -- In their March 3, 2025 letter, Defendants represent that they intend to file a petition for a writ of mandamus in the United States Court of Appeals for the Second Circuit and Defendants state that they "jointly move this Court to stay the proceedings." *See* ECF No. 287 at 1. The Court construes the request for a stay to be a request that the Court adjourn the May 5, 2025 trial date *sine die* and the Court denies that request. Ordered by Judge Diane Gujarati on 3/5/2025. (AD) (Entered: 03/05/2025) |
| 03/07/2025 | 289 | Letter *Enclosing Copy of Mandamus Petition Filed in Second Circuit* as to Rachel Cherwitz, Nicole Daedone (Robotti, Michael) (Entered: 03/07/2025) |
| 03/11/2025 | | ORDER re 284 , 285 MOTION -- Defendants have moved for issuance of a subpoena directed to the New York Office of Victim Services. *See* Motion, ECF No. 284 (sealed); ECF No. 285 (publicly filed). The Government shall file a response to Defendants' Motion by 5:00 p.m. on March 13, 2025. The Government's response shall address, *inter alia*, the notice requirement set forth in Rule 17(c) of the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 17(c)(3). Ordered by Judge Diane Gujarati on 3/11/2025. (AD) (Entered: 03/11/2025) |
| 03/12/2025 | 290 | RESPONSE in Opposition re 285 MOTION for Discovery *Requesting Rule 17 Subpoena (unsealed* (Kassner, Gillian) (Entered: 03/12/2025) |
| 03/12/2025 | 291 | RESPONSE in Opposition re 284 MOTION for Discovery *Requesting Rule 17 Subpoena (sealed)* (Kassner, Gillian) (Entered: 03/12/2025) |
| 03/12/2025 | 292 | Letter *Responding to the Court's February 26, 2025 Order* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit A) (Bensing, Kayla) (Entered: 03/12/2025) |
| 03/13/2025 | | ORDER re 292 Letter *Responding to the Court's February 26, 2025 Order* -- The Government requests that its submission at ECF No. 292 "be maintained under seal." *See* ECF No. 292 at 8. By March 17, 2025 at 5:00 p.m., the Government shall supplement its showing as to the need for sealing of the entirety of the submission at ECF No. 292. If the Government no longer believes that sealing of the entirety of the submission at ECF No. 292 is necessary, the Government shall publicly file an appropriately-redacted version of the submission by March 17, 2025 at 5:00 p.m. Ordered by Judge Diane Gujarati on 3/13/2025. (AD) (Entered: 03/13/2025) |

| | | |
|---|---|---|
| 03/13/2025 | 293 | Letter *(Requesting Leave to File Motions re Fabricated Evidence)* as to Rachel Cherwitz, Nicole Daedone (Robotti, Michael) (Entered: 03/13/2025) |
| 03/13/2025 | 294 | Letter *Regarding Defendants Motion to Unseal Document 267* as to Rachel Cherwitz, Nicole Daedone (Cohen, Celia) (Entered: 03/13/2025) |
| 03/14/2025 | 295 | Letter *Supplement to Dkt. No. 288* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit, # 2 Exhibit) (Bonjean, Jennifer) (Entered: 03/14/2025) |
| 03/14/2025 | 296 | REDACTION by Rachel Cherwitz, Nicole Daedone to 295 Letter (Bonjean, Jennifer) (Entered: 03/14/2025) |
| 03/14/2025 | 297 | Letter *Responding to the Court's February 26, 2025 Order (Redacted)* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 03/14/2025) |
| 03/14/2025 | 298 | MOTION to Unseal Document *(All Materials related to Blanck's Fake Journals)* by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Robotti, Michael) (Entered: 03/14/2025) |
| 03/19/2025 | | ORDER re 293 Letter *(Requesting Leave to File Motions re Fabricated Evidence)* -- By letter dated March 13, 2025, Defendants request that the Court set a deadline of March 27, 2025 for Defendants "to bring appropriate motions related to [the Government's March 12, 2025 disclosure]." *See* ECF No. 293 (letter signed by counsel for Defendant Cherwitz). Defendants shall supplement their letter request to specify the nature of any contemplated motion(s). Defendants' response to this Order shall be no longer than 3 pages. Ordered by Judge Diane Gujarati on 3/19/2025. (AD) (Entered: 03/19/2025) |
| 03/21/2025 | 299 | Letter *Responding to Defense Submissions* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 03/21/2025) |
| 03/23/2025 | 300 | Letter *in Response to Court's March 19 Order* as to Rachel Cherwitz, Nicole Daedone (Cohen, Celia) (Entered: 03/23/2025) |
| 03/23/2025 | 301 | Letter *Request for Issuance of Rule 17(c) Subpoenas* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit) (Bonjean, Jennifer) (Entered: 03/23/2025) |
| 03/24/2025 | 302 | Letter *Request to Suspend Trial on May 16, 2025* as to Nicole Daedone (Bonjean, Jennifer) (Entered: 03/24/2025) |
| 03/25/2025 | | ORDER granting 302 Letter *Request to Suspend Trial on May 16, 2025* -- The request is granted. Counsel is reminded that any request for relief must be filed as a motion on ECF. *See* Individual Practice Rule I.A.4. Ordered by Judge Diane Gujarati on 3/25/2025. (AD) (Entered: 03/25/2025) |
| 03/25/2025 | 303 | Letter *Responding to Defense Response to Court's March 19 Order* as to Rachel Cherwitz, Nicole Daedone (Kassner, Gillian) (Entered: 03/25/2025) |
| 03/27/2025 | | ORDER re 303 Letter -- In its letter dated March 25, 2025, the Government states, *inter alia*, that "should the Court require, the government can submit a separate *ex parte* filing to the Court with additional information." *See* ECF No. 303 at 2 (citing Fed. R. Crim. P. 6(e)). The Government shall file its *ex parte* submission by March 31, 2025. Ordered by Judge Diane Gujarati on 3/27/2025. (AD) (Entered: 03/27/2025) |
| 03/27/2025 | 307 | USCA ORDER as to Rachel Cherwitz: IT IS HEREBY ORDERED that, to the extent the motion seeks a temporary stay pending review by a three-Judge panel, the stay is DENIED. The motion is REFERRED to a three-Judge panel. The motion to expedite is GRANTED. The petition will be submitted to a three-Judge panel as early as the week on April 7, 2025. Certified Copy Issued: 3/27/2025. USCA# 25-553. (VJ) (Entered: 03/27/2025) |

| | | |
|---|---|---|
| 03/28/2025 | 308 | NOTICE OF ATTORNEY APPEARANCE Kaitlin Teresa Farrell appearing for USA. (Farrell, Kaitlin) (Entered: 03/28/2025) |
| 03/31/2025 | 309 | Letter *Providing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Fern, Sean) (Entered: 03/31/2025) |
| 03/31/2025 | 310 | Letter *providing ex parte supplement to Docket No. 303* as to USA as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit Grand Jury Transcript) (Farrell, Kaitlin) (Entered: 03/31/2025) |
| 03/31/2025 | 311 | MOTION for Disclosure *of Ex Parte Submission* by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Cohen, Celia) (Entered: 03/31/2025) |
| 04/01/2025 | 312 | ~~Letter *in Further Support of Proposed Jury Instructions (Dkt. No. 223)* as to Rachel Cherwitz, Nicole Daedone (Robotti, Michael)~~ **STRICKEN pursuant to Judge Diane Gujarati's Order dated 4/9/2025** (Entered: 04/01/2025) |
| 04/02/2025 | | **SCHEDULING ORDER**: A conference will be held on April 9, 2025 at 11:30 a.m. in Courtroom 4B South before Judge Diane Gujarati. Ordered by Judge Diane Gujarati on 4/2/2025. (AD) (Entered: 04/02/2025) |
| 04/04/2025 | 313 | MOTION in Limine *to preclude testimony, and in opposition to Rule 17 subpoenas* by USA as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Farrell, Kaitlin) (Entered: 04/04/2025) |
| 04/07/2025 | 314 | RESPONSE in Opposition re 313 MOTION in Limine *to preclude testimony, and in opposition to Rule 17 subpoenas* (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Cohen, Celia) (Entered: 04/07/2025) |
| 04/08/2025 | 315 | Letter *re Request to Appear Remotely at April 9, 2025 Hearing* as to Rachel Cherwitz, Nicole Daedone (Schafler, Michael) (Entered: 04/08/2025) |
| 04/08/2025 | 316 | RESPONSE in Opposition re 313 MOTION in Limine *to preclude testimony, and in opposition to Rule 17 subpoenas* (Bonjean, Jennifer) (Entered: 04/08/2025) |
| 04/08/2025 | 317 | MOTION for Hearing *as to Protective Order Violations and Other Relief* by USA as to Rachel Cherwitz, Nicole Daedone. (Bensing, Kayla) (Entered: 04/08/2025) |
| 04/08/2025 | 318 | MOTION for Hearing *as to Protective Order Violations and Other Relief* by USA as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F) (Bensing, Kayla) (Entered: 04/08/2025) |
| 04/09/2025 | | ORDER re 315 Letter *re Request to Appear Remotely at April 9, 2025 Hearing* -- The April 9, 2025 conference will be held only in person, not by videoconference or teleconference. Ordered by Judge Diane Gujarati on 4/9/2025. (AD) (Entered: 04/09/2025) |
| 04/09/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on April 9, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegal Liam McNett also present. Celia Cohen and Michael P. Robotti appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. Discussion held. The parties' pending requests for relief and responses thereto (*see* ECF Nos. 284, 285, 288, 290, 291, 293, 294, 295, 296, 298, 299, 300, 301, 303, 310, 311, 312, 313, 314, 316, 317, and 318) were addressed as set forth on the record. The Court (1) set a deadline of 5:00 p.m. on April 14, 2025 for the Government to file a reply to the response at ECF No. 314 and stated that no sur-reply is |

| | | |
|---|---|---|
| | | permitted; (2) set a deadline of 5:00 p.m. on April 14, 2025 for Defendants to file any response to the Government's motion at ECF Nos. 317 and 318 and stated that no reply is permitted; (3) set a deadline of 5:00 p.m. on April 16, 2025 for the parties to file a joint letter regarding the unsealing of information in Blanck-related filings; and (4) set a deadline of 5:00 p.m. on April 16, 2025 for the parties to file a joint letter regarding the joint requests to charge and directed the Clerk of Court to strike the filing at ECF No. 312 – which was not a joint filing – from the docket. The Court also discussed various issues of trial logistics. (Court Reporter Rivka Teich.) (AD) (Entered: 04/10/2025) |
| 04/14/2025 | 319 | Letter *Reply in Support of Motion to Preclude Testimony* as to Rachel Cherwitz, Nicole Daedone (Gupta, Nina) (Entered: 04/14/2025) |
| 04/14/2025 | 320 | RESPONSE in Opposition re 318 MOTION for Hearing *as to Protective Order Violations and Other Relief*, 317 MOTION for Hearing *as to Protective Order Violations and Other Relief* (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit K) (Bonjean, Jennifer) (Entered: 04/14/2025) |
| 04/14/2025 | 321 | RESPONSE in Opposition re 317 MOTION for Hearing *as to Protective Order Violations and Other Relief*, 318 MOTION for Hearing *as to Protective Order Violations and Other Relief* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit) (Bonjean, Jennifer) (Entered: 04/14/2025) |
| 04/15/2025 | 322 | Letter as to Rachel Cherwitz, Nicole Daedone (Belkin, Kenneth) (Entered: 04/15/2025) |
| 04/15/2025 | 323 | MOTION to Appear Pro Hac Vice Filing fee $ 200, receipt number ANYEDC-18954645 by Nicole Daedone. (Killion, Kelsey) (Entered: 04/15/2025) |
| 04/15/2025 | | ORDER - Granting 323 Motion to Appear Pro Hac Vice. The attorney shall register for ECF; registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance and ensure that he or she receives electronic notification of activity in this case. Also, the attorney shall ensure the $200 admission fee is submitted to the Clerk's Office via filing the event Pro Hac Vice Filing Fee. Ordered by Magistrate Judge Joseph A. Marutollo on 4/15/2025. (PCM) (Entered: 04/15/2025) |
| 04/16/2025 | 325 | Letter *Providing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Fern, Sean) (Entered: 04/16/2025) |
| 04/16/2025 | | ORDER re 317 , 318 -- By letter motion dated April 8, 2025, the Government seeks a variety of relief. *See* ECF No. 317 (publicly filed); ECF No. 318 (sealed). Specifically, the Government requests "(1) a prompt hearing regarding the defense team's violations of the Protective Orders; (2) reconsideration of the Court's January 7, 2025 ruling requiring [certain individuals] to testify using their full names at the forthcoming trial; (3) issuance of an order to defense counsel to refrain from making any additional public comments that presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice; and (4) an order requiring the defendants to produce reciprocal discovery under Rule 16 and Rule 26.2 of the Federal Rules of Criminal Procedure." *See* ECF Nos. 317 and 318 at 1-2 (footnote omitted). By letter dated April 14, 2025, Defendants responded to the Government's April 8, 2025 letter motion. *See* ECF No. 320 (publicly filed); ECF No. 321 (sealed). In a letter dated April 14, 2025 and filed on April 15, 2025 under seal, ECF No. 322, counsel for one of the Government's anticipated trial witnesses represents that he supports the Government's reconsideration request. Upon consideration of the submissions, the record to date, and the applicable law, the Court denies without prejudice the requests for reconsideration and for an order with respect to reciprocal discovery. The remaining two requests are referred to Magistrate Judge Robert M. Levy. Ordered by Judge Diane Gujarati on 4/16/2025. (AD) (Entered: 04/16/2025) |

| | | |
|---|---|---|
| 04/16/2025 | | Case as to Rachel Cherwitz, Nicole Daedone Reassigned to Magistrate Judge Robert M. Levy. Magistrate Judge Joseph A. Marutollo no longer assigned to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (TLH) (Entered: 04/16/2025) |
| 04/16/2025 | 326 | Proposed Jury Instructions/Verdict Form by USA as to Rachel Cherwitz, Nicole Daedone (Gupta, Nina) (Entered: 04/16/2025) |
| 04/16/2025 | 327 | Letter *(joint) re unsealing certain exhibits* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit E, # 5 Exhibit F, # 6 Exhibit G) (Farrell, Kaitlin) (Entered: 04/16/2025) |
| 04/17/2025 | 328 | NOTICE OF ATTORNEY APPEARANCE: Kelsey Hipp Killion appearing for Nicole Daedone (Killion, Kelsey) (Entered: 04/17/2025) |
| 04/17/2025 | | ORDER: The April 22, 2025 status conference regarding jury selection before Magistrate Judge Marutollo will now occur in Courtroom 4B South. Ordered by Magistrate Judge Joseph A. Marutollo on 4/17/2025. (EG) (Entered: 04/17/2025) |
| 04/18/2025 | | ORDER re 313 -- By letter motion dated April 4, 2025, the Government, *inter alia*, seeks to preclude Defendants from calling Special Agent Elliot McGinnis of the Federal Bureau of Investigation as a witness at trial. *See* ECF No. 313; *see also* ECF No. 319. Defendants oppose the request for preclusion. *See* ECF No. 314. Upon consideration of the submissions, the record to date, and the applicable law – and as previewed at the April 9, 2025 conference – the Court declines to issue a blanket ruling precluding all testimony of Special Agent McGinnis. That portion of the Government's April 4, 2025 letter motion, ECF No. 313, that seeks to preclude Defendants from calling Special Agent McGinnis as a witness at trial is denied without prejudice. As the Court informed the parties at the April 9, 2025 conference, the Court will need to know the *specifics* of any proposed testimony before being able to rule on its admissibility. Ordered by Judge Diane Gujarati on 4/18/2025. (AD) (Entered: 04/18/2025) |
| 04/18/2025 | 329 | Letter *in Reponse to Letter filed at Dkt. No. 322* as to Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 04/18/2025) |
| 04/20/2025 | 330 | Letter *Disclosing Rule 16(b) Discovery and Supplemental Defense Witness List (Sealed)* as to Rachel Cherwitz, Nicole Daedone (Cohen, Celia) (Entered: 04/20/2025) |
| 04/20/2025 | 331 | Letter *Disclosing Rule 16(b) Discovery and Supplemental Defense Witness List (Redacted)* as to Rachel Cherwitz, Nicole Daedone (Cohen, Celia) (Entered: 04/20/2025) |
| 04/21/2025 | | ORDER -- The Filter Team shall, by April 24, 2025, file **under seal** the two documents referenced in the Filter Team's letter dated September 23, 2024, ECF No. 158, which documents previously were provided to the Court but not filed on the docket. Ordered by Judge Diane Gujarati on 4/21/2025. (AD) (Entered: 04/21/2025) |
| 04/21/2025 | | ORDER RE REFERRAL DATED APRIL 16, 2025: An in-person evidentiary hearing is scheduled for **April 23, 2025 at 2:30 PM** in Courtroom 11-B (south). The government is directed to confirm with defendants' counsel that all necessary participants are aware of this hearing. Ordered by Magistrate Judge Robert M. Levy on 4/21/2025. (JM) Modified on 4/22/2025 (AQR). (Entered: 04/21/2025) |
| 04/21/2025 | 332 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on January 3, 2025, for hearing type status, before Magistrate Judge Joseph A. Marutollo. Court Reporter/Transcriber Sophie Nolan, Telephone number 718-613-2622. Email address: NolanEDNY@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court |

| | | |
|---|---|---|
| | | Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 5/12/2025. Redacted Transcript Deadline set for 5/22/2025. Release of Transcript Restriction set for 7/21/2025. (Nolan, Sophie) (Entered: 04/21/2025) |
| 04/21/2025 | | ORDER -- The Filter Team shall, by April 24, 2025, file **under seal** the "27-page pdf document" that is referenced in the Filter Team's letter dated September 10, 2024, ECF No. 145, and that previously was provided to the Court but not filed on the docket. Ordered by Judge Diane Gujarati on 4/21/2025. (AD) (Entered: 04/21/2025) |
| 04/22/2025 | 333 | MOTION to Continue *Evidentiary Hearing* by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 04/22/2025) |
| 04/22/2025 | 334 | NOTICE OF ATTORNEY APPEARANCE: Kelly Lin appearing for Rachel Cherwitz (Lin, Kelly) (Entered: 04/22/2025) |
| 04/22/2025 | | Minute Entry for proceedings held before Magistrate Judge Joseph A. Marutollo: A status conference regarding jury selection was held on April 22, 2025 before Magistrate Judge Marutollo. Assistant United States Attorneys Kayla C. Bensing, Nina C. Gupta, Kaitlin Teresa Farrell, and Sean Michael Fern appeared on behalf of the Government. Celia Cohen and Michael P. Robotti appeared on behalf of Defendant Rachel Cherwitz. Jennifer Ann Bonjean and Kelsey Hipp Killion appeared on behalf of Defendant Nicole Daedone. Both Defendants present and on bond.<br><br>The Court discussed jury selection, which is now scheduled to begin on May 5, 2025 at **9:00 a.m.** in Courtroom 4B South. Concurrent with this Order, the parties will be sent, via an email from Magistrate Judge Marutollo's chambers (marutollo_chambers@nyed.uscourts.gov), the current list of potential names, entities, and places likely to be mentioned at trial. The parties are directed to submit an updated version of the same, with any edits in track changes, to Magistrate Judge Marutollo's chambers email by 12:00 p.m. on April 25, 2025. (Court Reporter Nicole Sesta.) (EG) (Entered: 04/22/2025) |
| 04/22/2025 | | ORDER re 333 Motion to Continue as to Rachel Cherwitz (1), Nicole Daedone (2). The hearing set for Wednesday, 4/23/2025 at 2:30 p.m. is adjourned to **Tuesday, 4/29/2025 at 10:30 a.m.** in Courtroom 11B South. The parties are reminded that this hearing is responsive to the Government's request for "a prompt hearing regarding the defense team's violations of the Protective Orders," which Judge Gujarati referred to Magistrate Judge Levy by order dated 4/16/2025. Ordered by Magistrate Judge Robert M. Levy on 4/22/2025. (AQR) (Entered: 04/22/2025) |
| 04/22/2025 | 335 | MOTION for Hearing -*Related Orders (to Judge Levy)* by USA as to Rachel Cherwitz, Nicole Daedone. (Farrell, Kaitlin) (Entered: 04/22/2025) |
| 04/23/2025 | 336 | Letter *by Filter Team to Court in response to the April 21, 2025 Orders* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit Attachment 1 to Filter Team's 9/23/24 Letter (ECF 158), # 2 Exhibit Attachment 2 to Filter Team's 9/23/24 letter (ECF 158), # 3 Exhibit Attachment to Filter Team's 9/10/24 letter (ECF 145)) (Jones, Shannon) (Entered: 04/23/2025) |
| 04/23/2025 | | ORDER granting 335 Motion for Hearing as to Rachel Cherwitz (1), Nicole Daedone (2): (1) Ezra Landes is ordered to appear at an evidentiary hearing scheduled for April 29, 2025 at 10:30 am in Courtroom 11B to testify as to how he obtained materials protected under the Protective Order entered in this case. Defendants and One Taste shall ensure Mr. Landes' appearance. If Mr. Landes lives at a substantial distance from the courthouse, he may seek permission from the Court to appear remotely. (2) Defendants are ordered to |

| | | |
|---|---|---|
| | | turn over, in advance of the hearing, all signed copies of the Protective Order as well as a list of every person defendants are aware of who has accessed the materials produced under the Protective Order (or its predecessor). Ordered by Magistrate Judge Robert M. Levy on 4/23/2025. (Levy, Robert) (Entered: 04/23/2025) |
| 04/23/2025 | 337 | MOTION to Continue *Trial by Four Weeks (Opposed)* by Nicole Daedone. (Bonjean, Jennifer) (Entered: 04/23/2025) |
| 04/23/2025 | 338 | RESPONSE in Opposition re 337 MOTION to Continue *Trial by Four Weeks (Opposed)* (Bensing, Kayla) (Entered: 04/23/2025) |
| 04/23/2025 | 339 | RESPONSE in Opposition re 337 MOTION to Continue *Trial by Four Weeks (Opposed)* (Bensing, Kayla) (Entered: 04/23/2025) |
| 04/24/2025 | 340 | REPLY TO RESPONSE to Motion re 337 MOTION to Continue *Trial by Four Weeks (Opposed)* (Bonjean, Jennifer) (Entered: 04/24/2025) |
| 04/24/2025 | | ORDER denying 337 MOTION to Continue *Trial by Four Weeks (Opposed)* -- By letter motion dated April 23, 2025, Defendant Daedone requests a four-week adjournment of the May 5, 2025 trial date. *See* ECF No. 337; *see also* ECF No. 340. The Government opposes the request. *See* ECF No. 338 (publicly filed); ECF No. 339 (sealed). Upon consideration of Defendant Daedone's motion, the Government's opposition, and the record to date, Defendant Daedone's motion – made on the eve of a trial that is estimated to last approximately six weeks – is DENIED. Ordered by Judge Diane Gujarati on 4/24/2025. (AD) (Entered: 04/24/2025) |
| 04/24/2025 | 341 | MOTION for Hearing *(Renewed Motion for Kastigar Hearing)* by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit A) (Robotti, Michael) (Entered: 04/24/2025) |
| 04/24/2025 | 342 | Letter *Providing Supplemental Rule 16 Discovery* as to Rachel Cherwitz, Nicole Daedone (Fern, Sean) (Entered: 04/24/2025) |
| 04/25/2025 | 343 | RESPONSE in Opposition re 341 MOTION for Hearing *(Renewed Motion for Kastigar Hearing)* (Gupta, Nina) (Entered: 04/25/2025) |
| 04/25/2025 | 344 | REPLY TO RESPONSE to Motion re 341 MOTION for Hearing *(Renewed Motion for Kastigar Hearing)* (Robotti, Michael) (Entered: 04/25/2025) |
| 04/25/2025 | | ORDER denying 341 MOTION for Hearing *(Renewed Motion for Kastigar Hearing)* -- By letter motion dated April 24, 2025, Defendants "renew their request for this Court to hold an immediate *Kastigar* hearing." *See* ECF No. 341 at 1; *see also* ECF No. 344. The Government opposes the request. *See* ECF No. 343 at 4. Upon consideration of the record to date, Defendants' motion, ECF No. 341, is DENIED. Ordered by Judge Diane Gujarati on 4/25/2025. (AD) (Entered: 04/25/2025) |
| 04/27/2025 | 345 | Letter *Requesting the Use of Electronic Devices by Paralegals and Associate Attorney* as to Rachel Cherwitz, Nicole Daedone (Killion, Kelsey) (Entered: 04/27/2025) |
| 04/28/2025 | | ORDER -- In light of the fact that trial is scheduled to commence in one week and in the interest of efficiency, the hearing scheduled for April 29, 2025 will take place before the undersigned in Courtroom 4B South and will start at 11:30 a.m. rather than 11:00 a.m. Ordered by Judge Diane Gujarati on 4/28/2025. (AD) (Entered: 04/28/2025) |
| 04/28/2025 | 346 | MOTION to Appear Pro Hac Vice *Matthew Donald Umhofer* Filing fee $ 200, receipt number NYEDC-18993147by Ezra Landes as to Rachel Cherwitz, Nicole Daedone. (Umhofer, Matthew) (Entered: 04/28/2025) |

| | | |
|---|---|---|
| 04/28/2025 | 347 | MOTION to Continue *Evidentiary Hearing Scheduled for April 20, 2025* by Ezra Landes as to Rachel Cherwitz, Nicole Daedone. (Umhofer, Matthew) (Entered: 04/28/2025) |
| 04/28/2025 | | Case as to Rachel Cherwitz, Nicole Daedone no longer referred to Magistrate Judge Robert M. Levy. (TLH) (Entered: 04/28/2025) |
| 04/28/2025 | | ORDER granting 345 . Attorney Schuyler La Barge and paralegals Galila Assefa, Sophia Moazed, Jacob Porter, and Keith Garland are permitted to bring their laptop computers and cellular devices into the Courtroom beginning on May 2, 2025 and throughout the duration of the trial. Ordered by Magistrate Judge Joseph A. Marutollo on 4/28/2025. (GWM) (Entered: 04/28/2025) |
| 04/28/2025 | | ORDER granting 346 Motion to Appear Pro Hac Vice. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance and ensure that they receive electronic notification of activity in this case. Also, the attorney shall ensure the $200 admission fee be submitted to the Clerk's Office via filing the event *Pro Hac Vice Filing Fee*. Ordered by Magistrate Judge Joseph A. Marutollo on 4/28/2025. (EG) (Entered: 04/28/2025) |
| 04/28/2025 | | ORDER denying 347 MOTION to Continue -- The request for a 14-day continuance of the hearing scheduled for April 29, 2025 filed by Matthew Donald Umhofer, Esq., counsel for Ezra Landes, *see* ECF No. 347, is DENIED. Ordered by Judge Diane Gujarati on 4/28/2025. (AD) (Entered: 04/28/2025) |
| 04/28/2025 | 348 | Letter *Requesting Remote Appearance for Ezra Landes and Matthew Donald Umhofer at the April 29, 2025 Hearing* as to Rachel Cherwitz, Nicole Daedone (Umhofer, Matthew) (Entered: 04/28/2025) |
| 04/28/2025 | | ORDER re 348 Letter *Requesting Remote Appearance for Ezra Landes and Matthew Donald Umhofer at the April 29, 2025 Hearing* -- The April 28, 2025 letter request to appear by phone or video at the April 29, 2025 hearing, ECF No. 348, is DENIED. Ordered by Judge Diane Gujarati on 4/28/2025. (AD) (Entered: 04/28/2025) |
| 04/28/2025 | 350 | MOTION for Special Appearance *of Matthew Donald Umhofer, Counsel for Interested Party Ezra Landes* by Ezra Landes as to Rachel Cherwitz, Nicole Daedone. (Umhofer, Matthew) (Entered: 04/28/2025) |
| 04/28/2025 | | ORDER granting in part 349 : The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance and ensure that they receive electronic notification of activity in this case. Also, the attorney shall ensure the $200 admission fee be submitted to the Clerk's Office via filing the event Pro Hac Vice Filing Fee. Signed by Magistrate Judge Joseph A. Marutollo on 4/28/2025. (EG) (Entered: 04/28/2025) |
| 04/28/2025 | 351 | Letter *Disclosing Rule 16(b) Discovery and Supplemental Defense Witness List (Sealed)* as to Rachel Cherwitz, Nicole Daedone (Robotti, Michael) (Entered: 04/28/2025) |
| 04/28/2025 | 352 | Letter *Disclosing Rule 16(b) Discovery and Supplemental Defense Witness List (Redacted)* as to Rachel Cherwitz, Nicole Daedone (Robotti, Michael) (Entered: 04/28/2025) |
| 04/29/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Hearing as to Rachel Cherwitz (1) and Nicole Daedone (2) held on April 29, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett also present. Celia Cohen appeared on behalf of Defendant Rachel Cherwitz (1). Kelsey Hipp Killion appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. Matthew D. Umhofer appeared on behalf of Interested Party Ezra Landes. |

| | | |
|---|---|---|
| | | Discussion held. The pending requests for relief and responses thereto (including the requests/responses at ECF Nos. 317, 318, 320, 321, 335, and 349 and sealing/redaction requests) were addressed as set forth on the record. As set forth on the record, the Court (1) granted the Government's oral request for permission to provide to Mr. Umhofer certain portions of the sealed filing at ECF No. 318; (2) denied the motion filed at ECF No. 349 as moot, without prejudice; (3) denied without prejudice the Government's request to claw back material possessed by Kevin Williams and/or Rachel Caine (each of whom was heard briefly); (4) continued the hearing to May 2, 2025 at 10:00 a.m.; and (5) directed the parties to consult with each other and with Mr. Umhofer and to file any status letter by May 1, 2025 at noon. The Court also heard briefly from Mr. Umhofer *in camera*, without objection from any party. The Court made clear that all parties must comply with Local Criminal Rule 23.1 and with the applicable Protective Order provisions. (Court Reporter Victoria Torres-Butler.) (AD) (Entered: 04/30/2025) |
| 05/01/2025 | 353 | Letter *from Matthew Donald Umhofer updating the Court on the concerns raised in Court on Tuesday, April 29, 2025, about his client Ezra Landes and the government's request for his testimony concerning the protective order in this matter* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit A - Redacted Retainer Agreement, # 2 Exhibit B - Redacted Attorney-Client Fee Agreement) (Umhofer, Matthew) (Entered: 05/01/2025) |
| 05/01/2025 | 354 | Letter *(Joint) Providing Status Update re Protective Order Hearing* as to Rachel Cherwitz, Nicole Daedone (Farrell, Kaitlin) (Entered: 05/01/2025) |
| 05/01/2025 | 355 | MOTION to Appear Pro Hac Vice Filing fee $ 200, receipt number ANYEDC-19009973 by Rachel Cherwitz. (La Barge, Schuyler) (Entered: 05/01/2025) |
| 05/02/2025 | 356 | Letter *Supplementing Government's Proposed Voir Dire Requests* as to Rachel Cherwitz, Nicole Daedone (Gupta, Nina) (Entered: 05/02/2025) |
| 05/02/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Hearing as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 2, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett also present. Celia Cohen appeared on behalf of Defendant Rachel Cherwitz (1). Kelsey Hipp Killion appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. Matthew D. Umhofer appeared on behalf of Interested Party Ezra Landes. Hearing continued from April 29, 2025. Witnesses called and exhibits admitted. The Court held a brief *in camera* proceeding with Mr. Umhofer and Mr. Landes, without objection from any party. The various requests for relief were addressed as set forth on the record. As set forth on the record, the Court, *inter alia*: (1) amended the operative Protective Order to remove reference to Rachel Caine and Kevin Williams; (2) granted the request to claw back material possessed by Ms. Caine and/or Mr. Williams; and (3) directed that Ms. Caine and Mr. Williams certify destruction of the material at issue by May 2, 2025 at 4:00 p.m. Mr. Umhofer represented that to the extent that any documents subject to the Protective Order are in Mr. Landes's possession, such documents will be provided to Mr. Umhofer, who will preserve them. (Court Reporter Victoria Torres-Butler.) (AD) (Entered: 05/02/2025) |
| 05/02/2025 | 357 | MOTION for Extension of Time to File by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Killion, Kelsey) (Entered: 05/02/2025) |
| 05/02/2025 | | ORDER re 357 MOTION for Extension of Time to File -- The Court construes Defendant Daedone's request for an extension of time to "May 2, 2025 at 8:00 **a.m.**" to be a request for an extension to 8:00 **p.m.** The request is granted. Ordered by Judge Diane Gujarati on 5/2/2025. (AD) (Entered: 05/02/2025) |
| 05/02/2025 | 358 | Letter as to Rachel Cherwitz, Nicole Daedone (Killion, Kelsey) (Entered: 05/02/2025) |

| | | |
|---|---|---|
| 05/02/2025 | 359 | May 2, 2025 Certification of Kevin Williams. (AD) (Entered: 05/03/2025) |
| 05/02/2025 | 360 | May 2, 2025 Certification of Rachel Caine. (AD) (Entered: 05/03/2025) |
| 05/04/2025 | 361 | Letter *Disclosing Rule 16(b) Discovery and Supplemental Defense Witness List (Sealed)* as to Rachel Cherwitz, Nicole Daedone (Robotti, Michael) (Entered: 05/04/2025) |
| 05/04/2025 | 362 | Letter *Disclosing Rule 16(b) Discovery and Supplemental Defense Witness List (Redacted)* as to Rachel Cherwitz, Nicole Daedone (Robotti, Michael) (Entered: 05/04/2025) |
| 05/05/2025 | | ORDER granting 355 Motion for Leave to Appear. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance to ensure electronic notification of activity in this case. Also, the attorney shall ensure the 200 admission fee be submitted to the Clerks Office via filing the event *Pro Hac Vice Filing Fee*. Ordered by Magistrate Judge Joseph A. Marutollo on 5/5/2025. (GWM) (Entered: 05/05/2025) |
| 05/05/2025 | | Minute Entry for proceedings held before Magistrate Judge Joseph A. Marutollo: Jury Selection held on May 5, 2025. Case called. All parties were present. Prospective jurors sworn. Jury Selection continued to May 6, 2025, at 9:00 a.m. in courtroom 4B S. (Court Reporter Avery Armstrong.) (EG) (Entered: 05/05/2025) |
| 05/05/2025 | 363 | NOTICE OF ATTORNEY APPEARANCE: Schuyler La Barge appearing for Rachel Cherwitz (La Barge, Schuyler) (Entered: 05/05/2025) |
| 05/06/2025 | | Minute Entry for proceedings held before Magistrate Judge Joseph A. Marutollo: Continued Jury Selection held on May 6, 2025 in Courtroom 4B South. All parties present. Voir dire held. (Court Reporter Rivka Teich.) (EG) (Entered: 05/06/2025) |
| 05/06/2025 | 364 | Second MOTION in Limine *re Authentication (joint filing)* by USA as to Rachel Cherwitz, Nicole Daedone. (Farrell, Kaitlin) (Entered: 05/06/2025) |
| 05/06/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 6, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agents Tricia Quintero and Christine Meyer also present. Celia Cohen, Michael P. Robotti, Kelly Lin, and Schuyler La Barge appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean and Kelsey Hipp Killion appeared on behalf of Defendant Nicole Daedone (2). Paralegals Galila Assefa and Sophia Moazed also present. Both defendants present and on bond. Case called. Various issues addressed outside presence of jury. Jury then sworn. Preliminary instructions given and opening statements heard. Trial continued to May 7, 2025 at 9:30 a.m. (Court Reporter Annette Montalvo.) (AD) (Entered: 05/07/2025) |
| 05/07/2025 | | Case as to Rachel Cherwitz, Nicole Daedone Reassigned to Magistrate Judge Robert M. Levy as referral magistrate judge. Magistrate Judge Joseph A. Marutollo, who had been assigned to the case for the purpose of jury selection, is no longer assigned to the case. (BBM) (Entered: 05/07/2025) |
| 05/07/2025 | 365 | MOTION in Limine *(Ex Parte Filing in Further Support of OneTaste's Privilege and Work Product Assertion)* by Rachel Cherwitz, Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Robotti, Michael) (Entered: 05/07/2025) |
| 05/07/2025 | 366 | Letter *(Cover) to Docket No. 365* as to Rachel Cherwitz, Nicole Daedone (Robotti, Michael) (Entered: 05/07/2025) |

| | | |
|---|---|---|
| 05/07/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 7, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Tricia Quintero also present. Celia Cohen, Michael P. Robotti, Kelly Lin, and Schuyler La Barge appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean and Kelsey Hipp Killion appeared on behalf of Defendant Nicole Daedone (2). Paralegals Galila Assefa and Sophia Moazed also present. Both defendants present and on bond. Case called. Juror #1 excused. Juror #13 replaced Juror #1. Defendants' motion for a mistrial denied. Witness called and exhibits admitted. Trial continued to May 8, 2025 at 9:30 a.m. (Court Reporter Annette Montalvo.) (AD) (Entered: 05/08/2025) |
| 05/08/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 8, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Tricia Quintero also present. Celia Cohen, Michael P. Robotti, Kelly Lin, and Schuyler La Barge appeared on behalf of Defendant Rachel Cherwitz (1). Paralegal Keith Garland also present. Jennifer Ann Bonjean and Kelsey Hipp Killion appeared on behalf of Defendant Nicole Daedone (2). Paralegals Galila Assefa and Sophia Moazed also present. Both defendants present and on bond. Case called. Witness testified and exhibits admitted. Trial continued to May 9, 2025 at 9:30 a.m. (Court Reporter Annette Montalvo.) (AD) (Entered: 05/09/2025) |
| 05/09/2025 | 367 | Letter *Requesting Use of Printer* as to Rachel Cherwitz, Nicole Daedone (Killion, Kelsey) (Entered: 05/09/2025) |
| 05/09/2025 | | ORDER re 367 Letter *Requesting Use of Printer* -- By letter dated May 9, 2025, Defendants request permission "to bring in an outside printer for use in the defense attorney room during trial in the above captioned matter, beginning May 8, 2025, through the end of trial." *See* ECF No. 367. The request is granted. Ordered by Judge Diane Gujarati on 5/9/2025. (AD) (Entered: 05/09/2025) |
| 05/09/2025 | 368 | Letter *to permit use of electronic devices by Attorney Kelly Lenahan-Pfahlert and Paralegal Michael Sawyer* as to Rachel Cherwitz, Nicole Daedone (Killion, Kelsey) (Entered: 05/09/2025) |
| 05/09/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 9, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Tricia Quintero also present. Celia Cohen, Michael P. Robotti, Kelly Lin, and Schuyler La Barge appeared on behalf of Defendant Rachel Cherwitz (1). Paralegal Keith Garland also present. Jennifer Ann Bonjean, Kelsey Hipp Killion, and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegal Sophia Moazed also present. Both defendants present and on bond. Case called. Witnesses testified and exhibits admitted. Trial continued to May 12, 2025 at 9:30 a.m. (Court Reporter Annette Montalvo.) (AD) (Entered: 05/09/2025) |
| 05/11/2025 | 369 | Letter *providing additional case cite on the act of production doctrine (joint - no additional relief requested)* as to Rachel Cherwitz, Nicole Daedone (Farrell, Kaitlin) (Entered: 05/11/2025) |
| 05/11/2025 | 370 | First MOTION in Limine *to limit or preclude cumulative cross-examination (joint)* by USA as to Rachel Cherwitz, Nicole Daedone. (Farrell, Kaitlin) (Entered: 05/11/2025) |

| | | |
|---|---|---|
| 05/11/2025 | 371 | MOTION for Hearing *at 9:00 a.m. to address outstanding evidentiary issues and matters related to testimony of upcoming witness* by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 05/11/2025) |
| 05/11/2025 | 372 | MOTION in Limine *Re: F.R.E. 412 (joint)* by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 05/11/2025) |
| 05/11/2025 | 373 | MOTION for Declaration of Mistrial by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Robotti, Michael) (Entered: 05/11/2025) |
| 05/12/2025 | | ORDER denying 373 MOTION for Declaration of Mistrial -- Defendants' May 11, 2025 letter motion for a mistrial, ECF No. 373, which contains mischaracterizations and misstatements and which is without substantive merit, is DENIED. Ordered by Judge Diane Gujarati on 5/12/2025. (AD) (Entered: 05/12/2025) |
| 05/12/2025 | 374 | MOTION in Limine *re: Witness Text Messages (Joint) (Sealed)* by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Robotti, Michael) (Entered: 05/12/2025) |
| 05/12/2025 | 375 | MOTION in Limine *re: Witness Text Messages (Joint)* by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Robotti, Michael) (Entered: 05/12/2025) |
| 05/12/2025 | 376 | MOTION in Limine *regarding Stinson Beach video (joint)* by USA as to Rachel Cherwitz, Nicole Daedone. (Farrell, Kaitlin) (Entered: 05/12/2025) |
| 05/12/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 12, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Christine Meyer also present. Celia Cohen, Michael P. Robotti, Kelly Lin, and Schuyler La Barge appeared on behalf of Defendant Rachel Cherwitz (1). Attorney Kelly Lenahan-Pfahlert and paralegal Kamille Simons also present. Jennifer Ann Bonjean, Kelsey Hipp Killion, and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegal Sophia Moazed also present. Both defendants present and on bond. Case called. Outside presence of jury, the Court addressed, *inter alia*, the filings at ECF Nos. 368, 369, 370, 371, and 372 and reminded counsel that they must comply with Local Criminal Rule 23.1. Witnesses testified and exhibits admitted. Trial continued to May 13, 2025 at 9:30 a.m. (Court Reporter Annette Montalvo.) (AD) (Entered: 05/13/2025) |
| 05/13/2025 | 377 | MOTION to Exclude *Cross-Examination* by USA as to Rachel Cherwitz, Nicole Daedone. (Gupta, Nina) (Entered: 05/13/2025) |
| 05/13/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 13, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Christine Meyer also present. Celia Cohen, Michael P. Robotti, Kelly Lin, and Schuyler La Barge appeared on behalf of Defendant Rachel Cherwitz (1). Attorney Kelly Lenahan-Pfahlert and paralegal Kamille Simons also present. Jennifer Ann Bonjean, Kelsey Hipp Killion, and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegal Galila Assefa also present. Both defendants present and on bond. Case called. Outside presence of jury, the Court addressed, *inter alia*, the filings at ECF Nos. 374, 375, and 376. Witness testified and exhibits admitted. In presence of Defendants and Government, the Court discussed a scheduling-related issue with Juror #5. Trial continued to May 14, 2025 at 9:30 a.m. (Court Reporter Annette Montalvo.) (AD) (Entered: 05/14/2025) |

| | | |
|---|---|---|
| 05/14/2025 | 378 | Letter *Enclosing Grand Jury Subpoenas* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3) (Fern, Sean) (Entered: 05/14/2025) |
| 05/14/2025 | 379 | Letter *Requesting the Use of Electronic Devices by Paralegals and Associate Attorney* as to Rachel Cherwitz, Nicole Daedone (Lin, Kelly) (Entered: 05/14/2025) |
| 05/14/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 14, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Christine Meyer also present. Celia Cohen, Michael P. Robotti, Kelly Lin, and Schuyler La Barge appeared on behalf of Defendant Rachel Cherwitz (1). Attorney Kelly Lenahan-Pfahlert and paralegal Kamille Simons also present. Jennifer Ann Bonjean and Kelsey Hipp Killion appeared on behalf of Defendant Nicole Daedone (2). Paralegal Sophia Moazed also present. Both defendants present and on bond. Case called. Outside presence of jury, the Court addressed, *inter alia*, the filings at ECF Nos. 377 and 378. Witnesses testified and exhibits admitted. Trial continued to May 15, 2025 at 9:30 a.m. (Court Reporter Sophie Nolan.) (AD) (Entered: 05/15/2025) |
| 05/15/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 15, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Christine Meyer also present. Celia Cohen, Michael P. Robotti, Kelly Lin, and Schuyler La Barge appeared on behalf of Defendant Rachel Cherwitz (1). Attorney Kelly Lenahan-Pfahlert and paralegal Kamille Simons also present. Jennifer Ann Bonjean and Kelsey Hipp Killion appeared on behalf of Defendant Nicole Daedone (2). Paralegal Sophia Moazed also present. Both defendants present and on bond. Case called. Outside presence of jury, the Court addressed, *inter alia*, the filing at ECF No. 379. Witnesses testified and exhibits admitted. Trial continued to May 19, 2025 at 9:30 a.m. (Court Reporter Annette Montalvo.) (AD) (Entered: 05/16/2025) |
| 05/19/2025 | 380 | MOTION to Appear Pro Hac Vice Filing fee $ 200, receipt number NYEDC-19060869by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Lenahan-Pfahlert, Kelly) (Entered: 05/19/2025) |
| 05/19/2025 | 381 | MOTION in Limine *Regarding Evidence in Violation of the First Amendment* by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Robotti, Michael) (Entered: 05/19/2025) |
| 05/19/2025 | 382 | MOTION in Limine *re Financial Evidence (joint)* by USA as to Rachel Cherwitz, Nicole Daedone. (Fern, Sean) (Entered: 05/19/2025) |
| 05/19/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 19, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Tricia Quintero also present. Celia Cohen, Michael P. Robotti, and Kelly Lin appeared on behalf of Defendant Rachel Cherwitz (1). Attorney Kelly Lenahan-Pfahlert and paralegal Kamille Simons also present. Jennifer Ann Bonjean and Kelsey Hipp Killion appeared on behalf of Defendant Nicole Daedone (2). Paralegal Sophia Moazed also present. Both defendants present and on bond. Case called. Witnesses testified and exhibits admitted. Trial continued to May 20, 2025 at 9:30 a.m. (Court Reporter Stacy Mace.) (AD) (Entered: 05/19/2025) |

| | | |
|---|---|---|
| 05/19/2025 | | ORDER granting 380 MOTION to Appear Pro Hac Vice -- The Motion to Admit Counsel Pro Hac Vice filed by Kelly Lenahan-Pfahlert is granted. Ms. Lenahan-Pfahlert shall register for ECF, with registration being available online at www.pacer.gov. Once registered, Ms. Lenahan-Pfahlert shall file a notice of appearance and ensure that she receives electronic notification of activity in this case. Ordered by Judge Diane Gujarati on 5/19/2025. (AD) (Entered: 05/19/2025) |
| 05/19/2025 | 383 | Letter *Requesting the Use of Electronic Devices by Paralegals and Associate Attorney* as to Rachel Cherwitz, Nicole Daedone (Robotti, Michael) (Entered: 05/19/2025) |
| 05/20/2025 | 384 | NOTICE OF ATTORNEY APPEARANCE: Kelly Lenahan-Pfahlert appearing for Rachel Cherwitz, Nicole Daedone (Lenahan-Pfahlert, Kelly) (Entered: 05/20/2025) |
| 05/20/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 20, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Tricia Quintero also present. Celia Cohen, Michael P. Robotti, Kelly Lin, Schuyler La Barge, and Kelly Lenahan-Pfahlert appeared on behalf of Defendant Rachel Cherwitz (1). Paralegal Kamille Simons also present. Jennifer Ann Bonjean, Kelsey Hipp Killion, and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegal Galila Assefa also present. Both defendants present and on bond. Case called. Outside presence of jury, the Court (1) granted the parties' request that trial not proceed on May 20, 2025 in light of Juror #6's illness and (2) addressed, *inter alia*, the filing at ECF No. 381. Trial continued to May 21, 2025 at 9:30 a.m. (Court Reporter Stacy Mace.) (AD) (Entered: 05/20/2025) |
| 05/20/2025 | 385 | MOTION in Limine *Regarding Expert Testimony* by USA as to Rachel Cherwitz, Nicole Daedone. (Gupta, Nina) (Entered: 05/20/2025) |
| 05/21/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 21, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Tricia Quintero also present. Celia Cohen, Michael P. Robotti, Kelly Lin, Schuyler La Barge, and Kelly Lenahan-Pfahlert appeared on behalf of Defendant Rachel Cherwitz (1). Paralegal Kamille Simons also present. Jennifer Ann Bonjean, Kelsey Hipp Killion, and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegal Galila Assefa also present. Both defendants present and on bond. Case called. Outside presence of jury, the Court addressed, *inter alia*, the filing at ECF No. 385. Witness testified and exhibits admitted. Trial continued to May 22, 2025 at 9:30 a.m. (Court Reporter Stacy Mace.) (AD) (Entered: 05/22/2025) |
| 05/22/2025 | | ORDER re 383 Letter *Requesting the Use of Electronic Devices* -- For the duration of the trial in the above-captioned case, paralegals Kamille Simons, Kimberly Stammer, and Michael Sawyer are permitted to have their electronic devices with them in Courtroom 4B South while sitting at the counsel tables. Ordered by Judge Diane Gujarati on 5/22/2025. (AD) (Entered: 05/22/2025) |
| 05/22/2025 | 386 | Joint MOTION in Limine *regarding Proposed Immunity Instruction* by USA as to Rachel Cherwitz, Nicole Daedone. (Bensing, Kayla) (Entered: 05/22/2025) |
| 05/22/2025 | 387 | First MOTION in Limine *regarding notice testimony and evidence* by USA as to Rachel Cherwitz, Nicole Daedone. (Farrell, Kaitlin) (Entered: 05/22/2025) |
| 05/22/2025 | 388 | RESPONSE in Opposition re 387 First MOTION in Limine *regarding notice testimony and evidence* (Bonjean, Jennifer) (Entered: 05/22/2025) |

| | | |
|---|---|---|
| 05/22/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 22, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Tricia Quintero also present. Celia Cohen, Michael P. Robotti, Kelly Lin, Schuyler La Barge, and Kelly Lenahan-Pfahlert appeared on behalf of Defendant Rachel Cherwitz (1). Paralegal Kamille Simons also present. Jennifer Ann Bonjean, Kelsey Hipp Killion, and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegals Galila Assefa and Sophia Moazed also present. Both defendants present and on bond. Case called. Various issues addressed outside presence of jury. Witness testified and exhibits admitted. Trial continued to May 23, 2025 at 9:30 a.m. (Court Reporter Stacy Mace.) (AD) (Entered: 05/23/2025) |
| 05/23/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 23, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Tricia Quintero also present. Celia Cohen, Michael P. Robotti, Kelly Lin, Schuyler La Barge, and Kelly Lenahan-Pfahlert appeared on behalf of Defendant Rachel Cherwitz (1). Paralegal Kamille Simons also present. Jennifer Ann Bonjean and Kelsey Hipp Killion appeared on behalf of Defendant Nicole Daedone (2). Paralegal Galila Assefa also present. Both defendants present and on bond. Case called. Outside presence of jury, the Court addressed, *inter alia*, proposed jury instructions and the filings at ECF Nos. 382, 387, and 388. Witness testified and exhibits admitted. Defendants' motion for a mistrial denied. Trial continued to May 27, 2025 at 9:15 a.m. (Court Reporter Michele Lucchese.) (AD) (Entered: 05/23/2025) |
| 05/24/2025 | 389 | Proposed Jury Instructions/Verdict Form by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone (Cohen, Celia) (Entered: 05/24/2025) |
| 05/24/2025 | 390 | Letter *In Support of Government Motion to Permit Expert Testimony* as to Rachel Cherwitz, Nicole Daedone (Gupta, Nina) (Entered: 05/24/2025) |
| 05/25/2025 | 391 | Proposed Jury Instructions/Verdict Form by USA as to Rachel Cherwitz, Nicole Daedone (Farrell, Kaitlin) (Entered: 05/25/2025) |
| 05/25/2025 | 392 | RESPONSE in Opposition re 385 MOTION in Limine *Regarding Expert Testimony* (Bonjean, Jennifer) (Entered: 05/25/2025) |
| 05/25/2025 | 393 | Proposed Jury Instructions/Verdict Form by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone (Cohen, Celia) (Entered: 05/25/2025) |
| 05/26/2025 | 394 | First MOTION in Limine *Regarding Testimony of Upcoming Witness* by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Cohen, Celia) (Entered: 05/26/2025) |
| 05/27/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 27, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Tricia Quintero also present. Celia Cohen, Michael P. Robotti, Kelly Lin, Schuyler La Barge, and Kelly Lenahan-Pfahlert appeared on behalf of Defendant Rachel Cherwitz (1). Paralegal Richard Hobbs also present. Jennifer Ann Bonjean, Kelsey Hipp Killion, and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegal Galila Assefa also present. Both defendants present and on bond. Case called. Outside presence of jury, the Court addressed, *inter alia*, the filings at ECF Nos. 385, 390, 392, and 394. Witness (who asserted privilege against self-incrimination outside presence of jury and was immunized) testified and exhibits admitted. Trial |

| | | |
|---|---|---|
| | | continued to May 28, 2025 at 9:30 a.m. (Court Reporter Stacy Mace.) (AD) (Entered: 05/28/2025) |
| 05/28/2025 | 395 | Letter *to permit use of electronic devices by Trial Technician Richard Hobbs* as to Rachel Cherwitz (Cohen, Celia) (Entered: 05/28/2025) |
| 05/28/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 28, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Tricia Quintero also present. Celia Cohen, Michael P. Robotti, Kelly Lin, Schuyler La Barge, and Kelly Lenahan-Pfahlert appeared on behalf of Defendant Rachel Cherwitz (1). Trial Technician Richard Hobbs also present. Jennifer Ann Bonjean, Kelsey Hipp Killion, and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegal Galila Assefa also present. Both defendants present and on bond. Case called. Various issues addressed outside presence of jury. Witnesses testified and exhibits admitted. Trial continued to May 29, 2025 at 9:30 a.m. (Court Reporter Stacy Mace.) (AD) (Entered: 05/28/2025) |
| 05/29/2025 | | ORDER re 395 Letter *to permit use of electronic devices by Trial Technician Richard Hobbs* -- For the duration of the trial in the above-captioned case, Trial Technician Richard Hobbs is permitted to have his electronic devices with him in Courtroom 4B South while sitting at a counsel table. Ordered by Judge Diane Gujarati on 5/29/2025. (AD) (Entered: 05/29/2025) |
| 05/29/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 29, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Tricia Quintero also present. Celia Cohen, Michael P. Robotti, Kelly Lin, Schuyler La Barge, and Kelly Lenahan-Pfahlert appeared on behalf of Defendant Rachel Cherwitz (1). Trial Technician Richard Hobbs also present. Jennifer Ann Bonjean, Kelsey Hipp Killion, and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegal Galila Assefa also present. Both defendants present and on bond. Case called. Various issues addressed outside presence of jury. Witness testified and exhibits admitted. Trial continued to May 30, 2025 at 9:30 a.m. (Court Reporter Stacy Mace.) (AD) (Entered: 05/30/2025) |
| 05/30/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on May 30, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Tricia Quintero also present. Celia Cohen, Michael P. Robotti, Kelly Lin, Schuyler La Barge, and Kelly Lenahan-Pfahlert appeared on behalf of Defendant Rachel Cherwitz (1). Trial Technician Richard Hobbs also present. Jennifer Ann Bonjean, Kelsey Hipp Killion, and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegal Galila Assefa also present. Both defendants present and on bond. Case called. Various issues addressed outside presence of jury. Witnesses testified and exhibits admitted. Trial continued to June 2, 2025 at 9:30 a.m. (Court Reporter Stacy Mace.) (AD) (Entered: 05/30/2025) |
| 05/31/2025 | 396 | MOTION in Limine *to Allow Testimony of Dr. Ley (Joint)* by Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit Dr. Ley Expert Report) (Bonjean, Jennifer) (Entered: 05/31/2025) |

| | | |
|---|---|---|
| 06/01/2025 | 397 | MOTION in Limine *re Testimony of David Hutchison* by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Robotti, Michael) (Entered: 06/01/2025) |
| 06/01/2025 | 398 | Letter *Disclosing 26.2 Material* as to Rachel Cherwitz, Nicole Daedone (Robotti, Michael) (Entered: 06/01/2025) |
| 06/01/2025 | 399 | Letter *Disclosing 26.2 Material to the Government* as to Rachel Cherwitz, Nicole Daedone (Robotti, Michael) (Entered: 06/01/2025) |
| 06/02/2025 | 400 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 4-22-2025, for hearing type Pretrial Conference, before Judge JAM. Court Reporter/Transcriber Nicole Sesta. Email address: NSestaRMR@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 6/23/2025. Redacted Transcript Deadline set for 7/3/2025. Release of Transcript Restriction set for 9/1/2025. (Sesta, Nicole) (Entered: 06/02/2025) |
| 06/02/2025 | 401 | MOTION for Acquittal *Pursuant to Rule 29* by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Cohen, Celia) (Entered: 06/02/2025) |
| 06/02/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on June 2, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Tricia Quintero also present. Celia Cohen, Michael P. Robotti, Kelly Lin, Schuyler La Barge, and Kelly Lenahan-Pfahlert appeared on behalf of Defendant Rachel Cherwitz (1). Trial Technician Richard Hobbs also present. Jennifer Ann Bonjean, Kelsey Hipp Killion, and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegal Galila Assefa also present. Both defendants present and on bond. Case called. Witness testified and exhibits admitted. Government rested. Each Defendant made a Rule 29 motion. As set forth on the record, each Defendant's Rule 29 motion was denied. Witness testified. Outside presence of jury, the Court addressed, *inter alia*, the filings at ECF Nos. 396, 397, and 398. Trial continued to June 3, 2025 at 9:30 a.m. Charge conference also to be held June 3, 2025. (Court Reporter Jamie Stanton.) (AD) (Entered: 06/03/2025) |
| 06/03/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on June 3, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Christine Meyer also present. Celia Cohen, Michael P. Robotti, Kelly Lin, Schuyler La Barge, and Kelly Lenahan-Pfahlert appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean, Kelsey Hipp Killion, and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegal Galila Assefa also present. Both defendants present and on bond. Case called. Issues addressed outside presence of jury. The Court advised each Defendant regarding her right to testify/not testify. Each Defendant advised the Court that she does not wish to testify and that she has discussed with counsel whether to testify or not testify. Each Defendant rested. No rebuttal case. Each Defendant made a Rule 29 motion. As set forth on the record, each Defendant's Rule 29 motion was denied. Trial continued to June 4, 2025 at 9:30 a.m. (Court Reporter Jamie Stanton.) (AD) (Entered: 06/03/2025) |

| | | |
|---|---|---|
| 06/03/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Charge Conference as to Rachel Cherwitz (1) and Nicole Daedone (2) held on June 3, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing and Kaitlin Teresa Farrell appeared on behalf of the Government. Celia Cohen, Michael P. Robotti, Kelly Lin, and Schuyler La Barge appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean, Kelsey Hipp Killion, and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Both defendants present and on bond. (Court Reporter Jamie Stanton.) (AD) (Entered: 06/03/2025) |
| 06/03/2025 | 402 | Proposed Jury Instructions/Verdict Form by USA as to Rachel Cherwitz, Nicole Daedone (Bensing, Kayla) (Entered: 06/03/2025) |
| 06/03/2025 | 403 | Letter *Response to Government's Proposed Serious Harm Instruction* as to Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 06/03/2025) |
| 06/04/2025 | 404 | Mandate as to Rachel Cherwitz: It is hereby ORDERED that the motion to intervene is DENIED. It is further ORDERED that the mandamus petition is DENIED because petitioners have not demonstrated that exceptional circumstances warrant the requested relief. See Cheney v. U.S. Dist. Ct. for D.C., 542 U.S. 367, 380-81 (2004). The motion to stay the District Court proceedings pending resolution of the mandamus petition is DENIED as moot. Issued as Mandate: 6/4/2025. USCA# 25-553. (VJ) (Entered: 06/04/2025) |
| 06/04/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on June 4, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Tricia Quintero also present. Celia Cohen, Michael P. Robotti, Kelly Lin, Schuyler La Barge, and Kelly Lenahan-Pfahlert appeared on behalf of Defendant Rachel Cherwitz (1). Trial Technician Richard Hobbs also present. Jennifer Ann Bonjean, Kelsey Hipp Killion, and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegals Galila Assefa and Sophia Moazed also present. Both defendants present and on bond. Case called. Outside presence of jury, the Court addressed jury instructions (including the filings at ECF Nos. 402 and 403) and various other issues. Government's summation and Defendant Cherwitz's summation heard. Defendants made a motion for a mistrial, which the Government opposed. The Court informed the parties that the Court would address Defendants' motion for a mistrial on June 5, 2025. Trial continued to June 5, 2025 at 1:00 p.m. (Court Reporter Jamie Stanton.) (AD) (Entered: 06/05/2025) |
| 06/05/2025 | 405 | Proposed Jury Instructions/Verdict Form by USA as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Proposed Jury Instructions, # 2 Proposed Verdict Sheet) (Fern, Sean) (Entered: 06/05/2025) |
| 06/05/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on June 5, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett also present. Celia Cohen, Michael P. Robotti, Kelly Lin, Schuyler La Barge, and Kelly Lenahan-Pfahlert appeared on behalf of Defendant Rachel Cherwitz (1). Trial Technician Richard Hobbs also present. Jennifer Ann Bonjean, Kelsey Hipp Killion, Ashley Blair Cohen, and Gabriella Alexandra Orozco appeared on behalf of Defendant Nicole Daedone (2). Paralegals Galila Assefa and Sophia Moazed also present. Both defendants present and on bond. Case called. Defendants' June 4, 2025 motion for a mistrial denied. Defendant Daedone's summation heard. Government's rebuttal summation began. Outside presence of jury, the Court addressed forfeiture and schedule for deliberations. Trial |

| | | |
|---|---|---|
| | | continued to June 6, 2025 at 9:30 a.m. (Court Reporter Jamie Stanton.) (AD) (Entered: 06/06/2025) |
| 06/06/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on June 6, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett also present. Celia Cohen, Michael P. Robotti, Kelly Lin, Schuyler La Barge, and Kelly Lenahan-Pfahlert appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegals Galila Assefa and Sophia Moazed also present. Both defendants present and on bond. Case called. As set forth on the record, the Court confirmed that no party requests that the jury be retained to determine the forfeitability of specific property if the jury returns a guilty verdict. Government's rebuttal summation concluded. Jury charged. U.S. Deputy Marshal sworn. Deliberations began. Defendant Daedone's motion for a mistrial, which the Government opposed, denied. Trial continued to June 9, 2025 at 9:30 a.m. (Court Reporter Jamie Stanton.) (AD) (Entered: 06/09/2025) |
| 06/06/2025 | 412 | Order of Sustenance as to Rachel Cherwitz, Nicole Daedone. Ordered by Judge Diane Gujarati on 6/6/2025. (IH) (Entered: 06/13/2025) |
| 06/09/2025 | 406 | First MOTION for Bond by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Cohen, Celia) (Entered: 06/09/2025) |
| 06/09/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Jury trial as to Rachel Cherwitz (1) and Nicole Daedone (2) held on June 9, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett also present. Celia Cohen, Michael P. Robotti, Kelly Lin, and Schuyler La Barge appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean and Ashley Blair Cohen appeared on behalf of Defendant Nicole Daedone (2). Paralegals Galila Assefa and Sophia Moazed also present. Both defendants present and on bond. Case called. Deliberations continued and concluded. The Jury returned a verdict of guilty as to each Defendant. Jurors polled and dismissed. Alternate jurors also dismissed. Sentencing as to Defendant Rachel Cherwitz (1) scheduled for September 25, 2025 at 10:00 a.m. before Judge Diane Gujarati in Courtroom 4B South. Sentencing as to Defendant Nicole Daedone (2) scheduled for September 26, 2025 at 10:00 a.m. before Judge Diane Gujarati in Courtroom 4B South. Proceeding regarding bail status scheduled for June 10, 2025 at 10:00 a.m. before Judge Diane Gujarati in Courtroom 4B South. (Court Reporter Rivka Teich.) (AD) (Entered: 06/10/2025) |
| 06/09/2025 | 407 | Jury Instructions as to Rachel Cherwitz (1) and Nicole Daedone (2), marked as Court Exhibit No. 12. (AD) (Entered: 06/10/2025) |
| 06/09/2025 | 408 | JURY VERDICT as to Rachel Cherwitz (1) and Nicole Daedone (2): Guilty as to each Defendant, marked as Court Exhibit No. 18. (AD) (Entered: 06/10/2025) |
| 06/09/2025 | 409 | Jury Notes as to Rachel Cherwitz (1) and Nicole Daedone (2) (Court Exhibit Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, and 17). (AD) (Entered: 06/10/2025) |
| 06/10/2025 | | Minute Entry for proceedings held before Judge Diane Gujarati: Proceeding regarding bail status as to Rachel Cherwitz (1) and Nicole Daedone (2) held on June 10, 2025 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett also present. Celia Cohen, Michael P. Robotti, Kelly Lin, and Schuyler La Barge appeared on behalf of Defendant Rachel Cherwitz (1). Jennifer Ann Bonjean appeared on behalf of Defendant Nicole Daedone (2). Paralegals |

| | | |
|---|---|---|
| | | Galila Assefa and Sophia Moazed also present. Both defendants present and on bond. Case called. The parties were heard on Defendants' letter motion filed at ECF No. 406, in which Defendants requested that they be permitted to remain on bail pending sentencing. As set forth on the record: (1) the Court found that neither Defendant had met her burden of demonstrating that she should be released pending sentencing; (2) each Defendant was remanded to the custody of the United States Marshal pending sentencing; and (3) the requests for a stay pending appeal were denied. Also as set forth on the record, the Court set a deadline of July 1, 2025 for the filing of any post-trial motion and a deadline of July 15, 2025 for the filing of any opposition. (Court Reporter Charleane Heading.) (IH) (Entered: 06/11/2025) |
| 06/12/2025 | 410 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 10/25/2023, for hearing type Curcio hearing, before Judge Diane Gujarati. Court Reporter/Transcriber Michele Lucchese, Telephone number 718-613-2272. Email address: MLuccheseEDNY@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 7/3/2025. Redacted Transcript Deadline set for 7/14/2025. Release of Transcript Restriction set for 9/10/2025. (Lucchese, Michele) (Entered: 06/12/2025) |
| 06/12/2025 | 411 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 5/23/2025, for hearing type Jury Trial, before Judge Diane Gujarati. Court Reporter/Transcriber Michele Lucchese, Telephone number 718-613-2272. Email address: MLuccheseEDNY@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 7/3/2025. Redacted Transcript Deadline set for 7/14/2025. Release of Transcript Restriction set for 9/10/2025. (Lucchese, Michele) (Entered: 06/12/2025) |
| 06/13/2025 | 413 | NOTICE OF APPEAL of Conditions of Release by Rachel Cherwitz as to Order on Motion for Bond,,,,,, Bond Hearing,,,,, Filing fee $ 605, receipt number ANYEDC-19141415. (Robotti, Michael) (Entered: 06/13/2025) |
| 06/13/2025 | 414 | NOTICE OF APPEAL of Conditions of Release by Nicole Daedone as to Order on Motion for Bond,,,,,, Bond Hearing,,,,, Filing fee $ 605, receipt number ANYEDC-19141474. (Bonjean, Jennifer) (Entered: 06/13/2025) |
| 06/13/2025 | | Electronic Index to Record on Appeal as to Rachel Cherwitz sent to US Court of Appeals 413 Notice of Appeal - Conditions of Release Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 06/16/2025) |
| 06/13/2025 | | Electronic Index to Record on Appeal as to Nicole Daedone sent to US Court of Appeals 414 Notice of Appeal - Conditions of Release Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 06/16/2025) |
| 06/26/2025 | 415 | MOTION for Extension of Time to File *Post-Trial Motions* by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Cohen, Celia) (Entered: 06/26/2025) |
| 06/27/2025 | | ORDER granting 415 MOTION for Extension of Time to File *Post-Trial Motions* -- The extension request is granted on consent. The deadline for the filing of any post-trial motion is extended to July 8, 2025 and the deadline for the filing of any opposition is |

| | | |
|---|---|---|
| | | extended to July 22, 2025. No further extensions will be granted. Ordered by Judge Diane Gujarati on 6/27/2025. (IH) (Entered: 06/27/2025) |
| 06/27/2025 | 416 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on June 10, 2025, for hearing type Bail Application, before Judge Gujarati. Court Reporter/Transcriber Charleane M. Heading, Telephone number 718-613-2643. Email address: cheading@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 7/18/2025. Redacted Transcript Deadline set for 7/28/2025. Release of Transcript Restriction set for 9/25/2025. (Heading, Charleane) (Entered: 06/27/2025) |
| 07/08/2025 | 417 | MOTION for Acquittal *Pursuant to Rule 29* by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Attachments: # 1 Exhibit A) (Bonjean, Jennifer) (Entered: 07/08/2025) |
| 07/08/2025 | 418 | Letter *Enclosing Exhibit B to Defendants' Motion for Acquittal (Sealed)* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit B) (Bonjean, Jennifer) (Entered: 07/08/2025) |
| 07/09/2025 | 419 | ORDER of USCA (certified copy) as to Rachel Cherwitz, Nicole Daedone re 414 Notice of Appeal - Conditions of Release, 413 Notice of Appeal - Conditions of Release. Upon due consideration, it is hereby ORDERED that the June 10, 2025 order of the district court is AFFIRMED and the motion for reversal of the district court's order and for immediate release is DENIED. Issued as an Order: 07/09/2025. USCA# 25-1535(L), 25-1537(Con) (ROLR) (Entered: 07/10/2025) |
| 07/10/2025 | | Incorrect Case-Document Information filed; notice of appeal. The filing was entered in error and has been deleted. (ROLR) (Entered: 07/10/2025) |
| 07/17/2025 | 420 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on June 2, 2025, for hearing type Jury Trial, before Judge Gujarati. Court Reporter/Transcriber Jamie Stanton, Telephone number (718) 613-2274. Email address: jamiestanton.edny@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/7/2025. Redacted Transcript Deadline set for 8/18/2025. Release of Transcript Restriction set for 10/15/2025. (Stanton, Jamie) (Entered: 07/17/2025) |
| 07/17/2025 | 421 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on June 3, 2025, for hearing type Jury Trial, before Judge Gujarati. Court Reporter/Transcriber Jamie Stanton, Telephone number (718) 613-2274. Email address: jamiestanton.edny@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/7/2025. Redacted Transcript Deadline set for 8/18/2025. Release of Transcript Restriction set for 10/15/2025. (Stanton, Jamie) (Entered: 07/17/2025) |
| 07/17/2025 | 422 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on June 4, 2025, for hearing type Jury Trial, before Judge Gujarati. Court Reporter/Transcriber Jamie Stanton, Telephone number (718) 613-2274. Email address: jamiestanton.edny@gmail.com. Transcript may be viewed at the court |

| | | |
|---|---|---|
| | | public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/7/2025. Redacted Transcript Deadline set for 8/18/2025. Release of Transcript Restriction set for 10/15/2025. (Stanton, Jamie) (Entered: 07/17/2025) |
| 07/17/2025 | 423 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on June 5, 2025, for hearing type Jury Trial, before Judge Gujarati. Court Reporter/Transcriber Jamie Stanton, Telephone number (718) 613-2274. Email address: jamiestanton.edny@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/7/2025. Redacted Transcript Deadline set for 8/18/2025. Release of Transcript Restriction set for 10/15/2025. (Stanton, Jamie) (Entered: 07/17/2025) |
| 07/17/2025 | 424 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on June 6, 2025, for hearing type Jury Trial, before Judge Gujarati. Court Reporter/Transcriber Jamie Stanton, Telephone number (718) 613-2274. Email address: jamiestanton.edny@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/7/2025. Redacted Transcript Deadline set for 8/18/2025. Release of Transcript Restriction set for 10/15/2025. (Stanton, Jamie) (Entered: 07/17/2025) |
| 07/22/2025 | 425 | RESPONSE in Opposition re 417 MOTION for Acquittal *Pursuant to Rule 29* (Gupta, Nina) (Entered: 07/22/2025) |
| 07/30/2025 | 426 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 05/06/25, for hearing type JURY SELECTION, before Judge MJ MARUTOLLO. Court Reporter/Transcriber RIVKA TEICH, Telephone number (718)613-2268. Email address: RIVKATEICH@GMAIL.COM. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/20/2025. Redacted Transcript Deadline set for 9/1/2025. Release of Transcript Restriction set for 10/28/2025. (Teich, Rivka) (Entered: 07/30/2025) |
| 08/05/2025 | 427 | MOTION to Withdraw as Attorney by Kelsey H. Killion. by Nicole Daedone. (Killion, Kelsey) (Entered: 08/05/2025) |
| 08/06/2025 | | ORDER re 427 MOTION to Withdraw as Attorney -- Kelsey Hipp Killion, counsel for Defendant Daedone, shall, by August 8, 2025, supplement her Motion to Withdraw, ECF No. 427, to satisfy all of the requirements of Local Civil Rule 1.4 – which applies to criminal proceedings, *see* Local Criminal Rule 1.1(b). Ordered by Judge Diane Gujarati on 8/6/2025. (AD) (Entered: 08/06/2025) |
| 08/08/2025 | 428 | Supplemental MOTION to Withdraw as Attorney by Kelsey H. Killion. by Nicole Daedone. (Killion, Kelsey) (Entered: 08/08/2025) |
| 08/11/2025 | | ORDER granting 427 MOTION to Withdraw as Attorney -- Attorney Kelsey Hipp Killion terminated. Ordered by Judge Diane Gujarati on 8/11/2025. (IH) (Entered: 08/11/2025) |

| | | |
|---|---|---|
| 08/11/2025 | 429 | **MEMORANDUM & ORDER** -- As set forth in the attached Memorandum & Order, the joint motion of Defendants Rachel Cherwitz and Nicole Daedone for a judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, ECF No. 417, is DENIED. **SEE ATTACHED ORDER**. Ordered by Judge Diane Gujarati on 8/11/2025. (IH) (Entered: 08/11/2025) |
| 08/21/2025 | 431 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 06/09/25, for hearing type TRIAL, before Judge GUJARATI. Court Reporter/Transcriber RIVKA TEICH, Telephone number (718)613-2268. Email address: RIVKATEICH@GMAIL.COM. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/11/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/19/2025. (Teich, Rivka) (Entered: 08/21/2025) |
| 08/22/2025 | 433 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 05-19-2025, for hearing type Criminal Jury Trial, before Judge DG. Court Reporter/Transcriber Stacy Mace. Email address: smacerpr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Mace, Stacy) (Entered: 08/22/2025) |
| 08/22/2025 | 434 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 05-20-2025, for hearing type Criminal Jury Trial, before Judge DG. Court Reporter/Transcriber Stacy Mace. Email address: smacerpr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Mace, Stacy) (Entered: 08/22/2025) |
| 08/22/2025 | 435 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 05-21-2025, for hearing type Criminal Jury Trial, before Judge DG. Court Reporter/Transcriber Stacy Mace. Email address: smacerpr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Mace, Stacy) (Entered: 08/22/2025) |
| 08/22/2025 | 436 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 05-22-2025, for hearing type Criminal Jury Trial, before Judge DG. Court Reporter/Transcriber Stacy Mace. Email address: smacerpr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction |

| | | |
|---|---|---|
| | | request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Mace, Stacy) (Entered: 08/22/2025) |
| 08/22/2025 | 437 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 05-27-2025, for hearing type Criminal Jury Trial, before Judge DG. Court Reporter/Transcriber Stacy Mace. Email address: smacerpr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Mace, Stacy) (Entered: 08/22/2025) |
| 08/22/2025 | 438 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 05-28-2025, for hearing type Criminal Jury Trial, before Judge DG. Court Reporter/Transcriber Stacy Mace. Email address: smacerpr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Mace, Stacy) (Entered: 08/22/2025) |
| 08/22/2025 | 439 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 05-29-2025, for hearing type Criminal Jury Trial, before Judge DG. Court Reporter/Transcriber Stacy Mace. Email address: smacerpr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Mace, Stacy) (Entered: 08/22/2025) |
| 08/22/2025 | 440 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 05-30-2025, for hearing type Criminal Jury Trial, before Judge DG. Court Reporter/Transcriber Stacy Mace. Email address: smacerpr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Mace, Stacy) (Entered: 08/22/2025) |
| 08/22/2025 | 441 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on May 6, 2025, for hearing type Jury Selection and Trial, before Judge Diane Gujarati. Court Reporter/Transcriber Annette M. Montalvo, Telephone number 718-804-2711. Email address: annette.montalvo@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction |

| | | |
|---|---|---|
| | | Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Montalvo, Annette) (Entered: 08/22/2025) |
| 08/22/2025 | 442 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on May 7, 2025, for hearing type Further Jury Trial, before Judge Diane Gujarati. Court Reporter/Transcriber Annette M. Montalvo, Telephone number 718-804-2711. Email address: annette.montalvo@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Montalvo, Annette) (Entered: 08/22/2025) |
| 08/22/2025 | 443 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on May 8, 2025, for hearing type Further Jury Trial, before Judge Diane Gujarati. Court Reporter/Transcriber Annette M. Montalvo, Telephone number 718-804-2711. Email address: annette.montalvo@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Montalvo, Annette) (Entered: 08/22/2025) |
| 08/22/2025 | 444 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on May 9, 2025, for hearing type Further Jury Trial, before Judge Diane Gujarati. Court Reporter/Transcriber Annette M. Montalvo, Telephone number 718-804-2711. Email address: annette.montalvo@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Montalvo, Annette) (Entered: 08/22/2025) |
| 08/22/2025 | 445 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on May 12, 2025, for hearing type Further Jury Trial, before Judge Diane Gujarati. Court Reporter/Transcriber Annette M. Montalvo, Telephone number 718-804-2711. Email address: annette.montalvo@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Montalvo, Annette) (Entered: 08/22/2025) |
| 08/22/2025 | 446 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on May 13, 2025, for hearing type Further Jury Trial, before Judge Diane Gujarati. Court Reporter/Transcriber Annette M. Montalvo, Telephone number 718-804-2711. Email address: annette.montalvo@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction |

| | | |
|---|---|---|
| | | Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Montalvo, Annette) (Entered: 08/22/2025) |
| 08/22/2025 | 447 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on May 15, 2025, for hearing type Further Jury Trial, before Judge Diane Gujarati. Court Reporter/Transcriber Annette M. Montalvo, Telephone number 718-804-2711. Email address: annette.montalvo@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/12/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/20/2025. (Montalvo, Annette) (Entered: 08/22/2025) |
| 08/31/2025 | 448 | MOTION to Continue Sentencing by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Cohen, Celia) (Entered: 08/31/2025) |
| 09/03/2025 | | ORDER granting in part and denying in part 448 MOTION -- By letter motion dated August 31, 2025, Defendants Rachel Cherwitz and Nicole Daedone request that their sentencings, scheduled for September 25, 2025 and September 26, 2025, respectively, be adjourned and that they be "sentenced jointly." *See* ECF No. 448 at 1. Defendants represent that the Government "consents to the adjournment request but does not consent to the defendants' request for a joint sentencing." *See* ECF No. 448 at 1. The request that Defendants be "sentenced jointly" is denied. The request for adjournment of the sentencings scheduled for September 25, 2025 and September 26, 2025 is granted. The sentencings scheduled for September 25, 2025 and September 26, 2025 are adjourned *sine die*. Each Defendant shall file her sentencing memorandum by September 29, 2025 at 5:00 p.m. As to each Defendant, the Government shall file its sentencing memorandum by October 6, 2025 at 5:00 p.m. Each sentencing will be rescheduled following filing of the above-referenced submissions. Ordered by Judge Diane Gujarati on 9/3/2025. (AD) (Entered: 09/03/2025) |
| 09/04/2025 | 449 | OBJECTION TO PRESENTENCE INVESTIGATION REPORT by USA as to Nicole Daedone (Fern, Sean) (Entered: 09/04/2025) |
| 09/04/2025 | 450 | OBJECTION TO PRESENTENCE INVESTIGATION REPORT by Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 09/04/2025) |
| 09/05/2025 | 451 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on May 14, 2025, for hearing type jury trial, before Judge Diane Gujarati. Court Reporter/Transcriber Sophie Nolan, Telephone number 718-613-2622. Email address: NolanEDNY@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/26/2025. Redacted Transcript Deadline set for 10/6/2025. Release of Transcript Restriction set for 12/4/2025. (Nolan, Sophie) (Entered: 09/05/2025) |
| 09/05/2025 | 452 | MOTION to Withdraw as Attorney by Schuyler La Barge. by Rachel Cherwitz. (La Barge, Schuyler) (Entered: 09/05/2025) |
| 09/05/2025 | 453 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on 2/26/25, for hearing type Status Conference, before Judge Gujarati. Court Reporter/Transcriber Kristi Cruz, Telephone number 718-613-2676. Email address: kristi.edny@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for |

| | | |
|---|---|---|
| | | Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/26/2025. Redacted Transcript Deadline set for 10/6/2025. Release of Transcript Restriction set for 12/4/2025. (Cruz, Kristi) (Entered: 09/05/2025) |
| 09/08/2025 | | ORDER granting 452 MOTION to Withdraw as Attorney -- Attorney Schuyler La Barge terminated. Ordered by Judge Diane Gujarati on 9/8/2025. (AD) (Entered: 09/08/2025) |
| 09/10/2025 | 454 | MANDATE of USCA (certified copy) as to Rachel Cherwitz re 413 Notice of Appeal - Conditions of Release. It is hereby ORDERED that the June 10, 2025 order of the District Court is AFFIRMED and the motion for reversal of the District Court's order and for immediate release is DENIED. Issued as Mandate: 9/10/2025. USCA# 25-1535. (VJ) (Entered: 09/10/2025) |
| 09/17/2025 | 455 | MOTION to Continue Sentencing by Rachel Cherwitz as to Rachel Cherwitz, Nicole Daedone. (Cohen, Celia) (Entered: 09/17/2025) |
| 09/18/2025 | 456 | Letter *Responding to Defendants' Objections to Presentence Reports* as to Rachel Cherwitz, Nicole Daedone (Fern, Sean) (Entered: 09/18/2025) |
| 09/19/2025 | 457 | OBJECTION TO PRESENTENCE INVESTIGATION REPORT by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone *RESPONSE TO GOVERNMENT'S OBJECTIONS TO THE PSR* (Bonjean, Jennifer) (Entered: 09/19/2025) |
| 09/22/2025 | | ORDER granting 455 MOTION -- By letter motion dated September 17, 2025, Defendants Rachel Cherwitz and Nicole Daedone request, *inter alia*, that the deadline to file their sentencing submissions be adjourned and Defendants represent that the Government consents to the request. *See* ECF No. 455 at 1. The request for an adjournment of the September 29, 2025 deadline, *see* September 3, 2025 Order, is granted. Each Defendant shall file her sentencing memorandum by October 29, 2025 at 5:00 p.m. and shall indicate therein whether she is seeking a *Fatico* hearing on any issue. As to each Defendant, the Government shall file its sentencing memorandum by November 5, 2025 at 5:00 p.m. and shall indicate therein whether the Government is seeking a *Fatico* hearing on any issue. Ordered by Judge Diane Gujarati on 9/22/2025. (AD) (Entered: 09/22/2025) |
| 10/20/2025 | 462 | MOTION for Extension of Time to File *Sentencing Memorandum* by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 10/20/2025) |
| 10/20/2025 | | ORDER granting in part 462 MOTION -- Each Defendant shall file her sentencing memorandum by November 5, 2025 at 5:00 p.m. As to each Defendant, the Government shall file its sentencing memorandum by November 12, 2025 at 5:00 p.m. Ordered by Judge Diane Gujarati on 10/20/2025. (AD) (Entered: 10/20/2025) |
| 11/03/2025 | 465 | Fourth MOTION for Extension of Time to File *Sentencing Memorandum* by Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 11/03/2025) |
| 11/04/2025 | | ORDER granting 465 Fourth MOTION for Extension of Time to File *Sentencing Memorandum* -- Defendants' request for a two-week deadline extension, *see* ECF No. 465 at 1, is granted. Each Defendant shall file her sentencing memorandum by November 19, 2025 at 5:00 p.m. As to each Defendant, the Government shall file its sentencing memorandum by November 26, 2025 at 5:00 p.m. Ordered by Judge Diane Gujarati on 11/4/2025. (AD) (Entered: 11/04/2025) |
| 11/19/2025 | 468 | ~~***SEALED DOCUMENTS***~~<br>~~, SENTENCING MEMORANDUM by Rachel Cherwitz (Attachments: # 1 Exhibit, # 2~~ |

| | | |
|---|---|---|
| | | ~~Exhibit) (Cohen, Celia)~~ STRICKEN **pursuant to Judge Diane Gujarati's Order dated 1/22/2026** (Entered: 11/19/2025) |
| 11/19/2025 | 469 | ~~SENTENCING MEMORANDUM by Rachel Cherwitz (Attachments: # 1 Exhibit, # 2 Exhibit) (Cohen, Celia)~~ STRICKEN **pursuant to Judge Diane Gujarati's Order dated 1/22/2026** (Entered: 11/19/2025) |
| 11/19/2025 | 470 | ~~Notice of Request to Submit Electronic Evidence. as to Rachel Cherwitz re 468 1 - Sealed Document CR, Sentencing Memorandum, 469 Sentencing Memorandum. (Cohen, Celia)~~ STRICKEN **pursuant to Judge Diane Gujarati's Order dated 1/22/2026** (Entered: 11/19/2025) |
| 11/19/2025 | 471 | SENTENCING MEMORANDUM by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit Letters in Support, # 2 Exhibit Combs Sentencing Transcript) (Bonjean, Jennifer) (Entered: 11/19/2025) |
| 11/20/2025 | 472 | ***SEALED DOCUMENTS*** , SENTENCING MEMORANDUM by Rachel Cherwitz (Attachments: # 1 Exhibit, # 2 Exhibit) (Cohen, Celia) (Entered: 11/20/2025) |
| 11/20/2025 | 473 | SENTENCING MEMORANDUM by Rachel Cherwitz (Attachments: # 1 Exhibit, # 2 Exhibit) (Cohen, Celia) (Entered: 11/20/2025) |
| 11/20/2025 | 474 | Notice of Request to Submit Electronic Evidence. as to Rachel Cherwitz re 473 Sentencing Memorandum, 472 1 - Sealed Document CR, Sentencing Memorandum. (Cohen, Celia) (Entered: 11/20/2025) |
| 11/20/2025 | 475 | Notice of Request to Submit Electronic Evidence. as to Nicole Daedone re 471 Sentencing Memorandum. (Bonjean, Jennifer) (Entered: 11/20/2025) |
| 11/21/2025 | 476 | First MOTION for Extension of Time to File *Sentencing Memoranda* by USA as to Rachel Cherwitz, Nicole Daedone. (Fern, Sean) (Entered: 11/21/2025) |
| 11/24/2025 | | ORDER granting 476 First MOTION for Extension of Time to File *Sentencing Memoranda* -- The Government's request for a two-week deadline extension, *see* ECF No. 476 at 1, is granted. As to each Defendant, the Government shall file its sentencing memorandum by December 10, 2025 at 5:00 p.m. Ordered by Judge Diane Gujarati on 11/24/2025. (AD) (Entered: 11/24/2025) |
| 12/10/2025 | 477 | MOTION to Withdraw as Attorney *for Nicole Daedone* by Ashley Cohen. by Nicole Daedone. (Cohen, Ashley) (Entered: 12/10/2025) |
| 12/10/2025 | 478 | SENTENCING MEMORANDUM by USA as to Rachel Cherwitz (Gupta, Nina) (Entered: 12/10/2025) |
| 12/10/2025 | 479 | Letter *Requesting Remote Victim Participation at Forthcoming Sentencings* as to Rachel Cherwitz, Nicole Daedone (Fern, Sean) (Entered: 12/10/2025) |
| 12/10/2025 | 480 | ***SEALED DOCUMENTS*** , Letter *Enclosing Victim Impact Statements* as to Rachel Cherwitz (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F) (Gupta, Nina) (Entered: 12/10/2025) |
| 12/10/2025 | 481 | MOTION for Forfeiture of Property *(Forfeiture Money Judgment)* by USA as to Nicole Daedone. (Attachments: # 1 Proposed Judgment, # 2 Exhibit A, # 3 Exhibit B) (Fern, Sean) (Entered: 12/10/2025) |
| 12/10/2025 | 482 | SENTENCING MEMORANDUM by USA as to Nicole Daedone (Fern, Sean) (Entered: 12/10/2025) |

| | | |
|---|---|---|
| 12/10/2025 | 483 | ***SEALED DOCUMENTS*** , Letter *Enclosing Victim Impact Statements* as to Nicole Daedone (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G) (Fern, Sean) (Entered: 12/10/2025) |
| 12/10/2025 | 484 | ***SEALED DOCUMENTS*** , Letter *Addressing Restitution* as to Rachel Cherwitz, Nicole Daedone (Gupta, Nina) (Entered: 12/10/2025) |
| 12/11/2025 | | ORDER re 481 MOTION for Forfeiture of Property *(Forfeiture Money Judgment)* as to Nicole Daedone (2) -- Defendant Daedone shall file a response to the Government's December 10, 2025 Motion for Forfeiture, ECF No. 481, by December 18, 2025 at 5:00 p.m. Ordered by Judge Diane Gujarati on 12/11/2025. (AD) (Entered: 12/11/2025) |
| 12/12/2025 | 485 | Letter *attaching Restitution Exhibits* as to Rachel Cherwitz, Nicole Daedone, ***SEALED DOCUMENTS*** (Attachments: # 1 Exhibits A to K5) (Fern, Sean) (Entered: 12/12/2025) |
| 12/12/2025 | | ORDER granting 477 MOTION to Withdraw as Attorney *for Nicole Daedone* -- Attorney Ashley Cohen terminated. Ordered by Judge Diane Gujarati on 12/12/2025. (AD) (Entered: 12/15/2025) |
| 12/15/2025 | 486 | MOTION for Extension of Time to File *Response to Government's Forfeiture Motion* by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 12/15/2025) |
| 12/17/2025 | | ORDER granting in part 486 MOTION for Extension of Time to File *Response to Government's Forfeiture Motion* -- Defendant Daedone shall file a response to the Government's December 10, 2025 Motion for Forfeiture, ECF No. 481, by December 29, 2025 at 5:00 p.m. Ordered by Judge Diane Gujarati on 12/17/2025. (AD) (Entered: 12/17/2025) |
| 12/29/2025 | 488 | RESPONSE in Opposition re 481 MOTION for Forfeiture of Property *(Forfeiture Money Judgment)* (Bonjean, Jennifer) (Entered: 12/29/2025) |
| 01/02/2026 | | ORDER re 481 , 488 -- By January 7, 2026 at 5:00 p.m., the Government shall file a reply to Defendant Daedone's response to the Government's motion for forfeiture. Ordered by Judge Diane Gujarati on 1/2/2026. (AD) (Entered: 01/02/2026) |
| 01/02/2026 | | ORDER -- The Government shall ensure that all restitution information is provided to the Court no later than 5:00 p.m. on January 14, 2026. Ordered by Judge Diane Gujarati on 1/2/2026. (AD) (Entered: 01/02/2026) |
| 01/02/2026 | | ORDER re 479 -- In its letter motion dated December 10, 2025 (the "Motion"), the Government requests "that victims in the above-captioned matter be permitted to attend the forthcoming sentencing hearings by telephone, and, if they so choose, to make a statement during the proceedings" and the Government represents that "[w]hile many victims – most of whom reside outside of the New York City metropolitan area – have expressed a strong desire to attend the sentencings in person, a number have informed the government that the significant costs associated with travel to this Court present a significant barrier to their physical attendance." *See* ECF No. 479 at 1. The Government shall, by January 7, 2026 at 5:00 p.m., supplement the Motion to (1) indicate which victims wish to make a statement at the sentencing of Defendant Cherwitz and/or the sentencing of Defendant Daedone and (2) indicate which victims wish to attend the sentencing of Defendant Cherwitz and/or the sentencing of Defendant Daedone by telephone, together with an explanation as to why each such victim is unable to attend in person. Ordered by Judge Diane Gujarati on 1/2/2026. (AD) (Entered: 01/02/2026) |

| | | |
|---|---|---|
| 01/07/2026 | 490 | REPLY TO RESPONSE to Motion re 481 MOTION for Forfeiture of Property *(Forfeiture Money Judgment)* (Fern, Sean) (Entered: 01/07/2026) |
| 01/07/2026 | 491 | ***SEALED DOCUMENTS*** , Letter *Responding to the Court's January 2, 2026 Order and Supplementing its Motion Requesting Remote Victim Participation at Forthcoming Sentencings* as to Rachel Cherwitz, Nicole Daedone (Gupta, Nina) (Entered: 01/07/2026) |
| 01/14/2026 | 492 | Letter *Responding to the Court's January 2, 2026 Order Regarding Restitution Documentation* as to Rachel Cherwitz, Nicole Daedone (Gupta, Nina) (Entered: 01/14/2026) |
| 01/15/2026 | | **SCHEDULING ORDER:** Sentencing as to Defendant Nicole Daedone (2) is scheduled for March 4, 2026 at 10:00 a.m. before Judge Diane Gujarati in Courtroom 4B South. Ordered by Judge Diane Gujarati on 1/15/2026. (AD) (Entered: 01/15/2026) |
| 01/15/2026 | | **SCHEDULING ORDER:** Sentencing as to Defendant Rachel Cherwitz (1) is scheduled for March 4, 2026 at 2:00 p.m. before Judge Diane Gujarati in Courtroom 4B South. Ordered by Judge Diane Gujarati on 1/15/2026. (AD) (Entered: 01/15/2026) |
| 01/22/2026 | 493 | **MEMORANDUM & ORDER** -- As set forth in the attached Memorandum & Order, the Government's request regarding remote victim attendance/participation is denied; the Government's request that the Court award restitution in the amount of $1,874,670.34 to five specified "non-testifying victims" is denied; and the Government's requests to seal certain filings are granted. **SEE ATTACHED ORDER.** Ordered by Judge Diane Gujarati on 1/22/2026. (AD) (Entered: 01/22/2026) |
| 01/22/2026 | 494 | **ORDER** -- As set forth in the attached Order, to the extent that Defendant Daedone seeks a hearing related to forfeiture, she shall, by January 23, 2026, file a letter identifying with specificity: (1) the aspect(s) of the requested forfeiture as to which she seeks a hearing; and (2) the evidence she would offer at a hearing. **SEE ATTACHED ORDER.** Ordered by Judge Diane Gujarati on 1/22/2026. (AD) (Entered: 01/22/2026) |
| 01/22/2026 | 495 | First MOTION to Continue Sentencing by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 01/22/2026) |
| 01/22/2026 | 496 | Letter *with Exhibit Re: Request for Sentencing Adjournment* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit) (Bonjean, Jennifer) (Entered: 01/22/2026) |
| 01/26/2026 | 497 | Letter *in Response to Order filed at Dkt. 494* as to Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 01/26/2026) |
| 02/03/2026 | 498 | MOTION to Continue Sentencing *Re: Dkt. No. 495* by Nicole Daedone as to Rachel Cherwitz, Nicole Daedone. (Bonjean, Jennifer) (Entered: 02/03/2026) |
| 02/05/2026 | | ORDER -- Defendant Cherwitz shall, by February 6, 2026, file a letter indicating whether she seeks an adjournment of her March 4, 2026 sentencing date. Ordered by Judge Diane Gujarati on 2/5/2026. (AD) (Entered: 02/05/2026) |
| 02/06/2026 | 499 | Letter *Response to Court's February 5, 2026 Order Regarding Adjournment of Sentencing Date* as to Rachel Cherwitz, Nicole Daedone (Cohen, Celia) (Entered: 02/06/2026) |
| 02/11/2026 | | **SCHEDULING ORDER:** Each Defendant requests an adjournment of her March 4, 2026 sentencing date. *See* ECF Nos. 495, 496, 498, 499. The requests for an adjournment are granted. Sentencing as to Defendant Nicole Daedone (2) is now scheduled for March 30, 2026 at 10:00 a.m. before Judge Diane Gujarati in Courtroom 4B South. Sentencing as to Defendant Rachel Cherwitz (1) is now scheduled for March 30, 2026 at 2:00 p.m. |

| | | |
|---|---|---|
| | | before Judge Diane Gujarati in Courtroom 4B South. Ordered by Judge Diane Gujarati on 2/11/2026. (AD) (Entered: 02/11/2026) |
| 02/22/2026 | 500 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on November 15, 2024, for hearing type status/motion conference, before Judge Diane Gujarati. Court Reporter/Transcriber Sophie_Nolan, Telephone number 7186132622. Email address: NolanEDNY@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 3/16/2026. Redacted Transcript Deadline set for 3/25/2026. Release of Transcript Restriction set for 5/25/2026. (Nolan, Sophie) (Entered: 02/22/2026) |
| 02/22/2026 | 501 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz, Nicole Daedone held on December 20, 2024, for hearing type status conference, before Judge Joseph A. Marutollo. Court Reporter/Transcriber Sophie_Nolan, Telephone number 7186132622. Email address: NolanEDNY@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 3/16/2026. Redacted Transcript Deadline set for 3/25/2026. Release of Transcript Restriction set for 5/25/2026. (Nolan, Sophie) (Entered: 02/22/2026) |
| 03/18/2026 | 504 | **ORDER** -- As set forth in the attached Order, the Motion for Forfeiture, ECF No. 481, is granted and the proposed Preliminary Order of Forfeiture, ECF No. 481-1, as modified, is So Ordered. **SEE ATTACHED.** Ordered by Judge Diane Gujarati on 3/18/2026. (Attachments: # 1 Preliminary Order of Forfeiture) (AD) (Entered: 03/18/2026) |
| 03/19/2026 | 505 | Letter *Concerning Civilian Clothing at Sentencing* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Proposed Order) (Cohen, Celia) (Entered: 03/19/2026) |
| 03/20/2026 | 506 | ***SEALED DOCUMENTS***<br>, Letter *Regarding Sentencings* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Gupta, Nina) (Entered: 03/20/2026) |
| 03/22/2026 | 507 | Letter *Addressing Restitution (Sealed)* as to Rachel Cherwitz, Nicole Daedone, ***SEALED DOCUMENTS***<br>(Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit) (Cohen, Celia) (Entered: 03/22/2026) |
| 03/22/2026 | 508 | Letter *Addressing Restitution* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit) (Cohen, Celia) (Entered: 03/22/2026) |
| 03/23/2026 | | ORDER re 507 , 508 -- By 9:00 a.m. on March 25, 2026, the Government shall file a response to the letter filed by Defendants on March 22, 2026 at ECF No. 507 (sealed) and ECF No. 508 (publicly filed). Ordered by Judge Diane Gujarati on 3/23/2026. (AD) (Entered: 03/23/2026) |
| 03/24/2026 | | **ORDER** -- In light of the volume and nature of the contested sentencing issues – including those raised in the letter filed by Defendants on March 22, 2026 at ECF No. 507 (sealed) and ECF No. 508 (publicly filed) – and in light of the sentencing of Defendant Daedone scheduled for 10:00 a.m. on March 30, 2026, the Government and Defendant Cherwitz are advised that the sentencing of Defendant Cherwitz scheduled for 2:00 p.m. on March 30, 2026 may not be completed – or even commence – that day, in |

| | | |
|---|---|---|
| | | which case the Government and Defendant Cherwitz shall appear on March 31, 2026 at 10:00 a.m. Ordered by Judge Diane Gujarati on 3/24/2026. (AD) (Entered: 03/24/2026) |
| 03/25/2026 | 511 | ***SEALED DOCUMENTS*** , Letter *Responding to Defendants' Letter Regarding Restitution* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Proposed Order, # 2 Proposed Order) (Gupta, Nina) (Entered: 03/25/2026) |
| 03/25/2026 | 512 | ***SEALED DOCUMENTS*** , MOTION to Continue Sentencing *from 10 am to 12 pm on March 31, 2026* by USA as to Rachel Cherwitz. (Gupta, Nina) (Entered: 03/25/2026) |
| 03/26/2026 | | ORDER re 505 Letter -- By letter dated March 19, 2026, Defendants Cherwitz and Daedone request that the Court issue an order "permitting [them] to receive non-prison clothing to wear at their upcoming sentencings," noting that "[g]iven the importance of this proceeding, they wish to appear before the Court in the most dignified and respectful manner possible." *See* ECF No. 505 at 1. The request is denied. The attire worn by the Defendants at their respective sentencings will have no impact on the sentences imposed and the Court has every expectation that the Defendants will conduct themselves in a dignified and respectful manner regardless of how they are attired. Ordered by Judge Diane Gujarati on 3/26/2026. (AIH) (Entered: 03/26/2026) |
| 03/26/2026 | | ORDER granting 512 *SEALED* Motion -- By Order dated March 24, 2026, the Court advised the Government and Defendant Cherwitz that the sentencing of Defendant Cherwitz scheduled for 2:00 p.m. on March 30, 2026 may not be completed or even commence that day, in which case the Government and Defendant Cherwitz shall appear on March 31, 2026 at 10:00 a.m. *See* March 24, 2026 Order. By letter dated March 25, 2026, the Government requests that the start time of any proceeding on March 31, 2026 be adjourned to 12:00 p.m. and represents that Defendant Cherwitz has no objection to the request. *See* ECF No. 512 at 1. The request is granted. The Government's request to file the March 25, 2026 letter under seal, *see* ECF No. 512 at 1, is granted. Although a presumption of public access ordinarily attaches to judicial documents, sealing or redacting such documents can be justified when necessary to protect countervailing interests. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). The Court finds that sealing of the March 25, 2026 letter, ECF No. 512, is warranted due to the nature of the information contained therein. Ordered by Judge Diane Gujarati on 3/26/2026. (AIH) (Entered: 03/26/2026) |
| 03/27/2026 | 515 | Letter *SEEKING LEAVE TO PLAY VIDEO AT SENTENCING* as to Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 03/27/2026) |
| 03/27/2026 | 516 | ***SEALED DOCUMENTS*** , Letter *Regarding Sentencings* as to Rachel Cherwitz, Nicole Daedone (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order (Cherwitz), # 4 Proposed Order (Daedone)) (Fern, Sean) (Entered: 03/27/2026) |
| 03/29/2026 | 519 | Letter *Responding to Defendants' Requests to Play Videos at Sentencing* as to Rachel Cherwitz, Nicole Daedone (Bensing, Kayla) (Entered: 03/29/2026) |
| 03/29/2026 | 520 | Letter *In Response Goverment Objection to Playing Videos at Sentencing* as to Rachel Cherwitz, Nicole Daedone (Bonjean, Jennifer) (Entered: 03/29/2026) |
| 03/30/2026 | | Minute Entry for proceedings held before Judge Diane Gujarati: Sentencing as to Nicole Daedone (2) held on March 30, 2026 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Christine Meyer also present. Retained counsel Jennifer Ann Bonjean appeared on behalf of Defendant Daedone. Defendant present and in custody. U.S. Probation Officers |

| | | |
|---|---|---|
| | | Patricia Sullivan and Meghan Wing present. Defendant sentenced on Count 1 of the Indictment to: Imprisonment of one hundred eight (108) months; Supervised Release of two (2) years; Restitution in the amount of $887,877.64; Forfeiture; and Special Assessment of $100. No fine imposed. Defendant was advised of her right to appeal. As set forth on the record, the Court permitted certain filings to remain under seal. (Court Reporter Charleane Heading.) (AD) (Entered: 03/31/2026) |
| 03/30/2026 | | Minute Entry for proceedings held before Judge Diane Gujarati: Sentencing as to Rachel Cherwitz (1) held on March 30, 2026 before Judge Diane Gujarati. AUSAs Kayla C. Bensing, Kaitlin Teresa Farrell, Sean Michael Fern, and Nina C. Gupta appeared on behalf of the Government. Paralegals Marlane Bosler and Liam McNett and FBI Special Agent Christine Meyer also present. Retained counsel Celia Cohen, Michael P. Robotti, and Kelly Lin appeared on behalf of Defendant Cherwitz. Defendant present and in custody. U.S. Probation Officers Patricia Sullivan and Meghan Wing present. Defendant sentenced on Count 1 of the Indictment to: Imprisonment of seventy-eight (78) months; Supervised Release of two (2) years; Restitution in the amount of $887,877.64; and Special Assessment of $100. No fine imposed and no forfeiture ordered. Defendant was advised of her right to appeal. As set forth on the record, the Court permitted certain documents to remain under seal. (Court Reporter Charleane Heading.) (AD) (Entered: 03/31/2026) |
| 03/31/2026 | 521 | JUDGMENT as to Nicole Daedone (2), Count(s) 1, Imprisonment: One hundred eight (108) months. Supervised Release: Two (2) years. Restitution: $887,877.64. Forfeiture. Special Assessment: $100. No fine imposed. Ordered by Judge Diane Gujarati on 3/31/2026. (Attachments: # 1 Order of Forfeiture) (AD) (Entered: 03/31/2026) |
| 03/31/2026 | 523 | JUDGMENT as to Rachel Cherwitz (1), Count(s) 1, Imprisonment: Seventy-eight (78) months. Supervised Release: Two (2) years. Restitution: $887,877.64. Special Assessment: $100. No fine imposed and no forfeiture ordered. Ordered by Judge Diane Gujarati on 3/31/2026. (AD) (Entered: 03/31/2026) |
| 04/01/2026 | 525 | Letter *Requesting to Remain at MDC Pending Appeal* as to Rachel Cherwitz, Nicole Daedone (Cohen, Celia) (Entered: 04/01/2026) |
| 04/03/2026 | | ORDER re 525 Letter *Requesting to Remain at MDC Pending Appeal* -- By joint letter dated April 1, 2026, Defendants Cherwitz and Daedone request that the Court issue an order "recommending that the Bureau of Prisons ('BOP') allow Ms. Daedone and Cherwitz to remain at the Metropolitan Detention Center in Brooklyn to facilitate access to their appellate counsel pending the filing of the briefs in their anticipated appeal." *See* ECF No. 525 at 1. The request is denied. Ordered by Judge Diane Gujarati on 4/3/2026. (AD) (Entered: 04/03/2026) |
| 04/10/2026 | 526 | NOTICE OF ATTORNEY APPEARANCE: Alexandra Shapiro appearing for Rachel Cherwitz (Shapiro, Alexandra) (Entered: 04/10/2026) |
| 04/10/2026 | 527 | NOTICE OF ATTORNEY APPEARANCE: Alexandra Shapiro appearing for Nicole Daedone (Shapiro, Alexandra) (Entered: 04/10/2026) |
| 04/10/2026 | 528 | NOTICE OF APPEAL by Rachel Cherwitz re 523 Judgment, Filing fee $ 605, receipt number ANYEDC-20098492. (Shapiro, Alexandra) (Entered: 04/10/2026) |
| 04/10/2026 | 529 | NOTICE OF APPEAL by Nicole Daedone re 521 Judgment, Filing fee $ 605, receipt number ANYEDC-20098546. (Shapiro, Alexandra) (Entered: 04/10/2026) |
| 04/10/2026 | | Electronic Index to Record on Appeal as to Rachel Cherwitz sent to US Court of Appeals 528 Notice of Appeal - Final Judgment Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 04/10/2026) |

| | | |
|---|---|---|
| 04/10/2026 | | Electronic Index to Record on Appeal as to Nicole Daedone sent to US Court of Appeals 529 Notice of Appeal - Final Judgment Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 04/10/2026) |
| 05/11/2026 | 530 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rachel Cherwitz held on March 30, 2026, for hearing type Sentencing, before Judge Gujarati. Court Reporter/Transcriber Charleane M. Heading, Telephone number 718-613-2643. Email address: cheading@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 6/1/2026. Redacted Transcript Deadline set for 6/11/2026. Release of Transcript Restriction set for 8/10/2026. (Heading, Charleane) (Entered: 05/11/2026) |
| 05/11/2026 | 531 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Nicole Daedone held on March 30, 2026, for hearing type Sentencing, before Judge Gujarati. Court Reporter/Transcriber Charleane M. Heading, Telephone number 718-613-2643. Email address: cheading@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 6/1/2026. Redacted Transcript Deadline set for 6/11/2026. Release of Transcript Restriction set for 8/10/2026. (Heading, Charleane) (Entered: 05/11/2026) |


| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 08/12/2026 13:58:56 | | | |
| **PACER Login:** | chrisjohnson31 | **Client Code:** | 653 |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cr-00146-DG-RML |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
* APRIL 3, 2023 *
BROOKLYN OFFICE

LHE:GK/DL/JS
F.#2018R01401

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Judge Diane Gujarati
Magistrate Judge Robert M. Levy

UNITED STATES OF AMERICA

- against -

RACHEL CHERWITZ and
NICOLE DAEDONE,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. 23-CR-146
(T. 18, U.S.C., §§ 1594(b) and 1594(d), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p))

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

### I. The Defendants and Relevant Entities

1. OneTaste, Inc. was a privately-held California corporation with a principal place of business in San Francisco, California. OneTaste, Inc. and several affiliated companies, including but not limited to OneTaste NYC LLC, OneTaste NY Acquisition LLC, Mirror Clan Inc., One Taste Investments LLC, One Taste Holdings LLC, OneTaste Media LLC, Caravan Retreats Inc., OTBA Inc., Texas Limbic Network LLC, and The Next Right Thing LLC (collectively, "OneTaste") operated at variously points in locations within the Eastern District of New York and elsewhere, including but not limited to Brooklyn, New York; Manhattan, New York; San Francisco, California; Los Angeles, California; Denver, Colorado; Boulder, Colorado; Austin, Texas; and London, United Kingdom.

2. OneTaste promoted itself as a sexuality-focused wellness education company, which offered hands-on classes on "orgasmic meditation" ("OM"), a partnered practice typically involving the methodical stroking of a woman's genitals for a period of fifteen minutes. OneTaste generated revenue by providing courses, coaching and events related to OM and other "wellness practices," in exchange for a fee.

3. Individuals who associated themselves with OneTaste, either as employees, or as frequent participants in OneTaste courses and events, identified themselves as "members" of OneTaste.

4. The defendant NICOLE DAEDONE was a resident of San Francisco, California and New York, New York. DAEDONE was a co-founder of OneTaste and OneTaste's Chief Executive Officer from approximately 2004 to 2017.

5. The defendant RACHEL CHERWITZ was a resident of San Francisco, California and New York, New York. CHERWITZ was OneTaste's Head of Sales from approximately 2009 to 2018.

II. The Forced Labor Scheme

6. In or about and between 2006 and May 2018, the defendants, NICOLE DAEDONE and RACHEL CHERWITZ, together with others, obtained the labor and services of a group of OneTaste members by subjecting them to economic, sexual, emotional and psychological abuse; surveillance; indoctrination; and intimidation.

7. In furtherance of the scheme, the defendants NICOLE DAEDONE and RACHEL CHERWITZ, together with their co-conspirators, deployed a number of abusive and manipulative tactics in order to obtain the labor and services of these members. For example, DAEDONE, CHERWITZ and their co-conspirators:

(a) intentionally recruited individuals who had suffered prior trauma to participate in OneTaste, and advertised that OneTaste's courses and teachings could heal past sexual trauma and dysfunction;

(b) induced the OneTaste members, including OneTaste employees, to incur debt, and at times facilitated the OneTaste members in opening lines of credit, to finance expensive OneTaste courses that the defendants knew the OneTaste members could not afford;

(c) subjected the OneTaste members to constant surveillance in communal homes that OneTaste oversaw. DAEDONE, CHERWITZ and their co-conspirators further directed that the OneTaste members sleep in shared assigned beds and eat, work and travel in groups, as a means of rendering the OneTaste members dependent on OneTaste for their shelter and basic necessities and limiting the OneTaste members' independence and control;

(d) demanded absolute commitment to DAEDONE, including by exalting DAEDONE's teachings and ideology, and not tolerating dissent;

(e) collected sensitive information about the OneTaste members, including but not limited to information pertaining to the OneTaste members' prior trauma, sexual histories and relationships, as a means of influencing and controlling the OneTaste members; and

(f) isolated the OneTaste members by encouraging them to limit contact with people outside of the OneTaste community, and by breaking up established romantic relationships among the OneTaste members, as a means of rendering the OneTaste members emotionally, socially and psychologically dependent on OneTaste.

8. Upon securing the allegiance of the OneTaste members through, among others, the above tactics, the defendants NICOLE DAEDONE and RACHEL CHERWITZ,

together with their co-conspirators, then engaged in abusive employment practices. For example, DAEDONE, CHERWITZ and their co-conspirators promised to pay the OneTaste members wages and commissions for work performed on behalf of OneTaste and subsequently declined to pay the OneTaste members the amounts owed, or changed the OneTaste members' employment statuses or locations without advance notice, as a means of rendering the OneTaste members dependent on OneTaste for their livelihoods and financial wellbeing.

9. As part of their employment at OneTaste, some of the OneTaste members engaged in sexual activity at the direction of the defendants NICOLE DAEDONE and RACHEL CHERWITZ. For example, DAEDONE and CHERWITZ, together with their co-conspirators, recruited and groomed OneTaste members to engage in sexual acts with OneTaste's current and prospective investors, clients, employees and beneficiaries, for the financial benefit of OneTaste and, in turn, the defendants. DAEDONE and CHERWITZ also instructed the OneTaste members to engage in sexual acts they found uncomfortable or repulsive as a requirement to obtain "freedom" and "enlightenment" and demonstrate their commitment to OneTaste and DAEDONE.

10. Resistance to the directives of the defendants was not tolerated. The defendants NICOLE DAEDONE and RACHEL CHERWITZ subjected the OneTaste members to public shame, humiliation and workplace retaliation if they failed to adhere to the defendants' directives. Moreover, the defendants and their co-conspirators employed harassment and coercion to intimidate and attack OneTaste members perceived to be enemies and critics of DAEDONE and/or OneTaste.

FORCED LABOR CONSPIRACY

11. The allegations contained in paragraphs one through ten are realleged and incorporated as if fully set forth in this paragraph.

12. In or about and between 2006 and May 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICOLE DAEDONE and RACHEL CHERWITZ, together with others, did knowingly and intentionally conspire to:

(a) provide and obtain the labor and services of one or more persons by means of, and by a combination of means of: (i) force, threats of force, physical restraint and threats of physical restraint to a person; (ii) serious harm and threats of serious harm to a person; (iii) the abuse and threatened abuse of law and legal process; and (iv) one or more schemes, plans, and patterns intended to cause a person to believe that, if he or she did not perform such labor and services, a person would suffer serious harm and physical restraint, contrary to Title 18, United States Code, Section 1589(a); and

(b) benefit, financially and by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any such means, knowing, and in reckless disregard of the fact, that said venture had engaged in the providing and obtaining of labor and services by any such means, contrary to Title 18, United States Code, Section 1589(b).

(Title 18, United States Code, Section 1594(b); Title 18, United States Code, Sections 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION

13. The United States hereby gives notice to the defendants, that, upon their conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 1594(d) of (a) any property, real or personal, that was involved in, used, or intended to be used to commit or to facilitate the commission of such offense, and any property traceable to such property; and (b) any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense, or any property traceable to such property.

14. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 1594(d); Title 21, United States Code, Section 853(p))

A TRUE BILL

Deighton Reid
FOREPERSON

By Carolyn Pokorny, Assistant U.S. Attorney
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2018R01401
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

*RACHEL CHERWITZ and NICOLE DAEDONE,*
Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 1594(b), 1594(d), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p))

*A true bill.*

Deighton Reid
_____________________ *Foreperson*

*Filed in open court this* _________________ *day,*

*of* ____________ *A.D. 20* _____

_____________________ *Clerk*

***Lauren H. Elbert, Gillian Kassner, Devon Lash, Jonathan Siegel***
***Assistant U.S. Attorneys (718) 254-7000***

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - X

UNITED STATES OF AMERICA, : 23-CR-146(DG)

-against- : United States Courthouse
Brooklyn, New York
:
RACHEL CHERWITZ and
NICOLE DAEDONE, :
May 3, 2024
Defendants. : 10:30 o'clock a.m.

- - - - - - - - - - - - X

TRANSCRIPT OF CONFERENCE
BEFORE THE HONORABLE DIANE GUJARATI
UNITED STATES DISTRICT JUDGE.

APPEARANCES:

For the Government: BREON PEACE
United States Attorney
BY: GILLIAN KASSNER
DEVON LASH
Assistant United States Attorneys
271 Cadman Plaza East
Brooklyn, New York

For the Defendants: ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016

BY: JENNY R. KRAMER, ESQ.
RACHEL FINKEL, ESQ.
For Defendant Rachel Cherwitz

STEPTOE & JOHNSON
1114 Avenue of the Americas
New York, New York 10036

BY: JULIA GATTO, ESQ.
For Defendant Nicole Daedone

you know, some other way. I don't, I don't want to assume anything is the case or is not the case, but there are different scenarios that would be less troubling, I think, if someone were to get something that was marked attorney-client privileged.

MS. KASSNER: Right. So I think the point, the only reason I bring this up is because it might be helpful. This is the, you know -- while I've been talking about this one document with Mr. Pelletier, and defense counsel has been copied, it's OneTaste's privilege and I think that in order to just make sure that we're not putting the issue before Your Honor prematurely, I think that, ultimately, the filter AUSAs and Mr. Pelletier need to see if we would agree that it's privileged, and if it is, then that will change how we proceed.

THE COURT: Do you anticipate any need for counsel for the defendants in this case, not for OneTaste, but counsel for the defendants in this case, to be in communication with your filter AUSA on any of these issues?

MS. KASSNER: I don't believe so. It's OneTaste's privilege. He represents OneTaste.

THE COURT: I guess what I'm asking is are there materials, and I can probably ask the defense, that you believe the privilege is with respect to your individual clients, not the company, that you've received or seen or are

worried about?

MS. GATTO: For Ms. Daedone, yes. She was the CEO of the company during some of these breaches and I think that the privilege extends to her but, again, this becomes one of these situations where we need to communicate with the government so that they can give us more information about --

THE COURT: Agreed.

MS. GATTO: -- when, the timing --

THE COURT: And I don't think there's any dispute about that.

MS. KASSNER: No.

THE COURT: I think the government agrees with that.

I think, you know, I like to start court proceedings on time, but if there is a huge issue you learn about 30 seconds before, feel free to ask for, you know, a short time to talk to your adversary because I think, in all seriousness, I do think that a lot could be accomplished now that you know that there is a filter AUSA and you're hearing some of what the government has to say.

MS. KRAMER: Completely understood and agreed, Your Honor.

Of course, I also, just for the record, want to say that Ms. Cherwitz, we also believe that the privilege does attach to her.

To Your Honor's excellent point, we are in the

process of trying to get more information around these issues to potentially, you know, solve the issue. We see it as being definitely something that we're going to want to move forward with motion practice primarily because, again, Your Honor, the format of the document, it's screenshots. It's a theft of OneTaste's privileged property. And, again, to go back to the fruit of the poisonous tree, before we get to the standing issue, the privilege issue, if the government intentionally relied upon a privileged document that does set forth a road map to the indictment, there are very -- that could be dispositive here.

So as we continue our conversations with the government, we would like answers to those questions. This was in the possession of the government in 2021. That's deeply concerning, deeply concerning in this case.

Excuse me, Your Honor.

(Pause.)

THE COURT: Sure.

MS. KRAMER: And, yes, so all of this goes to the point that the filter team is here as of today which we did learn just this morning, and that's all well and good, but there's a saying, you can unring the bell. You can't unsee something that you've seen. And the taint and the pervasive poisoning of this process that likely occurred is something that we will want to move forward with.

# EXHIBIT B

# Declaration of Adam Goldberg

1. I am an attorney licensed to practice law in the District of Columbia.

2. I am currently Co-Founder and Partner of the law firm Galper & Goldberg PLLC ("G&G"), which was previously named Davis Goldberg & Galper PLLC ("DGG").

3. Davis Goldberg & Galper PLLC was founded in approximately April 2016 and changed its name to Galper & Goldberg PLLC in approximately August 2023.

4. I am writing this declaration at the request of One Taste, Inc. ("One Taste"), a former client of DGG.

5. This Declaration is not intended to waive any Attorney-Client or Work Product privilege with respect to DGG's representation of One Taste.

6. DGG represented One Taste beginning in approximately June 2017, in connection with providing legal advice relating to, among other things, crisis and issues planning.

7. In connection with DGG's representation of One Taste, DGG requested that One Taste provide it with certain information relating to the company.

8. Subsequent to DGG's request for information, One Taste representatives provided DGG with information through, among other ways, a document.

DocuSigned by:
B2828285C709421...

Adam Goldberg
Galper & Goldberg PLLC

Dated: May 31, 2024

# EXHIBIT A

DECLARATION OF JOANNA VAN VLECK

ATTORNEY-CLIENT PRIVILEGE DRAFT

I, JOANNA VAN VLECK, declare as follows:

1. Except where expressly stated, I have knowledge of the facts set forth herein and, if called to testify as a witness thereto, could do so competently under oath. It is not the complete statement of what I will say and is intended to be a summary. This Declaration is provided to demonstrate the privileged nature of the document and is not a commentary on the accuracy or content of the attorney-client privileged materials.
2. I am currently the Director of Strategic Execution for OneTaste Incorporated (OneTaste). I have also served as CEO and President. I began working for OneTaste in 2010 as its Director of Marketing.
3. Ms. Daedone co-founded OneTaste in 2004. In July 2014, she became the sole owner of OneTaste when her business partner resigned his position and sold his interest in the company. In March 2017, Daedone sold her interest in the company and resigned her position as CEO of the company.
4. I became the incoming CEO of OneTaste in 2017 upon the completion of the sale. Pursuant to her agreements with the new owners, Ms. Daedone was required to carry out certain previously held responsibilities for six months during the transition period.

5. Consistent with her legal obligations, Daedone maintained a senior management position with OneTaste after March 3, 2017. To this end, Daedone met regularly with the new owners and was in near daily contact with me as the new CEO of OneTaste. It was not announced that Daedone resigned her position as OneTaste CEO until June 30, 2017.

6. Rachel Cherwitz joined the company in 2007 and held a senior management position, overseeing sales and later becoming a key executive involved in the company's expansion and development. Cherwitz played a crucial role in formalizing the company's operations and expanding its reach. Cherwitz left her senior management position after July 2018.

7. One key focus during the transition from Daedone's ownership to new ownership was managing increased negative media coverage of OneTaste and planning for potential crises from false allegations and complaints.

8. In June 2017, OneTaste retained the law firm of Davis Goldberg & Galper, PLLC ("DGG"), now Galper & Goldberg, PLLC to render legal advice related to among other things, crisis and issues planning and to ensure factual accuracy in media accounts about OneTaste.

9. In approximately 2016, a group on Facebook called the “OMwiki” was started. Its administrators were all individuals highly critical of OneTaste, and it became a hub for gossip and complaint about OneTaste, which included false statements, mischaracterizations and highly defamatory statements.

10. As a result of increased negative (and false) commentary about OneTaste and the senior executives of OneTaste, including Ms. Daedone and Ms. Cherwitz, we retained DGG to provide legal advice for addressing the negative and false commentary and in anticipation of possible litigation by those critical of OneTaste.

11. In accordance with their representation of OneTaste, our attorneys at DGG requested that we prepare a document and assemble materials that catalogued any possible information, regardless of our views on the credibility of the source, concerning any crisis or issue faced or that could be faced by OneTaste.

12. We were directed to be as inclusive as possible and identify any incidences, rumors, or innuendos that had circulated on-line or among individuals associated with OneTaste, including those that were patently false.

13. I discussed with Ms. Daedone and other OneTaste executives the nature of the engagement of DGG, that the engagement would be subject to attorney-client privilege and the requests for information by DGG to help it provide legal advice.

14. I created a small team of senior management, including Ms. Daedone and Ms. Cherwitz, for the purpose of creating a document for the information requested by DGG so they could offer legal advice to OneTaste and its senior management.

15. The document was marked attorney-client privileged and neither I nor anyone else emailed the document to anyone. The document was maintained on protected OneTaste servers and was only accessible to senior management with proper credentials.

16. On July 17, 2017, members of OneTaste's Executive Team met with counsel for DGG and shared the document with them. In recognition of its privileged and confidential status, a single copy of this document was printed and presented to DGG at OneTaste's offices in San Francisco.

17. After preparing this document, DGG continued to advise OneTaste and its executives including Ms. Daedone.

18. Neither I, nor any OneTaste executives, had any knowledge that the privileged document provided to DGG in July 2017 had been taken from OneTaste servers without authority until the document was discovered by the defense team as a series of JPG images in the government's Rule 16 materials.

19. Neither I nor any other privilege holder at any time waived privilege with respect to the document.

20. On June 24, 2024, OneTaste filed a petition under Rule 41(G) of the Federal Rules of Criminal Procedure and for sanctions to obtain the return of the document, destruction of all copies, and sanctions. The petition is pending before Judge Eric Vitaliano.

Date: August 1, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA, | 23-CR-146(DG) |
| -against- | United States Courthouse<br>Brooklyn, New York |
| RACHEL CHERWITZ and<br>NICOLE DAEDONE,<br>Defendant. | September 27, 2024<br>10:30 a.m. |

- - - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE DIANE GUJARATI
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government: BREON PEACE, ESQ.
United States Attorney
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201
BY: GILLIAN KASSNER, ESQ.
KAYLA BENSING, ESQ.
DEVON LASH, ESQ.
SEAN FERN, ESQ.
Assistant United States Attorneys

For the Defendant RACHEL CHERWITZ: AIDALA BERTUNA & KAMINS P.C.
546 Fifth Avenue
New York, New York 10036
BY: ARTHUR L. AIDALA, ESQ.
IMRAN ANSARI, ESQ.

For the Defendant NICOLE DAEDONE: BONJEAN LAW GROUP, PLLC
303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231
BY: JENNIFER BONJEAN, ESQ.

the motion separately.

But as an initial matter, I note that defendants have not demonstrated that they are entitled to an evidentiary hearing with respect to either basis. On the record before the Court, no hearing is required with respect to the instant motion. The record allows for decision on the instant motion without the need for a hearing.

Turning now to the first basis for the instant motion, namely, the Purportedly Privileged Document.

I find that defendants have failed to demonstrate good cause for their failure to bring their motion on the schedule initially set by the Court and that to the extent that the motion is based on the Purportedly Privileged Document, the motion is subject to dismissal for untimeliness.

By letter dated and filed November 28, 2023, the parties jointly proposed a briefing schedule for pretrial motions. See ECF No. 62. The same day, the Court adopted that schedule. See Order dated November 28, 2023.

Pursuant to the schedule jointly proposed by the parties and adopted by the Court, any pretrial motions were required to be filed by January 16, 2024; any oppositions were required to be filed by February 16, 2024; and any replies were required to be filed by March 1, 2024.

If defendants had felt that they needed more time

Defendants assert that there was a particular document that was provided to, and created at the request of, DGG, to facilitate DGG's provision of legal advice, and defendants assert that that document is privileged. And DGG stands for Davis Goldberg & Galper, PLLC. But defendants have failed to demonstrate that the Purportedly Privileged Document is the document they assert was provided to DGG.

Indeed, the evidence before the Court, including evidence relating to chronology and content, reflects that the Purportedly Privileged Document is not the document that defendants assert was provided to DGG. See, e.g., ECF No. 127-1 at paragraphs 12 through 14. And, as noted earlier, OneTaste has acknowledged that two pages of the Purportedly Privileged Document are, in fact, not privileged.

Because defendants have not shown that the Purportedly Privileged Document is the document that they assert was provided to DGG, defendants have not shown that the Purportedly Privileged Document was a communication to DGG.

Even were the Court to have concluded that the Purportedly Privileged Document is the document that defendants assert was provided to DGG, defendants have not established all of the elements of the attorney-client privilege. For example, defendants have not met their burden of establishing that the document constituted a

communication between a client and the client's attorney. Defendants have not established who authored and/or provided the document to DGG. In addition, evidence suggests that at least some portions of the document were created prior to DGG being retained by OneTaste. Further, defendants have not met their burden of establishing that the document was intended to be and was in fact kept confidential.

And in any event, on the facts before the Court, any purported privilege belongs to OneTaste, the corporation, not to the defendants individually, and defendants cannot avail themselves of any privilege held by OneTaste. As courts have recognized, generally when an attorney is employed or retained as a company's lawyer, any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the individual employee, and the employee may not avail herself of the corporation's privilege. See *United States versus International Brotherhood of Teamsters*, 119 F.3d 210 at 215, Second Circuit 1997; *United States versus Piccini*, 412 F.2d 591 at 593, Second Circuit 1969; *Application of Sarrio, S.A.*, 119 F.3d 143 at 147 to 48, Second Circuit 1997; and *United States versus Gentile*, number 21-CR-54, 2024 Westlaw 3343983 at 3, Eastern District of New York, July 8, 2024.

Notably, defendants have not even shown that they

have the authority to assert any purported privilege held by OneTaste. As courts have recognized, when a corporation is solvent, the agent that controls the corporate attorney-client privilege is the corporation's management, and when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. See *Commodity Futures Trading Commission versus Weintraub*, 471 U.S. 343 at 349 and 356, 1985. See also *Ambrose versus City of White Plains*, number 10-CV-4946, 2011 Westlaw 13290651, at 10, Southern District of New York, September 30, 2011.

Further, although an employee of a corporation can under certain circumstances enjoy a personal attorney-client relationship with counsel for the corporation, in order to be able to assert an individual privilege over communications with counsel for the corporation, the employee must make a showing that defendants here have not made. See *Gentile*, 2024 Westlaw 3343983, at 3. And *Teamsters* 119 F.3d, at 215. Indeed, defendants have made clear that they have not attempted to demonstrate that they have an individual privilege. See ECF No. 113-1, at 29, note 10.

The Court was clear at the July 3rd conference that defendants needed to bring one motion raising whatever the defendants wanted to raise and that there would not be

waves of motions. Defendants' suggestion that they have more they could demonstrate is unavailing at this stage.

On the issue of privilege, the caselaw cited by defendants is unavailing in light of the specific facts and relevant relationships here.

The Court has further concluded that even if the Purportedly Privileged Document were privileged and even if defendants had the authority to assert any privilege, neither of which they have established, defendants have waived their right to do so by having waited so long to assert privilege. They had the Purportedly Privileged Document in September 2023 and did not raise any privilege claim until more than seven months later. See, e.g., *United States versus Schulte*, No. 17-CR-548, 2022 Westlaw 1284549, at 2, Southern District of New York, April 29, 2022; and *United States versus Watson*, No. 23-CR-82, 2024 Westlaw 3202765, at 7 to 8, Eastern District of New York, June 27, 2024; see also *Teamsters*, 119 F.3d at 214.

In addition, defendants' argument that the indictment would not exist but for the use of the Purportedly Privileged Document by the Government is not supported by the record.

Finally, with respect to the Purportedly Privileged Document, even were the Court to have concluded that there was a violation by the Government here warranting

a remedy, the extraordinary remedy of dismissal of the indictment, which is the remedy sought by defendants, would not be the appropriate remedy. At most, the Court would preclude the Government from using the document at trial, either in its case in chief or for any purpose at all.

Turning to the second basis for the instant motion, relating to the FBI agent and the email account, defendants' arguments are unavailing. Indeed, defendants' strained reading of the relevant communications, and defendants' evident disregard of relevant context, renders their arguments particularly unavailing.

As I referenced earlier when summarizing the defendants' arguments, defendants describe the actions of the agent differently in different places in their brief. Notwithstanding anyone's characterizations of the communications, it is clear to the Court on the record before it that the agent did not direct the individual at issue to destroy her emails. What he actually said to her, and the inquiry from her that he was responding to, in context, paint a very different picture than the one defendants paint. Those communications are in the record.

To prevail on a spoliation claim, a defendant must show: one, that the evidence possessed exculpatory value that was apparent before it was destroyed; two, that the evidence was of such a nature that the defendant would be

unable to obtain comparable evidence by other reasonably available means; and three, bad faith on the part of the government. See *United States versus Walker*, 974 F.3d 193, at 208, Second Circuit 2020. As a threshold matter, however, a defendant must first show that evidence has been lost and that this loss is chargeable to the Government. See *United States versus Greenberg*, 835 F.3d 295, at 303, Second Circuit 2016.

Defendants do not come close to meeting their burden of demonstrating spoliation on the record here. In addition to failing to establish that any purported loss with respect to the email account is chargeable to the Government, defendants have failed to demonstrate that the email account possessed exculpatory value that was apparent before the account was canceled; have failed to demonstrate that the contents of the account are inaccessible to defendants or that defendants are unable to obtain comparable evidence by other reasonably available means; and have failed to demonstrate bad faith on the part of the government.

Finally, even were the Court to have concluded that with respect to the email account there was a violation by the Government here warranting a remedy, the extraordinary remedy of dismissal of the indictment, which, again, is the remedy sought by defendants, would not be the

appropriate remedy.

Defendants' motion to dismiss, ECF No. 113, is denied in its entirety.

And that concludes my ruling.

Turning now to other matters, I want to advise the parties that I take accusations of misconduct very seriously. A party making such an accusation should take care to be on solid factual ground before doing so. I also take very seriously compliance with discovery and Brady obligations.

Across two submissions recently filed, including the one that was filed at I think 11:34 last night, defendants seek a variety of relief. One request was already denied by the Court. As for the other requests, defendants seek a deadline for expert disclosure. The deadline for expert disclosure is October 4, 2024.

Defendants seek to have the Court order the Government to make more fulsome and complete production of Brady material, including all unredacted 302 Reports of witnesses previously identified as having provided potentially exculpatory information. Defendants seek to have the Court order the Government to make disclosures related to the journals, as detailed in defendants' letter to the Government dated September 23, 2024. I think everyone knows which journals I'm talking about. Defendants

seek also to have the Court urge the Government to make more expedited disclosure of 3500 material.

Let me ask defense counsel, as far as those requests, have I accurately stated what you at this time are asking for based on your last two submissions?

Counsel for Ms. Daedone?

MS. BONJEAN: Yes, Judge, that was what was detailed in our letter last night.

THE COURT: And also the letter from a couple days ago, correct? The letter where you asked for an adjournment of trial, which was denied. There were other requests as well.

MS. BONJEAN: Yes. Mr. Ansari, I think, filed that letter.

THE COURT: But that was for both of you, correct?

MR. ANSARI: Yes, Your Honor.

THE COURT: And now let me ask counsel for Ms. Cherwitz, have I stated what it is that are your outstanding requests?

MR. ANSARI: Yes, Your Honor.

THE COURT: So one of the filings came late yesterday. The Court has had a chance to thoroughly review it. I don't know whether the Government has, but I certainly know that the Government did not have sufficient time to respond to it if they wanted to respond to it.

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DGR:KCB/GK/DEL/SF
F. #2018R01984

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 7, 2024

By ECF and Email

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Cherwitz, et al.
Criminal Docket No. 23-146 (DG)

In re Petition of OneTaste, Inc.,
Miscellaneous Docket No. 24-2518 (DG)

Dear Judge Gujarati:

The government respectfully submits this letter to supplement the factual record set out in its September 20, 2024 letter concerning various documents over which OneTaste Inc.'s ("OneTaste") and the individual defendants in United States v. Cherwitz et al., 23-CR-146 (DG) have claimed are subject to attorney-client privilege and otherwise constituted attorney work product.

Among the documents previously discussed in the parties' filings are two Microsoft Word files (the "Word Documents"), which the FBI obtained from an individual ("Witness-2") in or around January 2021. In the government's September 20, 2024 letter, the government stated that the Privilege Review Team had searched the United States Attorney's Office's internal files and emails relevant to the Cherwitz matter to determine whether the United States Attorney's Office had ever received a copy of the Word Documents from Witness-2, but the search did not result in the identification of any relevant documents at that time. On October 1, 2024, after continuing its search of the electronic case file prior to trial, the government identified copies of the Word Documents that were saved to the United States Attorney's

Office's Cherwitz case file as part of a collection of materials that had been segregated upon receipt by a paralegal to a separate workspace. Upon locating these copies, their access was restricted to the Privilege Review Team.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Gillian Kassner
Kayla Bensing
Devon Lash
Sean Fern
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (DG) (via ECF and Email)
Counsel for Cherwitz and Daedone (via ECF and Email)
Counsel for OneTaste, Inc. (via Email)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA : 23cr146(DG)

-against-

: United States Courthouse
RACHEL CHERWITZ AND NICOLE DAEDONE, : Brooklyn, New York

Defendants. : Friday, November 15, 2024
: 10:30 a.m.
- - - - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR A STATUS CONFERENCE
BEFORE THE HONORABLE DIANE GUJARATI
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government: United States ATTORNEY'S OFFICE
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: KAYLA BENSING, ESQ.
GILLIAN KASSNER, ESQ.
DEVON LASH, ESQ.
SEAN MICHAEL FERN, ESQ.
Assistant United States Attorneys

For Defendant Cherwitz: AIDALA BERTUNA & KAMINS, P.C.
546 Fifth Avenue
New York, New York 10036
BY: ARTHUR L. AIDALA, ESQ.
IMRAN H. ANSARI, ESQ.

For Defendant Daedone: BONJEAN LAW GROUP PLLC
30 Van Brunt Street, 1st Floor
Brooklyn New York 11231
BY: JENNIFER ANN BONJEAN, ESQ.

Court Reporter: **SOPHIE NOLAN**
225 Cadman Plaza East/Brooklyn, NY 11201
**NolanEDNY@aol.com**

*Proceedings recorded by mechanical stenography, transcript produced by Computer-Aided Transcription*

preclude use of the terms "members" or "leaders" as frivolous but I will say that it is certainly lacking in merit.

The next topic is evidence of OneTaste's spiritual and religious beliefs and practices and characterization of course materials as Daedone's "teachings" or "ideology." It does not appear from what has been presented to the Court thus far that the Government is intending to attack the beliefs on their merits, but I want to hear the Government speak to this issue.

MS. BENSING: I think that's right, Your Honor. And I guess what I would say is that there are some -- I guess, I'll call it ideology, that was practiced by the defendants and put forth by the defendants that is part of the psychological coercion that the Government -- that's part of the Government's theory here. And so I do think that there will be testimony about things that, for example, Defendant Daedone has said, I think, that defendant Cherwitz has said that's part of OneTaste's ideologies, and the way that the victims received that and then the effect on them.

And, so that, of course, that's part of the victims and the witness's experiences at OneTaste and a big part of what OneTaste did was course work. And so this ideology was part of that course work.

But on their own merits, the Government will not be just gratuitously attacking the various principals that the

defendants espoused. It will be part of the Government's case in terms of proving the elements of forced labor conspiracy.

THE COURT: Again, the Court will not issue a blanket ruling prohibiting reference to the terms "teachings" or "ideology" or to OneTaste's spiritual and religious beliefs and practices because such references, depending on the specifics, including the context, could be relevant to issues the jury will have to decide.

Again, the Court will consider Rule 403 as to any specific relevant evidence sought to be presented, but the Court does not anticipate Rule 403 counseling against admission based on what has been presented to the Court thus far. And, again, the parties can propose a jury instruction to the extent that they believe one is appropriate and the Government has indicated in its papers that it does not oppose a particular jury instruction on this issue.

MS. BONJEAN: Judge, may I just -- for the record, I just want to clarify one point, if you don't mind.

THE COURT: Go ahead.

MS. BONJEAN: We are at a little bit of a disadvantage because as the Court may be aware Ms. Daedone has written 12 or 13 books. She's very much in the public domain regarding her beliefs, some of her ideas and some of her opinions; and our position is that those opinions and philosophies cannot possibly lead to coercive control unless

those people are being forced to consume it. And so I know this is a preliminary ruling, but my fear --

THE COURT: It's telling you I'm not going to do a blanket ruling. This does not lend itself to a blanket ruling. I really need to know what the specifics are.

MS. BONJEAN: Exactly. And I just wanted the record to be clear that to the extent that the Government will attempt to corroborate certain allegations by simply pointing out passages in a book or a speech about something that Ms. Daedone has said; so Ms. Daedone has made some remarks that some people would find controversial about sexual -- sexuality, and to then pull that out to say, see, that corroborates what this witness has testified to.

And, again, we're talking, again, a little bit in the dark, but I jut want the record to be clear, we maintain our objections to this but when specifics come into light, we may need to renew those objections depending on even what exhibits they may try to admit about -- that may be speeches --

THE COURT: Right. I hear you. And a lot of what has been raised, and I do appreciate the parties raising issues early, so everybody can be thinking about them, but a lot of it, the devil is in the details and specific objections will have to be made at an appropriate time or maybe there will be stipulations or there will be proposed instructions,

but these don't -- a lot of these categories just don't lend themselves to generalities because, you know, relevance, you need to know context and I think we're all on the same page.

MS. BONJEAN: Fair enough, thank you.

THE COURT: Sure.

The next topic is evidence or argument suggesting that defendants specifically encouraged, persuaded and/or pressured individuals to have sex with wealthy, influential or otherwise powerful customers.

Again, the Court will not issue a blanket ruling precluding such evidence or argument, which could be relevant to the issues the jury will have to decide. The Court will consider Rule 403 as to any specific relevant evidence sought to be presented. The parties can jointly propose a jury instruction to the extent they believe one is appropriate.

Defendants request that if certain evidence is allowed they must be allowed to present evidence that OneTaste customers and students came from all socioeconomic backgrounds and that irrespective of socioeconomic background, OneTaste preached a fundamental tenet of consent.

The Court is unlikely to allow this evidence, which seems irrelevant, but this issue is not ripe for a definitive ruling. Again, context is important and specifics are important.

The next topic is evidence related to the private

# EXHIBIT E

I, Paul E. Pelletier, declare as follows:

1. I have represented Petitioner since early 2022.

2. On or about Saturday April 20, 2024, I first learned that photos of screen shots of materials marked "attorney client privileged" that had been provided to the FBI by Kara Cooper (Cooper Privileged Documents) had been provided to the defendants in discovery in the case of *United States v. Rachel Cherwitz, et al.,* Case No. 23-cr-146 (DG). Prior to April 20, 2024, I was unaware that the government was in possession of the photographic screenshots of the Cooper Privileged Documents.

3. Over next several days, including the weekend, I diligently conducted due diligence to determine whether the Cooper Privileged Documents were in fact privileged.

4. After having satisfied myself that the Cooper Privileged Documents in fact contained Petitioner's privileged attorney client communications, on April 21, 2024, *via* email, I notified the *Cherwitz* prosecution team, *inter alia*, of Petitioner's assertion of privilege over the Cooper Privileged Documents and demanded the return of the original and copies of the materials. 4/24/24 email attached hereto as Exhibit 1.

5. Ultimately, the Prosecution Team informed me that they had sequestered the Cooper Privileged Documents and had provided them to a Filter Team.

6. On July 22, 2024, after I learned from the government that the Cooper had received the Cooper Privileged Documents from an individual named Andrew Cortado, who had received them from an individual named Mitch Aidelbaum, I asked the Filter Team to confirm whether the government has obtained or received any other versions of the Cooper Privileged Documents from anyone else. The Filter Team Attorney responded in the negative. I then requested that the Filter Team Attorney to confirm

the veracity of her response with the Prosecution Team. The Filter Team Attorney responded that "I have all the copies of this document." When I then sought clarification that Petitioner had been provided with all copies of Cooper Privileged Documents, and any versions that they may have received from "others," the Filter Team Attorney Responded that the Cooper Privileged Document was "the only copy I am aware of." *See* July 23, 2024, email chain attached hereto as Exhibit 2.

7. Thus, I was not aware that the government was in actual possession of the Aidelbaum Privileged Documents until I was notified of the government's possession of them on September 23, 2024.

8. On September 23, 2024, the Filter Team Attorney requested my authorization to make copies of the Aidelbaum documents to the defendants in *United States v. Rachel Cherwitz, et al.*, Case No. 23-cr-146 (DG) which I refused to authorize.

Executed on this 20th day of December at Fairfax, VA.

Paul E. Pelletier

# Exhibit 1

## to Declaration of Paul Pelletier

**From:** **Paul Pelletier** pepelletier3@gmail.com
**Subject:** Demand for Immediate Return of Privileged Material
**Date:** April 24, 2024 at 3:31 PM
**To:** Gillian Kassner gillian.kassner@usdoj.gov, Lauren Elbert lauren.elbert@usdoj.gov, dlash@usdoj.gov, Jsiegel@usdoj.gov
**Cc:** Reid Weingarten rweingarten@steptoe.com, Gatto, Julia jgatto@steptoe.com, Jenny Kramer Jenny.Kramer@alston.com

PP

Folks:

It has come to our attention that you are in possession of a highly confidential document imbued with the attorney-client and work product privileges for which OneTaste and others retain the privilege. The document, which is conspicuously marked as being protected by the attorney-client privilege was contained, quite remarkably, in your Rule 16 discovery provided to the defendants in Case No. 23-146 (DG). The confidential and privileged document has been Bate Stamped ONETASTE00167250 – ONETASTE00167276. In accordance with DOJ Policy, the Rules of Professional Ethics and the law of this Circuit please immediately return to me the original and all copies of this confidential document which has been clearly marked as attorney-client privileged.

By this email, we also request that you provide us with an appropriate sworn attestation that all electronic copies, wherever located, have been destroyed. Please also disclose the name of the individual from whom your received this pilfered confidential and privileged document so that we may secure our privacy interests through any and all lawful means. Finally, please advise us as to the exact date you received this confidential and privileged document, the source of the privileged information, any chain of custody relating to the preservation of the confidential and privileged document, and any other relevant information surrounding its acquisition, treatment and maintenance within the DOJ so that we may continue to evaluate our legal options and consider any next steps we may need to take to preserve the privilege.

Your immediate attention to this critically important matter is requested. Please feel free to contact me if you have any questions or concerns.

Paul E. Pelletier, Esq.
202.617.9151

# Exhibit 2

## to Declaration of Paul Pelletier

**From:** **Jones, Shannon (USANYE) 5** Shannon.Jones@usdoj.gov
**Subject:** RE: [EXTERNAL] Rule 41(g) motion
**Date:** July 23, 2024 at 9:49 PM
**To:** Paul Pelletier pepelletier3@gmail.com

SJ

That is the only copy I am aware of.

---

**From:** Paul Pelletier <pepelletier3@gmail.com>
**Sent:** Tuesday, July 23, 2024 9:44 PM
**To:** Jones, Shannon (USANYE) 5 <SJones5@usa.doj.gov>
**Subject:** Fwd: [EXTERNAL] Rule 41(g) motion

Moving to the top of your inbox. Pep

Begin forwarded message:

**From:** Paul Pelletier <pepelletier3@gmail.com>
**Subject: Re: [EXTERNAL] Rule 41(g) motion**
**Date:** July 22, 2024 at 4:05:59 PM EDT
**To:** "Jones, Shannon (USANYE) 5" <Shannon.Jones@usdoj.gov>

Do I have them too? I only have the one they received from Kara Cooper. My understanding is that they received a version from others. Pep

On Jul 22, 2024, at 3:18 PM, Jones, Shannon (USANYE) 5 <Shannon.Jones@usdoj.gov> wrote:

Paul, I believe I have all the copies of this document. Thanks, Shannon

---

**From:** Paul Pelletier <pepelletier3@gmail.com>
**Sent:** Monday, July 22, 2024 11:37 AM
**To:** Jones, Shannon (USANYE) 5 <SJones5@usa.doj.gov>
**Subject:** Re: [EXTERNAL] Rule 41(g) motion

Shannon: can you confirm you have received from the prosecution team any and all versions of the Kara Cooper privileged document that they obtained from anyone, regardless of whether it was obtained via Cooper.

GK/KCB/DEL/NCG/SMF
F. #2019R00029

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

- against -

23-CR-146 (DG)

RACHEL CHERWITZ and
NICOLE DAEDONE,

Defendants.

– – – – – – – – – – – – – – – – – X

# JOINT REQUESTS TO CHARGE

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Gillian Kassner
Kayla Bensing
Devon Lash
Nina Gupta
Sean Fern
Assistant U.S. Attorneys
(Of Counsel)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1
REQUEST NO. 1 — General Requests **(Government Request)**........ 2
REQUEST NO. 2 — Indictment (**Government Request**) ........ 4
REQUEST NO. 3 — Knowingly and Intentionally (**Government Request**)........ 6
REQUEST NO. 4 — Conspiracy Generally (**Government Request**)........ 9
REQUEST NO. 5 — Acts and Statements of Co-Conspirators (**Government Request**) ........ 16
REQUEST NO. 6 — Forced Labor Conspiracy (**Government Request**)........ 20
REQUEST NO. 7 — Interviews of Witnesses ........ 46
REQUEST NO. 8 — Particular Investigative Techniques Not Required / All Available Evidence Need Not Be Produced........ 47
REQUEST NO. 9 — Uncalled Witness Equally Available to Both Sides (If Applicable) (**Government Request**)........ 49
REQUEST NO. 10 — Opinion of Defendant's Character (If Applicable) ........ 51
REQUEST NO. 11 — Redactions ........ 52
REQUEST NO. 12 — Uncharged Acts Considered for a Limited Purpose (If Applicable) (**Government Request**)........ 53
REQUEST NO. 12 — Impeachment by Prior Inconsistent Statement (If Applicable)........ 56
REQUEST NO. 13 — Jury to Consider Only Defendants on Trial ........ 57
REQUEST NO. 14 — Expert Testimony (if applicable) ........ 58
REQUEST NO. 15 — Lost or Destroyed Evidence (**Defense Request**) ........ 59
REQUEST NO. 16 — Improper Considerations (**Defense Request**) ........ 60
REQUEST NO. 17 — Venue (**Defense Request**)........ 62
REQUEST NO. 18 – Interest in Outcome **(Defense Request)** ........ 66
REQUEST NO. 19 – Deciding What to Believe **(Defense Request)** ........ 68
CONCLUSION........ 70

PRELIMINARY STATEMENT

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the parties respectfully jointly request that the Court include the following instructions in its charge to the jury, noting the areas where the parties were unable to reach agreement. In addition, the parties further request leave to offer additional instructions as they become appropriate during the course of the trial and reserve the right to seek amendment, revision or objections to the final requests to charge after both parties rest.

The government respectfully requests that copies of the indictment (the "Indictment") and the jury instructions be provided to the jurors during their deliberations.

**Defense Response**:

Defendants object to the jury being provided with a copy of the indictment. The indictment contains surplusage that is irrelevant to the charged offense. Fed. R. Crim. P. 7(d). Indeed, the government's indictment incorporates scandalous allegations that are not relevant to the crime charged and are inflammatory and prejudicial. *United States v. Elson,* 968 F. Supp. 900, 909 (S.D.N.Y. 1997). Although Defendants are not presently seeking to strike surplusage in the indictment, they object to providing the indictment to the jury. Reading the indictment to the jury runs the risk that the jury will construe the indictment as evidence of guilt. *United States v. Press,* 336 F. 2d 1003 1016 (2d Cir. 1964). Notably, this case involves a single charge, unlike a complex, multi-count indictment where an indictment may serve as a useful guide during deliberations. The indictment in this case is a series of conclusory allegations that serve only to distract and inflame the jury rather than help the jury organize its deliberations.

REQUEST NO. 1 — General Requests **(Government Request)**

The government respectfully requests that the Court charge the jury in its usual manner on the following subjects.

a. The Function of the Jury and Role of the Court;

b. Equality of the Parties Before the Court;

c. Burden of Proof and Reasonable Doubt;

d. Presumption of Innocence;

e. No Inference to Be Drawn from Defendant's Failure to Testify (if applicable);

f. Testimony of Defendant (if applicable);

g. Direct and Circumstantial Evidence;

h. Function of the Indictment and What Is Not Evidence;

i. Permissible Inferences Drawn from the Evidence;

j. Multiple Defendants;

f. Transcripts (if applicable);

k. Charts and Summaries;

l. Stipulations and Objections;

m. Dates Approximate;

n. Meaning of "And" in the Indictment;

o. Credibility of Witnesses and Discrepancies in Testimony;

p. Testimony of Law Enforcement Witnesses;

q. Deliberations;

r. Jury Communications with Lawyers and the Court;

s. Right to See Exhibits and Have Testimony Read During Deliberations;

t. Questioning Wisdom of Law and Basing Verdict on Sympathy or Prejudice Prohibited;

u. Punishment Not the Province of the Jury; and

s. Verdict Must be Unanimous.

**Defense Response and Additional General Requests**:

Defendant generally agrees that these instructions should be given but also reserves the right to object to the actual proposed instructions.

REQUEST NO. 2 — Indictment (**Government Request**)

The defendant is formally charged in an indictment. As I instructed you at the outset of this case, an indictment is a charge or accusation. The indictment is merely a statement of charges and not itself evidence. The Indictment in this case contains one count, and charges the Defendants with Forced Labor Conspiracy. Any verdict you return on this count must be unanimous.

**Defense Response**:

This instruction is inadequate as it fails to explain to the jury that an indictment is *not* evidence and not proof of guilt. It is evidence of nothing. In *United States v. Maxwell,* 2021 U.S. Dist. LEXIS 245288, *15 (E.D.N.Y. Dec. 19, 2021) and *United States v. Berry,* 2021 U.S. Dist. LEXIS 188664, *15 (S.D.N.Y. Sept. 25, 2021), the courts understood the importance of instructing the jury on this concept.

As set out below, Defendants propose an instruction consistent with the instruction given in *Maxwell.* There the Court instructed the jury in the following manner.

> The Defendant, Ghislaine Maxwell, has been formally charged in what is called an "indictment." As I instructed you at the outset of this trial, the Indictment is simply a charge or accusation. It is not evidence. It is not proof of Ms. Maxwell's guilt. It creates no presumption and permits no inference that Ms. Maxwell is guilty. Ms. Maxwell begins trial with an absolutely clean slate and without any evidence against her. You must give no weight to the fact that an Indictment has been returned against Ms. Maxwell.

The same instruction was given in *United States v. Berry,* 2021 U.S. Dist. LEXIS 188664, *15 (S.D.N.Y. Sept. 25, 2021). This instruction incorporates fundamental tenets of the criminal justice process, namely that an indictment is not evidence or proof, the Defendant enjoys presumption of innocence and the government bears the burden of proof.

**INDICTMENT (Defense Request)**

The defendant is formally charged in an indictment. As I instructed you at the outset of this case, an indictment is a charge or accusation. An indictment is not evidence of anything, and you should not give any weight to the fact that the defendants have been indicted

in making your decision in this case. The indictment in this case contains one count and charges the Defendants with Conspiracy to Commit Forced Labor. To convict a defendant of forced labor conspiracy, you must unanimously agree that the government has proven beyond a reasonable doubt each and every element of the offense. Any verdict you return on this count must also be unanimous.

Authority: *United States v. Maxwell,* 2021 U.S. Dist. LEXIS 245288, *15 (E.D.N.Y. Dec. 19, 2021); *United States v. Berry,* 2021 U.S. Dist. LEXIS 188664, *15 (S.D.N.Y. Sept. 25, 2021)

**Government Reply**:

The government objects to the inclusion of the defendants' proposed language: "To convict a defendant of forced labor conspiracy, you must unanimously agree that the government has proven beyond a reasonable doubt each and every element of the offense," in the Court's instruction on the Indictment. The government's proposed instruction includes that the jury's verdict must be unanimous and the Court will instruct the jury on the burden of proof, along with other instructions as appropriate, elsewhere in the jury charge.

REQUEST NO. 3 — Knowingly and Intentionally (**Government Request**)

Because the charge implicates the concepts of knowledge and intent, I will tell you now about these concepts before addressing each of the elements of the Count charged in the Indictment.

A person acts "knowingly" when she acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. Whether a Defendant acted knowingly may be proven by her conduct and by all of the facts and circumstances surrounding the case.

A person acts "intentionally" when she acts deliberately and purposefully. That is, a Defendant's act must have been the product of a conscious, objective decision rather than the product of a mistake or accident.

These issues of knowledge and intent require you to make a determination about a defendant's state of mind, something that rarely can be proved directly. A wise and careful consideration of all the circumstances before you, however, may permit you to make a determination as to a defendant's state of mind. Indeed, in your everyday affairs, you are frequently called upon to determine a person's state of mind from her words and actions in given circumstances. You are asked to do the same here.

Authority: Adapted from the charge of the Hon. Diane Gujarati, United States v. Acevedo, 21-CR-162 (DG), ECF No. 75 (E.D.N.Y.) ("Acevedo"); the charge of the Hon. Hector Gonzalez, United States v. Zottola, et al., 18-CR-609 (HG), ECF No. 550 (E.D.N.Y.) ("Zottola"); the charge of the Hon. Raymond J. Dearie, United States v. Thomas, 20-CR-01 (RJD), ECF No. 110 (E.D.N.Y.) ("Thomas"); and Sand, et al., Modern Federal Jury Instructions ("Sand"), Instrs. 3A-1, 3A-4.

**Defense Response**:

The government's proposed jury instruction as to knowledge and intent conflates the standards of knowledge and intent. As the District Courts in *Kelly* and *Raniere* understood, intent requires the government to show that the Defendants possessed a "specific intent" to do

something the law forbids. This language is completely omitted from the government's proposed objection. The government clearly seeks to mislead the jury into believing that the government need only prove some intent to *act* with purpose rather than to act with a *specific* purpose to violate a *specific* law. In the context of this case which is a conspiracy, the government's proposed instruction is an inaccurate statement of the law. *United States v. Samaria,* 239 F. 3d 228, 234 (2d Cir. 2001); *United States v. Wallace,* 85 F. 3d 1063, 1068 (2d Cir. 1996) (defining unlawful intent in conspiracies as the "specific intent to achieve the object [of the conspiracy]")

Defendants have no objection to the government's proposed language that a Defendant must act deliberately and purposefully but that statement alone is insufficient. It must be preceded by the instruction the intent must be a specific intent to do something the law forbids. (*Id.*)

**KNOWLEDGE AND INTENT (Defense Request)**

A person acts knowingly if she acts voluntarily and intentionally, not because of mistake accident or other innocent reason. A person acts intentionally if she acts with the specific intent to do something the law forbids.

These issues of knowledge and intent require you to make a determination about the defendant's state of mind, something that can rarely be proven directly. A wise and careful consideration of all the circumstances before you, however, may permit you to make a determination as to the defendant's state of mind. Indeed, in your everyday affairs, you are frequently called upon to determine a person's state of mind from her words and actions in given circumstances. You are asked to do the same here.

Authority: *United States v. Kelly,* 19-CR-286 (E.D.N.Y. Sept. 27, 2021) [Dkt. No. 303]; *United States v. Raniere,* 18-CR-204 (E.D.N.Y. Jun. 18, 2019) [Dkt. No. 728]

**Government Reply**:

The government objects to the defendants' narrowed request to explain the concepts of "knowledge and intent" to the jury. Though the defendants cite to Kelly and Raniere to support its requested charge, the instructions as to knowledge and intent were more fulsome in those charges, including, for instance, in Kelly, the instruction that a "person need not be aware of the specific law or rule that his conduct may be violating. But he must act with the specific intent to do whatever it is the law forbids." United States v. Kelly, 19-CR-286 (AMD), ECF No. 303, at 19 (E.D.N.Y.). The charge in Raniere, far from supporting the defendants' request, tracks the government's request as

to knowledge and intent, and does not mention the concept of "specific intent." See United States v. Raniere, 18-CR-204 (NGG), ECF No. 728, at 28-29 (E.D.N.Y.) ("A person acts "knowingly" when he acts intentionally and voluntarily, and not because of ignorance, mistake, accident or carelessness. Whether a defendant acted knowingly may be proved by his conduct and by all of the facts and circumstances surrounding the case."). The Court should adopt the government's proposed instruction.

REQUEST NO. 4 — Conspiracy Generally (**Government Request**)

Because the government alleges that the defendants conspired to commit forced labor, I will instruct you about the concept of conspiracies in general.

A conspiracy is a kind of criminal partnership—an agreement by two or more persons to accomplish some unlawful purpose. A conspiracy to commit a crime is an offense distinct from the underlying crime that the conspirators agreed to commit. In order to prove the crime of conspiracy, the government must establish the following two elements of the crime:

First, that two or more persons entered into the particular unlawful agreement; and second, that the defendant knowingly and intentionally became a member of the conspiracy.

The first element that the government must prove to establish the offense of conspiracy is that two or more persons entered the unlawful agreement that is charged in the Indictment. In other words, one cannot commit the crime of conspiracy by oneself. Rather, the proof must convince you that at least two persons had joined together in a common criminal scheme.

In order for the government to satisfy this element, however, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act by means of a joint plan or common design.

You may, of course, find that the existence of an agreement to disobey or violate the law has been established by direct proof. But because conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

The second element is that an individual knowingly and intentionally became a member of the charged conspiracy.

The individual's knowledge is a matter of inference from the facts proven. I instruct you that to become a member of the conspiracy, the individual need not have known the identities of each and every other member of the conspiracy, nor need she have been apprised of all of their activities. Moreover, the individual need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on her part. Furthermore, the individual need not have joined in all of the conspiracy's unlawful objectives.

In addition, a conspirator's liability is not measured by the extent or duration of her participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor parts in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that an individual's mere presence at the scene of an alleged crime does not, by itself, make her a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member. A person may know, or be friendly with, a criminal, without being a criminal herself. Mere similarity of conduct or the fact that they may have assembled together

and discussed common aims and interests does not necessarily establish membership in the conspiracy.

I also want to caution you that mere knowledge, without participation, in the unlawful plan is not sufficient. Furthermore, the fact that a person, without any knowledge that a crime is being committed, merely happens to act in a way that furthers the purposes or objectives of the conspiracy does not make that person a member. More is required under the law. What is necessary is that the individual must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, a defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering the illegal undertaking. She thereby became a knowing and unwilling participant in the unlawful agreement—that is to say, a conspirator.

Authority: Adapted from Acevedo; Thomas; Raniere.

**Defense Response:**

The instruction is misleading as it does not sufficiently explain that the jury must find that that Defendants entered into a *charged* unlawful agreement, not any unlawful agreement. Accordingly, the charged unlawful agreement should be identified in the instruction itself. Specifically, the instruction that "two or more persons entered into the particular unlawful agreement" is vague and misleading. *United States v. Ashburn,* 11-CR-303 (NGG) (E.D.N.Y. Mar. 11, 2015) [Dkt No. 425 at pgs. 27-33] As the court in *Ashburn* understood, the jury must instruct that the "particular unlawful agreement" must be the one *charged* in the indictment. In *Ashburn,* and in most conspiracy cases, the court's conspiracy instruction *identifies* the charged conspiracy. Hence, Defendants proposed language specifying the charged conduct is a more accurate statement of the law and reduces the risk that the jury will find a conspiracy based on *any* agreement it deems "unlawful" or one that simply sounds pernicious. The need for this specificity is particularly important where the conspiracy alleged spans over a decade. The evidence might show all types of implicit agreements between defendants and alleged co-conspirators that have nothing to do with the charged conspiracy. Where the government chooses to charge a broad scale conspiracy, there is a heightened need for instructions that guide the jury

on what its job is and what it is not. Thus, it is imperative that the jury be reminded that its task it to determine whether the defendants entered in *charged* unlawful agreement.

Accordingly, the instruction itself should identify the charged unlawful agreement, so the jury understands what it is being asked to decide. Defendant's proposed instruction below appropriately summarizes the charged unlawful agreement with the agreement commencing in 2009 (not 2006 as charged in the indictment) As the government seems to acknowledge in its proposed language in the forced labor instruction, there was no cognizable crime for conspiracy to commit forced labor until June 2009. Rather, section 1594(a) recognizes an "attempt" to commit forced labor but not conspiracy to commit forced labor. Any application of the conspiracy statute to conduct that preceded June 2009 would violate the *ex post facto* clause. *United States v. Monaco,* 194 F. 3d 381, 386 (2d Cir. 1999) (holding that if it is possible that a jury could convict exclusively on the pre-enactment conduct, an *ex post facto* violation would occur).

Third, the instruction incorporates cherry-picked statements of law that over-emphasize what the government is *not* required to prove, rather than what the government is required to prove thereby shifting the burden of proof to the Defendants. By including select statements that highlight what the government need not establish, the government has reduced its burden of proof. For example, Defendant objects to the paragraph that repeats the concept that evidence can be direct or circumstantial. The jury is already instructed on direct and circumstantial evidence. It is unnecessary to repeat in this instruction that government may prove its case through circumstantial evidence and then explain why direct evidence might be lacking. There is no reason why there couldn't be direct evidence of an agreement and an instruction that tells the jury that it should not expect it because "conspiracies" are innately secret is heavy-handed *and* inaccurate because this is not a case where anything was done secretly. If there was an agreement, there is no reason to believe it would not have been discussed and even video-recorded.

Fourth, as in *Ashburn,* the jury should be instructed that the government must prove that the minds of at least "two of the alleged conspirators met in an understanding." That language is not included in this instruction.

The final paragraph of the government's instruction that begins with "in sum" is redundant, confusing, contrary to the law, and finds no support in any instructions including *Acevedo.*

**CONSPIRACY GENERALLY (Defense Request)**

The Defendants are charged with conspiring to commit forced labor in violation of Section 1594(b) and 1589(a) and (b) of Title 18 of the United States Code. A conspiracy is a kind of criminal partnership, an agreement of two or more persons to commit one or more

crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed. The essence of the charge of conspiracy is an understanding or agreement between or among two or more persons that they will act together to accomplish a common objective that they know is unlawful.

In order for each Defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning in 2009 and ending in May 2018, the Defendant and at least one other person made an agreement to commit the crime of forced labor; and

Second, the Defendant knowingly and intentionally became a member of the conspiracy knowing with the intent to accomplish the unlawful purpose.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped on another. You must find that there was a plan to commit forced labor as an object of the conspiracy with all of you agreeing unanimously that the conspirators agreed to commit the offense of forced labor, and only forced labor.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a coconspirator. Similarly, a

person does not become a conspirator merely by associating with one or more persons who are conspirators, nor by merely knowing that the conspiracy exists.

You must decide whether the conspiracy charged in the indictment existed, and, if it did, who at least some of its members were. If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy existed. Similarly, if you find that any defendant was not a member of the charged conspiracy, they must find that defendant not guilty, even though that defendant may have been a member of some other conspiracy.

Adapted from: *United States v. Kartan, et al.,* 16-CR-217 (E.D. Cal. March 14, 2019) [Dkt No. 178]; *United States v. Percoco,* No. 16-CR-776 (VEC), Dkt. 516 at 21-23 (S.D.N.Y. Feb. 28, 2018); *United States v. Ashburn,* 11-CR-303 (NGG) (E.D.N.Y. Mar. 11, 2015) [Dkt No. 425]

**Government Reply**:

As an initial matter, the defendants provide no basis for objecting to the government's requested conspiracy charge, which is routinely given in this Circuit, as evidenced by the government's authority supporting the charge.

The defendants claim the government's proposed charge is misleading because it does not explain that to be found guilty, the defendants must have entered into the charged conspiracy. However, the first sentence of the government's proposed instruction states: "Because the government alleges that the defendants conspired to commit forced labor, I will instruct you about the concept of conspiracies in general." The government's proposed charge then goes on to indicate that the "first element that the government must prove to establish the offense of conspiracy is that two or more persons entered the unlawful agreement that is charged in the Indictment." Later, the instructions references "the charged conspiracy." Thus, the defendants' claim that the government's proposed charge does not "sufficiently explain that the jury must find that the Defendants entered into a *charged* unlawful agreement" is frivolous. The purpose of the proposed instruction is to explain the concept of a criminal conspiracy to a jury. This explanation is followed by the government's Request No. 6 (Forced Labor Conspiracy) which further defines and explain the charged conspiracy and its object. These inclusions address the defendants' concerns.

The defendants also claim that the instruction is flawed because it does not include that at least "two of the alleged conspirators met in an understanding." The instruction, however, includes the following statement: "What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act by means of a joint plan or common design."

The defendants also object to the final paragraph beginning with "in sum." This language is taken directly from the court's instruction in Raniere and simply attempts to plainly summarize the information conveyed throughout the instruction.

The defendants' proposed formulation is not similarly supported by precedent. In support of their proposal, the defendants cite to an out-of-district case and Percoco and Ashburn. But Percoco and Ashburn are not clear precedent for the defendants' proposed requests, as much of the defendants' proposed language is not in fact found in those requests to charge. Indeed, the charge in Ashburn largely includes the language in the government's proposed conspiracy instruction, providing yet another example supporting the government's proposed charge. See United States v. Ashburn, 11-CR-303 (NGG), ECF No. 425, at 28-32 (E.D.N.Y.).

Further, much of the defendants' proposed novel language would only serve to inject confusion into deliberations. For example, the defendants seek to have the Court charge the jury that "You must find that there was a plan to commit forced labor as an object of the conspiracy with all of you agreeing unanimously that the conspirators agreed to commit the offense of forced labor, and only forced labor." Such an instruction risks leaving the jury confused if, for example, the jury determined that the defendants conspired to commit forced labor and some other crime. The only relevant consideration for the jury is their determination of the forced labor conspiracy charge before them, and the Court should reject the defendants' attempt to create confusion.

Further, some of the defendants' proposed language misstates the law or is otherwise confusing. For example, the defendants request that the Court charge the jury with the following: "You must decide whether the conspiracy charged in the indictment existed, and, if it did, who at least some of its members were." The phrasing, for which the defendants cite no precedent in this Circuit, misstates the government's burden. As the Second Circuit has stated, to establish a conspiracy, "the Government must show that two or more persons entered into an agreement to commit the substantive offense as charged." United States v. Zhou, 428 F.3d 361, 370 (2d Cir. 2005). The government need only establish that two or more persons entered into a particular unlawful agreement, and that the defendant knowingly and intentionally became a member of it—not "who at least some of its members were." See id. Indeed, the law is clear that an individual need not have known the identities of each and every other member of the conspiracy. See, e.g., United States v. Cohen, 427 F.3d 164, 171-72 (2d Cir. 2005) ("Just as an individual need not know the identities of all coconspirators in order to be found guilty of being a member of the conspiracy, the jury need not determine the identity of all co-conspirators in order to find that the conspiracy in fact existed." (internal citations omitted)).

Finally, the defendants' objection as to a purported violation of the Ex Post Facto Clause is addressed below, in connection with the government's requests to charge the jury as to forced labor.

Accordingly, the government objects to the entirety of the defendants' proposed charge.

REQUEST NO. 5 — Acts and Statements of Co-Conspirators (**Government Request**)

A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements, and omissions of any member of the conspiracy, and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements, and omissions.

It is your function to determine whether the evidence, including the co-conspirators' declarations and statements, is credible and convincing. The burden of proving beyond a reasonable doubt that a conspiracy existed and that the defendants were members of that conspiracy remains with the government.

Authority: Adapted from Acevedo; Sand, Instr. 19-9.

**Defense Response:**

The government's request for an instruction related to "Acts and Statements of Co-Conspirators." is objectionable and unsupported by any authority, notwithstanding that a version of this instruction was used in *Acevedo.* This instruction leads to the likelihood that jurors will conclude that Defendants are responsible for every act committed by any person associated with OneTaste over the course of 12 years. As a matter of law, a juror must first decide whether the defendant was a member of the conspiracy and then they must decide whether the statements of acts of the alleged co-conspirator were made during the existence of and in furtherance of the conspiracy. *United States v. Ashburn,* 11-CR-303 (NGG) (E.D.N.Y. Mar. 11, 2015) [Dkt No. 425] *United States v. Zhong,* 16-614 (E.D.N.Y.) (AMD) [Dkt. No. 236 at pg. 16] The jury may *not* consider the statements and actions of any individual associated with OneTaste. Rather, the jury must first determine whether the individual is, in fact, a co-conspirator before they can be considered agents of the Defendants and before their statements and actions can be charged to the Defendants. Defendants object to this instruction altogether since it will invariably lead to the jury attributing all negative behavior of every OneTaste employee or associate over the course of 12 years to the defendants whether those individuals are, in fact, co-conspirators *in the charged offense.* For the instruction to pass constitutional muster, a jury must first be instructed that before the statements or actions of another can be imputed to the Defendants, it must find that the

person who made the statements or engaged in the conduct was in fact a co-conspirator *in the charged offense*. Defendants further would demand a special verdict form requiring the jury to unanimously conclude that each individual that the government claims is a co-conspirator is found to be a co-conspirator.

Moreover, for statements of unindicted conspirators to be admitted at trial, this Court must find by a preponderance of the evidence that there was a conspiracy, that the declarant was a member of the conspiracy, and that the statement was made during the course of and in furtherance of the conspiracy. *United States v. Gupta,* 747 F. 3d 111, 123 (2d Cir. 2014). Defendants have no idea what co-conspirator statements or conduct it wishes to admit but the government must identify the statements and conduct of unindicted co-conspirators specifically so that the Court can make a determination about relevancy and admissibility of those statements.

**Defense Request:**

**CO-CONSPIRATOR ACTS AND STATEMENTS (Defense Request)**

The charge against the defendants allege that they conspired to violate the forced labor statute. Because of that, I admitted into evidence certain acts and statements of other people who the government alleges were co-conspirators of the defendant.

The reason we allow this evidence has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to do something illegal, they each became an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, and statements of any member of the conspiracy and in furtherance of the purpose of the conspiracy, are deemed to be the acts of all the members, and all of the members are responsible for each other's acts, declarations, and statements. Thus, if you find beyond a reasonable doubt that the defendant was a member of a criminal conspiracy charged, then you may also consider any of the actions or statements of people you find to be members of that conspiracy. However, before you may consider the

statements of a co-conspirator in evaluating the defendant's guilt or innocence, you must first determine that the acts and statements were made during the existence, and in furtherance of the unlawful scheme. If the acts were done or the statements made by someone who was not a member of this conspiracy, or if they were not done or said in furtherance of that conspiracy, you may not consider them as evidence against the defendant.

> *Authority*: *United States v. Zhong,* 16-614 (E.D.N.Y.) (AMD) [Dkt. No. 236 at pg. 16] *United States v. Ashburn,* 11-CR-303 (NGG) (E.D.N.Y. Mar. 11, 2015) [Dkt No. 425 at pg. 33]

**Government Reply:**

The defendants claim the government's proposed request is unsupported by any authority. Not so. See e.g., Sand Instr. 19-19 ("You will recall that I have admitted into evidence against the defendants the declarations and statements of others because these declarations and statements were committed by persons who, the government charges, were also confederates or co-conspirators of the defendants on trial. The reasonably foreseeable declarations and statements of any member of a conspiracy made in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be those of all of the members. It is the jury's function to determine whether the evidence, including the co-conspirators' declarations and statements, is credible and convincing. The burden of proving beyond a reasonable doubt that a conspiracy existed and that the defendants were members of that conspiracy remains with the government.") (citing Anderson v. United States, 417 U.S. 211, 94 S. Ct. 2253, 41 L. Ed. 2d 20 (1973)); see also Raniere, 18-CR-204 (NGG), ECF 728, at 37-38 ("The reason for allowing this evidence to be received against the Defendant has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy. Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements and omissions.").

The defendants' objections misstate the language of the instruction, which provides the jury may consider reasonably foreseeable acts, declarations, statements, and omissions of any member of the conspiracy, and in furtherance of the common purpose of the conspiracy.

The defendants additionally "demand" a special verdict form requiring the jury to unanimously conclude that each individual that the government claims is a co-conspirator is found to be a co-conspirator in the charged conspiracy. The defendants cite to no precedent in this Circuit or any other for such a request. Indeed (as the defendants appear to acknowledge),

the existence of a conspiracy and the admissibility of co-conspirator statements are preliminary questions of fact that must be resolved by the district court. See Bourjaily v. United States, 483 U.S. 171, 175 (1987). "Evidence is placed before the jury when it satisfies the technical requirements of the evidentiary Rules, which embody certain legal and policy determinations." Id. The government "[does] not have to prove the identities of those named [as co-conspirators] in order to secure a conviction" of the defendants "for participating in the conspiracy alleged in the indictment." United States v. Dove, 884 F.3d 138, 147 (2d Cir. 2018) (also finding the government "was not required to demonstrate the precise details or size of the conspiracy, but only to create a permissible inference that [the defendant] was aware of his role in a larger scheme") (citing United States v. Williams, 205 F.3d 23, 33 (2d Cir. 2000)). The co-conspirators are not on trial; the defendants are.

The government does not object to the defendants' proposed formulation of the instruction, however, except that the government respectfully requests that, as did the courts in Zhong and Ashburn, the following italicized sentence be added just before the sentencing beginning "However, before you may consider the statements or acts of a co-conspirator . . .," as follows: "*This is the case even if those actions or statements were made when the defendants weren't there and without their knowledge.* However, before you may consider the statements or acts of a co-conspirator . . . ." That sentence is included in both Zhong and Ashburn; the government requests that if the defendants' formulation of this instruction is given, that it be given in its entirety.

REQUEST NO. 6 — Forced Labor Conspiracy (**Government Request**)

The Indictment charges the Defendants with conspiring to commit forced labor.

The Indictment reads as follows:

> In or about and between 2006 and May 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICOLE DAEDONE and RACHEL CHERWITZ, together with others, did knowingly and intentionally conspire to:
>
> (a) provide and obtain the labor and services of one or more persons by means of, and by a combination of means of: (i) force, threats of force, physical restraint and threats of physical restraint to a person; (ii) serious harm and threats of serious harm to a person; (iii) the abuse and threatened abuse of law and legal process; (iv) one or more schemes, plans, and patterns intended to cause a person to believe that, if he or she did not perform such labor and services, a person would suffer serious harm and physical restraint, contrary to Title 18, United States Code, Section 1589(a); and
>
> (b) benefit, financially and by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any such means, knowing, and in reckless disregard of the fact, that said venture had engaged in the providing and obtaining of labor and services by any such means, contrary to Title 18, United States Code, Section 1589(b).

To determine whether the government has proven beyond a reasonable doubt that the defendant engaged in the forced labor conspiracy charged in the Indictment, you need to know about forced labor, the crime alleged to be the purpose of the charged conspiracy. The government need not prove that the Defendants actually committed forced labor, but in order for you to find the Defendants guilty of the alleged conspiracy, the government must prove that each Defendant conspired with at least one other person to commit forced labor.

The relevant statute for the underlying crime of forced labor provides, in pertinent part:

(a) Whoever knowingly . . . obtains the labor or services of another person—by any one of, or by any combination of, the following means—

(1) by means of . . . physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint [shall be guilty of the crime of forced labor]; or

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means [I just described in subsection (a)], knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, [shall be guilty of the crime of forced labor].

There are two alternative means by which a defendant may violate the forced labor statute. In other words, the statute sets forth two alternative ways that the government can prove this crime: (1) by knowingly providing or obtaining labor or services by prohibited means; or (2) by knowingly benefitting from participating in a venture that she knew or recklessly disregarded was engaged in providing or obtaining forced labor or services by prohibited means. I will explain both of these ways of proving forced labor to you.

Under the first way of proving forced labor, the government can prove the offense of forced labor by proving each of the following three elements beyond a reasonable doubt:

First, The defendant obtained the labor or services of one or more persons;

Second, The defendant did so through one of the following prohibited means: (a) through means or threats of serious harm to, or physical restraint against, any other person; or (b) means of the abuse or threatened abuse of law or legal process; or (c) through a scheme, plan or pattern intended to cause any person to believe that non-performance would result in serious harm to, or physical restraint against, any other person; and

Third, The defendant acted knowingly.

The first element is that the defendant obtained the labor or services of another person. To "obtain" means to acquire, control, or possess, even if only for a short period. "Labor" means the expenditure of physical or mental effort. "Services" means conduct or performance that assists or benefits someone. The government does not have to prove that any person performed "work" for the defendant in the economic sense, although that would satisfy this element. Labor or services can include, but is not limited to, sexual services. All the government must prove is that any person provided labor or services as I just defined them.

As to the second element, if you find that the defendant obtained the labor or services of another person, then you must determine whether the defendant did so through one of the prohibited means, that is, either through means or threats of serious harm to, or physical restraint against, a person; through means of the abuse or threatened abuse of law or legal process; or through a scheme, plan or pattern intended to cause the person to believe that serious harm or physical restraint would result if she did not perform the labor or services required of her. In order to find that the second element has been satisfied, you must find beyond a reasonable doubt that at least one of the prohibited means I just mentioned was used to obtain any person's labor or services.

I now want to define for you some of the terms you will be considering in determining whether this second element has been satisfied. The term "serious harm" includes

both physical and non-physical types of harm, including psychological, financial, or reputational harm. A threat of serious harm, therefore, need not involve any threat of physical violence. It includes improper threats of consequences, whether physical or nonphysical, that are sufficient, under all the surrounding circumstances, to compel or coerce a reasonable person of the same background and in the same circumstances to provide, or to continue providing, labor or services, in order to avoid that harm. In considering whether a threat of serious harm would be sufficient to compel or coerce an alleged victim's services, you may also consider the defendant's conduct as well as the alleged victim's special vulnerabilities, if any. In this regard, you may find that not all persons are of the same courage or firmness. You may consider, for example, the alleged victim's age, background, physical and mental condition, experience, education, socioeconomic status and any inequalities between the alleged victim and the defendant with respect to these considerations, including their relative stations in life, among other things. Simply put, you may ask whether the alleged victim was vulnerable to pressure in some way so that the actions of the defendant, even if not sufficient to compel another person to provide labor or services, were enough to compel the alleged victim to provide labor or services.

The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

The words "scheme," "plan," and "pattern" are to be given their ordinary meanings. The scheme, plan or pattern need not involve actual threats of serious harm, but may involve any other means, including deception or psychological coercion, used to cause the victim

to reasonably believe that she or any other person would suffer serious harm if she refused to continue providing labor or services.

If you find that any of the prohibited means I mentioned earlier was used, you must then determine whether such use was sufficient to cause any alleged victim reasonably to believe that she had no choice but to provide labor or services to the defendant. In making that determination, you may consider the cumulative effect on the alleged victim of the defendant's conduct.

A few final things about this second element: To prove forced labor, the government does not need to link each of the threats allegedly made or actions allegedly taken against the alleged victim to particular labor or service tasks performed by her. If the alleged victim was threatened with or suffered certain consequences in connection with the services she rendered, either as punishment or as part of a climate of fear that overcame her will and compelled her service, that is sufficient to establish the second element of the offense of forced labor. In considering whether a defendant created a climate of fear or whether a threat would be sufficient to compel or coerce an alleged victim's services, you may consider the totality of the defendant's conduct, including the surrounding circumstances, such as an atmosphere of verbal abuse and insults, isolation, poor working and living conditions, denial of adequate food and rest, withholding of pay, or any combination of these conditions, and any other conduct or technique the defendant used to intimidate the alleged victim to compel her to provide labor or services. If that person was threatened with or suffered certain consequences in connection with labor or services she rendered, either as punishment or as part of a climate of fear that overcame her will and compelled her labor services, that may be sufficient to establish the second element of the first way of proving the offense of forced labor.

The government also need not prove physical restraint, such as the use of chains, barbed wire or locked doors, in order to establish the offense of forced labor. The fact that an alleged victim may have had an opportunity to leave is irrelevant if the defendant placed the alleged victim in such fear or circumstances that she did not reasonably believe she could leave. A victim is under no affirmative duty to try to escape.

Finally, in considering whether service performed by someone was involuntary, you are instructed that it is not a defense to the crime of forced labor that the person may have initially agreed, voluntarily, to render the service or perform the labor. If a person willingly begins service or labor, but later desires to stop, and is then forced to remain and perform the labor or services against her will by threats of serious harm, or by a scheme, plan or pattern, intended to cause her to believe that non-performance will result in serious harm to her or another person, then her service becomes involuntary. Also, whether a person is paid a salary or a wage is not determinative of the question of whether that person has been held in forced labor. In other words, if a person is compelled to labor against her will by any one of the means prohibited by the forced labor statute, such service is involuntary even if she is paid or compensated for the work.

With regard to the third element, the government must prove that a defendant acted knowingly, a concept that I have already explained to you.

As I mentioned to you, the forced labor statute sets forth an alternative way that the government can prove this crime. The second way is by proving that a defendant knowingly benefitted from participating in a venture that she knew or recklessly disregarded was engaged in providing or obtaining forced labor or services by prohibited means. The elements of the second way that the government can prove the offense of forced labor are:

First, The defendant knowingly benefited financially or by receiving anything of value from participation in a venture;

Second, The venture was engaged in providing or obtaining labor or services through any one of, or any combination of, the prohibited means that I previously identified; and

Third, The defendant knew or recklessly disregarded the fact that the venture was engaged in providing or obtaining labor or services by any of these prohibited means.

Under this second theory of forced labor, the government does not need to prove that the defendant herself engaged in providing or obtaining the labor or services of a person. The government need only prove that there was a venture that engaged in one of the prohibited means, that the defendant knew or recklessly disregarded the fact that the venture was involved in forced labor, and that she knowingly participated in some way and benefitted financially or by receiving a thing of value from that venture.

As to the first element, a "venture" is two or more persons associated in fact, whether or not their association forms a legal entity. It is sufficient to find that the defendant played any role in the venture, even if that role was minor, and even if that role was not related to actually obtaining a person's labor or services. In order to be found guilty, the defendant needs to have knowingly benefitted financially or received something of value from participation in the venture. A thing of value need not involve monetary exchange and need not have any financial component, though it can. I have already instructed you on the definition of knowingly and you should apply that instruction here.

As to the second element, I have already instructed you previously on the prohibited means of providing or obtaining labor or services. You should apply those instructions here.

As to the third element, the government must prove, beyond a reasonable doubt, that the defendant knew or recklessly disregarded the fact that the venture was providing or obtaining labor or services by any of the four prohibited means. I previously instructed you on knowledge and you should apply that definition here. "Reckless disregard" means deliberate indifference to facts that, if considered and weighed in a reasonable manner, indicate the highest probability that the venture was engaging in forced labor.

If you find that the government has met its burden of proving beyond a reasonable doubt each of the three elements of forced labor under the second way of proving forced labor, then you will have concluded that the defendant committed forced labor. The government does not need to prove both theories; however, the government must prove every element under the first theory or every element under the second theory beyond a reasonable doubt in order to prove the defendant you are considering is guilty.

I remind you that the government need not prove that the defendants actually committed forced labor, but in order for you to find the defendant you are considering guilty, the government must prove that the defendant you are considering conspired with at least one other person to commit forced labor.

The Indictment charges each defendant with Conspiracy to Commit Forced Labor, in violation of Section 1594. Title 18, United States Code, Section 1594 became law on June 21, 2009. Therefore, to convict either defendant of this count, you must find beyond a reasonable doubt that the conspiracy to commit forced labor existed on or after June 21, 2009. A defendant cannot be found guilty by you solely on evidence of acts that occurred prior to June 21, 2009.

You heard evidence that the defendants participated in conduct that predates June 21, 2009. Such evidence was introduced simply to demonstrate the conspiracy's genesis, its purpose, and its operation over time as well as explain the intent and purpose of the conspirators' later acts.

Authority

Adapted from the charges in United States v. Raniere, 18-CR-204 (NGG), ECF No. 728 (E.D.N.Y.) ("Raniere"); United States v. Kelly, 19-CR-286 (AMD), ECF No. 303 (E.D.N.Y.) ("Kelly"); United States v. Zhong, 16-CR-614 (AMD) ECF No. 236 (E.D.N.Y.); United States v. Cros-Toure, No. 4:18-CR-230 (N.D. Tex. Jan. 10, 2019), ECF No. 112 at 10 (similar limiting charge as to pre-enactment conduct given where indictment alleged a violation of 18 U.S.C. § 1594(b) from 2000 to 2016); United States v. Majeed, No. 2:21-CR-20060 (D. Kan. Sept. 16, 2024), ECF No. 475 at 34 (similar); Sand, Instr. 47A-02; see also United States v. Kaufman, 546 U.S. 1242, 1261-62 (10th Cir. 2008) (forced labor statute applies to coerced acts other than "work in an economic sense"); United States v. Ghavami, No. 10-CR-1217 (KBW), 2012 WL 2878126, at *12 (S.D.N.Y. July 13, 2012) (continuing offenses, such as conspiracy to commit wire fraud, do not violate the Ex Post Facto Clause if the criminal behavior continues beyond the effective date of the relevant statute).

**Defense Response**:

**A. Defense Objections Related § 1589(a) Portion of Instruction**

First, the instruction is objectionable as it unnecessarily repeats the language of the statute. In the paragraph describing the first element of § 1589(a), Defendants object to the statement "**Labor or services can include, but is not limited to, sexual services.**" This statement emphasizes a particular type of "labor or service" which signals to the jury that sex was used as a "labor or service" in this case. The jury should be instructed on the definition of "labor or services" without the court providing examples of "labor or services." The government is free argue to the jury that the evidence showed that "sex" was used as a "labor or service" if the evidence shows as much. The court's instruction should not help the government make its case to the jury.

Second, the paragraph defining the second element of §1589(a) misstates the definition of "serious harm" in an effort to reduce its burden of proof and turn an objective standard into a subjective one. Serious harm, for purposes of §1589(a)(2) is defined as "[a]ny harm, whether physical or nonphysical, including psychological, financial or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue to performing labor or service in order to avoid incurring that harm." *See Muchira v. Al-Rawaf,* 850 F. 3d 605,

618 (4th Cir. 2017). Section 1589 was "intended to address *serious* trafficking, or cases where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence." *Id*. The harm or threat of harm, "considered from the vantage point of a reasonable person in the place of the victim, must be 'sufficiently serious' to *compel* that person to *remain"* in her condition of servitude when she otherwise would have left. *Id*. "Part of a fair reading of statutory text is recognizing that Congress legislates against the backdrop of certain unexpressed presumptions." *United States v. Toviave,* 761 F. 3d 623, 628 (6th Cir. 2014) Section 1589, the forced labor statute, was "passed to implement the Thirteenth Amendment's [prohibition] against slavery or involuntary servitude." *United States v. Toviave,* 761 F. 3d 623, 629 (6th Cir. 2014). *See Toviave,* 761 F. 3d at 626. (describing prostitution, forced sweatshop work, and forced domestic service as "paradigmatic forced labor cases.")

Ignoring the intent of Congress and the plain language of the statute, the government asks this Court to instruct the jury that serious harm "**includes improper threats of consequences, whether physical or nonphysical**" This language finds no support in the law or the statute itself. The statute requires "threats of serious harm" not "threats of consequences." In *Muchira,* the court discusses the "threat[en] of *dire* circumstances by means other than overt violence." By changing this language, the proposed instruction dilutes the "serious harm or threats of serious harm" standard and further removes the requirement that Defendants, or a co-conspirator, either made or took action to threaten serious harm. Defendants also object to the government's language regarding "**climate of fear**" and any instruction that tells the jury that it can consider whether a "**climate of fear**" overcame the person's will. The "climate of fear" language permits the jury to hold Defendants responsible for acts of which they are not legally responsible and creates a scenario where Defendants are held "strictly liable" for the conduct of others who may or may not be co-conspirators. This paragraph is a gross misstatement of the law and again attempts to reduce the government's burden of proving threats of *serious* harm.

Importantly, there is nothing improper about threatening adverse consequences. For example, the First Amendment's religion clause permits a church to warn that it will stop associating with members who do not act in accordance with church doctrine. *Headley v. Church of Scientology, Int'l,* 687 F. 3d 1173,1180 (9th Cir. 2012). The government's proposed instruction conflates "improper threats or coercion and permissible warnings of adverse but legitimate consequences." *Id. See also United States v. Bradley,* 390 F. 3d 145, 151 (1st Cir. 2004).

Moreover, throughout the government's proposed instruction, the government removes the word "serious" from "harm," misleading the jury into believing that any threat of "harm" no matter how inconsequential is sufficient. This is not the law. The threat of harm must be a serious one. By reducing the threat of "serious harm" required by the statute to simple "consequences," the government is afforded free reign to convert any employment dispute over wages into a forced labor case.

Defendants strongly object to the following proposed language which is inconsistent with the statute's definition of "serious harm." "**you may also consider the defendant's conduct as well as the alleged victim's special vulnerabilities, if any.**" and "**Simply put, you may ask whether the alleged victim was vulnerable to pressure in some way so that the actions of the**

**defendant, even if not sufficient to compel another person to provide labor or services, were enough to compel the alleged victim to provide labor or services**." The forced labor statute states quite the opposite. Serious harm contains a "reasonable person" standard, not a specific person with special vulnerabilities. Contrary to the proposed language, the jury must find that the defendant's actions are sufficient to compel *a reasonable person.* 18 U.S.C. § 1589(c)(2). The "serious harm" definition is unquestionably an objective one and does not permit the jury to consider the specific vulnerabilities of an individual.

Defendants object to any instruction regarding "abuse or threatened abuse of law or legal process" unless there is actually evidence that Defendants used the legal process in a manner "for which the law was not designed." The mere threat of litigation is not an abuse of the legal process. The government's discovery fails to show any evidence whatsoever that Defendants have used the legal process in a manner "for which the law was not designed." **To be clear, Defendants object to any instruction related to this theory but proposes language below to the extent the Court decides to instruct pursuant to this theory.**

Defendants object to the paragraph that instructs that to prove forced labor "**the government does not need to link each of the threats allegedly made or actions allegedly take against the alleged victim to particular labor or service tasks performed by her . . .**" This Court should instruct the jury with the "by means of" language proposed in Defendants' instruction where the statute requires the government to prove that the prohibited means *caused* the person to provide the labor or services. To sustain a conviction under 18 U.S.C. § 1589, it is not enough that there be a connection between unlawful means of the defendant and the labor or services that person provides, the means must *cause* the person to provide those services. *United States v. Kalu,* 791 F. 3d 1194, 1211 (10th Cir. 2015).

Defendants further object to the paragraph that instructs "**the government also need not prove physical restraint, such as the use of chains, barbed wire or locked doors, in order to establish the offense of forced labor. The fact that an alleged victim may have had an opportunity to leave is irrelevant if the defendant placed the alleged victim in such fear or circumstances that she did not reasonably believe she could leave. A victim is under no affirmative duty to try to escape."** This language is inappropriate and inapplicable where no evidence exists to suggest that any person's physical liberty was restrained in any way either through physical or non-physical means. If this Court includes this language, it must use the language proposed in Defendant's instruction which makes it clear that the instruction references physically "leaving" or "escaping" captivity – not merely refraining from associating with an organization.

Defendants object to the portion of the instruction that begins with the words "a few final things about this second element . . ." The language offered by the government is heavy-handed and designed to reduce the government's burden of proof, confuse the jury and vitiate the government's duty to prove that Defendants acted with the required mental state

**B. <u>Defense Objection to § 1589(b) Portion of Instruction</u>**

At the outset, the court should not instruct the jury in connection with § 1589(b) as this provision was not in effect until 2009. Thus, if a jury were able convict Defendants for conspiring to violate § 1589(b) based on pre-enactment conduct, an Ex Post Facto violation would occur. *Monaco, supra.* The government proposes language to address this Ex Post Facto problem. The language may resolve the issue but should be incorporated at the beginning of the instruction.

Additionally, as a matter of law, Defendants cannot be guilty of conspiring to violate § 1589(b) where conspiracy requires the government to prove that Defendants acted with a specific intent to commit the offense of forced labor but § 1589(b) states that a Defendant can commit the crime of forced labor through a venture with a reckless state of mind. This instruction all but ensures that Defendants can be convicted for merely acting recklessly even though conspiracy requires a higher *mens rea*. A defendant cannot agree to commit act recklessly. As such, Defendants simply cannot, as a matter of law, conspire to violate § 1589(b) and that alternative instruction must be excised from the instruction altogether.

In *United States v. Feola*, the Supreme Court considered requisite mental states for conspiracies involving offenses with "result" and "attendant fact" elements and held that no enhanced mental state for an attendant fact is required to sustain a conspiracy to assault a federal officer conviction. 420 U.S. 671, 693–94 (1975). As applied to the facts of that case, the Court held that individuals convicted of conspiracy to assault a federal officer need not have known that their victim was a federal officer. *Id.* at 695–96. It was sufficient that the defendants knowingly conspired to assault someone. In other words, "the parties to the conspiracy agreed to commit an act that was criminal, regardless of such extraneous but jurisdictionally fascinating factors as who the victim happened to be." *United States v. Miltof*, 165 F. Supp. 2d 558, 567 (S.D.N.Y. 2001) (discussing *Feola* and statutes with similar "attendant fact" elements). Importantly, in that case, the act of assault was itself a criminal act; it was not converted from innocent act to criminal act by virtue of the "attendant fact."

Critically, the *Feola* Court explicitly left open the question of "whether it is fair to punish parties to an agreement to engage intentionally in apparently innocent conduct where the unintended result of engaging in that conduct is the violation of a criminal statute." *Feola,* 470 U.S. at 691. Here, the structure of the forced labor conspiracy statute allows for a conviction where Defendants agreed to benefit from participating in *some* venture, which, on its face, constitutes "apparently innocent" conduct, *id.*, without knowledge of an essential objective of the conspiracy: violation of the prohibition on forced labor.

The related sex trafficking statute underscores this point. A conspiracy to commit sex trafficking requires that "[o]ne or more persons knowingly and willfully conspire[ed] and agreed together with each other to," *United States v. Vanier*, No. S1 18-CR-873, 2021 WL 5989773, *10 (S.D.N.Y. Dec. 17, 2021), knowingly

> (2) benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

> knowing . . . or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished . . . .

18 U.S.C. §§ 1594(c), 1591(b).

The "result" element of the sex trafficking statute is that a defendant must knowingly benefit from participation in a venture that caused a commercial sex act by prohibited means. The "attendant fact" element is the fact that the defendant can know or be in reckless disregard of the fact that the primary offender caused a commercial sex act by prohibited means—by force, threat of force, or with a victim under the age of 18.

Analogous to the assault of the federal officer statute, courts have held that a reckless mental state may support the "attendant fact" element of a sex trafficking conspiracy. *United States v. Anthony*, 942 F.3d 955, 961 n.1 (10th Cir. 2019); *United States v. Wilson*, No. 10-60102, 2010 WL 2991561, *5 (S.D. Fla. July 27, 2010); *see also United States v. Groce*, 891 F.3d 260, 268 (7th Cir. 2018) ("Two states of mind support sex trafficking: knowledge or reckless disregard."). That is to say that a member of a sex trafficking conspiracy who agreed to benefit from a commercial sex act need not have known that the primary offender accomplished the commercial sex act by prohibited means.

In the sex trafficking context, just as in the *Feola* case, without the "attendant fact" element—meaning, without the use of force, the threat of force, or victim being under the age of 18—a crime still occurs: prostitution. In the assault of a federal officer context, without the attendant fact of the victim being a federal officer, a crime still occurs: assault. A defendant who conspired to benefit from a commercial sex act or to assault someone without the attendant facts has still conspired to commit a crime. In other words, no conspirators agreeing to benefit from a commercial sex act or from assaulting someone, regardless of their awareness of the requisite attendant facts, are engaging in "apparently innocent conduct." *Feola*, 420 U.S. at 690.

In contrast here, without forced labor, there is ostensibly no illegal conduct involved. Under the Forced Labor statute, any agreement to benefit from a venture without the attendant fact is simply the operation of any normal business. The act of two or more people agreeing to start a for-profit business that involves hiring others to perform labor is, plainly, "apparently innocent conduct." It is only the knowledge that this labor is to be forced that converts it into a potentially criminal act. Indeed, in the civil enforcement context, a forced labor conspiracy requires an agreement to "violate the prohibition on forced labor." *Paguirigan v. Prompt Nursing Emp't Agency LLC*, 286 F. Supp. 3d 430, 440 (E.D.N.Y. 2017) (citing *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 330 (E.D.N.Y. 2014)). Without knowledge of forced labor occurring, Defendants cannot have conspired to benefit from such labor. To hold otherwise is the equivalent of saying that Defendants agreed to benefit from apparently innocent conduct with the unintended result of engaging in criminal conduct. *Feola*, 420 U.S. at 691.

One cannot conspire to cause an unintended result. *Mitlof*, 165 F. Supp. 2d at 563–64 (citing Robert La Fave, Criminal Law, Section 580–581, 583 (3d ed. 2000)). Meaning that "[w]hen

recklessness or negligence suffices for the actor's culpability, with respect to a result element of a substantive crime, as for example when homicide through negligence is made criminal, there could not be a conspiracy to commit that crime." *Id.* Similarly, the unintended result of benefitting from forced labor—based in a lack of awareness of forced labor—cannot support a conspiracy conviction when the underlying conduct without that attendant fact is not a crime.

"The gist of the crime of conspiracy . . . is the agreement . . . to commit one or more unlawful acts." *United States v. Jones*, 482 F.3d 60, 72 (2d Cir. 2006) (quoting *Braverman v. United States*, 317 U.S. 49, 53 (1942)). Without awareness of the attendant fact of forced labor, there could be no unlawful agreement to benefit from forced labor in violation of Section 1594(b) because Defendants would not have known the essential objective of the conspiracy—an agreement to commit an unlawful act. Therefore, a jury instruction that allows for a forced labor conspiracy conviction based on unknowing, reckless conduct violates Due Process.

**FORCED LABOR – ELEMENTS (Defense Request)**

In order to determine whether Defendants committed the offense of forced labor conspiracy, you must understand the offense of forced labor, Although the government need not prove that Defendants actually committed forced labor, but the government must prove beyond a reasonable doubt that each Defendant conspired with one other person to commit forced labor. You need to know about the crime of forced labor.

The relevant statute for the underlying crime of forced labor provides, in pertinent part:

Whoever knowingly . . . obtains the labor or services of a person –

(1) by means of threats of serious harm to, or physical restraint against, that person or another person;

(2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or

(3) by means of the abuse or threatened abuse of law or the legal process.

To prove forced labor, the government must prove beyond a reasonable that:

<u>First:</u> The defendant obtained the labor or services of one or more persons; and

Second: The defendant did so through: (a) threats of serious harm, or physical restraint against that person or persons; or (b) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or (c) by means of the abuse or threatened abuse of law or the legal process; and

Third: The Defendant acted knowingly.

18 U.S.C. § 1589 (2006).

In connection with the first element: The word "obtain" means to acquire, to procure or to success in gaining the possession of something as a result of some plan, endeavor or general course.

The word "labor" means work or performance of any particular tasks or set tasks, and it includes any form of physical or mental effort to exertion to perform such work or tasks.

The word "services" means any conduct, work or duty performed for the benefit of another person or thing.

In connection with the second element: The term "physical restraint" means confinement by force and against the will of the alleged victim.

The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial or reputational harm, that is, sufficiently serious, under all surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

In determining whether a particular type or certain degree of threatened harm was sufficient to obtain each alleged victim's labor or services, you should consider that victim's

individual circumstances, including each individual's age, intelligence, education, experience, background, social isolation, social status, and any reasonable means of escape or terminating the relationship. The defendant must intend that the person believe that serious harm would befall one who refused to work. This distinction is important, because it means that the government must do more than prove that a specific witness felt like he or she was facing a threat of serious harm from a Defendant. Instead, the government must prove that the threat of serious harm was sufficient that a reasonable person, albeit one with the same background and circumstances as the actual witness, would feel sufficient pressure to remain in a situation where their labor was forced. In determining whether the defendant made a threat of serious harm that could reasonably be believed by the witness, you should consider the witness's particular station in life, physical and mental condition, age, education, training, experience, and intelligence. A threat of serious harm must be sufficient in kind or degree to completely overcome the will of an ordinary person having the same general station in life as that of other witnesses who participated in OneTaste, causing a reasonable belief that there was no reasonable choice except to provide labor and services to a Defendant. You must determine whether the alleged victim's will was completely overcome at the time she provided the service or labor, not whether she later believed in hindsight that her will was overcome.

In addition, when considering whether a Defendant made "threats of serious harm" to the witness, you should consider that (1) adverse but legitimate consequences or threats of adverse but legitimate consequences incident to an employment relationship do not constitute serious harm or threats of serious harm. Also, in consideration of whether the Defendants conspired to make threats of serious harm to any individual, you should consider whether such alleged threats were covered by the First Amendment to the Constitution, which permits

individuals who no longer wish to associate with someone, to lawfully make that choice to not associate.

The words "scheme," "plan," and "pattern" are to be given their ordinary meanings. A "scheme" is a plan or program of action, especially a crafty or secret one. A "plan" is a method for achieving an end or a detailed formulation of a program of action. A "pattern is a form or model proposed for imitation or a discernible coherent system based on the intended interrelationships of component parts.

The term "abuse or threatened abuse of law or legal process," means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

In terms of the third element that the government must prove beyond a reasonable doubt that the defendant acted knowingly.

An act is done knowingly when it is done purposefully and intentionally, as opposed to mistakenly or inadvertently.

A few final words about the offense of forced labor.

To prove forced labor, the government does not need to prove physical restraint – such as the use of chains, barbed wire or locked doors – in order to establish the offense of forced labor. The fact that a person may had had an opportunity to escape her confinement is irrelevant if a defendant placed her in such fear or circumstances that she did not reasonably believe she was free to leave her confinement. A victim who has been placed in such fear or circumstances is under no affirmative duty to try to escape. On the other hand, if the person felt free to leave his or her confinement, the second element of forced labor as described above cannot be satisfied.

In considering whether service performed by someone was involuntary you are instructed that it is not a defense to the crime of forced labor that the person may have initially agreed, voluntarily, to render the service or perform the work. If a person willingly begins work, but later desires to withdraw, and is then forced to remain and perform work against her will by force, threats of serious harm, or abuse of law, or by scheme, plan or pattern, intended to cause her believe that non-performance will result in serious harm to her or another person then her service becomes involuntary.

If you find that any of the prohibited means I mentioned earlier was used, you must then determine whether such use was sufficient to cause any alleged victim reasonably to believe that she had no choice but to provide labor or services to the defendant. In making that determination, you may consider the cumulative effect on the alleged victim of the defendant's conduct. However, as stated above you must also consider whether such effect on the witness was reasonable, and whether the conduct of the Defendant was used as a means of obtaining labor, or for some other reason.

*United States v. Kartan, et al.,* 16-CR-217 (E.D. Cal. March 14, 2019) [Dkt No. 178]
*United States v. Marcus,* 05-CR-457 (E.D.N.Y. Dec. 21, 2007) [Dkt. No. 202]
*United States v. Calimlin,* 538 F. 3d 706, 711 (7th Cir. 2008)
*United States v. Zhong*, 26 F.4th 536, 550 (2d. Cir. 2022)("Whether an employer's threatened consequences are 'legitimate' and therefore do not qualify as 'serious harm' will depend on the surrounding circumstances in each case" and a "decision whether to give an 'adverse but legitimate' consequences instruction therefore lies within the district court's discretion.". *See also*, *Muchira*, 850 F.3d at 624 and *Headley v. Church of Scientology*, 687 F.3d 1173, 1180 (9th Cir. 2012) (The Court must distinguish between improper threats or coercion and permissible warnings of adverse but legitimate consequences).

**Government Reply**:

The defendants object to the government's proposed instruction in two parts: first, as to the instructions related to Section 1589(a) and then as related to Section 1589(b). The defendants also propose their own instruction for the Court's consideration. As discussed below, the Court should reject the defendants' specific objections, which variously misstate the law or

the language of the proposed instruction. Furthermore, as discussed below, the defendants' proposed charge should be rejected in its entirety.

**A. Government Reply to Defense Objections Related § 1589(a) Portion of Instruction**

The defendants object to the inclusion of the phrase "Labor or services can include, but is not limited to, sexual services." This sentence is drawn directly from the court's instructions in Kelly. The defendants have no legal objection to the inclusion of the sentence; they argue instead that it constitutes improper vouching of the government's evidence. Not so. To the contrary, the inclusion of such language is necessary to clarify for the jury that certain services which might appear as if they would not qualify due to their potentially illegal nature—such as sexual services—do constitute labor and services under the statute.

The defendants additionally object to the statement that serious harm "includes improper threats of consequences, whether physical or nonphysical." This sentence is also drawn directly from the court's instructions in Kelly. In their objection, the defendants ignore the remainder of the instruction, which provides that serious harm "includes improper threats of consequences, whether physical or nonphysical, *that are sufficient, under all the surrounding circumstances, to compel or coerce a reasonable person of the same background and in the same circumstances to provide, or to continue providing, labor or services, in order to avoid that harm.*" This is entirely consistent with the requirements set out under the statute and does not run afoul of the First Amendment. Indeed, in support of their objection, the defendants indicate that the government is "conflat[ing] improper threats or coercion and permissible warnings of adverse but legitimate consequences," supra at 28. The argument makes no sense, as the government's own proposed instruction also uses the phrase "improper threats," just as the defendants acknowledge is appropriate.

The defendants object to the inclusion of the phrase "climate of fear." This sentence is also drawn directly from the court's instructions in Kelly. The defendants argue that the inclusion of such language effectively imposes strict liability on the defendants for the actions of others who "may or may not be co-conspirators." That is not the case. The proposed instruction specifically instructs the jury to consider "whether a defendant created a climate of fear" based on consideration of "the totality of the defendants' conduct, including the surrounding circumstances . . ." The instruction is necessary to make clear to the jury that implied threats that exist based on the totality of the surrounding circumstances, as well as direct threats, can both support a finding of criminal liability.

The defendants object to the use of the term "harm" without inclusion of the adjective "serious." The government submits that the context provided for the term "harm" includes sufficient references to the word "serious" to render the standard clear. See, e.g., Government Proposed Instruction No. 6 ("The term "serious harm" includes both physical and non-physical types of harm, including psychological, financial, or reputational harm" . . . "A threat of serious harm, therefore, need not involve any threat of physical violence. It includes improper threats of consequences, whether physical or nonphysical, that are sufficient, under all the surrounding circumstances, to compel or coerce a reasonable person of the same background

and in the same circumstances to provide, or to continue providing, labor or services, in order to avoid that harm.").

The defendants object to the language providing, "you may also consider the defendant's conduct as well as the alleged victim's special vulnerabilities, if any," and "[s]imply put, you may ask whether the alleged victim was vulnerable to pressure in some way so that the actions of the defendant, even if not sufficient to compel another person to provide labor or services, were enough to compel the alleged victim to provide labor or services" and assert that the "serious harm" definition "is unquestionably an objective one and does not permit the jury to consider the specific vulnerabilities of an individual." The defendants are incorrect as a matter of law. The appropriate standard is hybrid. 18 U.S.C. § 1589(c)(2) (defining the term "serious harm" as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person *of the same background and in the same circumstances* to perform or to continue performing labor or services in order to avoid incurring that harm."). The government's proposed formulation also includes language making clear the objective component, including with reference to "a reasonable person," and is consistent with Second Circuit law.

The defendants object to any instruction regarding "abuse or threatened abuse of law or legal process" absent relevant evidence on this subject. The government respectfully proposes evaluating at the charging conference whether inclusion of this instruction is appropriate in light of the evidence presented at trial.

The defendants object to the instruction that "the government does not need to link each of the threats allegedly made or actions allegedly take against the alleged victim to particular labor or service tasks performed by her . . ." This section is drawn directly from the Court's instructions in Kelly and Raniere. The defendants argue that the government is required to establish that the unlawful means employed by the defendants *caused* victims to perform labor and services, citing United States v. Kalu, 791 F. 3d 1194, 1211 (10th Cir. 2015). However, the remainder of the government's proposed instruction makes clear that if the victim was "threatened with or suffered certain consequences in connection with the services she rendered, either as punishment or as part of a climate of fear that overcame her will *and compelled her service,* that is sufficient to establish the second element of the offense of forced labor." The language "and compelled her service" makes clear that the unlawful means compelled the performance of labor and services.

The defendants further object to the paragraph providing that "the government also need not prove physical restraint" based on the argument that there is no evidence to suggest that any person's physical liberty was restricted in this case. However, it is precisely for that reason that the language is necessary. This section is drawn directly from the district courts' instructions in Kelly and Raniere and the defendants cite no legal basis to exclude it.

The defendants object to the paragraph beginning with "A few final things about this second element," vaguely claiming that it is "heavy-handed and designed to reduce the government's burden of proof" and confuse the jury. However, the defendants fail to specify the problematic language and how it reduces the government's burden and confuses the jury. The

government respectfully submits that such language, which is generally consistent with the Court's instructions in Kelly and Raniere, is appropriate.

### B. Government Reply to Defense Objections Related § 1589(b) Portion of Instruction

The defendants raise two primary arguments in connection with Section 1589(b): first, that the Court should not charge the jury on Section 1589(b) because this provision was not in effect between 2006 and 2008 (during the first two years of the charged conspiracy); and second, because this section contains a conflicting reckless component. The Court should reject both arguments.

#### 1. The Court Should Charge the Jury on Section 1589(b)

The relevant statute, the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (the "TVPRA"), took effect on June 21, 2009. See Pub. L. No. 110-457, 122 Stat. 5044 (2008). The TVPRA codified two provisions relevant to the Indictment. First, the TVPRA modified 18 U.S.C. § 1589(a) to enumerate additional, specific means by which a defendant can violate the statute. See id. at 5068. Second, the TVPRA modified 18 U.S.C. § 1594 by creating the criminal offense of conspiracy to violate § 1589. See id. at 5070. As the Government expects to prove at trial, the charged conspiracy both predates and post-dates the TVPRA.

The Ex Post Facto Clause prohibits Congress from passing a law that "(1) makes an act a crime that was legal when committed; (2) make a crime greater than it was when it was committed; (3) increases the punishment for a crime after it has been committed; or (4) deprives the accused of a legal defense that was available at the time the crime was committed." United States v. Harris, 79 F.3d 223, 228 (2d Cir. 1996). The Ex Post Facto Clause's provisions extend to judicial proceedings as a matter of due process. See United States v. Marcus, 560 U.S. 258, 264 (2010); Harris, 79 F.3d at 228-29.

"[I]t is well-settled that when a statute is concerned with a continuing offense," such as conspiracy, "the Ex Post Facto clause is not violated by application of a statute to an enterprise that began prior to, but continued after, the effective date of the statute." United States v. Monaco, 194 F.3d 381, 386 (2d Cir. 1999); see also United States v. Mermelstein, 487 F. Supp. 2d 242, 253 (E.D.N.Y. 2007) (continuing offenses, such as health care and bank fraud, do not violate the Ex Post Facto Clause if the criminal behavior continues beyond the effective date of the relevant statute); United States v. Ghavami, No. 10-CR-1217 (KBW), 2012 WL 2878126, at *12 (S.D.N.Y. July 13, 2012) (same, as to conspiracy to commit wire fraud); Rivera v. United States, No. 09-CR-619 (JMA), 2024 WL 3985677, at *19 (E.D.N.Y. Aug. 29, 2024) (same, as to forced labor conspiracy).

No due process violation occurs unless a defendant is convicted solely on conduct prior to the enactment of the applicable criminal statute. See Marcus, 560 U.S. at 264. Thus, conduct that occurred prior to the date of the charging statute's enactment is admissible for limited purposes only. "When it is shown that a conspiracy straddled the enactment of a statute, the government may introduce pre-enactment evidence to demonstrate the conspiracy's genesis,

its purpose, and its operation over time." Monaco, 194 F.3d at 386. Pre-enactment evidence is also admissible "to prove the intent and purpose of the conspirators' later acts." United States v. Ferrara, 458 F.2d 868, 874 (2d Cir. 1972).

Ultimately, "[a] conviction for a continuing offense straddling enactment of a statute will not run afoul of the Ex Post Facto clause unless it was possible for the jury, following the court's instructions, to convict exclusively on pre-enactment conduct." Monaco, 194 F.3d at 386 (emphasis in original). In that regard, carefully crafted limiting instructions, which can eliminate the risk that a jury will convict solely based on pre-enactment conduct, are "a first line of defense against the risk of unfair prejudice." Ghavami, 2012 WL 2878126, at *13; see also Marcus, 560 U.S. at 263-64 ("The error at issue in this case created a risk that the jury would convict respondent solely on the basis of conduct that was not criminal when the defendant engaged in that conduct. A judge might have minimized, if not eliminated, this risk by giving the jury a proper instruction.").

The defendants' argument that the government's proposed jury instructions violate the Ex Post Facto Clause fail because the charged conspiracy straddled the enactment of the relevant portions of 18 U.S.C. §§ 1589 and 1594, as is proper. Harris, 79 F.3d at 229 ("It is well settled that when a statute is concerned with a continuing offense, the Ex Post Facto Clause is not violated by application of a statute to an enterprise that began prior to, but continued after, the effective date of the statute."); United States v. Duncan, 42 F.3d 97, 104 (2d Cir. 1994) (stating that "according to our precedents, continuing offenses such as conspiracy . . . do not run afoul of the Ex Post Facto Clause if the criminal offenses continue after the relevant statute becomes effective"). Because conspiracy is a continuing offense, the Indictment does not violate the Ex Post Facto Clause: the Indictment alleges a multi-year conspiracy that predated the TVPRA and continued long after its enactment. As the government expects to demonstrate at trial, the conspiracy continued long after June 21, 2009. Consequently, the government's proposed jury instructions as to §§ 1589 and 1594 are proper.

Nonetheless, in light of the defendants' objections, the government added a proposed limiting instruction at the end of the charge that, to convict the defendants, it must find that the conspiracy continued after June 21, 2009, during the post-enactment period alleged in the Indictment in order to eliminate any risk that the jury's verdict could be based on pre-enactment conduct. See Ghavami, 2012 WL 2878126, at *13; Marcus, 560 U.S. at 263-64. The portion of the government's proposed instruction reads:

> The Indictment charges each defendant with Conspiracy to Commit Forced Labor, in violation of Section 1594. Title 18, United States Code, Section 1594 became law on June 21, 2009. Therefore, to convict either defendant of this count, you must find beyond a reasonable doubt that the conspiracy to commit forced labor existed on or after June 21, 2009. A defendant cannot be found guilty by you solely on evidence of acts that occurred prior to June 21, 2009. You heard evidence that the defendants participated in conduct that predates June 21, 2009. Such evidence was introduced simply to demonstrate the conspiracy's genesis, its purpose, and its operation

> over time as well as explain the intent and purpose of the conspirators' later acts.

See Government Proposed Instruction No. 6.

**2. The Court Should Reject the Defendants' Recklessness Argument**

The defendants' claim that they cannot be guilty of conspiring to violate 18 U.S.C. § 1589(b) because it contains a recklessness component fails because Second Circuit case law squarely supports that a defendant can willfully join a conspiracy while recklessly disregarding the object of that conspiracy.

In United States v. Lange, 834 F.3d 58, 76 (2d Cir. 2016), the Second Circuit held that "[o]n a charge of conspiracy, the Government must prove (1) knowing participation or membership in the scheme charged and (2) some knowledge of the unlawful aims and objectives of the scheme." Id. And though conscious avoidance "may not be used to support a finding as to the former, i.e., intent to participate in a conspiracy, [] it may be used to support a finding with respect to the latter, i.e., knowledge of the conspiracy's unlawful goals." Id. (citing cases). The Second Circuit has thus clearly held that although joining an agreement to commit an illegal object requires knowledge or intent, the mens rea of the illegal object itself can be satisfied through conscious avoidance or its equivalent—here, reckless disregard. Compare supra at 26 (proposing jury instructions defining "reckless disregard" as meaning "deliberate indifference to facts that, if considered and weighed in a reasonable manner, indicate the highest probability that the venture was engaging in forced labor"); with Lange, 834 F.3d at 76 (defining "conscious avoidance" as "that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact").

For example, a defendant can conspire to commit wire and securities fraud where he consciously avoids accessing material nonpublic information to trade on the stock market. See United States v. Khalupsky, 5 F.4th 279, 297 (2d Cir. 2021) (holding the same, and specifically holding that "conscious avoidance may satisfy the defendant's knowledge of the conspiracy's unlawful goals," even where "it may not be used to support the defendant's prerequisite knowing participation or membership in the scheme charged"). Here, the defendants can conspire to commit forced labor by knowingly benefiting from participation in a venture engaged in forced labor, either knowing or in reckless disregard of the venture's engagement in forced labor. 18 U.S.C. §§ 1589; 1594 (criminalizing conspiring to violate 18 U.S.C. § 1589, thus inclusive of 1589(b)).

Thus, far from "all but ensuring that Defendants can be convicted for merely acting recklessly even though conspiracy requires a mens rea," the government's proposed jury instructions as to conspiracy make it clear that the defendants must have "knowingly and intentionally" become members of the conspiracy entered into an agreement to accomplish its "unlawful purpose." See supra at 9. That the illegal object itself—here, forced labor as prohibited by 18 U.S.C. § 1589(b)—can itself be satisfied through reckless disregard does not negate in any way what the jury must find as to conspiracy.

The cases cited by the defendants support this conclusion. In United States v. Feola, for example, the Supreme Court analyzed cases in which it repeatedly "declined to require a greater degree of intent for conspiratorial responsibility than for responsibility for the underlying substantive offense." 420 U.S. 671, 688 (1975). Feola left open the question of "whether it is fair to punish parties to an agreement to engage intentionally in apparently innocent conduct where the unintended result of engaging in that conduct is the violation of a criminal statute"—the example being running a traffic light "of whose existence one is ignorant." Id. at 691. The defendants urge that 1589(b)'s proscription of "knowingly benefit[ting] . . . from participation in a venture" is akin to "apparently innocent conduct" and "simply the operation of any normal business." See supra at 30 (defendants arguing that "the structure of the forced labor conspiracy statute allows for a conviction where Defendants agreed to benefit from participating in some venture, which, on its face, constitutes 'apparently innocent' conduct"). But the defendants ignore the text of 18 U.S.C. § 1589(b), which does not just prohibit knowingly benefitting from any venture or "normal business," but rather, prohibits knowingly benefiting from a venture that has engaged in forced labor and, thus, is "in and of [itself a] criminal act[]." United States v. Mitlof, 165 F. Supp. 2d 558, 566 (S.D.N.Y. 2001) (citing cases). That the object of the defendants' conspiracy requires that the defendants knowingly benefit from that criminal venture, knowing or recklessly disregarding that the venture engaged in forced labor, is precisely the type of knowledge of the conspiracy's unlawful goals that the Second Circuit has held can be satisfied through conscious avoidance or its equivalent and neither runs afoul of Feola or Mitlof.

Indeed, the defendants' arguments as to 18 U.S.C. § 1591 make little sense, as that statute makes plain that recklessness wholly satisfies the criminal aspect of that charge. Specifically, 18 U.S.C. § 1591(b) prohibits "knowingly benefitting" . . . from participation in a venture" that has "recruite[d], entice[d] . . . or solicit[ed] by any means a person" "knowing . . . or in reckless disregard of the fact, that means of force, threats of force, fraud [and] coercion . . . will be used to cause the person to engage in a commercial sex act." Id. Thus, the elements of the offense, as defined by Sand, are (1) knowingly recruiting, enticing, or soliciting a person by any means (not inherently criminal); (2) knowing or recklessly disregarding that force, fraud, or coercion would be used with respect to that person (criminal, but proved with reference to recklessness); (3) that the defendant knew or was in reckless disregard of the fact that the person would be engaged in a commercial sex act (criminal, but proved with reference to recklessness); and (4) that the defendant's conduct was in or affecting interstate or foreign commerce. Sand, Instr. 47A.03.

Accordingly, instructing the jury as to 18 U.S.C. § 1589(b) is appropriate and, indeed, required in light of Congress's decision to criminalize conspiracy to commit the same and binding Second Circuit case law making plain that recklessness may be used to support a finding with respect to knowledge of a conspiracy's unlawful goals.

## C. Government Reply to Defense's Proposed Forced Labor Charge

The defendants' proposed request to charge should be rejected in its entirety, as it omits certain relevant statutory language, amends the definitions of various relevant statutory language, and propose additional language unsupported by the precedent to which they cite.

The defendants' citations do not support their proposed requests. For instance, the defendants rely on United States v. Marcus, 05-CR-457 (ARR), ECF No. 202, at 19-23 (E.D.N.Y.). However, the instructions in Marcus differ from the defendants' proposed instructions in various ways, including in the definition of "obtain"; in not providing the defendants' proposed definitions of "labor," "services" or "physical restraint"; and in not including the defendants' proposed language that "if the person felt free to leave his or her confinement, the second element of forced labor as described above cannot be satisfied." Further, Marcus includes much of the government's proposed language that the defendants have omitted from their proposed requests to charge, such as, among other things, that "whether a person is paid a salary or a wage is not determinative of the question of whether that person has been held in forced labor,"; and that "[t]o prove forced labor, the government does not need to link each of the threats allegedly made or actions allegedly taken against the alleged victim to particular labor" performed by her. Id.

Nor do the defendants' out-of-Circuit precedent provide additional significant support for the defendants' proposed formulation, as much of the requested language still cannot be located in those requests. See United States v. Kartan, 16-CR-217, ECF No. 178 (E.D. Cal.) (not instructing the jury, for example, as to the defendants' proposed language that "if the person felt free to leave his or her confinement, the second element of forced labor as described above cannot be satisfied"). Although Kartan does contain the defendants' proposed definitions of "obtain," "labor" and "services"—presumably the definitions adopted by the Ninth Circuit—that precedent has little weight here, where the Second Circuit has defined such terms. See, e.g., United States v. Raniere, No. 20-CR-3520, 2022 WL 17544087, at *2 (2d Cir. Dec. 9, 2022) (defining labor). Indeed, much of the defendants' proposed language seems to come from no precedent whatsoever—this Court should decline to adopt its novel formulation, which are often inaccurate statements of the law. For example, the defendants propose that the Court instruct the jury that "[y]ou must determine whether the alleged victim's will was completely overcome at the time she provided the service or labor, not whether she later believed in hindsight that her will was overcome." Such instruction would be completely ungrounded in the applicable statutory language and the defendants cite no precedent whatsoever for it.

The defendants also ask the Court to include the following instruction:

> In addition, when considering whether a Defendant made "threats of serious harm" to the witness, you should consider that (1) adverse but legitimate consequences or threats of adverse but legitimate consequences incident to an employment relationship do not constitute serious harm or threats of serious harm. Also, in consideration of whether the Defendants conspired to make threats of serious harm to any individual, you should consider whether such alleged threats were covered by the First Amendment to the Constitution, which permits individuals who no longer wish to associate with someone, to lawfully make that choice to not associate.

In doing so, the defendants attempt to rely on the Second Circuit's dicta in United States v. Zhong 26 F.4th 536, 550 (2d. Cir. 2022). In Zhong, the Second Circuit affirmed the district court's denial of an "adverse but legitimate consequences" instruction to the jury. There, the defendant argued that the workers had voluntarily joined the defendant's company's employment and therefore the consequences of a "voluntarily entered into employment agreement are always legitimate." Id. The Circuit explained, "That assumption is inconsistent with case law recognizing that a victim's initial willingness to perform certain labor does not preclude the possibility that the victim's continued labor may become forced." Id. Thus, the Court should not provide that instruction and should instead rely on the government's proposed instructions, which are less confusing and supported by precedent. Nor should the Court ask the jurors to make a legal determination as to what language is protected by the First Amendment, for which the defendants, again, provide no legal supporting legal authority that such a legal determination should be posited to the jury.

Most crucially, the defendants have omitted some of the language of 18 U.S.C. § 1589(a) and all of the language of 18 U.S.C. § 1589(b), and have not proposed any instruction as to the same, instead citing to the version of 18 U.S.C. § 1589 that was enacted in 2006, rather than the versions of 18 U.S.C. § 1594 and 18 U.S.C. § 1589 in effect from December 23, 2008 through present. Accordingly, this Court should decline to adopt the defendants' novel formulation of the forced labor jury charge, which strays from precedent and statutory language.

REQUEST NO. 7 — Interviews of Witnesses

There was testimony at trial that attorneys for the government and the defendant interviewed witnesses when preparing for trial. You should not draw any unfavorable inference from that testimony. To the contrary, you should understand that the attorneys are obligated to prepare their case thoroughly as possible and, in the discharge of that responsibility, properly interview witnesses before this trial began and as necessary throughout the course of the trial.

Authority

Adapted from Thomas; Raniere; Zottola.

REQUEST NO. 8 — Particular Investigative Techniques Not Required / All Available Evidence Need Not Be Produced

Although the government bears the burden of proof, and although a reasonable doubt can arise from lack of evidence, you are instructed that there is no legal requirement that the government use any specific investigative techniques or pursue every investigative lead to prove its case. Therefore, although you are to carefully consider the evidence adduced by the government, you are not to speculate as to why they used the techniques they did or why they did not use other techniques. The government and its investigative techniques are not on trial.

In this regard, I also charge you that all persons who may have been present at any time or place mentioned in the case, or who may appear to have some knowledge of the issues in this case, need not be called as witnesses. Nor does the law require that all things mentioned during the course of the trial be produced as exhibits.

Authority

Adapted from Acevedo; Thomas; Kelly; Sand, Instr. 4-4; United States v. Saldarriaga, 204 F.3d 50, 52 (2d Cir. 2000) (per curiam); United States v. Knox, 687 F. App'x 51, 54-55 (2d Cir. Apr. 14, 2017) (summary order).

**Defense Response:**

Defendants object to this instruction generally and specifically to the following language: "**The government and its investigative techniques are not on trial.**" While Defendants have no intention of arguing that the government is required to use a "specific investigative technique" they may very well challenge the veracity of evidence and witness testimony based on interview techniques used by the government and its agents, just as a defendant may challenge the voluntariness of a statement based on the tactics employed by a government interrogator. It is hardly worth stating that the government is not on trial since that point is obvious. The jury does not need to be told the government is not "on trial." The colloquial statement runs of the risk of misinforming the jury that it may not consider the credibility and veracity of government evidence if appropriate based on government tactics used in obtaining that evidence.

**Government Reply**:

The precise language the defendants object to is commonly charged in this District and Circuit. The government's motives are not relevant to defendants' innocence or guilt of the charges at issue. As the government argued at length in its motions in limine, by arguing the government committed misconduct during its investigation or that the defendant was improperly targeted, the defense seeks a verdict of jury nullification. This is improper. See, e.g., United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011) (affirming district court's ruling precluding defendant from arguing in summation that government had improperly targeted him for prosecution); United States v. Loera, No. 09-CR-466 (BMC), 2018 WL 2744701, at *6 (E.D.N.Y. June 7, 2018) ("[S]elective-prosecution argument by defendant to the jury would . . . be improper"); United States v. Webb, No. 15-CR-252 (PKC), ECF No. 1275, Trial Transcript at 3630:09-3632:12 ("[M]aking argument in the vein of selective prosecution or the government's motive in conducting its investigation; for example, not getting certain evidence or pursuing certain leads and potentially focusing on certain defendants is . . . inappropriate" at trial.). Indeed, the defendants' very example—that they "may challenge the voluntariness of a statement based on the tactics employed by a government interrogator"—evidences their continuing misunderstanding of this "obvious" principle. The voluntariness of a defendant's statement is precisely the kind of legal issue that gets litigated pretrial before the Court, not before the jury. The government maintains that the language of its proposed charge is not only legally sound and routinely given, but also particularly necessary in light of statements the defendants continue to make about how they intend to try this case, including with reference to improper legal arguments about the government's conduct.

REQUEST NO. 9 — Uncalled Witness Equally Available to Both Sides (If Applicable)
(**Government Request**)

Both the government and the defense have the same power to subpoena witnesses to testify on their behalf. If a potential witness could have been called by the government or by the defendant and neither called the witness, then you may draw the conclusion that the testimony of the absent witness might have been unfavorable to the government or to the defendant or to both.

On the other hand, it is equally within your province to draw no inference at all from the failure of either side to call a witness.

You should remember that there is no duty on either side to call a witness whose testimony would be merely cumulative of testimony already in evidence, or who would merely provide additional testimony to facts already in evidence.

You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence. The burden of proof to prove the charges beyond a reasonable doubt remains with the government throughout the trial.

Authority

Adapted from Raniere; Sand, Instr. 6-7; see generally United States v. Erb, 543 F.2d 438, 444-45 (2d Cir.) (discussing propriety of missing witness charges), cert. denied, 429 U.S. 981 (1976)).

**Defense Response:**

This instruction should be omitted where it is untrue and leaves the jury with the false impression that the parties have the power to obtain the presence of any witness they seek to present. This is decidedly not the case. Defendants have no ability to obtain the presence of certain witnesses outside the jurisdiction of the Court.

If this Court gives this instruction Defendant proposes the following last paragraph:

"I remind you, however, that because the law presumes the Defendant to be innocent, the burden of proving her guilt beyond a reasonable doubt is on the Government throughout the trial. The Defendant ever has the burden of proving his innocence or producing any evidence or calling any witnesses at all."

**Government Reply**:

The government objects to the defendants' edits to the proposed charge, as the government maintains that its proposed formulation is clearer. Furthermore, the proposed charge does not indicate that the government and the defense have the power to subpoena any witness, it indicates that they have the same power to subpoena witnesses, which is an accurate statement of the law.

REQUEST NO. 10 — Opinion of Defendant's Character (If Applicable)

The defendant(s) have called witnesses who have given their opinion of her good character. This testimony is not to be taken by you as the witness's opinion as to whether the defendant is guilty or not guilty. That question is for you alone to determine.

You should, however, consider this character evidence together with all the other facts and all the other evidence in the case in determining whether the defendants are guilty or not guilty of the charges.

Accordingly, if after considering all the evidence including testimony about the defendant's good character, you find a reasonable doubt has been created, you must acquit her of the charges.

On the other hand, if after considering all the evidence, including that of the defendant's character, you are satisfied beyond a reasonable doubt that the defendant is guilty, you should not acquit the defendant merely because you believe her to be a person of good character.

Authority

Adapted from Sand, Instr. No. 5-6.

REQUEST NO. 11 — Redactions

Among the exhibits received in evidence, there are some documents that are redacted. "Redacted" means that part of the document was taken out. You are to concern yourself only with the part of the document that has been admitted into evidence. You should not consider any possible reason why the other part of it has been redacted.

Authority

Adapted from the jury charge in United States v. Cespedes-Pena, No. 14-CR-520 (KMW), ECF No. 51 (S.D.N.Y.).

REQUEST NO. 12 — Uncharged Acts Considered for a Limited Purpose (If Applicable)
**(Government Request)**

You have heard evidence that the defendants engaged in conduct, including crimes, other than the crimes charged in the Indictment. The defendant is not on trial for committing any acts not charged in the Indictment or for acts committed outside the time period charged in the Indictment. Consequently, you may not consider evidence of those other acts as a substitute for evidence that the defendant committed the crimes charged in this case. Nor may you consider evidence of those other acts as proof that the defendant has a criminal propensity; that is, you may not conclude that she likely committed the crimes charged in the Indictment because she was predisposed to criminal conduct.

Instead, you may consider evidence of uncharged conduct by the defendant for limited purposes, and you may consider it only for the following limited purposes, which I will now describe. You may only consider evidence of uncharged conduct:

- As evidence of the existence of the charged conspiracy;
- As evidence of the development of relationships of mutual trust between the defendant and others with whom she is charged with carrying out the charged conspiracy;
- As evidence of conduct that is inextricably intertwined with evidence of the charged crime;
- As evidence enabling you to understand the complete story of the charged crime;
- As evidence of motive, opportunity, intent, preparation, plan, knowledge, absence of mistake or a modus operandi formed by the defendant and her accomplices to commit the charged crimes; and
- As evidence corroborating the testimony of other government witnesses.

Evidence of uncharged conduct by the defendant may not be considered by you for any purpose other than the ones I have just listed.

Authority

Adapted from Kelly; Raniere.

**Defense Response**:

Defendants object to the instruction as it fails to identify the uncharged acts that the jury may be asked to consider. A jury cannot be left to wonder what it can and cannot consider and for what purpose. A jury must be instructed consistent with F.R.E. 404(b) about what uncharged acts it may consider in its deliberations and specifically for what purpose it may consider the evidence. An instruction that tells the jury that it can consider any uncharged bad act evidence "as evidence of the conspiracy" or "to understand the complete story of the crime" is non-sensical and belies the purpose of F.R.E. 404(b) and F.R.E. 403. The law demands more than contriving pretextual grounds for rank propensity evidence.

The government must be required to proffer specific bad act evidence, explain why such evidence is relevant (meaning what issue in dispute does it shed light on), identify a specific non-propensity purpose for its admission, and further defend the instruction pursuant to F.R.E. 403. If this Court then permits such evidence, it must be identified in this instruction along with an explanation for its purpose.

The government criticizes Defendants' proposed instruction because it fails to identify the purpose of the uncharged bad act evidence in its proposed (admittedly incomplete as of yet) instruction. The government's gripe evinces its fundamental misapprehension of how it may use bad act evidence. It should be obvious that Defendants do not at this point know what other bad act evidence the government proposes to introduce, nor do they know for what limited purpose the government intends to offer such evidence.

Defendants reserve the right to object to this instruction, and all others, after the close of the case when the parties know what other bad evidence this Court permitted into evidence and for what purpose.

**EVIDENCE OF OTHER BAD ACTS (Defense Request)**

You have heard evidence that the Defendants may have engaged in conduct, other than the crime charged in the indictment. The Defendant is not on trial for committing any acts not charged in the indictment. Consequently, you may not consider evidence of those other acts as a substitute for proof that the Defendant committed the crimes charged. Nor may you consider

evidence of these other acts as proof that the Defendants has a criminal propensity, that is, that they likely committed the crime charged in the indictment because they were predisposed to criminal conduct.

As I have charged you during the trial, the evidence of uncharged conduct by the Defendant is admitted for limited purposes, and you may consider it only for those limited purposes. The purposes for which such evidence is admitted are as follows [] [as applicable]

*United States v. Raniere,* 18-CR-204 (E.D.N.Y. Jun. 18, 2019) [Dkt. No. 728]

**Government Reply:**

The government objects to the defendants' narrowed and incomplete request to instruct on uncharged acts. The defendants merely take the government's proposed instruction, which was drawn directly from the final charge in Raniere, and makes small changes to the language without providing authority for their proposed changes. Moreover, the defendants request—also without legal precedent—that Court explain each admissible bad act and the Court's pretrial (and legal) determination for its admissibility.

For instance, in the first sentence of the government's instruction, the defendants seek to add the language underlined and delete the language in italics: "You have heard evidence that the defendants may have engaged in conduct, *including crimes*, other than the crimes charged in the Indictment." The government's proposed language ("You have heard evidence that the defendant engaged in conduct, including crimes, other than the crimes charged in the Indictment.") is language taken verbatim from Raniere. The defendants offer no basis for their proposed changes and, confusingly, also cite to Raniere.

The defendants also claim the government must identify within the instruction the specific bad act admitted and an explanation for its purpose. As a preliminary matter, the government has previously outlined in its motion in limine the evidence it seeks to offer at trial which is admissible either because it is direct evidence of or inextricably intertwined with the evidence of the charged offense, and in the alternative, under Rule 404(b). See ECF 170, pp. 2-37, 61-77. The defendants, however, cite to no legal authority which requires the Court to instruct the jury as they propose. To be clear, the district court did not instruct the jury as the defendants propose in Raniere, the only case on which the defendants rely. United States v. Raniere, 18-CR-204 (NGG), Dkt. No. 728 at 22-24 (E.D.N.Y. June 18, 2019). Accordingly, the Court should reject the defendant's proposed instruction.

REQUEST NO. 12 — Impeachment by Prior Inconsistent Statement (If Applicable)

You have heard evidence that a witness made a statement on an earlier occasion which counsel argues is inconsistent with the witness's trial testimony. Evidence of the prior inconsistent statement was placed before you for the limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself. If you find that the witness made an earlier statement that conflicts with his/her trial testimony, you may consider that fact in deciding how much of his/her trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any weight should be given to the inconsistent statement in determining whether to believe all, part, or none of the witness's testimony.

Authority

Adapted from Zottola.

REQUEST NO. 13 — Jury to Consider Only Defendants on Trial

You have heard evidence about the involvement of certain other people in the crime charged in the Indictment. That these other individuals are not on trial before you is not your concern. You should neither speculate as to the reason these other people are not on trial before you nor allow their absence as parties to influence in any way your deliberations in this case. Your concern is solely the defendants on trial before you.

Authority

Adapted from Acevedo; Sand, Instr. 2-18.

REQUEST NO. 14 — Expert Testimony (if applicable)

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue. A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, the opinion given, the witness's reasons for testifying, as well as all the other considerations that ordinarily apply when you are deciding whether or not to believe a witness. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the other evidence before you. You should not, however, accept a witness's testimony merely because I allowed the witness to testify concerning his or her opinion. Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

Authority

Adapted from Acevedo; L. Sand, et al., Modern Federal Jury Instructions, Instruction 7-21.

REQUEST NO. 15 — Lost or Destroyed Evidence (**Defense Request**)

If you find that the government intentionally destroyed or failed to preserve [evidence] that the government knew or should have known would be evidence in this case, you may infer, but are not required to infer, that this evidence was unfavorable to the government.

Model Jury Instruction 4.19 for the United States Court of Appeals for the Ninth Circuit

**Government Response**:

The government objects to the inclusion of this instruction. Although the defendants do not identify the particular piece of evidence believed to have been intentionally destroyed, the government anticipates that the defendants seek this request based on Jane Doe 1's email account that was previously the subject of a motion to dismiss on grounds of spoliation (the "Email Account"). See ECF Dkt. Nos. 96, 99, 100, 105, 113, 118, 141. In denying the defendants' spoliation motion, the Court has already determined that the defendants did not make the necessary showing that would permit for such an instruction.

A party seeking an adverse inference instruction based on the destruction of evidence must establish the following: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." United States v. Garcia, 596 F. App'x 24, 26 (2d Cir. 2015); United States v. Helbrans, No. 19-CR-497 (NSR), 2021 WL 3595720, at *4 (S.D.N.Y. Aug. 13, 2021); see also Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002); cf. ECF 118 at 25-26 (standard for spoliation motion to dismiss).

The Court already determined—in the context of rejecting the defendants' motion to dismiss—that the defendants cannot show "any purported loss with respect to the Email Account is chargeable to the Government." See September 27, 2024 Tr. at 27, United States v. Cherwitz et al., 23-CR-146 (DG). Nor did the defendants show the government acted in "bad faith." Id. Accordingly, the defendants cannot demonstrate the requested instruction is warranted here.

REQUEST NO. 16 — Improper Considerations (**Defense Request**)

Your verdict must be based solely upon the evidence developed at trial, or the lack of evidence. It would be improper for you to consider, in reaching your decision as to whether the government sustained its burden of proof, any personal feelings you may have about the defendants' race, religion, spiritual beliefs, sexual orientation, sexual history, ethnic background, sex, or age. All persons are entitled to the presumption of innocence and the government has the same burden of proof.

It would be equally improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision-making process. To repeat, your verdict must be based exclusively upon the evidence or the lack of evidence in the case. Despite any reactions you may have based on the conduct described during the witnesses' testimony and the nature of any images you may view, it is imperative that your reactions to the testimony and an any images do not interfere with your ability to be a fair and impartial juror.

The question of possible punishment of the defendant is of no concern to the jury and should not, in any sense, entered into or influence your deliberations. The duty of imposing sentence rests exclusively on the court. Your function is to weigh the evidence in the case to determine, solely upon the basis of the evidence, whether or not the defendants are guilty beyond a reasonable doubt of the crime charged.

*United States v. Marcus,* 05 CR 4577 (ARR) (E.D.N.Y. Feb. 21, 2007) [Dkt. No. 202]

**Government Response:**

The government objects to the defendants' proposed instruction, as these requests are already included in the Court's usual charges.

For instance, in instructing on punishment, the Court has stated, "The question of possible punishment of the Defendant is of no concern to the jury and should not enter into or influence your deliberations. The duty of imposing a sentence rests exclusively with the Court.

Your function is to weigh the evidence in the case and to determine whether or not the Defendant is guilty beyond a reasonable doubt, solely upon the basis of the evidence. Under your oath as jurors, you cannot allow a consideration of the punishment that may be imposed upon the Defendant, if he is convicted, to influence your verdict in any way or to enter into your deliberations at all." May 8, 2023 Tr. at 2174, United States v. Acevedo, No. 21-CR-162 (DG) (E.D.N.Y.).

In instructing on bias, which the government requested as "basing verdict on sympathy or prejudice prohibited," the Court has stated, "I remind you that each of you has undertaken a solemn obligation, a sworn obligation, to decide this case solely on the evidence. You must carefully and impartially consider the evidence, follow the law as I state it, and reach a just verdict, regardless of the consequences. You are to perform this task with complete fairness and impartiality, and without bias, prejudice, or sympathy for or against the Government or Defendant." May 8, 2023 Tr. at 2173-74, United States v. Acevedo, No. 21-CR-162 (DG) (E.D.N.Y.).

In instructing on the role of the court, the Court has explained: "It would violate your sworn duty to base a verdict on any other view of the law than the one I will give to you. This means you must follow my instructions regardless of any opinion that you may have as to what the law might or should be, and regardless of whether any attorney has stated a legal principle differently from how I might state it now." May 8, 2023 Tr. at 2115, United States v. Acevedo, No. 21-CR-162 (DG) (E.D.N.Y.).

In instructing on the presumption of innocence, the Court has said, "The law presumes the Defendant to be innocent and never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence." May 8, 2023 Tr. at 2117, United States v. Acevedo, No. 21-CR-162 (DG) (E.D.N.Y.).

Accordingly, as these instructions will already be included in instructions elsewhere in the jury charge, the Court should deny the defendants' motion for an unnecessary and repetitive charge.

REQUEST NO. 17 — Venue (**Defense Request**)

Venue refers to the location of the charged crime. The indictment alleges that the crime charged occurred in whole or in part in this judicial district, which is the Eastern District of New York. This district includes Brooklyn, Queens, Staten Island, Nassau, and Suffolk counties on Long Island, and the waters surrounding Manhattan. The establish venue for a crime in the district, the government most prove that some act in furtherance of the crime happened in the Eastern District of New York and that Defendant was either present in the venue or that the defendant had knowledge or could reasonably foresee that the act would occur in the venue.

While the Government's burden as to everything else in the case is proof beyond a reasonable doubt, a standard that I have already explained to you, venue need only be proved by a preponderance of the evidence, that is, it is more likely than not that some act in furtherance of the crimes occurred in Brooklyn, Queens, Staten Island, Nassau, and Suffolk counties on Long Island, and the waters surrounding Manhattan. I emphasize that his lesser standard only applies when considering the question of venue.

*United States v. Kelly*, 19-CR-286 (E.D.N.Y. Sept. 27, 2021) [Dkt. No. 303]
*United States v. Raniere*, 18-CR-204 (E.D.N.Y. Jun. 18, 2019) [Dkt. No. 728]
*United States v. Shavkat-Abdullaev*, 761 Fed. Appx. 78, 84 (2d Cir. 2019)

**Government Response**:

The government objects to the defendants' venue instruction as overly narrow. Accordingly, the government proposes an alternative instruction that provides additional bases upon which the jury can legally find venue in the charging district, with supporting case citations.

VENUE (**Government Request**)

In addition to the foregoing elements of each offense, you must consider whether any act in furtherance of the crime charged occurred within the Eastern District of New York.

The Eastern District of New York includes Brooklyn, Queens, Staten Island, and Nassau and Suffolk Counties. In addition, the EDNY includes the waters surrounding these counties and Manhattan, as well as the air space above the district. Travel over or through the district or waters, or the passage of a wire over or through the district or waters, is sufficient to establish venue.[1]

Venue need only be proven by a preponderance of the evidence—meaning, simply, that it is more likely than not.

To satisfy the venue requirement, the government need not prove that the defendants themselves were present here. To establish that venue for a charged crime is appropriate in this district, the government must prove that some act in furtherance of the conspiracy occurred here, in the Eastern District of New York. This means that with respect to the conspiracy charged, even if other acts were committed outside this district or if the crime was completed elsewhere, venue is established in the Eastern District of New York so long as some act in furtherance of the conspiracy took place in this district. In a conspiracy, such as the one charged in this case, actions of co-conspirators, as well as actions caused by co-conspirators, may be sufficient to confer venue if it was reasonably foreseeable to the defendants that the acts would occur in the Eastern District of New York.[2]

---

[1] See 28 U.S.C. § 112(c); see also United States v. Kirk Tang Yuk, 885 F.3d 57, 71 (2d Cir. 2018) (finding the evidence of travel over the concurrent waters "undoubtedly sufficient" to support venue); United States v. Rutigliano, 790 F.3d 389 (2d Cir. 2015) (venue proper where wire in furtherance of scheme traveled through or over waters of Eastern District of New York, which are statutorily defined to be part of the Southern District)

[2] See United States v. Kim, 246 F.3d 186, 193 (2d Cir. 2001); United States v. Naranjo, 14 F.3d 145, 147 (2d Cir. 1994); see also United States v. Svoboda, 347 F.3d 471, 483 (2d Cir. 2003) ("[V]enue is proper in any district in which an overt act in furtherance of [a] conspiracy was committed by any of the coconspirators.").

In determining whether some act in furtherance of the crime you are considering occurred in the Eastern District of New York, you may consider a number of things. Venue can be conferred based on physical presence or conduct, and passing through a district, including through or over waters, is sufficient to confer venue.[3] Venue can be based on using airports within the district to attend meetings or events, if the meetings or events were in furtherance of the conspiracy.[4] Venue can also be based on electronic communications—including email communications, telephone calls, and electronic transfers of funds such as banking transfers—going to, coming from, or passing through a district.[5] The government need not prove all of these bases of venue; any one is sufficient.

If you find that the government has failed to prove that any act in furtherance of the conspiracy charged occurred within this district, then you must find the defendant not guilty on the charge that you are considering.

---

[3] See Kirk Tang Yuk, 885 F.3d at 71-72; United States v. Tzolov, 642 F.3d 314, 320 (2d Cir. 2011); United States v. Duque, 124 F. App'x 447, 449 (2d Cir. 2005).

[4] Tzolov, 642 F.3d at 320.

[5] See United States v. Lange, 834 F.3d 58, 70 (2d Cir. 2016); United States v. Abdallah, 528 F. App'x 79, 83 (2d Cir. 2013); United States v. Ohle, 441 F. App'x 798, 802 (2d Cir. 2011); United States v. Christo, 413 F. App'x 375, 376 (2d Cir. 2011); United States v. Royer, 549 F.3d 886, 895 (2d Cir. 2008); United States v. Brown, 293 F. App'x 826, 829 (2d Cir. 2008); United States v. Rommy, 506 F.3d 108, 120 (2d Cir. 2007); United States v. Gilboe, 684 F.2d 235, 239 (2d Cir. 1982); Kim, 246 F.3d at 192-93; United States v. Teman, 465 F. Supp. 3d 277, 314 (S.D.N.Y. 2020); United States v. Kenner, 2019 WL 6498699, at *9 (E.D.N.Y. Dec. 3, 2019); United States v. Kubitshuk, 2017 WL 3531553, at *4 (S.D.N.Y. Aug. 17, 2017)); United States v. Peterson, 357 F. Supp. 2d 748, 752 (S.D.N.Y. 2005); United States v. Goldberg, 830 F.2d 459, 465 (3d Cir. 1987).

As I have instructed you, for all other elements in this case you have to find the government has proven that element beyond a reasonable doubt, not by a preponderance of the evidence.[6] Preponderance of the evidence only applies to venue.

Authority

Adapted from jury charge in United States v. Carlos Watson and Ozy Media, Inc., No. 23-CR-82 (EK) (E.D.N.Y. 2024).

---

[6] See United States v. Gonzalez, 922 F.2d 1044, 1054-55 (2d Cir. 1991) (affirming that venue is governed by a preponderance standard).

REQUEST NO. 18 – Interest in Outcome **(Defense Request)**

In evaluating the credibility of a witness, you should take into account any evidence that the witness may benefit in some way from the outcome of the case. Such an interest in the outcome creates a motive to testify falsely and may sway the witness to testify in a way that advances his or her own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care. This is not to suggest that every witness who has an interest in the outcome of the case will testify falsely. It is for you to decide to what extent, if at all, the witness's interest has affected his or her testimony.

Authority: *United States v. Ashburn,* 11-CR-303 (NGG) (E.D.N.Y. Mar. 11, 2015) [Dkt No. 425]

**Government Response**:

The government objects to the defendants' interest in outcome instruction as overly narrow. Accordingly, the government proposes an alternative instruction that provides additional bases upon which a witness may be interested in the outcome of a trial, which is in line with recent Second Circuit precedent.

INTERESTED WITNESS (Government Request)

If a witness is interested in the outcome of the trial on one side or the other, you may consider such interest in determining how much credit or weight you will give to his or her testimony. A witness is an interested witness when by reason of relationship, friendship, antagonism, or prejudice in favor of or against one side or the other, his or her testimony, in your judgment, is biased or likely to be biased toward the side which he or she favors. In determining the credibility of a witness, you may consider whether such witness has any bias or prejudice for or against any party in the case. In determining the credibility and weight to be given to the

testimony of a witness, you should take into account such bias or prejudice. Evidence that a witness is biased or prejudiced for or against a party requires you to view the witness's testimony with caution, to weigh it with care, and to subject it to close and searching scrutiny. Keep in mind, however, that you should not reject the testimony of an interested witness merely because of such interest. Nor should you accept the testimony of a witness merely because of such disinterest. It is your duty in the case of all witnesses to accept such of the testimony as you believe to be truthful and to reject only such testimony as you believe to be false. As I said, interest and disinterest are merely factors you may consider in evaluating credibility.

Authority

Adapted from jury charge in United States v. Shujun Wang, No. 22-CR-230 (DC), ECF No. 103 (E.D.N.Y. 2024); United States v. Jenkins, 43 F.4th 300 (2d Cir. 2022).

REQUEST NO. 19 – Deciding What to Believe **(Defense Request)**

In deciding what the facts are, you must decide which testimony to believe, which testimony not to believe, and how much weight to give to the testimony of each witness. In making those decisions, there are a number of factors you may take into account, including the following:

a. Did the witness seem to be honest?

b. Did the witness have any particular reason not to tell the truth?

c. Did the witness have a personal interest in the outcome of the case?

d. Did the witness seem to have a good memory?

e. Did the witness have the opportunity and ability to observe accurately the things he or she testified about?

f. Did the witness appear to understand the questions clearly and answer them directly?

g. Was what the witness said supported by other evidence?

h. Did the witness's testimony differ from the testimony of other witnesses?

People sometimes forget things. A contradiction may be an innocent lapse of memory or it may be an intentional falsehood. Consider, therefore, whether the contradiction has to do with an important fact or only a small detail. In addition, different people observing an event may remember it differently and therefore testify about it differently.

Ultimately, you may consider the factors I have just discussed as well as other relevant factors in deciding how much weight to give to testimony.

Finally, if you find that a witness has lied to you about any matter, however insignificant, you may choose to disregard that witness's testimony in part or in whole.

Authority: *United States v. Ashburn,* 11-CR-303 (NGG) (E.D.N.Y. Mar. 11, 2015) [Dkt No. 425]

**Government Response**:

The government objects to the defendants' proposed "Deciding What to Believe" instruction. The government maintains that the Court's providing its usual instructions as to the "Credibility of Witnesses and Discrepancies in Testimony" is sufficient.

CONCLUSION

The parties respectfully requests that the Court include the foregoing in its instructions to the jury. In addition, the government requests the opportunity to submit further instructions or amend those submitted as appropriate.

Dated: Brooklyn, New York
December 9, 2024

Respectfully submitted,

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By: /s/
Gillian Kassner
Kayla Bensing
Devon Lash
Nina Gupta
Sean Fern
Assistant U.S. Attorneys
(718) 254-7000

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

KTF/KCB/NCG/SMF
F. #2018R01401

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 16, 2025

By ECF

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Cherwitz, et al.
Criminal Docket No. 23-146 (DG)

Dear Judge Gujarati:

On April 1, 2025, the defendants submitted a letter regarding the proposed jury instructions in this case. See ECF No. 312. Because the letter was not styled as a joint submission under the Court's individual rules, on April 9, 2025, the Court ordered the parties to file a joint letter regarding the defendants' supplemental requests to charge by April 16, 2025. The government respectfully encloses the parties' joint submission.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By: /s/
Kayla C. Bensing
Kaitlin T. Farrell
Nina C. Gupta
Sean M. Fern
Assistant U.S. Attorneys
(718) 254-7000

cc: Defense Counsel of Record (by Email and ECF)
Clerk of Court (by Email and ECF)

**Defense Supplemental Objections Related to the Serious Harm Element of 18 U.S.C. § 1589, and Government Responses**

The defense is requesting a supplemental submission on proposed jury instructions related to the serious harm element of forced labor under 18 U.S.C. § 1589, which is the object of the alleged conspiracy in this case. Specifically, the defense's supplemental submission addresses proposed jury instructions on (1) reasonable means of escape and terminating the relationship and (2) adverse but legitimate consequences.

## I. Defense Request: Reasonable Means of Escape or Terminating the Relationship

In light of the government's recent decision not to call Ayries Blanck at trial, and based on a review of the government's 18 U.S.C. § 3500 material, it is apparent that the government cannot establish at trial that the defendants entered an unlawful agreement to commit forced labor, because there was no agreement to compel labor through "serious harm" or "threats of serious harm," as properly articulated under the law. Upon the close of the government's case, the defendants intend to move for a judgment of acquittal as a matter of law pursuant to Federal Rule of Criminal Procedure 29 on this point. But assuming the government's case survives a Rule 29 motion (which it should not), the Court's jury instruction as to what constitutes "serious harm" sufficient to establish forced labor is critical to the defense. As an initial matter, the government has insufficient evidence to even charge the jury on two theories of serious harm under the law. In particular, the Court should strike all references from the jury charge to obtaining labor through use of "physical restraint against[] a person" or "through means of the abuse or threatened abuse of law or legal process." *Id.* at 22. Based on the defense's review of the government's evidence to date, the evidence supporting these theories is nonexistent. There is, therefore, no basis to charge the jury on these theories and doing so would be unnecessarily confusing. The Court should reject the government's proposed charge in that regard.

By contrast, the Court should charge the jury, as the defense has already requested, that "[i]n determining whether a particular type or certain degree of threatened harm was sufficient to obtain each alleged victim's labor or services, you should consider that victim's individual circumstances, including…*any reasonable means of escape or terminating the relationship.*" *Id.* at 34–35 (emphasis added) (including this request to charge). The evidence in this case will overwhelmingly show that all persons associated with OneTaste Inc., including the government's alleged victims, were at all times free to terminate their relationship with OneTaste Inc. and had the means to do so, including the unrestricted ability to travel, access to personal cellular telephones, personal laptops, the internet, and freedom to contact persons not associated with OneTaste Inc. Indeed, all the government's alleged victims did terminate their relationships with OneTaste Inc. or its various licensees during the period of the charged conspiracy, without facing any kind of "serious harm" as a result. As discussed below, the defendants' proposed charge is amply supported by the case law. Nonetheless, apparently perceiving this fatal defect in its case, the government has omitted this principle of law from its proposed charge. *See id.* at 34–35. Because this will be a central issue at trial, this Court should charge the jury on this point.

A. Case Law Supports the Defendants' Proposed Instruction Regarding Escape and Termination of the Relationship

In *Tegete,* a recent civil forced labor case from the Southern District of New York, Judge Seibel articulated the relevant principles supporting the defense's proposed jury instruction. *See United States v. Tegete*, 2023 U.S. Dist. Lexis 43034, at *25 (S.D.N.Y. Mar. 14, 2023). There, the court stated that, to establish forced labor under § 1589, the government "must first show that the threat of harm was sufficiently serious and, second, that the defendant had the requisite scienter, *i.e.*, 'that the employer intended to cause the victim to believe that she would suffer serious harm . . . if she did not continue to work.'" *Id.* (alteration in original) (quoting *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011)). The court further explained that the cases finding threats of harm sufficiently serious to establish forced labor typically involve:

> squalid or otherwise intolerable living conditions, extreme isolation (from family and the outside world), threats of inflicting harm upon the victim or others (including threats of legal process such as arrest or deportation), and exploitation of the victim's lack of education and familiarity with the English language, all of which are used to prevent vulnerable victims from leaving and to keep them bound to their captors.

*Id.* (quoting *Muchira v. Al-Rawaf*, 850 F.3d 605, 618–19 (4th Cir. 2017)).

In accordance with these principles, *Tegete* held that the plaintiff's allegations were insufficient as a matter of law to establish the defendant obtained the plaintiff's labor through threats of serious harm. *Id.* at *26. Among other reasons for denying the plaintiff's claims, the court held that the plaintiff could "not establish 'the type of extreme isolation that would have led a reasonable person in [her] situation to believe that she was psychologically imprisoned in a forced-labor situation.'" *Id.* at *27–28 (alteration in original) (quoting *Muchira*, 850 F.3d at 621). The plaintiff "had virtually unfettered access to a private cell phone and to the Internet, including the use of a laptop," and "had substantial opportunity to use these forms of communication in the privacy of her living quarters." *Id.* at *28 (internal quotation marks omitted). Furthermore, the plaintiff was able to travel unaccompanied to visit family and vacation. *Id.* The court held that such "freedom of communication and movement belies the notion that [p]laintiff felt so psychologically imprisoned that she was unable to terminate her employment and walk away." *Id.* at *29 (citing *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012)). Indeed, rather than being "forced to provide her labor," she remained employed "because she herself wanted to continue pursuing her call to service." *Id.* at *33. And, when the plaintiff did decide to leave, she "successfully left the first time she tried" and the defendant "did not attempt to force her to return." *Id.* at *34–35 (internal quotation marks and alterations omitted).

In rejecting the plaintiff's forced labor claim on this basis, *Tegete* relied on decisions from the First and Ninth Circuits that have reached the same conclusion. *See Headley*, 687 F.3d at 1174–81 (church members' fear of being "excommunicated" from church—thereby losing contact with their friends and family members—and their opportunities to leave the Sea Org, the church's "elite religious order," undermined their claim of being psychologically

"coerced" into forced labor for church); *Muchira*, 850 F.3d at 618–22 (employee was not psychologically "coerced" into labor because she had ample opportunities to walk away).

Similar to these cases, here, the government's evidence consists of little more than conclusory and speculative allegations that fall far short of establishing the alleged victims' fears of serious harm were reasonable or that defendants intended to instill any such fear. The less than one percent of OneTaste participants who chose to live in an OM house—communal housing predominately self-organized by those interested in the OM practice—were not subject to squalid or otherwise intolerable living conditions. The alleged victims were not subject to extreme isolation—they could travel and visit their families unaccompanied. For example, many of the government's remaining witnesses went on family vacations—including on expensive trips to locations like Israel, Bali and the Hamptons. Additionally, many, if not all, of the alleged victims had cellphones and laptops, could freely access the internet and social media, and held jobs outside of OneTaste. No one was locked in or prevented from leaving residences organized by individual participants or OneTaste's facilities. Further, as noted above, defendants never threatened to physically harm or restrain any of the alleged victims, nor did they threaten to have any of the alleged victims deported or arrested. Defendants did not require any of the alleged victims to surrender their passports, or place their immigration status in jeopardy. In fact, in general, OneTaste course participants were well-educated,[1] sophisticated, spoke English, and possessed their own bank accounts, credit cards, and had upward economic mobility. And, like the plaintiff in *Tegete*, the alleged victims here successfully left OneTaste when they chose to do so—just like countless others. Indeed, many received sizeable refunds when they requested them from OneTaste Inc. Thus, as a matter of law, the government cannot show the defendants entered into an unlawful agreement to compel forced labor through serious harm or threats of serious harm. To the extent this case goes to a jury, it should be specifically instructed that it should consider the alleged victims' "reasonable means of escape or terminating the relationship."

The relevant portion of defendants' proposed charge in this regard is as follows:

> The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial or reputational harm, that is, sufficiently serious, under all surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or continue performing labor or services in order to avoid incurring that harm.
>
> In determining whether a particular type or certain degree of threatened harm was sufficient to obtain each alleged victim's labor or services, you should consider that victim's individual circumstances, including each individual's age, intelligence, education, experience, background, social isolation, social status

[1] Many of the government's remaining witnesses hold a bachelor's degree or higher.

> and *any reasonable means of escape or terminating the relationship*.

Dkt.223 at 35 (emphasis added).

B. Courts Have Instructed the Jury with the Defendants' Proposed Serious Harm Instruction

In addition to the foregoing precedent, the defendants' proposed charge also is supported by other courts that have endorsed or given this jury instruction. For instance, in *Bradley*, the First Circuit noted that this portion of the Eleventh Circuit's pattern jury instruction for involuntary servitude is permissible for forced labor charges under § 1589. *See United States v. Bradley*, 390 F.3d 145, 153–54 (1st Cir. 2004). That pattern instruction supports the defendants' proposed instruction here. It states:

> To decide whether a person reasonably believed there was no way to avoid continued service, you must consider:
> - the method or form of coercion threatened or used in relation to the person's particular circumstances and conditions;
> - the person's physical and mental condition;
> - the person's age, education, training, experience, and intelligence; and
> - *any reasonable means or chances the person may have had to escape*.

*Eleventh Circuit Pattern Jury Instructions, Criminal Cases*, No. O62 (2024) (emphasis added).

Moreover, other courts have provided similar instructions on forced labor in violation of § 1589 and conspiracy to commit forced labor in violation of 18 U.S.C. § 1594. *See, e.g.*, *United States v. Majeed*, 2:21-CR-20060-JAR (D. Kan. Sept. 16, 2024), Dkt. No. 475 at 40 (in case charging §§ 1589 and 1594, instructing jury regarding "any reasonable means the alleged victim may have had to escape"); *United States v. Hernandez*, 4:17-cr-00462-JSW (N.D. Cal. Mar. 18, 2019), Dkt. No. 171 at 21 (in case charging §§ 1589 and 1594, instructing jury regarding "any reasonable means of escape or terminating the relationship"); *United States v. Kartan*, 2:16-CR-217-MCE (E.D. Cal. March 14, 2019), Dkt. No. 178 at 23 (instructing jury same regarding § 1589); *United States v. Dann*, 4:08-cr-00390-CW (N.D. Cal. Oct. 6. 2009), Dkt. No. 92 at 11 (same); *United States v. Kaufman*, 5:04-cr-40141-MLB (D. Kan. Nov. 3, 2005), Dkt. No. 305 at 66 (instruction regarding § 1589 on "any reasonable means the alleged victim may have had to escape"). Such an instruction is appropriate here.

Additionally, because this proposed instruction focuses on "reasonable means" of escape and/or termination of the relationship, it obviates the need for the government's proposed instruction related to escape:

> The fact that an alleged victim may have had an opportunity to leave is irrelevant if the defendant placed the alleged victim in such fear or circumstances that she did not reasonably believe she could leave. A victim is under no affirmative duty to escape.

Dkt. No. 223 at 25. This instruction is one-sided, confusing and an incorrect statement of the law, considering that reasonable means of escape and/or terminating the relationship are an appropriate consideration in assessing serious harm.

In support of its instruction, the government relies on *United States v. Kelly*, 1:19-CR-286-AMD (E.D.N.Y. 2019), *United States v. Raniere*, 18-CR-204-NGG (E.D.N.Y. 2018), and *United States v. Zhong*, 16-CR-614-AMD (E.D.N.Y. 2016). The government, however, modified the instructions from those cases in a significant way in its proposed charge. Specifically, each of those cases charged a version of the following instruction:

> The fact that [the alleged victim] may have had an opportunity to escape is irrelevant if the defendant placed [the alleged victim] in such fear or circumstances that she did not reasonably believe she could leave. A victim **who has been placed in such fear or circumstances** is under no affirmative duty to try to escape.

*Kelly*, 19-CR-286, Dkt. No. 303 at 52 (emphasis added); *see Raniere*, 18-CR-204, Dkt. No. 728 at 105; *Zhong*, 16-CR-614, Dkt. No. 236 at 27; *see also United States v. Marcus*, 1:05-CR-457-ARR, Dkt. No. 202 at 24 (E.D.N.Y. Feb. 21, 2007) (same). The government omits the bolded language here, asserting below that it did so to "simplify the charge." But the government's revision went far beyond word-smithing; rather, it transformed the instruction into a categorical rule that an alleged victim *never* has an affirmative duty to escape, even when he or she has reasonable means to do so or otherwise terminate the relationship. These cases do not support such a categorical rule, and we have found no case that does support such a rule. Rather, the cases state only that, if a defendant is placed in "such fear or circumstances that she did not reasonably believe she could leave," then she has no affirmative duty to escape. The government's proposed categorical rule is contrary to the cases it cites, and it is not the law.

Moreover, the defendants in *Kelly*, *Raniere*, and *Zhong* did not seek the instruction that the defense seeks here, which is consistent with applicable law and has been given in numerous cases. *See Kelly*, 19-CR-286, Dkt. No. 117; *Raniere*, 18-CR-204, Dkt. No. 692-1; *Zhong*, 16-CR-614, Dkt. No. 222. The defendants' requested instruction, which is a simpler and more even-handed statement of the law, eliminates the need for the instruction given in those cases (and the revised version the government proposes here). The use of the term "reasonable means" is sufficient to alert the jury that it should not consider "unreasonable means," such as where terminating the relationship would result in serious harm to the alleged victim, and the government's additional proposed instruction on this point is unnecessary. Indeed, *Dann*, *Hernandez*, and *Kaufman* did not include the government's proposed language, but instead instructed the jury to consider "reasonable means" of escape and/or termination of the

relationship.[2] This Court should reject the government's proposed instruction here, and give only the defendants' proposed instruction on this point.

C. The Government's Contrary Arguments Lack Merit

The government's arguments set forth below against the defendants' proposed charge are meritless. *First*, the government argues that the cases the defense cites are not persuasive because they did not proceed solely on a one-count conspiracy charge. But there is no dispute here that the jury should be instructed on the object of the alleged conspiracy, namely, forced labor under § 1589. The debate here is only over the appropriate instruction for § 1589, which the defense's cited cases squarely address. That the cases were not limited to a single-conspiracy charge is irrelevant. As the government knows, this is the first and only case with a single count alleging a conspiracy to commit forced labor.

*Second*, a victim's opportunity to escape or terminate the relationship is not a "non-sequitur" in a conspiracy case. Rather, it goes to the heart of the issue. If the alleged victims were at all times free to leave and terminate their relationship with OneTaste, then it demonstrates that the defendants had no intent and no agreement to compel them to labor against their will through threats of serious harm.

*Third*, the government seeks to distinguish *Tegete*, *Headley*, and *Muchira* because they are civil cases and because they have different facts. The government misses the point. While the cases are civil, they interpret the exact same law at issue here, § 1589, which has a civil cause of action, *see* 18 U.S.C. § 1595. The law is not different in the civil context, and these courts' interpretation of the law is highly instructive. The standard of proof, however, is different in the civil context: it is lower. And, in those cases, the courts found that even that lower standard was not met *as a matter of law*, largely because the alleged victims were free to leave, despite allegations of severe psychological coercion. *See Headley*, 687 F.3d at 1178–79 (stating plaintiffs "grounded their forced-labor claims on the theory that the Church and Center psychologically coerced them to provide labor"); *Muchira*, 850 F.3d at 620 (plaintiff alleged "this evidence [wa]s sufficient to prove a 'forced labor' violation by means of serious psychological harm within the meaning of § 1589"); *Tegete*, 2023 U.S. Dist. LEXIS 43034, at *28 (concluding plaintiff was not "psychologically imprisoned" because she could "terminate her employment and walk away").

The government also tries to distinguish *Tegete* on the grounds that, in that case, "plaintiff's ability to leave was simply one factor the court considered, among many others." But that is the exact instruction the defense requests here, as described above, that reasonable means of escape and terminating the relationship are one of the "surrounding circumstances" that the jury should consider. Indeed, in restating its own theory of the case in trying to distinguish *Tegete*, the government states it will argue that defendants "strategically isolated [the alleged victims] from individuals outside of OneTaste by encouraging them not to associate with people

---

[2] *Kartan* and *Majeed* included both the instruction requested by the defense and the complete version of the instruction requested by the government, as charged in *Raniere*, *Kelly* and *Zhong*. *Kartan*, 16-CR-217, Dkt. No. 178 at 23; *Majeed*, 21-CR-20060, Dkt. No. 475 at 40–41.

who were not in OneTaste." Thus, the government itself is focused on whether the defendants cut off the alleged victims from the outside world, therefore rendering them unable to leave and terminate the relationship. While the government's theory of the case is contrary to the evidence, it nonetheless concedes that this factor is relevant.

*Fourth*, the government argues that the Court should not give this jury instruction because the "statute contains no such language." The purpose of jury instructions is to explain the meaning of the crime charged in the statute; otherwise courts would simply read the charged statute to the jury. The instruction, therefore, will necessarily include explanatory language beyond that in the statute. Indeed, the government's proposed jury instruction regarding escape also is not in the statute. The defendants' proposed instruction is designed to explain the "surrounding circumstances" that the jury should consider under the statute, when determining whether the threat of harm was sufficiently serious to compel labor against a person's will. 18 U.S.C. § 1589.

*Finally*, the government lands on its old refrain that the cases the defense cites are "non-binding" and "out-of-Circuit," so the Court should discount them—only *Raniere* and *Kelly* matter. To be clear, the relevant jury instructions in *Raniere* and *Kelly* are also non-binding on this Court. Although the convictions were affirmed by the Second Circuit, the proposed jury instruction that the defense has raised here was not at issue in those cases. There is a paucity of forced labor cases charged throughout the country, and *Raniere* and *Kelly*, the two most recent charged in this district, have no special expertise in interpreting the forced labor statute. The government has not argued that the relevant law in the Second Circuit is different than the law in other Circuits in this regard; indeed, *Tegete* shows it is the same. Thus, district courts in other circuits interpreting the same statute are entitled to the same persuasive authority as *Raniere* and *Kelly*. *New York Legal Assistance Grp. v. Bd. of Immigration Appeals*, 987 F.3d 207, 223–24 (2d Cir. 2021) ("Every lawyer knows that the ability to cite non-binding authority can be helpful. Such decisions can illustrate concrete examples of a rule's application, show that impartial judges have adopted reasoning similar to that being advanced by the advocate, or demonstrate the continuing validity of an old case…. If that were not so, parties would never cite district court or out-of-circuit appellate authority to a court of appeals."). As noted above, multiple district courts and the First Circuit have concluded that the defendants' proposed instruction is appropriate and a proper statement of the law with respect to § 1589. And, district courts have given this instruction in cases, such as this one, in which § 1589 is the object of the charged conspiracy under § 1594. *See Majeed*, 21-CR-20060-JAR, Dkt. No. 475 at 40; *Kaufman*, 5:04-cr-40141-MLB, Dkt. No. 305 at 66.

Moreover, in *Raniere* and *Kelly*, the defense likely did not request the instruction the defense seeks here, because it was not appropriate under the facts of those cases. *See United States v. Kelly*, 128 F.4th 387, 417 (2d Cir. 2025); *United States v. Raniere*, 55 F.4th 354, 366 (2d Cir. 2022). For instance, the example the government cites from *Kelly*, involves an instance in which the defendant brought the alleged victim into a room with a gun and then grabbed her neck and "guided her into performing oral sex on him as the gun was next to him." *See Kelly*, 128 F.4th at 417. The alleged victim testified she did so "because she felt '[i]ntimidated' and that she 'was under his rules' because 'he had a weapon.'" *Id.* (alteration in original). It would not be *reasonable* for someone to try to escape when confronted with a gun. But that is not this

case. There is no allegation here that the defendants threatened the alleged victims with weapons to compel them to conduct any labor. Rather, the alleged victims were free to come and go at all times, as they pleased, which is a highly relevant "surrounding circumstance[]" for the jury to consider under § 1589 in this case. The Court should give the proposed defense instruction.

## II. Government Response to Defense Request Regarding Reasonable Means of Escape or Terminating the Relationship

The defense's request for a supplemental charge related to serious harm should be denied. As set forth below, the defense's cited out-of-circuit case law does not support the defendants' proposed instruction, while Second Circuit case law and the language of the relevant statute supports the government's proposed instruction. The Court should reject the defendants' proposed instruction as to serious harm.

### A. Request to Strike Means of Proving Serious Harm Is Unripe

As the government has previously set forth, it is inappropriate at this juncture to strike from the jury charge ways in which to prove the serious harm element. The defense's request to strike certain portions of the jury charge is based only on their assessment of the government's evidence prior to trial. *See supra*, Section I. The government respectfully submits that the Court should wait until the conclusion of the case to determine if the jury should be charged as to "physical restraint against[] a person" or "through means of the abuse or threatened abuse of law or legal process." The defendants' request not to charge the jury as to these theories should be denied at this time.

### B. Case Law Does Not Support the Defendants' Proposed Instruction Regarding Escape and Termination of the Relationship

The Court should deny the defendants' request for the addition of an instruction as to whether victims had "any reasonable means of escape or terminating the relationship." *See supra*, Section I.A. Contrary to the defendants' assertions, such an instruction by the Court is not supported by relevant Second Circuit case law.

As a threshold matter, none of the cases cited by the defense are cases that proceeded solely on one count of conspiracy, as is charged here. Unlike in those cases, the only issue this jury will be asked to resolve is whether the defendants unlawfully agreed to obtain the labor and services of individuals through a variety of enumerated unlawful methods, not whether the defendants' agreement was ultimately successful (although, of course, the government intends to prove what happened to the victims as evidence of the conspiracy). Putting aside the merits of the requested instruction, which the government opposes for the reasons set forth below, including an instruction about a victim's opportunity to escape in a pure conspiracy case is a non sequitur that would needlessly confuse the jury and should be rejected for that reason alone.

But even assuming the government was required to prove a substantive offense—which it is not—the defendants' request would still be inappropriate here. In support of their argument, the defendants cite *United States v. Tegete*, 2023 U.S. Dist. Lexis 43034 (S.D.N.Y. Mar. 14, 2023), a civil forced labor case. But *Tegete* presents vastly different facts than the instant case. In *Tegete*, the plaintiff applied to join Maryknoll, a Catholic order for women that performed international missionary work. The plaintiff, who was living in Tanzania, moved to the United States to join Maryknoll. *Id.* at *2. She attended religious services, took English lessons, participated in vocational gatherings, and did menial work. *Id.* She was eventually transferred to Panama for missionary work, where she alleged that she continued to do menial work and that her living situation—which caused her allergies—negatively impacted her health. *Id.* at *14-15. After a vacation while in New York, she expressed to leadership at Maryknoll that she did not wish to return to Panama but expressed an interest in staying in Maryknoll and completing a mission elsewhere. *Id.* at *15. Her request not to return to Panama was denied, and the plaintiff left the community. *Id.*

The court found that the plaintiff's allegations as to forced labor under 18 U.S.C. § 1589 were insufficient as a matter of law, as the plaintiff had failed to present evidence that she was subject to circumstances causing serious harm or threats of serious harm, or that the defendant had intended to exploit such circumstances to prevent the plaintiff from leaving or ensure she kept working. *Id.* at *26. The plaintiff testified in her deposition that she was not subject to physical harm, but rather a "bait & switch" whereby she had been "enticed" to join Maryknoll based on "promises that she would engage in missionary work and receive theological education" but instead was required to perform manual labor. *Id.* at *4, *7. On that record, and after examining the totality of circumstances facing the plaintiff, the court in *Tegete* found that the plaintiff's allegations did not rise to the level of psychological harm. *Id.* at *28-29. The court also found that the plaintiff faced no financial harm, *id.* at *30, and that she had testified that she stayed with Maryknoll due to her desire to serve, rather than because she felt forced to do so. *Id.* at *33.

*Tegete* does not support the defense's requested jury charge. In *Tegete*, the plaintiff's ability to leave was simply one factor the court considered, among many others. *Id.* at *29-33 (considering the totality of the factual circumstances, including the lack of economic consequences or hardships and plaintiff's stated wish to continue her service). And importantly, *Tegete* did not involve the significant physical, financial, and psychological harm the defendants imposed on the victims in this case. This is not a case where one victim alleged that a defendant coerced her into performing menial labor by promising one thing but delivering another (the bait and switch the *Tegete* plaintiff complained of); instead, the instant case involved a decade-long conspiracy in which the defendants used unlawful tactics to force numerous victims to provide labor, including sexual services, for little or no pay, while driving them into debt as just one means of control. The repeated pattern across multiple similarly situated victims here—which was entirely absent in *Tegete*—is powerful evidence of the conspiracy. The defendants used a variety of psychological tactics: after grooming victims to work for them, they strategically isolated them from individuals outside of OneTaste by encouraging them not to associate with people who were not in OneTaste; they manipulated victims into believing that saying "no" was saying no to their own spiritual growth; they collected information on the victims regarding their prior trauma and then used that information against them; and they coerced several victims into providing sexual services, including with OneTaste's most important investor, who was also Nicole Daedone's partner, as well as with other important potential clients and OneTaste employees.[3]

*Tegete* and the other cases cited by the defense, including *Headley v. Church of Scientology, Int'l,* 687 F. 3d 1173 (9th Cir. 2012) and *Muchira v. Al-Rawaf*, 850 F.3d 605 (4th Cir. 2017), involved none of these circumstances of sexual labor and severe psychological and financial harm and are therefore inapposite. *Headley*, similar to *Tegete*, involved a couple who joined and voluntarily worked for a religious organization. 687 F. 3d 1173. There, the court found it "telling that the Headleys protest[ed] very little about their actual day-to-day jobs," and the record did not suggest that the defendants obtained their labor by means of "the discipline, lifestyle, and familial constraints" of which the defendants complained. *Id.* at 1179-80. And *Muchira* involved a claim from a woman who traveled to the United States to work as a housemaid for a family from Saudi Arabia, who alleged that the "Saudi cultural 'house rules,' coupled with her long work hours and verbal reprimands" caused her severe psychological harm. 850 F.3d at 619-20. The court found that Muchira's allegations were insufficient to prove substantive forced labor. There were no allegations of sexual labor or severe financial harm, as in this case. Nor do the defendants' assertions about facts present in the "typical" forced labor case have merit here, *see supra* section I.A, where the jury will be presented with facts from the evidence at trial and the Court will provide them instructions on the law consistent with the statutory language—not the "typical" case.

[3] The recitation of the psychological tactics used by the defendants does not mean that the government "concedes" that victims' ability to leave is relevant on the facts of this case, as the defendants speculate above. *See supra* at 8 ("While the government's theory of the case is contrary to the evidence, it nonetheless concedes this factor is relevant."). To the contrary, the psychological tactics outlined by the government pertain to the defendants' conspiracy to coerce the victims to *stay* to perform labor and services.

Finally, it would be inappropriate to include in the jury charge consideration of the victims' ability to leave or terminate the relationship when the statute contains no such language. Indeed, the statute defines "serious harm" to include "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2). Addition of the victim's "ability to leave" or "ability to escape" would effectively limit the statute to only providing for instances of physical restraint, such that a victim is unable to physically leave. The Court should not allow the defendants to attempt to transform this case from one of forced labor conspiracy to one of substantive kidnapping. Instead, the statute's explicit inclusion of "nonphysical" harm indicates that an ability to leave is not conclusive. *Cf. Headley*, 687 F.3d at 1180 (holding that the text of 18 U.S.C. § 1589 "requires that serious harm befall an employee 'if she did not continue to work' *or* a threat that 'compel[s] [her] to *remain*' with the employer" (citing *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011)); *see also Dann*, 652 F.3d at 1169 ("Congress intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion," as well as through "physical or legal coercion"). Though the courts relied on by the defendants may have considered, under the particular facts of those cases, a victim's ability to leave, that does not transform the plain language of the statute to requiring the jury to so consider, as the defendants' proposed instruction requires. *See* ECF No. 223 at 35 (defense requesting that jury "should consider" "any reasonable means of escape or terminating the relationship").

C. The Government's Proposed Language is Consistent with Second Circuit Precedent

The defendants argue that their proposed charge regarding the ability to escape is supported by other courts, including the First and Eleventh Circuits. But in *United States v. Bradley*, 390 F.3d 145 (1st Cir. 2004), *judgment vacated on other grounds*, 545 U.S. 1101 (2005), while the First Circuit commented that the Court "[saw] nothing wrong with the [Eleventh Circuit] pattern instruction," it specifically approved the district court's instruction that is similar to the government's proposed instruction in this case:

> The government . . . need not prove physical restraint; such as, the use of chains, barbed wire, or locked doors, in order to establish the offense of forced labor. The fact that Mr. Hutchinson or Mr. Flynn may have had an opportunity to flee is not determinative of the question of forced labor if either or both of the defendants placed Mr. Hutchinson or Mr. Flynn in such fear or circumstances that he did not reasonably believe he could leave.

*Id.* at 153-54; *see* ECF No. 223 at 25 (government's proposed instruction). And as the defense acknowledges, the relevant Eleventh Circuit pattern instruction the defendants cite is from the Eleventh Circuit's pattern instruction for an *involuntary servitude* charge—not forced labor conspiracy, or even substantive forced labor. *See supra*, Section I.B.

The remaining cases cited by the defendants are all non-binding, out-of-Circuit cases in the Northern and Eastern Districts of California and District of Kansas. Many of the cases, including *United States v. Kartan*, No. 16-CR-217 (MCE) (E.D. Cal. March 14, 2019), *United States v. Dann*, No. 4:08-cr-00390 (CW) (N.D. Cal. Oct. 6. 2009), and *United States v. Hernandez*, No. 4:17-cr-00462 (JSW) (N.D. Cal. Mar. 18, 2019), involve the substantive offense of forced labor rather than forced labor conspiracy. And in *United States v. Kaufman*, No. 5:04-cr-40141 (MLB) (D. Kan. Nov. 3, 2005), Dkt. No. 305 at 66, the court charged the jury with the defendants' proposed instruction for charges of substantive forced labor and involuntary servitude, but not for the forced labor conspiracy charge. Similarly, *United States v. Majeed*, 2:21-CR-20060 (JAR) (D. Kan. Sept. 16, 2024), Dkt. No. 475, included both substantive forced labor and forced labor conspiracy.

In contrast, the government's proposed language is drawn from relevant cases in the Eastern District of New York, which were affirmed by the Second Circuit. *See United States v. Kelly*, 19-CR-286 (E.D.N.Y. Sept. 27, 2021), Dkt. No. 303; *United States v. Raniere*, 18-CR-204 (E.D.N.Y. Jun. 18, 2019), Dkt. No. 728; *United States v. Raniere*, 55 F.4th 354, 357 (2d Cir. 2022) (affirming convictions); *United States v. Kelly*, 128 F.4th 387, 417 (2d Cir. 2025) (affirming conviction involving forced labor predicate act where defendant "obtained the sexual labor of" two victims). Indeed, most recently, in *Kelly*, the Second Circuit determined that Kelly "obtained the sexual labor" of two victims "through threats of serious harm *or* physical restraint," and describing, with respect to one of the victims, that Kelly subjected her to "psychological control," including keeping her waiting in a room "without food or water because she did not greet him properly when he first saw her," and ultimately guiding her into a room "where there was a gun on the ottoman," grabbing her neck "and guid[ing] her to perform oral sex on him." *Id.* at 417 (emphasis added). Notably, the Second Circuit's analysis did not depend on—or even consider—Kelly's victims' ability to leave or "reasonable means of escape or terminating the relationship," as the defendants argue to this Court that the jury *should* consider. The defendants' assertion that the out-of-Circuit examples they cite above are just as persuasive as *Raniere* and *Kelly* is simply false. The Court should reject the defendants' attempt to insert novel language in this Circuit into the jury charge in this case.

The defendants make much of the government's minor revision to the instruction used in *Kelly* and *Raniere* in which the jury was charged, "[a] victim who has been placed in such fear or circumstances is under no affirmative duty to try to escape" to instead state "[a] victim is under no affirmative duty to escape." *See* ECF No. 223 at 25. The government made this revision to simplify the charge, given that the sentence preceding this one discusses placing a victim "in such fear or circumstances that she did not reasonably believe she could leave." *See United States v. Kelly*, 19-CR-286 (E.D.N.Y. Sept. 27, 2021), Dkt. No. 303; *United States v. Raniere*, 18-CR-204 (E.D.N.Y. Jun. 18, 2019), Dkt. No. 728; ECF No. 223 at 25. The defendants' assertion that the government's proposed instruction is "an incorrect statement of the law," *supra*, Section I.B, is therefore misleading and false. In any event, the government does not oppose the Court instructing the jury that "[a] victim who has been placed in such fear or circumstances is under no affirmative duty to try to escape," as the district courts in *Kelly* and *Raniere* did—both of which have been upheld by the Circuit.

## III. Defense Request: Adverse but Legitimate Consequences Instruction

### A. Proposed Instruction

Defendants propose including the following, more fulsome instruction regarding adverse but legitimate consequences in its forced labor conspiracy charge:

> Some warnings by an employer to an employee can be legitimate. Warnings of legitimate but adverse consequences of an employee's actions, standing alone, are not sufficient to violate the forced labor statute. It is for you to determine whether the statements made by the defendants to the alleged victim were legitimate warnings, or threats as I just defined that term to you.

*See* 2 Modern Federal Jury Instructions–Criminal ¶ 47A.02 (2025); *United States v. Zhong*, 26 F.4th 536, 550 (2d Cir. 2022); *United States v. Paulin*, 1:07-CR-20263-JAG (S.D. Fla. Mar. 5, 2008), Dkt. No. 127 at 21.

With this addition, the relevant instructions in the defendants' proposed charge would read:

> In addition, when considering whether a Defendant made "threats of serious harm" to the witness, you should consider that adverse but legitimate consequences or threats of adverse but legitimate consequences incident to an employment relationship do not constitute serious harm or threats of serious harm. **Some warnings by an employer to an employee can be legitimate. Warnings of legitimate but adverse consequences of an employee's actions, standing alone, are not sufficient to violate the forced labor statute. It is for you to determine whether the statements made by the defendants to the alleged victim were legitimate warnings, or threats as I just defined that term to you.**
>
> Also, in consideration of whether the Defendants conspired to make threats of serious harm to any individual, you should consider whether such alleged threats were covered by the First Amendment to the Constitution, which permits individuals who no longer wish to associate with someone, to lawfully make that choice to not associate.

Dkt. No. 223 at 35–36.

Relatedly, because the joint proposed instructions do not presently define the term "threats," defendants propose adding the definition from the Modern Federal Jury Instructions' pattern instruction for forced labor, which states:

> A threat is a serious statement expressing an intention to inflict harm, at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner. For a statement to be a threat, the statement must have been made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious expression of an intent to cause harm. In addition, the defendant must have made the statement intending it to be a threat, or with the knowledge that the statement would be viewed as a threat.

2 Modern Federal Jury Instructions–Criminal ¶ 47A.02.

B. <u>Defendants' Proposed Instruction Regarding Adverse but Legitimate Consequences is Proper</u>

Numerous courts have distinguished between improper threats or coercion and permissible warnings of adverse but legitimate consequences in employer/employee relationships. *See, e.g.*, *Tegete*, 2023 US. Dist. Lexis 43034, at *35 ("At bottom, not all bad employer-employee relationships will constitute forced labor, and an employer will only be guilty of forced labor if [it] intends to cause a person in [its] employ to believe that if she does not continue to work, she will suffer the type of serious harm . . . that would compel someone in her circumstances to continue working to avoid that harm." (alterations in original) (internal quotation marks and citations omitted)); *Akhtar v. Vitamin Herbal Homeopathic Ctr.*, No. 19-CV-1422 (WFK) (RER), 2021 U.S. Dist. Lexis 255148, at *22 (E.D.N.Y. Apr. 30, 2021) (stating that not all bad employer/employee relationships constitute forced labor); *Bradley*, 390 F.3d at 155 (distinguishing between "merely abusive employers" and employers who "deliberately sought to compel forced labor"); *Dann*, 652 F.3d at 1170 ("To be sure, not all bad employer-employee relationships . . . will constitute forced labor."); *Muchira*, 850 F. 3d at 624 (distinguishing between improper threats of coercion and permissible warnings of adverse but legitimate consequences in employer/employee relationship). In fact, the Second Circuit has made clear that an adverse but legitimate consequence instruction may be appropriate depending on the circumstances. *See Zhong*, 26 F.4th at 550. As the defense expects that the government will present evidence of legitimate employer warnings to OneTaste employees, this instruction is appropriate here.

The government's reasoning for rejecting the adverse but legitimate consequences instruction makes little sense. It argues that, because the Second Circuit affirmed the district court's denial of such an instruction in *Zhong*, this Court should "rely on the government's proposed instructions, which are less confusing and supported by precedent." Dkt. No. 223 at 45. First, presumably, the instruction that the government argues is "less confusing" and covers this point is that "[a] threat of serious harm . . . need not involve any threat of physical violence" and "includes improper threats of consequences." *Id.* at 23. It is unclear, however, since the government states its proposed instructions are "less confusing," but does not clarify to which part of its instructions it is referring. *Id.* at 45. Second, there is nothing confusing about what the Second Circuit stated in *Zhong*. That case made clear that "[w]hether an employer's threatened consequences are legitimate and therefore do not qualify as serious harm will depend

on the surrounding circumstances in each case." *Zhong*, 26 F.4th at 550 (internal quotation marks omitted). The Second Circuit also made clear the district court has discretion whether to charge the jury with an adverse but legitimate consequences instruction. *See id.* Third, the additional language the defendants propose above regarding this instruction undermines any claim that the government's instruction is "less confusing." Indeed, the government's instruction about "improper threats of consequences" does nothing to explain what might constitute such an "improper threat." The defendants' proposed instruction, on the other hand, clarifies the distinction between legitimate warnings to employees about the adverse consequences of the employees' actions and serious threats sufficient to unlawfully compel labor.

This distinction is highly relevant in this case, where the government's expansive theory of the case is based on a supposed "climate of fear" during a 12-year charged conspiracy. During that time period, certain OneTaste employees were advised of legitimate adverse employment consequences that are not properly considered as part of the government's claimed "climate of fear." For instance, if an employee (1) does not show up for meetings or work; (2) fails to show interest in their work; (3) declines to relocate to another city to take on a new opportunity; or (4) is insubordinate to their boss, it is legitimate for an employer to advise that such action may have consequences for the employee's position at the company, including loss of future opportunities, demotion or change in position, or termination. Some or all of these adverse employment consequences will be at issue in this case, depending on which witnesses the government calls to testify. Thus, the Court should give the defendants' proposed instruction to clarify the distinction between legitimate warnings and threats.

## IV. Government's Response to Request for Adverse But Legitimate Consequences Instruction

First, the government does not oppose adding an instruction regarding the definition of a "threat" as proposed by the defendants and outlined in the Modern Federal Jury Instructions–Criminal ¶ 47A.11 (2025).

Second, the defendants' request for an adverse but legitimate consequences instruction should be rejected. The defendants have only pointed to one case where the jury was charged with this instruction, which was for a substantive forced labor charge, not forced labor conspiracy. *See United States v. Paulin*, 1:07-CR-20263 (JAG) (S.D. Fla. Mar. 5, 2008), Dkt. No. 127 at 21. That some courts have distinguished between improper threats or coercion and permissible warnings of adverse but legitimate consequences in employer/employee relationships is irrelevant, and the cases that the defendants cite are inapposite. *Tegete*, as discussed in more detail above, was a civil forced labor case; the same is true of *Akhtar v. Vitamin Herbal Homeopathic Ctr.*, No. 19-CV-1422 (WFK) (RER), 2021 U.S. Dist. Lexis 255148 (E.D.N.Y. Apr. 30, 2021) and *Muchira v. Al-Rawaf*, 850 F.3d 605 (4th Cir. 2017). None of these cases addressed criminal jury instructions. And in *United States v. Dann*, 4:08-cr-00390-CW, Dkt. No. 92 at 11 (N.D. Cal. Oct. 6. 2009), the court did not charge the jury with the defendants' proposed instruction.

Instead, the government's proposed instruction properly explains a threat of serious harm in line with Second Circuit precedent, including *Kelly* and *Raniere*. In stating that the government's proposed instruction is "confusing," the defendants omit a key portion of the government's proposed instruction that explains "improper threats of consequences":

> [A threat of serious harm] includes *improper* threats of consequences, *whether physical or nonphysical, that are sufficient, under all the surrounding circumstances, to compel or coerce a reasonable person of the same background and in the same circumstances to provide, or to continue providing, labor or services, in order to avoid that harm.*

ECF No. 223 at 23 (emphasis added). The government's use of the word "improper" necessarily excludes proper warnings of employment consequences.

As discussed already in the joint charge, ECF No. 223 at 45, in *United States v. Zhong*, 26 F.4th 536, 550 (2d Cir. 2022), the Second Circuit affirmed the district court's denial of an "adverse but legitimate consequences" instruction to the jury. There, the defendant argued that the workers had voluntarily joined the defendant's company's employment and therefore the consequences of a "voluntarily entered into employment agreement are always legitimate." *Id.* The Circuit explained, "[t]hat assumption is inconsistent with case law recognizing that a victim's initial willingness to perform certain labor does not preclude the possibility that the victim's continued labor may become forced." *Id.* And while the Circuit acknowledged that such an instruction might not be an abuse of discretion in some cases, "such as one in which the government presented evidence of employer conduct that had a coercive effect but was undeniably legitimate as a matter of law," *id.*, that does not at all apply to the instant case, in

which the defendants coerced victims into performing sex acts with clients, investors, and other OneTaste members. There is nothing "legitimate" about obtaining sexual labor and services in the employment context. The Court should reject the defendants' proposed instruction, which, contrary to the government's proposed instruction, is not supported by precedent and is inappropriate under the circumstances of this case.

Ballard Spahr LLP

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Celia Cohen
Tel: 646.346.8002
Fax: 212.223.1942
cohenc@ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottiM@ballardspahr.com

May 24, 2025

*Via ECF*

Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: United States v. Nicole Daedone and Rachel Cherwitz, 23-CR-146

Dear Judge Gujarati:

The parties jointly submit this letter as a supplement to the joint requests to charge filed on December 9, 2024 and April 16, 2025. *See* Joint Requests to Charge, Dkt. No. 223, and Supplemental joint requests to charged, Dkt. No. 381.

I. Defense Request – Freedom of Religion Instruction

As set forth in the defendants' May 19, 2025 motion (Dkt. No. 381), the government continues to elicit testimony and evidence concerning OneTaste's philosophy through Daedone's teachings and ideology to suggest that they were brainwashed. The prosecution has not even concealed its theory of the case, that is, Daedone's teachings taught them to consent to everything because her teachings constituted a religious practice. The government argued:

> I think, as your Honor understands, our theory of the case is that the defendants put some the testifying witnesses, our victims, in psychological distress and also taught them concepts that taught them basically to consent to everything and to be willing to engage in certain sexual activities that even at the time they would have viewed as something they wouldn't consent to, but they did so because they were taught this was a philosophy or a religious practice that was good for them, and if they continued to do it they would reach enlightenment. This all goes to the psychological aspect of how the labor is forced. So this is a first hand account from the defendant's own words showing a flavor or an example of those sorts of teachings. (Tr. R. 190:22-191:10)

Time and time again, and over Defendants' objection, the government elicited testimony from its witnesses about Daedone's teachings on sex, orgasmic meditation, victimhood, and aversion practice (to name a few) which was then followed by testimony that those teachings were the reason the witness consented to conduct they otherwise would not have. (*e.g.* Tr. R. 259:1-11; 213:9-16; 1733:25-1734:9; 2306: 12-24) Witnesses expressly agreed that it was Daedone's *ideas and teachings* that were the reason they agreed to engage in certain sexual conduct.

Admission of such evidence violates the defendants' First Amendment right to religious freedom, and should not be considered by the jury in determining whether the defendants are guilty of the forced labor charge. Accordingly, the defense requests that the Court instruct the jury as follows:

> **You have heard evidence about certain spiritual beliefs, philosophies, teachings, and practices. The defendants are not on trial for their views, and you cannot consider such evidence in determining whether the government has met its burden. Specifically, the First Amendment guarantees to all persons in the United States the right to freedom of speech, freedom of religion, and freedom of association. Because of these constitutional guarantees, no one can be convicted of a crime simply on the basis of her beliefs, her expression of those beliefs, or her associations. Thus, in considering whether the government sustained its burden of proof, you may not consider any personal feelings you might have about such beliefs, teachings, and practices or the defendants' religion or spirituality.**

The government has repeatedly elicited testimony concerning OneTaste's teachings and spiritual beliefs. For example, the government has shown the jury clips of Nicole Daedone's teachings, elicited testimony concerning priests and priestesses, and shown videos of certain practices. Accordingly, the jury needs to be instructed that they cannot decide this case based on their own views of such practices. This instruction is based in the First Amendment, and supported by numerous cases. *U.S. v. Hale*, No. 03-CR-11, 2004 WL 5372837 (N.D. Ill. 2004) (providing instruction that the First Amendment also protects the right of individuals to maintain and express their beliefs, no matter how unpopular); *U.S. v. Ammon Bundy, et al.*, No. 3:16-cr-00051-BR., 2016 WL 9819346 (D. Or. 2016) (instructing the jury that defendants' political beliefs are not on trial, and that the defendants cannot be convicted based on unpopular beliefs); *U.S. v. Juraboev et al.*, No. 1:15-CR-00095, 2019 WL 11901576 (E.D.N.Y. 2019); *United States v. Kaziu*, 559 F. App'x 32, 35 (2d Cir. 2014); Model Federal Jury instructions, 2.92b.

While there is support for such an instruction in cases charging material support, those cases are materially different from the instant case. *Compare Kaziu*, 599 F. App'x at 35. In those types of cases, the defendants are on trial for specific acts of violence, and the Court's instructions merely clarify that the defendants are not on trial for their beliefs. *See Juraboev et al.,* (instructing the jury that the First Amendment's freedom of religion protects an individual's right to believe, profess, practice and exercise whatever religious doctrine he chooses, and that the jury may not convict the defendant solely for exercising his religious beliefs). In contrast, here, there is specific evidence being elicited concerning spiritual beliefs and practices, and thus the jury needs to be instructed that it cannot consider its personal beliefs about the defendant's teachings or practices in determining whether the defendants committed the crime charged. [1]

[1] The defense also intends to request revised language on the knowledge and Intent instruction to include a good faith instruction, as we indicated to the Court yesterday, and will file a joint request on this point tomorrow. *See* Request 3 at Dkt. No. 223. The defense intends to request the following: "The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind. In determining what a person knew or what a person intended at a particular time, you may consider any statements made or acts done by that person and all other facts and circumstances received in evidence that may aid in your determination of that person's knowledge or intent. A defendant does not possess the requisite knowledge or intent if she acted in good faith, or held an honest belief that her actions (as charged in a given count) were proper and not in furtherance of any unlawful activity." *See United States v. Litvak*, 808 F.3d 160, 189 (2d Cir. 2015); *see also United States v. Chaudhri*, 134 F.4th 166, 186-7 (4th Cir. 2024) (to avoid running afoul of the First Amendment in the context of "threats" made in a forced labor case, the government must prove that the defendants possessed the requisite mens rea when they made the threats) (citing *Counterman v. Colorado*, 600 U.S. 66, 74-79)(2023)).

**Government Response**

As the government has repeatedly argued—and as the Court has already found—the defendants' arguments that the jury should not consider testimony and evidence concerning OneTaste's use of purported spiritual practices to direct individuals to, among other things, perform sexual acts and go into debt, is meritless. The law is squarely to the contrary. See, e.g., ECF Nos. 182 at 7-9; 381 at 3-6.

Because the defendants are wrong as a matter of law, the defendants' proposed instruction, in asserting that "you cannot consider such evidence in determining whether the government has met its burden," is also plainly wrong. Nor do the defendants own citations to their proposed instructions even support such a statement. Rather, the Court should instruct the jury, consistent with Kaziu, 559 F. App'x at 35, that:

> You can consider evidence of the defendants' spiritual beliefs, philosophies, teachings and practices in considering whether the government has established the elements of the charged conspiracy, including the defendants' motive or intent. However, the defendants are not on trial for having such views or beliefs and such evidence cannot act as a substitute for proof beyond a reasonable doubt of the elements of the crime charged.

Kaziu, 559 F. App'x at 35 (ruling that the First Amendment does not "prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent" and approving jury instructions in a case where "political beliefs were introduced to prove the mens rea element of the charged crime" where jury was instructed that the defendant was "not on trial for having extremist religious views or political views, and [that such evidence cannot] act as a substitute for proof beyond a reasonable doubt of the elements" (internal quotation marks and citations omitted)).

Further, specific reference to the First Amendment is not appropriate here, contrary to the defendants' proposed instruction. Indeed, the defendants, in proposing that the Court define First Amendment concepts to the jury, cite to model jury instructions for violations of 18 U.S.C. § 2339B, which prohibits providing material support to designated foreign terrorist organizations. See Model Federal Jury Instructions, § 2.92b. But that statute specifically provides "[n]othing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States." 18 U.S.C. § 2339B(i). Thus, the model jury instructions for § 2339B necessarily includes an instruction pertaining to that specific statutory language (that is not found in the forced labor statute). Even there, the instruction does not go so far as to say that "you cannot consider such evidence," as the defendants propose. Rather, it expressly indicates that the First Amendment is not a defense to a criminal charge. See Model Federal Jury Instructions, § 2.92b. Notably, it does not appear that the district court in Kaziu specifically cited to the

First Amendment. See United States v. Kaziu, No. 12-1026-cr, ECF No. 98, at GA083, GA127-28 and GA170 (2d Cir.) (government appendix citing underlying instructions in Kaziu subsequently approved by the Second Circuit); Kaziu, 559 F. App'x at 35 (approvingly citing to same).

Here, because the defendants are wrong as a matter of law, the Court should instruct the jury with the government's proposed formulation, which is drawn directly from the Second Circuit's language in Kaziu.

II. Defense Request – Jury Instruction on Shunning

The defense previously requested this instruction, however, in light of the testimony concerning "shunning", the defense further requests that the jury be instructed that shunning does not constitute serious harm. The government has repeatedly elicited testimony from witnesses about "shunning," which has a specific religious meaning. *See Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012). The government's introduction of this word necessitates an instruction clarifying that, under First Amendment free exercise and association principles, "shunning" does not constitute serious harm. Furthermore, the concept of shunning has been given in cases where the organization is not a religion. *See Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1031 (7th Cir. 2024); *see also Menocal v. Geo Group, Inc.*, 635 F.Supp.3d 1151, 1189 (2022) (courts must "distinguish between improper threats or coercion and permissible warnings of adverse but legitimate consequences." Menocal, 635 F. Supp. 3d at 1189–90 (quoting *Headley*, 687 F.3d at 1180). Accordingly, the defense requests that the Court add the bolded language below to the Adverse but Legitimate Consequences Instruction set forth in the Supplemental joint requests to charged, Dkt. No. 381:

> In addition, when considering whether a Defendant made "threats of serious harm" to the witness, you should consider that adverse but legitimate consequences or threats of adverse but legitimate consequences incident to an employment relationship do not constitute serious harm or threats of serious harm. Some warnings by an employer to an employee can be legitimate. Warnings of legitimate but adverse consequences of an employee's actions, standing alone, are not sufficient to violate the forced labor statute. It is for you to determine whether the statements made by the defendants to the alleged victim were legitimate warnings, or threats as I just defined that term to you.
>
> Also, in consideration of whether the Defendants conspired to make threats of serious harm to any individual, you should consider whether such alleged threats were covered by the First Amendment to the Constitution, which permits individuals who no longer wish to associate with someone, to lawfully make that choice to not associate. **For example, "shunning"—i.e., threats of being cut off from one's religious or spiritual community—is protected by the First Amendment to the Constitution. Shunning is an adverse but legitimate consequence of leaving one's religious or spiritual community and does not constitute serious harm.**

The Ninth Circuit analyzed "shunning" by a religious organization in a forced-labor case and concluded that threats of "shunning"—or "los[ing] contact with friends, family, or each other" is a legitimate consequence of leaving one's employment with a religious community—and is therefore not serious harm. *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012) ("A church is entitled to stop associating with someone who abandons it."). The government has injected the concept of shunning into the trial in a way that directly ties it to relevant and persuasive case law—and has therefore necessitated an instruction about shunning.

Critically, a religious or spiritual community can be a church for Free Exercise purposes even if it its doctrine is a "conglomeration" of various beliefs and practices, "none of which would be considered religious practices standing alone." *Dettmer v. Landon*, 799 F.2d 929, 931-32 (4th Cir. 1986) (rejecting that contrary argument by the government in holding that the Church of Wicca is a religion because it "occupies a place in the lives of its members parallel to that of more conventional religions"); *see also Stewart v. Richardson*, No.

15 CV 9034 (VB), 2016 U.S. Dist. LEXIS 178809, at *15-16 (S.D.N.Y. Dec. 27, 2016) (holding that a prisoner's Wiccan faith was a religion for purposes of RLUIPA).

As the U.S. Supreme Court and the Second Circuit have repeatedly emphasized, "'an expansive conception of religious belief' is appropriate." *Equal Opportunity Emp't Comm'n v. United Health Programs of Am., Inc.*, 213 F. Supp. 3d 377, 395 (E.D.N.Y. 2016) (quoting Patrick v. LeFevre, 745 F.2d 153, 158 (2d Cir. 1984)); *Fowler v. Rhode Island*, 345 U.S. 67, 70 (1953) ("[I]t is no business of courts to say that what is a religious practice or activity for one group is not religion under the protection of the First Amendment."); Frazee v. Ill. Dep't Emp't Sec., 489 U.S. 829, 834 (1989) ("[W]e reject the notion that, to claim the protection of the Free Exercise Clause, one must be responding to the commands of a particular religious organization.").

Indeed, in *United Health Programs*, this Court agreed with the EEOC that a program called Onionhead, which the employer created as a conflict-resolution tool, was a religion for the purposes of Title VII. Conducting a thorough analysis of longstanding precedent regarding the "expansive conception of religious belief," the Court's holding was based on, among other things, the fact that the employer's communications about Onionhead involved discussions about "God, spirituality, demons, Satan, divine destinies, miracles, higher guidance teachings, and a grail," they included many references to "spirituality" and "spiritual language," and the creator of Onionhead was referred to as a "spiritual advisor." *United Health Programs of Am., Inc.*, 213 F. Supp. 3d at 400–02. Very similar characteristics have been elicited by the government in testimony about OneTaste, and render OneTaste a religion for the purposes of the forced labor statute.

Furthermore, the concept of shunning is not limited to religious organizations. For example, in *Taylor*, 110 F.4th at 103, the Seventh Circuit held that it is not a TPVA violation for an organization to discontinue allowances or components that are part of its program and "may also remind the participants that leaving the program results in the cessation of the benefits of the program." Accordingly, the Court should include this instruction.

**Government Response**

The government opposes the entirety of the defendants' proposed Adverse but Legitimate Consequences instruction for the reasons already set forth in the parties' joint supplemental requests to charge, ECF No. 326. Further, the government opposes the defendants' novel instruction as to "shunning"—an instruction that it appears no court has ever given (or at least to which the defendants have provided no citations).

As an initial matter, as the government has already argued, that Daedone misappropriated aspects of many world religions to make her teachings more "theatrical," Tr. 2040, or lend credibility to the meditative sexual practices that she rebranded and marketed, does not render OneTaste a religion entitled to First Amendment protection. Thus, this case

is already readily distinguishable from Headley, which pertained to a recognized church, see Headley, 687 F.3d at 1174, and the remainder of the defendants' cited authority, which relies on the free exercise of religion. This case pertains to the defendants' actions in running OneTaste, which the defendants have repeatedly described throughout trial as a wellness start-up for-profit company. See, e.g., Tr. 46, 959.

However, more fundamentally, the defendants' apparent efforts to rebrand as some kind of religion midway through this criminal trial is far removed from what this Court should instruct the jury as to the elements of forced labor conspiracy. The defendants' novel instruction purportedly exemplifying an "adverse but legitimate consequence," and with inappropriate reference to the First Amendment, finds no support in the law and would serve only to inject significant confusion in this Court's instructing the jury.

III. Joint Request – Jury Instruction on Dates Approximate

The parties respectfully request that the Court instruct the jury as to the dates in the Indictment being approximate as follows:

> The Indictment refers to the criminal offense happening "in or about" and "between" certain dates. The proof does not need to establish with certainty the exact date of an alleged offense, and the Government does not have to prove that the Defendants committed the acts that are charged throughout the entire time period. Rather, it is sufficient if the evidence establishes beyond a reasonable doubt that an offense was committed during any part of the charged time frame.

See, e.g., United States v. Asainov, 19-CR-402 (NGG), ECF No. 168-2 at 9 (E.D.N.Y.); United States v. Wang, 22-CR-230 (DC), ECF No. 103 at 36 (E.D.N.Y.) (noting the jury need not find that the defendant committed the crime of acting as an agent of a foreign government during the entire time period specified in the indictment and need only find that the defendant acted as an agent "at any time within that period").

IV. Joint Request – Jury Instruction on Immunized Testimony

The parties respectfully request that the Court instruct the jury as to statutory immunity of a witness as follows:

> You have heard the testimony of a witness who has testified under a grant of immunity from this court. What this means is that the testimony of the witness may not be used against him in any criminal case, excepted in a prosecution for perjury, giving a false statement, or otherwise failing to comply with the immunity order of this court.

> Such testimony should be scrutinized by you with great care and you should act upon it with caution. If you believe it to be true, and determine to accept the testimony, you may give it such weight, if any, as you believe it deserves.

See Model Federal Jury Instructions, § 7-8 (as modified).

Respectfully submitted,

/s/Celia Cohen
/s/Michael Robotti
*Counsel for Rachel Cherwitz*
Ballard Spahr LLP

/s/Jennifer Bonjean
*Counsel for Nicole Daedone*
Bonjean Law Group, PLLC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA, : 23-CR-146(DG)

-against- : United States Courthouse
Brooklyn, New York

RACHEL CHERWITZ and
NICOLE DAEDONE, : February 26, 2025
10:30 a.m.

Defendants.

- - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE DIANE GUJARATI
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government: JOHN J. DURHAM, ESQ.
Interim United States Attorney
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201
BY: GILLIAN KASSNER, ESQ.
KAYLA BENSING, ESQ.
NINA GUPTA, ESQ.
SEAN FERN, ESQ.
Assistant United States Attorneys

For the Defendant
RACHEL CHERWITZ: BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, New York 10019
BY: CELIA COHEN, ESQ.
MICHAEL ROBOTTI, ESQ.

For the Defendant
NICOLE DAEDONE: BONJEAN LAW GROUP, PLLC
303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231
BY: JENNIFER BONJEAN, ESQ.

the Government argues that defendants should not be permitted to bring yet another untimely motion. The Government highlights that the topics defendants raise are not new. The Government further argues that even setting aside any untimeliness, the bases now proffered by defendants do not support dismissal of the indictment or any of the other contemplated relief.

As the parties know, and as I've previously noted, the Second Circuit has stated that dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights. See *United States v. De La Pava*, 268 F.3d 157, at 165, Second Circuit 2001.

As the parties also know, the deadline for filing pretrial motions has long since passed. Motions to dismiss were filed, both timely and untimely motions to dismiss. A motion to dismiss at this point on the bases evidently contemplated by defendants would be untimely. And based on the record to date, such untimeliness would be without good cause.

To the extent that defendants seek leave to bring yet another untimely motion to dismiss, such leave is denied.

A couple of things in defendants' filings were particularly notable to the Court on the issue of timing.

First, it was notable to the Court that at the September 27, 2024 conference, the parties were told, in substance, to address the Aidelbaum Word Documents with each other in the first instance and yet according to defendant Cherwitz, defendants did not confer with the Government on this topic until January 23, 2025. That was four months after the September conference and was even after the original trial date had passed.

Second, it was notable to the Court that defendants represent that information they learned while the parties were working on the joint requests to charge in November 2024 underlies defendants' request for relief now with respect to the time period of the charged conspiracy. Given that until January 8th, trial was scheduled to start on January 13th, it is telling that defendants did not seek leave earlier.

Throughout the pendency of this case, I have given defendants considerable leeway. Indeed, I have considered on the merits numerous of their untimely requests. I have done so in light of the nature of some of the issues raised. But defendants are operating as though they may, even at this late stage, continue to raise issues that could have and should have been raised earlier.

Defendants also seem to be operating as though they may relitigate issues previously decided. For example,

in a footnote to her motion for leave at ECF No. 261, defendant Cherwitz indicates that the defense "reserves its right" to renew its motion to dismiss based on the Purportedly Privileged Document; and we have defined that document before. "Reserves its right" is a curious choice of words. The Court will not be revisiting its denial of defendants' prior motion to dismiss based on the Purportedly Privileged Document. That issue was extensively litigated and was decided.

As I said months ago, a change in counsel does not give a criminal defendant a restart or redo of the proceedings. To the extent that defendant Cherwitz or her lawyers believe otherwise, they are mistaken.

Turning back to the requests for leave. Although the requests related to the Aidelbaum Word Documents and the timing of the charged conspiracy and, more generally, disclosure of grand jury minutes, appear to largely be aimed at obtaining information in order to bring another motion to dismiss the indictment, which as I have said would be untimely without good cause, I note for record completeness that defendants' arguments on these issues also lack merit.

Defendants have not demonstrated that the extraordinary relief of disclosure of grand jury minutes is warranted on any of the bases proffered by defendants. Defendants have not met their burden of showing a

particularized need that outweighs the interest in secrecy, as required under the applicable law. The Government's arguments, supported by caselaw, are persuasive on the record here.

Defendants' arguments with respect to the Aidelbaum Word Documents are not persuasive. As the parties will recall, I discussed the applicable law with respect to privilege and authority to assert privilege in the context of the Purportedly Privileged Document. I won't repeat that now, but I incorporate that discussion of the law here. Defendants' arguments with respect to the Aidelbaum Word Documents, including the due process argument they now assert, are not persuasive based on the record before the Court. I distinguish, of course, between the factual record and any party's characterization of the record or speculation.

Defendants' arguments about the timing of the charged conspiracy also are not persuasive based on the record before the Court, substantially for the reasons set forth by the Government.

I'll turn now to those requests for relief that appear to be aimed at least in part at obtaining relief short of dismissal of the indictment.

The briefing on the requests for leave is detailed and lengthy. Indeed, each motion for leave is approximately

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA, : 23-CR-146(DG)

Plaintiff , :
United States Courthouse
-against- : Brooklyn, New York

RACHEL CHERWITZ and
NICOLE DAEDONE, :
May 6, 2025
Defendant. : 3:30 p.m.
- - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR JURY TRIAL
BEFORE THE HONORABLE DIANE GUJARATI and a JURY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government: JOSEPH NOCELLA, JR.
Interim United States Attorney
BY: KAITLIN T. FARRELL
KAYLA C. BENSING
NINA C. GUPTA
SEAN M. FERN
Assistant United States Attorneys
271 Cadman Plaza East
Brooklyn, New York 11201

For Defendant Cherwitz: BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, New York 10019
BY: CELIA COHEN, ESQ.
MICHAEL P. ROBOTTI, ESQ.
KELLY LIN, ESQ.
SCHUYLER LA BARGE, ESQ.

(Appearances continued on the next page.)

Court Reporter: Annette M. Montalvo
Official Court Reporter

Nicole Daedone and Rachel Cherwitz, worked together to coerce vulnerable woman to perform labor, including sexual labor for their benefit. These women typically came from traumatic backgrounds and they were looking to improve their lives. The defendants lured these women into their supposed community. A community called OneTaste.

OneTaste claimed to promote female empowerment. Daedone was OneTaste's leader and Cherwitz was her top deputy. After gaining their victim's trust, the defendants set out on a criminal scheme to control these women.

The defendants drove their victims into debt. The defendants isolated their victims from the world outside of OneTaste and interfered with their family and romantic relationships. The defendants tracked their victims inner most fears. The defendants used psychological tactics to control their victims. They gaslit them and deprived them of sleep and privacy. They subjected them to sexual abuse.

The defendants did those things, and others, to coerce their victims to perform unpaid or underpaid labor for OneTaste. Working long hours, performing meaningless tasks, sexually servicing OneTaste clients and OneTaste's most prominent investor. These victims came to OneTaste seeking personal growth. They left as shells of their former selves.

What did the defendants get out of this? Power,

the kitchen, and sexually servicing that same wealthy OneTaste investor.

You'll hear from Becky. She joined OneTaste after that investor's money ran out. Becky will tell you how she was drawn to OneTaste's message of female empowerment. Like Michelle and Dana, Becky worked off substantial debt brought on by OneTaste by becoming a member of the OneTaste sales team where she was directed to let perspective clients rub her naked genitals. Becky will tell you about the psychological manipulation defendants subjected her to and about how Cherwitz sexually assaulted her in front of a room full of people.

You'll of also hear from a number of other women. Some of these women worked seven days a week from early in the morning until late at night. They slept in shared beds. They were expected to work through illness and to answer calls and text messages immediately. They all provided a variety of sexual services to support OneTaste. For this work, they were paid very little or nothing at all.

These victims will explain the tactics used against them that made them do this work. They worked because they were taught that the way to enlightenment was to obey the defendants' demands. They worked because they were isolated from their friends, their families, and the world outside the OneTaste. They worked because they were

taught there was no such thing as being a victim, and that doing the things they found sexually disgusting was the path to freedom. They worked because if they refused, they were shunned, called viruses or addicts and sent to addiction meetings designed to cause them to mistrust their own intuition.

But they also worked because they were scared. They were afraid that if they said no, they would be exiled from their homes and the only community they had. They were afraid if they said no, they would be spiritually ruined. They were afraid that if they said no, they would be verbally abused and humiliated. And they were afraid if they said no, they would be financially devastated.

These victims lived in fear that if they refused to do the work that the defendants demanded of them. They would lose their entire source of support, community, spirituality, and identity. Dana, Michelle, Becky, and others will tell you how the defendants tactics broke them down financially, physically, and psychologically until OneTaste was the only thing the victims had.

Meanwhile, OneTaste expanded globally, including to right here in Brooklyn. And Nicole Daedone and Rachel Cherwitz profited from the crimes.

For their action, the defendants are charged with the crime of forced labor conspiracy. While the judge will

provide you with specific legal instructions at the end of the case, a conspiracy is just another word for agreement. Forced labor is when someone gets another person to work for them by making that other person fear serious harm if they don't do the work. Serious harm can be any harm including financial, reputational, physical, and psychological.

During this trial the Government will prove that defendants committed this conspiracy beyond a reasonable doubt, through witness testimony, documents, video, photographs, and financial records.

First, you'll hear witness testimony. You will hear from former OneTaste participants who will give you an inside look into how this company operated. This will include some of the women the defendants exploited, as well as others that witnessed that abuse.

Second, you will see videos and photographs. You will see the OneTaste residences the victims lived in. You will see pictures of the victims. You will see where and how the genital massaging practice the defendants based their company on took place.

Third, you'll see documents. You'll see emails and you'll see communications including text messages with and about some of these victims. Messages that confirm the victim's testimony describing how their experience in OneTaste was damaging them financially, psychologically, and

MR. ROBOTTI: Yes, your Honor.

OPENING STATEMENT ON BEHALF OF DEFENDANT CHERWITZ

MR. ROBOTTI: Good afternoon, ladies and gentlemen.

So as you've already heard over the last couple of days, my name is Mike Robotti along with my colleague Celia Cohen, Kelly Lin and Schuyler La Barge. It is our privilege to represent Rachel Cherwitz.

Sorry, folks, I know the Government threw a lot at you there, a frightening tale a lot of drama, a lot of scary buzz words, none of which is a crime. We're going to talk about that.

I want to reset here for a minute and talk about what this case is really about. It boils down to this, freedom to stay or freedom to go. Freedom to stay or go. It's very simple at the end of the day.

Put aside for a second orgasmic meditation. It was a very beneficial practice for so many people, but it's not going to be everybody's couple of tea. I don't want that to be a distraction while we talk about the key question in this case.

The same choice that people make every day whether they are a librarian, a construction worker, postman, a lawyer or anything else: Do I want to keep doing this job or do I want to quit and do another job. If the exit door

is always open, then you are free to stay or go.

The evidence will show that the exit door at this company was always open. No one held a gun to anyone's head to make them work. No one threatened physical violence. No one locked the door and said you're not leaving until you finish the job. This case is the exact opposite of that. The people stayed because they believed in this company and they wanted to work there.

The Government is going to spend the next several weeks doing all sorts of mental gymnastics. You heard them start today. They are going to try to convince you that people cannot walk out the open door right in front of them if they didn't want to do this job. But you'll see it's really not that complicated. The simple truth is that the exit door was always open and that the Government's proof of this crime is non-existent. It's not even close to proof beyond a reasonable doubt.

So there is only one conclusion that you should reach at the end of this case, and that is, Rachel did not commit this crime and she's not guilty.

So with that overview, I want to take a couple of minutes and dive a little bit deeper.

So the charge here is one count of forced labor conspiracy. The judge will instruct you on the law at the end of the case. You must listen to the judge, but we

expect her to tell that you that to prove this charge beyond a reasonable doubt the Government must prove an unlawful agreement to force someone to do work against their will through serious harm or threats of serious harm. That just did not happen in this case.

There was no agreement. There was no force. There was no threats of serious harm. There was certainly no serious harm itself.

The evidence will show that Rachel was a salesperson at OneTaste, a wellness company. I'll talk more about the background of OneTaste and Rachel in a minute.

But let me say this up front, this company was no secret society. You'll hear that people worked for it because they loved it and they believed in the practice. They told everyone about it, bragging to their friends, posting on social media, and doing lots of press. Everything was done in the light of day. It was not the dark and scary story that you just heard. Just like any mission-based organization that people cared deeply about, the staff wasn't in it for the money. Some staff were paid, the others volunteered to help out to be a part of the experience.

(Continued on next page.)

(continuing)

MR. ROBOTTI: It was a blast to be there. For many, it was the best time of their lives. But if it wasn't, there was no obligation to stay. If you didn't like your boss, you could get a new job. If you didn't like your hours, you could get a new job. If you didn't like your assignments, you could get a new job. The employees always had that option. And when people stayed, it was because they made the choice to stay.

Now, the Government's going to spend the next several weeks tossing around some hot-button terms, and they're all distractions from the fact that the Government does not have proof in this case beyond a reasonable doubt.

You will hear a lot about orgasmic meditation at trial, a practice and philosophy that adults are free to do. Don't let the unique nature of this practice distract you.

You will hear a lot about nontraditional sex practices in relationships, like open and bisexual relationships, sexual fantasy games and BDSM. These are all things that adults have the right to do. Don't let the salacious details of these practices distract you.

You will hear exaggerated claims of high-pressure sales tactics; tactics that were, in fact, based on a standard model that many companies use. And whether that model is good or bad is not the question here. Don't let this sideshow

distract you.

Throughout this trial, in the face of these distractions, the Defense will keep refocusing on the key issue here: Freedom to stay or freedom to go. And we ask that you pay careful attention to that evidence, that everyone could make the choice to leave.

Okay. So let me turn to some background for a couple of minutes.

During trial, you will hear that OneTaste is a start-up company found in 2004, in San Francisco, by Nicole Daedone and Robert Kandell. The company focuses on the practice of orgasmic medication, or OM, spelled O-M, as a way to improve a person's sexual health and overall well-being. So, it's a wellness company.

You've heard what the OM practice involves: A fully-clothed man or woman stroking a woman's genitals for 15 minutes. It may sound like sex, but you will learn that OM was not about the sex act; it was about the meditation focused on the connection between two people. Done right, its practitioners believe it leads to spiritual awakening or truth. It's a female-centered practice focused on empowering women, but also on teaching men how to improve their sexual relationships with women.

And similar to yoga or CrossFit or any other class at the gym, some people just go occasionally, other people do

it regularly as part of a healthy lifestyle, and some people get really involved and become the equivalent of yogis. They teach, they go on retreats, and their friendships and their community revolve around this practice. You will hear that OneTaste had all such levels of interest.

You will also learn that as a start-up company, OneTaste struggled financially for years. But you will hear that they had a great time while they were trying to figure their business out. Work was a party. They threw fun events, often free, to develop interest: Parties at their center, home instructional courses, and naked yoga classes, which generated a lot of interest.

And look, while OneTaste was a legitimate company, it was not your average startup. After all, it was focused on orgasmic meditation, so it's not surprising that the regular practitioners, including the staff, who were seeking a sexual awakening, had a lot of sex and talked about sex a lot.

It was a very sex-positive community with a lot of open relationships. And that was part of the allure. Word spread about OneTaste and the OM practice over the years and by 2009 they were the talk of the town, everyone wanted to join the party.

And that's around the time that OneTaste figured out its product: Coaching programs and seminars. It was going to educate people about the OM technique and more generally how

to improve sexual health. And like any educational institution, it charged tuition for its courses, with introductory courses being cheaper and more advanced courses and retreats being more expensive.

OneTaste courses pushed people's boundaries because that's what they signed up for. That's what the OM practice is designed do. It's the same as when you get a personal trainer at the gym; you pay the trainer to help you push your muscles to grow. That's what the trainer is for. OneTaste was a coach for people's sexual health.

In the beginning of 2012, it turned its focus to sales and professionalized its sales force, training them with outside consultants. And in the years that followed, the struggling startup began to turn a profit and it worked through its growing pains on its path to success.

Now, it's important to understand the OneTaste start-up story so you can understand Rachel's parallel story. Like OneTaste, she herself was a startup. During trial, you will hear that in her mid twenties, Rachel hopped in a car with a couple of friends and drove from Texas to San Francisco. With her shaved head and raw energy, Rachel was a dynamo. And she showed up at OneTaste's doorstep in San Francisco saying she's heard about it and wanted it. OneTaste welcomed her with open arms.

You will hear at trial that Rachel started working

regularly with the practice, indicating it was incredibly beneficial for her in dealing with issues that affected her own sexual health. And she committed to OneTaste with enthusiasm about OM's practice -- OM practice's ability to help others. Rachel was tenacious and hard-working, first as a volunteer and then later as paid staff, just like countless others who were committed to the company's success.

Rachel was an energetic and talented salesperson and there were few better ambassadors to spread the company's message, so she rapidly rose up to the company's ranks with her unique ability to get new customers. You'll learn that by 2012, she was the company's lead salesperson. Rachel led sales teams in several cities at different times, including San Francisco, New York and London.

Look, sales is a hard job, especially when you're selling a product that is just breaking into the mainstream. But her teams got results, generating a lot of revenue for OneTaste.

You will hear that Rachel could be a tough boss. She expected a lot from her team. She worked long hours and she expected them to work long hours with her. She had daily sales goals that she was responsible for hitting and she pushed herself and she pushed her team to meet those goals.

You will also learn that Rachel could be an incredibly caring boss, checking with her staff regularly,

helping them work through personal issues and relationships and mentoring newer employees. But in her quest to motivate the staff, she could at times be harsh. The goal, though, was always to help the company grow and help salespeople make money, which she did.

Many people loved working with Rachel and respected her as a teacher and a leader. But if someone did not like working with her, they didn't have to. There was no obligation to be a salesperson at OneTaste. They could always find another job inside OneTaste or within another company. And for all sorts of reasons, many people did leave to pursue other jobs and opportunities. The evidence will show that no one was forced to work for Rachel and Rachel did not force anyone to do anything they did not choose to do. Everyone was free to stay or go.

So, why are we here? You'll see that we're here because the Government has cherry-picked a hodgepodge of unhappy former employees to complain about Rachel, Nicole, and OneTaste. And it's important that you carefully listen to their testimony to understand why it is biased and cannot be trusted. These are people with axes to grind and they are a small minority of the hundreds of OneTaste employees and thousands of OneTaste customers.

Just to give you some examples. They are ex-husbands and lovers, fired employees, and people with

competing businesses, people who have been trashing them for years on the internet and in the press, admitted liars and criminals, and people who regret the choices they made when they were younger. That is what the Government's case is built upon.

And here's the common thread that is going to run through the testimony: They're all full-grown adults who cannot take responsibility for their own actions. Listen to these witnesses deflect blame. These often well-educated adults, often with significant means, who don't believe they are personally responsible for their own decisions. Make a sexual decision you regret, blame OneTaste. Make a relationship decision you regret, blame OneTaste. Make a financial decision you regret, blame OneTaste. Bad career choice, OneTaste's fault. A poor relationship with your mom and dad, OneTaste is responsible.

You'll hear that these consenting adults all went into OneTaste well aware of the OM practice. In fact, it was the reason that they were there. OneTaste was not hiding in the dark. OneTaste was operating in the full light of day. It was literally shouting from the rooftops about the benefits of orgasmic meditation.

You will learn that OneTaste was also transparent that it was a for-profit company. Employees and customers alike signed consent and waiver forms acknowledging the nature

of the practice and their desire to participate in it. The company also had clear codes of conduct about the practice. And employees were told that this was a hard job with long hours and not a lot of money for dedicated people.

OneTaste was not their parents, they were not their financial advisors, they were not responsible for making sure that people in their mid twenties and early thirties did not make decisions they later would come to regret.

On top of their irresponsibility, what you're going to hear from these witnesses is a bunch of high school drama about peer pressure and mean girls. But being mean is not a crime. And this made-for-TV drama that you're about to hear is not proof beyond a reasonable doubt. These witnesses are going to ask you to believe that they were tricked into working against their will because of peer pressure and because Rachel was mean to them sometimes. That's the claim that you're going to hear at this trial.

Weighed against that claim is the clear evidence you will hear that these witnesses were free to stay and go as they pleased. They were not locked in anywhere. They had access to their phones and the internet. They traveled around their cities. They got on planes and went to other destinations. They went out with their friends. They saw and stayed with their families. They had other jobs and belonged to other organizations. They saw countless employees leave

OneTaste to pursue other opportunities. They knew they could leave at any time and that they had the means to do so.

Why did these witnesses stay at the company? Mostly, they stayed because they were having fun and they were having sex. They were happy and they believed that the OM practice was benefiting them and others. And that's what they told people at the company at the time.

So let me repeat that: They were free to leave and they were telling the company that they wanted to stay. How could Rachel possibly believe she was forcing them to work against their will? She could not. She had no intent and no agreement to force their labor. And if any of them in their minds believed otherwise, that was completely unreasonable.

At the end of this case, my colleague, Celia, will get a chance to come back and talk to you again and we will come back to this same point: Freedom to stay or go. They all had that choice. The exit door was always open. Until then, we ask that you stay focused on this evidence during these long few weeks ahead. We are confident that if you do, you will easily conclude that the Government cannot meet its burden here and that our client, Rachel, is not guilty.

Thank you.

THE COURT: Thank you, Mr. Robotti.

Does counsel for Ms. Daedone wish to make an opening statement?

MS. BONJEAN: Yes, Your Honor.

THE COURT: Go ahead.

I think you need the microphone.

OPENING STATEMENT ON BEHALF OF DEFENDANT DAEDONE

MS. BONJEAN: Good afternoon/good evening, Ladies and Gentlemen.

I know it's been a long day. I will try not to repeat my colleague's words. We do have some overlap because we look at this case very similarly.

But before I get started, I do want to reintroduce my team. As you know, my name is Jennifer Bonjean. My co-counsel over here is Kelsey Killion. My dynamic duo paralegals Sophia and Galila are here at the back table. And together, we proudly represent Nicole Daedone.

And on behalf of Ms. Daedone, we want to extend our gratitude for your patience -- we know it's been a long two days for all of us -- and your willingness to serve. And we understand that personal sacrifices are made to serve and be fair and impartial jurors, which is a tall task, and we are very grateful for it.

My colleague, Mr. Robotti, gave you a little introduction into the story of OneTaste and I want to tell you a little more about the founder, my client, Nicole Daedone.

Nicole is many things.

For starters, she has been and is a devout

practitioner of, first, Zen and then Tibetan Buddhism. You will see her -- she has little beads. You probably noticed them during jury selection.

She is an author of numerous books -- I think at least a dozen -- focused on spirituality, social change, and women's empowerment and sexual liberation.

In fact, OneTaste doesn't have some nefarious sexual meaning, actually. OneTaste comes from this great quote by a Buddha: Just as the great ocean has one taste -- the taste of salt -- so also this teaching and discipline has on taste, the taste of liberation. And that is what Ms. Daedone was striving for in creating OneTaste.

Ms. Daedone is an educator.

And yes, she is an entrepreneur.

She is also the creator of this practice known as orgasmic meditation which will sometimes be referred to as OM.

She has devoted most of her adult life to studying, practicing and developing OM, which is a mindfulness practice that's designed to bring people in alignment with their own sexuality and to promote human connection. That's the idea. That is what she has practiced and really devoted her life's work to.

You will hear a little more about it. You will hear probably more than you want to hear about it in some instances. But in summary, it is a 15-minute safe-partner

protocol that is rooted in consent. It starts with consent: Yes, you want to do this? Yes, I do. Let's do this.

Now, I want to make clear about something. From our perspective, this trial is not exactly about orgasmic meditation. The Government wants to make it about orgasmic meditation. And this isn't about whether it's good or bad or whether you think there's any benefits to it, whether you think it's weird or icky; it really doesn't matter. OM, as you will find out, is a scientifically-based practice with proven benefits. But it is not for everyone, and Ms. Daedone would tell you as much. This was not something she was shoving down anyone's throat.

Now, I want to turn back briefly to OneTaste, this company that was co-founded by Ms. Daedone in 2004. It was in the wellness and sexuality space, which is a space in which people develop businesses. Her goal was to create a clean, well-lit place where women's sexuality could be explored, plain and simple.

Like many start-up companies, in its early days it consisted of a small group of people passionate about the practice and philosophy of orgasmic meditation. And at its core, it was and remains an educational company designed to teach the practice of orgasmic meditation, not unlike yoga, not unlike other meditative practices, for people who wanted it. For people who wanted it.

Now, OneTaste's business model was pulled for many different modalities. And in 2007, you will learn, that it started receiving wide-spread attention and Ms. Daedone and her partner and executives in the company decided that they wanted to expand it, they wanted to make it more mainstream, they wanted to make it widely available. And that was the path they embarked upon, to make it more mainstream. In fact, it got even a celebrity following. It was a very popular practice. And again, as Mr. Robotti told you, nobody was hiding the nature of this practice. For goodness' sake, it's called orgasmic meditation.

Now, in 2007 when this expansion took place, there was a rapid, rapid expansion and people who were OneTaste sometimes started as OneTaste, students that became employees, branched off and started their own little OneTaste centers in different settings across the country. Even across the country. And a very, very small percentage of those people chose to live in communal settings that centered their lives around the practice of OM and sexual exploration. It wasn't the whole company, but a very small percentage of people. And no one was forced to participate at this level of intensity with OneTaste. The vast majority of people took one or two class or they signed up with their husband or their boyfriend and girlfriend in trying to figure out, you know, how they might be able to better communicate their sexuality. That was

the vast majority of people who took classes at OneTaste.

Some people really enjoyed it. Some people said: Eh, not for me; it's a little, you know, strange.

And let me be clear about something. You didn't walk in to your first day at OneTaste and, like, start OMing in front of a group of people. Okay? This was a practice by people who were very skilled. And people were interested in learning more and a lot of people got something out of it.

Now, some people got a great deal out of it. They continued to take courses. Sometimes they signed up for more courses. But they still maintained their lives outside of OneTaste: They had regular jobs; they had friends outside of OneTaste; they showed up and took classes; they engaged in the practice sometimes a couple of days a week, maybe once a week, maybe less. But they got a lot out of it. And then, as I said, there were people that found the practice so transformative that they decided to live and work within a OneTaste community.

And regardless of how immersed people came into the community, this community was guided by curriculums, protocols, consent forms, releases. People knew exactly what they were signing up for and the evidence is going to show that. You will see that through the course of this trial. You will look at more paper that OneTaste generated than you care to.

Now, I know that there is this sexual aspect of it, but this is really very no different -- this is really no different than, for instance, some people who try out yoga. They like it, they don't like it. They go for a couple of classes. Maybe they come back, maybe they don't. There are some people who make it a routine part of their life. They go to a class three times a week, but they still, you know, have their regular day jobs, they don't make it their identity. And then there are people who literally decide to quit their day job, go out and learn how to be a yoga instructor. Sometimes they go live in yoga communities or yoga ashrams, as they call them, and they had devoted their life to this because they get meaning from it. And many people did that with OneTaste. OneTaste was no different. It was like yoga with a twist.

But these were people within a community and these were grown people, grown people with resources, education, graduate degrees, friends, people who had jobs sometimes outside of OneTaste; sometimes they decided to work for OneTaste. These were not vulnerable people who did not have the ability to make choices for themselves. And that is what they did. People who chose to live in the community -- and those are people who you're going to hear largely from during this trial -- they did so as a matter of choice. And some of them continued to work outside of OneTaste. They literally

lived in the community and then went to their job as a teacher or some other type of profession and then came back and were with their friends and then did this practice and they enjoyed themselves.

The doors were never locked, the phone cords were never cut. No one's phones or electronics were taken away from them. They could have friends over to their living arrangements. They could have family. They left to go on vacations. They went to go see their families. You'll see text messages: I got to go see Dad, I'll be back next week. These were people who had freedom to do and go as they wished. And these people chose to become part of the OneTaste community, at least for a period of time.

Now, the Government has painted a -- you know, a clearly nefarious picture of what went on at OneTaste. But you are going to learn that it is a tiny fraction of people who will be coming before you who had -- he stole my word, but an axe to grind. And that is what you're going to hear. Many of these people are belatedly complaining. Not complaining at the time, but belatedly complaining that they were forced to do things they didn't want to do. People who are doing this for financial benefit, for their 15 minutes of fame, but many of whom are just straight-up embarrassed because they are no longer at that place in their life.

And I think we all -- I think this will resonate

with every last person -- look back in our lives and we look at things we did, we look at relationships we had -- heck, we look at marriages we had -- and we say gee, that wasn't great and I maybe feel like that person manipulated me, or you make excuses. But that's not force, that's not coercion. That's regret. And it may even be growth.

And the witnesses you will hear from, whether it's Dana, Michelle, or Becky, or any of them, these are women who had full and complete autonomy over their brains and their bodies and they made their choices. And now that they're married and have kids and don't want their neighbors to know what they were up to in their twenties want to reframe an experience and point fingers at other people when, at the time, they were having a blast. They want to blame others for their choices.

Now, over the next, I don't know, four to six weeks, we've been told, you are going to hear a lot of evidence about, you know, these unconventional sexual escapades between consenting adults. Don't let it distract you. Consenting adults can do what they want in this country. And as long as it's consenting, it is their right. It may not be what you choose to do, it may not be what I choose to do, but that is not what this case is about. It's not about judging grown, consenting adults from engaging in conduct that they choose to engage in. You are not here to pass judgment on lifestyles.

And no one, at the end of this case, is going to ask you to render a judgment or a decision about the merits of orgasmic meditation or open relationships or group sex or BDSM, whatever it is. That is not what you're going to be asked to do.

What you're going to be asked to do is whether -- is find whether the Government has proven by proof beyond a reasonable doubt -- and it is their burden -- that these women, Ms. Cherwitz and Ms. Daedone, agreed either with themselves or with other people to engage in some scheme to obtain these services through force, physical force or harm or threats of harm. And you are going to find, Ladies and Gentlemen, at the end of this trial, that it's not even close. You're going to find that grown people made grown decisions that they don't want to stand by, but that doesn't mean a crime occurred. And you are going to render a not guilty verdict as to Ms. Daedone and Ms. Cherwitz.

THE COURT: Thank you, Ms. Bonjean.

Okay. It's 5:30 now and I know you've had a long day, so we are going to recess for the day. But before we do that, I just want to remind you of a few of the things that I said earlier today when I was giving you some preliminary instructions.

Over this recess, you're not to discuss the case with anyone, including your fellow jurors.

THE COURT: Overruled.
Q At a high level, how did Rachel Cherwitz harm you?
A I worked directly with Rachel for quite some time and experienced a lot of emotional abuse, sexual abuse, you name it.
MS. COHEN: Objection, Your Honor.
THE COURT: Basis?
MS. COHEN: Same objection. Relevancy.
THE COURT: Overruled.
Q So earlier you mentioned that you worked for a company called OneTaste. What is OneTaste to you?
A OneTaste was -- I'm going say "was" because I don't really know what they are today. But when I was there, was a company that taught courses on relationships and sexuality. There was a central practice that they taught called orgasmic meditation that is commonly referred to as OM.
Q Can you explain to the jury what orgasmic meditation or OM was when you were at OneTaste?
A Sure.
So it's a little bit confusing because the word "orgasm" in the jargon of OneTaste is pretty different from how we normally understand it. It doesn't mean climax, per se. It's kind of like it means a person's life force, like someone's energy.
So in an OM, in an orgasmic meditation session, it's

about a 15-minute practice, and it is sexual in nature. There are two people, it's usually a man and woman, could be two women. There's a stroker and a strokee. The person who's being touched is the strokee. And the stroker will stimulate her clitoris, which is the most sensitive part of a woman's anatomy, for about that 15 minutes, and then afterwards they share something that they felt during that meditation.

Q So how did OMing fit into the overall structure of the company OneTaste?

A It was used as a metaphor for almost everything. So there are -- in conversation it would be used like, oh, can you give me a frame of what just happened, which is terminology that's used within orgasmic meditation, you know, talking about someone's orgasm or life force, talking about someone being turned on. All of these things were in common usage.

Q You've already testified you were involved in OneTaste. In what capacities were you involved with the company?

A I started out as a participant and a community member, just kind of coming in, you know, for my first time and taking introductory level courses, and then, you know, and not too long after that, I became employed by the company on the sales team.

Q And approximately what was the span of time in years that you were involved in OneTaste?

A So I believe that I started -- like I was introduced to OneTaste about late 2010, early 2011. I was a participant for a few months, then I took a break, was not involved for approximately a year, and then that's when everything kind of ramped up for me. So I was there from late 2011 as a participant, became an employee of the company I think summer of 2012.

THE COURT: Can I just stop you for one minute, just to ask you to ever so slightly move the microphone away from you. We're just getting a bit of feedback.

(Short pause; technical difficulties addressed.)

(Continued on the next page.)

And so, I -- he was this new lead in that he had potential to buy lots of things from the company. I think he probably was known to have money. And so I OM'd with him privately in a separate room, prior to a larger OM circle that happened with more people prior to what was called a TurnON event, the intro event.
Q Okay. I have some follow-up questions.
When you said there was an idea that OMing was separate from sex, who was the proponent of that idea, if anyone?
A I mean, all of the -- all of the kind of tenets of orgasmic meditation and all, everything around that came largely from Nicole. And, you know, she gave courses and would speak publicly about, you know, the difference between OM and sex. And that was just a very widely known kind of -- widely accepted viewpoint. And, you know, everybody else who worked for the company, it was the same, the same thing.
Q And then when you say you OM'd privately with this older man before an event, who, if anyone, told you to do that?
A I remember Rachel Cherwitz saying, you know, okay, here's this guy, here's his name. I had never met him before, but he's going to be coming in. You know, why don't you OM with him. Like, we'll give you this room, here's the setup.
Q And when you say you OM'd privately with him, just very -- at a very specific level, what physically were you

time that you were experiencing those things you just described?
A Yes.
Q How, if at all, did those experiences you just described impact your providing that labor and services?
MS. BONJEAN: Same objection.
THE COURT: Overruled.
A The -- they're so linked. The sexual harm, the emotional harm and the labor and services that I provided, it's almost one and the same in how I remember it. There was an overall expectation that I be a "yes" to everything, which means that I -- you know, the expectation was for me to say yes to, you know, OMing with anybody and going to any class at any time and, you know, getting up when I'm told to get up. Like, there were just -- my entire life was very -- there was an expectation for me to be working at all times. And so what that meant was to be so-called turned on at all times. And if I wasn't turned on --
MS. COHEN: Your Honor, I'm sorry, objection.
THE COURT: Basis?
MS. BONJEAN: It's nonresponsive, Your Honor.
THE COURT: Excuse me. I'm going to listen to Ms. Cohen first and then I'll hear from you.
Basis?
MS. COHEN: As to whose expectations?

THE COURT: Yes. Sustained on that ground.
MS. FARRELL: If I may ask a follow-up question, Your Honor?
THE COURT: You may ask a different question because I sustained the objection.
Q You've just described expectations that you felt. Who, if anyone, places expectations on you?
A It was largely from Rachel Cherwitz and other members of the leadership team.
Q Did that include Nicole Daedone?
A I didn't receive direct orders per se from Nicole Daedone as often. It was usually Rachel Cherwitz.
Q What was the relationship, based on your observation, between Rachel Cherwitz and Nicole Daedone in the structure of OneTaste?
A They were really a pair and a unit. It was, you know, Nicole at the very top and then Rachel being sort of her right-hand woman. So, you know, there was -- and then there was, you know, the rest of the leadership team kind of immediately after that. But they worked as a close pair.
Q All right. So I would like to take a step back and just start at the beginning.
First, where did you grow up?
A I grew up in Westchester County, just north of here.
Q And in addition to Becky Halpern, have you ever been

known by any other names?
A Yes.
I was -- I used my maiden name legally prior to this, Rebecca Weiner.
And then I also used a nickname while I was at OneTaste, Becky Uma.
Q How far did you go in school?
A I have a master's degree.
Q And what is your master's in?
A In social work.
Q What did you study when you were an undergraduate?
A I studied American studies.
Q And what did you do after you graduated college?
A Right after I graduated, I got really interested in yoga and meditation, which is all kind of in keeping with these themes, so I -- I lived and worked in a yoga community for a while after college.
Q When did you -- approximately when did you first learn about OneTaste?
A I believe it was around late 2010, early 2011.
Q And how old were you then, approximately?
A I was 23.
Q And at that time, where were you living?
A I was living in San Francisco.
Q And how were you supporting yourself?

MS. COHEN: Objection, Your Honor.

MS. BONJEAN: Objection.

THE COURT: Yes. Sustained.

I will strike that. Well, it wasn't even an answer to a question. I think it was just an additional comment, but I will strike it.

Q In your personal experience, were you ever involved in an OM where some action was taken with respect to your genitals where there was not safe porting ahead of time?

A No, I don't think so.

MS. FARRELL: Okay. So we can take down this exhibit, please.

Q So after you took this How to OM course, did your involvement as a participant or a student of OneTaste continue?

A Yes.

Q And can you describe how it continued?

A So after that initial How to OM course, I became much more involved in volunteering with the company, so just kind of coming and helping out with courses. This was in New York, so I would help with production and help the two leaders of the New York team.

Q Okay. So when we last -- or when you started to tell us about the How to OM course, you told us you were living in San Francisco; is that correct?

A Yes.
Q So at what point did you move from San Francisco to New York?
A There was -- right, so there was a period of time where I was living -- I'm sorry, where I was volunteering and spending time at 1080 Folsom Street, which is the San Francisco location.
And then I took a break for a while, was not involved.
And then once I became -- once I moved back to New York, that's when I became involved in the volunteering there.
Q And when you were volunteering, did you meet the various individuals who were at the top of the company?
A Yes.
MS. FARRELL: Your Honor, it's 11:30. Do you want me to keep going or would you like --
THE COURT: Is it breaking time in terms of --
MS. FARRELL: It's a good time for me, for the outline.
THE COURT: Okay. Because we got started a bit late, we're going to take just a ten-minute break. And then we'll come back and maybe we'll do the lunch break slightly later than normally we would be doing it. So, we will recess for ten minutes.

THE COURT: Ms. Bonjean, do you want to be heard on this? Ms. Cohen is suggesting a relevance objection to the video.

MS. BONJEAN: We join that objection and to the other video as well.

THE COURT: Tell me about these videos. Are they explicit or graphic, anything along those lines?

MS. FARRELL: It's two separate ones. The first is a speech by Ms. Daedone in which she's discussing a concept of basically, it's more complicated than this, but essentially you can't be raped if you just turn yourself on and --

THE COURT: I know which exhibit you're talking about. And the other one?

MS. FARRELL: The second one is called the beast exercise, in which people are screaming at each other and hitting each other. It's an exercise led by Ms. Cherwitz. And Ms. Halpern was there and is featured, we can see her in the video.

THE COURT: And I'd like you to proffer the relevance.

MS. FARRELL: I think, as your Honor understands, our theory of the case is that the defendants put some the testifying witnesses, our victims, in psychological distress and also taught them concepts that taught them basically to

consent to everything and to be willing to engage in certain sexual activities that even at the time they would have viewed as something they wouldn't consent to, but they did so because they were taught this was a philosophy or a religious practice that was good for them, and if they continued to do it they would reach enlightenment. This all goes to the psychological aspect of how the labor is forced. So this is a first hand account from the defendant's own words showing a flavor or an example of those sorts of teachings.

And then obviously we'll ask the victim the follow-up. We'll lay the foundation then ask the follow-up questions of how, if at all, did these teachings affect your decision to work for the company to provide labor to provide services. So it's direct, in our view, directly relevant to the elements of the charged crime.

(Continued on next page.)

A It is, yes.
Q And so during this time, February 2013 through November 2013, we have skipped ahead of little bit, where were you living?
A I was living in New York City at the OM residence called the Morellino.
Q When you say the "OM residence," what is that?
A So OneTaste had residences in all of its cities that it had a presence in, and so members of the community or people working for OneTaste could live in one of those OM houses. And it's essentially like a commune.
Q Okay. And we will come back to the OM house in a little bit, but just to center us in time, it is in 2013 and you are living in the OM house; is that correct?
A That's right.
Q All right. So turning to page 11, if we could look at that, please.
Was OMing, or as you described earlier, having a woman having her genitals stroked by a partner, was that part of the coaching program?
A Yes.
Q And was it the expectation that you would be a strokee as part of OMing in this coaching program?
A Yes.
Q And that was stated in the course packet; is that

is -- I find it really upsetting this idea of like a perpetrator of rape.

MS. BONJEAN: I am going to object to the narrative and the non-responsive nature.

THE COURT: Sustained.

Can you repeat your question?

MS. FARRELL: Can I just give her a moment.

THE COURT: Yes.

MS. FARRELL: Thank you.

(Short pause.)

A I'm sorry. Can you repeat your question?

Q Sure. I'm going to ask a new one.

A Okay.

Q This concept of the way to deflect rape is just to be turned on --

MS. BONJEAN: I'm going to object to the characterization.

THE COURT: Yeah. Just ask a question. I don't think you need any lead-up.

Q The concept that we just heard about from Ms. Daedone's mouth on the video, was that a concept that was newly introduced to you on this day, or was this something that you had heard before at OneTaste?

A The concept of specifically how to deflect rape by a turn on was newly introduced that day.

Q Were there similar concepts introduced to you previously?
A Yes.
Q And what were those?
A In the sort of teachings about OM and everything related, this idea of "turn on" is really important, where if a woman or a person, you know, can be as turned on as possible, then that's how she becomes powerful and can affect the world around her.
MS. FARRELL: If we can please watch the next clip, which is time stamped 40:44 through 43:23.
(Video played.)
MS. FARRELL: And then if we could please watch one hour and one minute through one hour, four minutes and 14 seconds.
(Video played.)
Q So having watched all these clips again, my question is, how did hearing these teachings from the leader of OneTaste affect you at the time?
A It was -- I was at first a bit confusing and challenging because it's really -- you know, what she's saying is such a reverse of everything that I knew at the time that anybody knew. You know, my understanding -- it was challenging my understanding of, you know, what we think of as right and wrong, what we think of as traumatic, what we think of as a crime or a perpetrator and a victim. And I remember it

feeling very uncomfortable on one hand, and I also remember sort of trying to open my mind to this idea that, maybe, okay, like, there is -- maybe there's something that I can try and learn here about, I don't know, use it -- like using my own power to try and deflect bad things from happening. Like it just -- my mindset was trying to make sense of it.

Q And at the top of your testimony today, you -- we talked about labor and services you provided OneTaste.

How, if at all, did hearing these teachings from Ms. Daedone affect your provision, your subsequent provision of labor and services for the company?

MS. BONJEAN: Objection.

MS. COHEN: Objection.

MS. BONJEAN: Objection to that.

THE COURT: Overruled.

A This very much is in line with the idea that we've talked about a little bit, which is that turn on, a woman's turn on is like the ultimate power. And so I definitely remember putting -- like putting myself in sort of increasingly unsafe circumstances to kind of try and test that idea. And, you know, OMing with other people in the community and not saying stop if I wanted to stop, for example. Yeah. It definitely affected how I continued my work there.

(Continued on the next page.)

relationship to you?
A He was certainly in the upper leadership of the company. So he was in someways my boss, definitely my boss. And we were also in a sort of on again off again sexual relationship as well.
Q If we could play the rest of the clip, please.
(Video played)
You can pause it. What just happened?
A So you could see Rob putting his hand on my thigh and ostensibly comfortable me after that experience.
Q Keep playing it, Mr. McNett.
(Video played)
You mentioned you had a sexual relationship with Mr. Kandell. Based on your personal experience and observations, was it common for members of the executive team at OneTaste to have sexual relationships with employees?
A Yes.
MS. COHEN: Objection.
MS. BONJEAN: Objection to that.
THE COURT: Overruled.
BY MS. FARRELL:
Q I believe your answer was yes; is that correct?
A Yes, all the time.
MS. FARRELL: If I may have just one moment?
THE COURT: Yes.

A This was in Harlem, New York City.
Q Did the residence have a name?
A Yes, we called it the Morellino.
Q When did you move into the Morellino -- sorry, withdrawn.
How did you come to live at the Morellino?
A I spent a bunch of time wondering and asking myself if I wanted to move into an OM house or not. It felt like a really, really big step; in someways a bigger step than working for the company or taking the coaching program, to really immerse myself in this whole culture. I remember people in my life being freaked out and saying like don't do this, you're kind of going too far.
MS. COHEN: Objection. Hearsay.
MS. BONJEAN: I join the objection.
THE COURT: Sustained.
BY MS. FARRELL:
Q So how did you come to live there?
A I eventually made the decision to -- I just decided to go for it. And I just sort of quit everything else that I was doing and really went all the way into OneTaste and lived there.
Q Did that include the job you had had outside?
A Yes.
Q Did it include finding new housing?

A Yes.
Q So approximately how many other people -- let me take a step back.
At the time did you have any misgivings about throwing your life into OneTaste?
A Yes.
Q What were those?
A I was very scared. I was very nervous. Because I knew that it was, I knew that it was odd. I knew that it was unusual and weird. And in someways I was drawn to that, and in someways I was just -- I knew that I was really veering off of the beaten path. And I knew that it was a big risk to take financially, emotionally. I was aware that I was about to head into something that was going to be, that was going to affect my life in a big way.
Q And you chose to do it?
A I chose to do it.
Q Approximately how many other people lived at the Morellino?
A Like a dozen or so, it varied, it went up and down a little bit.
Q Did either of the defendants live at the Morellino?
A Rachel Cherwitz did. And Nicole Daedone would come and spend time at the Morellino for like a weekend at a time.
Q I'd like to show what you is in evidence as Government

Sent.
A Yes.
Q What does that mean?
A That's me from my OneTaste email address saying that I sent the money.
Q For what?
A For Nicole's birthday present.
Q We can take that down, please.
I'd like to discuss a typical day at the Morellino. What time did you typically wake up?
A Usually around seven or 7:30 in the morning.
Q And what would you do after you woke up?
A There would be an OM circle for just the people living in the OM house every morning.
Q What does that mean, there was an OM circle?
A It's where all of us would get together in a common space and we would set up to all have an orgasmic meditation practice together, so it would be pairs all across the room.
Q Walk me through -- I realize you testified it changed sometimes overtime -- who were the core group of people who lived there participating in this?
A Sure. It was myself, Rafael Martinez, Eli Block, Chelsea Hunter, Ruwan Meepagala, Margaret Pixley, Kim Howerton, Rachel Cherwitz, and there were a handful of others that were kind of in and out. That's it coming to

mind now, but there are more.

Q When you say this core group would join in a circle and OM in the morning, just what does that mean in plain speak?

A We would all come down, like in our pajamas and come down to the kitchen, like common area. And we would set up the pillows and blankets, as you saw earlier in the how to OM pamphlet. Then we would have an OM practice.

So one person was kind of in charge of the timer who would say when to begin and when to end. We would be practicing orgasmic meditation next to each other.

Q What does that mean?

A Where the all the women who were being stroked would have their clothes off from the waist down and have their genitals stroked.

Q Then after this was over, what would the group do?

A Everybody would get their clothes on and sort of immediately jump into what was happening for the day. So just get started on work, have a little breakfast and started on work.

Q What was the work?

A For me, it was sales. So often I'd be going to a sales team meeting, or I'd be calling leads and making my plan for the day, who I was going to speak to.

Q Where were the leads coming from?

A We used the programming Sales Force, which was, it had

a huge bank of anybody that had ever talked to a OneTaste person and given their contact information. So sometimes I would just look through Sales Force to see if anybody jumped out to me like they haven't bought anything in a while. Then new leads would come by us going out into the community and talking to people about OM and getting them signed up.

Q Who, if anyone, at the group that you described earlier was the boss?

A That would be Rachel Cherwitz.

Q Earlier in your testimony you described OneTaste employees tracking sort of traumas or fears that people had shared in classes. How, if at all, was Sales Force connected to that?

A I don't know -- I don't remember particularly notating things about people in Sales Force. But I know in every sales meeting, person to person, we would all have that meeting as a group and we would sort of share information about these leads and what was relevant to, like what in their history would make them easier or harder to sell to.

Q What other activities did you do during the day besides what you described?

A It varied depending on the day. If it was a day when we had -- if it was a weekend day and we had a course that was coming up that evening, we would be preparing for that course and helping to set up everything.

THE COURT: Overruled.
Q Was she your boss?
A Yes.
Q Are you familiar with the term "tumesce"?
A Yes.
Q What is that?
A That's a primary example of the jargon.
So tumesce or tumescence literally means, like, swollen or engorged, like an erect penis. But in the -- so, like, in the OneTaste way of using it, it kind of meant if you were tumesce, you were like pent up, like there was a lot of kind of bad energy that you were holding onto and it was -- it was really used quite a bit as an insult, like oh, well, she's just tumesce, so don't listen to her. Or she's just tumesce, she needs to, like, go, you know, have sex with somebody or have an OM with somebody and fix it.
Q Did you ever hear Rachel Cherwitz use that phrase?
A Yeah, all the time.
Q And how about Nicole Daedone?
A Yes.
Q And you just gave the example of she's tumesce, go have sex with somebody.
Did you actually hear either of the Defendants ever say that?
A Yeah, all the time.

Q And did you or did people listen to that instruction?
A Yes.
Q Why?
A Because that was the expectation. That was part of what was, like, the teaching of OneTaste and, you know, the teaching of Nicole, like that kind of -- that sex was the outlet for everything. Sex was the vehicle for everything and you could use sex or OM in a particular way to kind of get yourself into a different mental state.
Q And for you personally, is that what you were trying to achieve by following these teachings?
A In many ways, yes, I think was trying to achieve that by following these teachings. I think I was trying to, you know, find myself and find a calling. But I also -- I did believe that sex and sex related -- you know, anything kind of in that realm was powerful. Like, I did believe those teachings.
Q And how, if at all, did those teachings affect your willingness to provide labor to the company?
MS. FARRELL: Your Honor, I would just ask that there be, like, less commentary when I'm asking questions.
THE COURT: I think she's about to object.
MS. BONJEAN: I'm objecting, yes.
THE COURT: But if you're hearing other noise that I'm not hearing, you can flag it for me.
MS. FARRELL: Thank you.

THE COURT: But I don't hear commentary. I hear somebody about to make an objection.

MS. BONJEAN: Yes, Your Honor. I'm going to object to the foundation and the assuming facts not in evidence.

THE COURT: The question was how, if at all, et cetera. So I overrule that.

Q So I don't have the transcript, but I believe my question was how, if at all, did these teachings around sex affect your willingness to provide labor and services for the company.

A I think it absolutely affected my willingness to provide those services. It was all wrapped up into one thing. Like, my work was not separate from these teachings. It was a combination. And so the expectations of these teachings followed me into my work. And so if I -- you know, to go back to what we were talking about, if I was averse to something, then I would try to push through that in my work to be doing a good job.

Q And what parts of your work required you to push through aversions?

A I mean, there were many times that I had -- that I OM'd with or had some other type of sexual experience with people that I wouldn't ordinarily do that with or in settings that I wouldn't ordinarily do that with. I remember several examples of having unwanted sexual experiences but feeling like, okay, this is aversion practice, like I'm averse to it, I need to

continue and see what's on the other side.
Q And the teachings of aversion practice, where did that originate from?
A I believe -- I believe from -- from Nicole. I don't know if it came from sort of prior -- like, I don't know if it came from Morehouse and Dewey and their -- so that's a different thing. I don't know if it came prior to Nicole or if it was Nicole's original idea. I'm not sure.
Q And then who specifically was instructing you on this idea of aversion practice?
A Rachel, Nicole, Rob. I mean, all of the people that we've talked about today. All of the people on the board.
Q While you were there, were you able to observe whether Nicole and Rachel received any benefits as a result of your willingness to do the type of work you've just described?
MS. BONJEAN: Objection, Your Honor. The foundation for that.
THE COURT: Well, she asked what she observed, so I will overrule that.
THE WITNESS: Can you repeat?
MS. FARRELL: Sure. I may not say it exactly the right way that I just did, but...
Q While you were at OneTaste, were you able to observe whether Nicole or Rachel got any benefit from your willingness to -- from your exercising this aversion practice?

money.
Q And how about gender? Was there any focus with respect to gender one way or another?
A Not particularly. I mean, I think it was good to sell to men or women or anybody of any gender identity. Sometimes we would try and sell more to one gender or another to kind of make a course be even.
Q And when a course wasn't even, how would the gender be balanced during like an OM circle, for example?
A If there was an imbalance and there were more women than men, which would happen from time to time, sometimes women would -- women would stroke during the OM portion.
Q And then what about the reverse, if there were more men enrolled in the case than women?
A That didn't happen quite as often. Yeah, usually, we would just try to kind of fix that ahead of time.
Q I want to focus on the issue of consent.
What was OneTaste -- based on your understanding, your experience, what was OneTaste's official teaching on consent?
A So there was a little kind of spiel that everybody was taught that was like, you know, asking for an OM is like asking for a cup of tea. It should be just that neutral. So like, hey, do you want to have a cup of tea with me? Sure. Or, no, no, thank you. And that was repeated quite a lot.

Q And were those official teachings followed and practiced?
A I don't think so.
Q And is that based on your own experience?
A Yes.
Q And can you explain?
A I think there's a big difference between how the practice of OM is understood when you're at the very, very beginning of your experience with OneTaste, and then once you get deeper into it, and once you have been there for a while, that reality changes very, very, drastically.

So when I was new coming into the community, I could say easily yes or no, like saying yes or no to a cup of tea. And that was true. But then certainly once I worked for the company, that was not true anymore.
Q Why not?
A Because my -- because that was part of my job. That was part of my job to be open to anything. And it's not like I could never say no to an OM. That's not true. Like I could, from time to time, but I had to have a really good reason, and I'd just be -- it was very, very clear that the expectation was like the longer you have been in this practice, the more you are able to do things that you are averse to or don't want to do.
Q What, if any, fears did you have, if you were to say no, without a really, really good reason, as you describe it?

A If, for example, you know, like that client who came in and I OM'd privately with him before an OM circle, if I said, no, I don't want to do that, it would be, you know, either a text message conversation or a conversation in person, often in front of other people. It's like, well, why? Let's dig into that. What do you think you could be doing better here? What about -- what's going on in you is causing this to happen? And it would be such a long drawn out kind of like aggravated process that it was really common to just feel worn down, and I would say okay, okay, okay, forget it. Like I'll do it.

Q And was there anything about your mental state at the time that made it more or less likely that you would consent or you would do the thing that you were being asked to do?

MS. BONJEAN: Objection to the foundation.

THE COURT: Overruled.

A Yes.

Q And what was your mental state at the time?

MS. BONJEAN: Objection to "at the time."

Q At the time you worked for OneTaste -- I'm sorry.

THE COURT: Overruled.

Q In the moments you're describing where you would be worn down and just say, okay, I'll do it, at that time, what was your mental state?

A At that time, you know, having been in the community and

the company for a while, I really, really lost touch with reality, and I really was so, so immersed in this world that my sense of up and down and right and wrong was completely skewed. And I was -- but more to the point, I was just exhausted. Like, I was just so exhausted and scared and wanting to -- just wanting to hide and wanting to do the right thing to kind of get by.

Q And then in those moments why didn't you just quit?

A I mean, as I mentioned earlier, I thought about it a lot. And I did walk off a lot. Like there was a time that I opened a door of a moving car and like wanted to -- and like really was like I need to run away, I need to get out of here.

And each time that happened, I would just -- like even if I turned my phone off for a while, which was a big no, no, I would then turn my phone back on and I would see all these messages from my friends. Like there was all of this madness going on, but then there were these very real friendships with people that were so important to me, and I didn't want to lose those. So it was this real push-pull. It was just overall very hard to leave.

Q Earlier we talked about third dimensional and fourth dimensional.

Did there come a time when the company cared more about sort of third dimensional policies and practices?

THE WITNESS: Yes.

BY MS. FARRELL:
Q Earlier today you described that there were multiple instances in which you tried to leave OneTaste, and you referred to getting out of a car, can you describe what happened there?
A Yes. On that particular day I was in a car with Rachel Cherwitz and a couple other people from, colleagues of mine. And I just remember her screaming at me so much and so loudly that I, I just couldn't take it any more. And we weren't moving fast or anything, we were about to pull away from a curb or pull to a curb, maybe a red light, we were going slowly. I just freaked out and opened the car door and walked out and left because I couldn't take it. They tried to get me to come back. I was like, I just need a minute.
Q Were there other times that you physically took steps to leave?
A Yes.
Q Do you remember any of those other times?
A I remember once during some course getting, getting some comment from Rachel about my performance and my character and my personality that really pushed me over the edge. And so I remember walking out of that course, not telling anybody where I was going, which was really a big no-no and just walking around the West Village for like

literally a couple of hours. Kind of in a daze, in this really messed up mental state, not knowing what to do, toying with the idea of should I really walkway.

Q What kept you from doing that?

A I was scared.

Q We touched on this earlier. Are you familiar with the term virus as it was used at OneTaste?

A I am.

Q Were you ever called a virus?

A Yes.

Q Is there a particular instance where this occurred that stands out in your mind?

A Yes.

Q Can you describe for the jury to the best of your recollection what happened?

A This is kind of a bit of a longer story. Toward the sort of later portion of my time there, we were in the Morellino, the New York residence, and Rachel called sort of an impromptu meeting of everybody in the house. And we all gathered together. And she just announced that to everybody: Becky, there is something going on with Becky, there is something wrong here. She either has a virus or is a virus. And we need to do like a virus extraction of some kind, kind of like an exorcism of this virus.

MS. COHEN: Objection, your Honor.

weeping.
Q Are there any other experiences from OneTaste that stand out in your mind because of the strong effect they had on you?
A Yes, sure.
Q I'd like to draw your attention to an OM demonstration. Do you recall participating in an OM demonstration at the Morellino?
A Yes.
Q Approximately when did this occur?
A This was just prior to when I requested to move to San Francisco. I'm not sure of an exact date, it was in the later portion of my time there.
Q Let me stop you there. After this virus thing happened, did you want to stay in New York?
A No.
Q So what happened?
A I, being fully cut out and ostracized from everybody that I knew, I still kind of foolishly, crazily wanted, I wanted to still be committed to this purpose and this company and this mission and whatever. And so I didn't want to leave-leave, but I knew that I couldn't be around Rachel any more.
And so I requested, I think I talked to Yia and said can you, please, please get me to another city? Can I

please go to San Francisco?
Q How, if at all, did your psychological state at the time affect your decision making with respect to your next steps?
A I was completely, completely incapacitated at that point. It's hard to describe the extremeness of how, like, disconnected from reality I was.
Q You started telling us about a time in which you participated in an OM demonstration at the Morellino. So when did that happen?
A That was pretty shortly after the virus thing.
Q And what happened?
A This was another impromptu meeting that was just like, we got a text message that said come down to this apartment, and everybody meet. And so all of the people that I lived with, all the people that I worked with in New York were there in that room.
Q Who sent that text message?
A Rachel.
Q And what happened?
A So up until that point, I had been doing demonstrations of OM in courses. Other people would be teaching the class, but I would come in and show the participants in the class what an OM looks like in real life. And this was a, this was really, frankly, kind of an honor, like it was a really

prestigious thing in a way to be doing these demos. It felt like that way to me, it felt like an important part of my work.

And so in that meeting Rachel kind of got up at the front and said: Becky is not going to be doing OM demos any more, that's over. The new people who are going to be doing demos are Margaret Pixley and Hamza Tayeb, and she's not doing them any more.

I remember, I was wearing my pajamas. I don't know if I brushed my teeth. I was so messed up at that point that I just said, okay, fine, I'm not surprised at that, whatever.

Do I want me to keep going?

Q Yes, keep going, please.

A Sorry, it's just intense to talk about.

We're like sitting there and I'm just messed up and nobody is talking to me. And so Rachel says: Okay, Margaret and Hamza get up and you guys do a demonstration of OM.

This was not typical. This was not like, this was not something that had happened before in any meeting. So they did. They had an OM. Rachel was kind of like doing commentary during the OM.

When they were done everybody was very, was kind of giving a lot of praise, oh, my God, that was amazing, that was wonderful. And Rachel was making comparisons and

saying, that's what a demo should look like. Making this comparison to me, like I hadn't been doing it properly.

And then after that, she very abruptly made eye contact with me and said: Becky, you get up there now.

I just, like, my heart dropped, and I -- I just -- I don't know if I said anything, but I was like, no, no thanks, I just don't want to right now. I just like, I remember I started like shaking, getting nervous. I knew this was going to be really bad. I didn't know what was happening. And she, just said: No, Becky, get up here. We went back and forth a few times, really, please, I don't want to do this. And then she just -- it was in front of everybody, there was so much pressure being in front of everybody, I was like, okay, okay fine.

So I got up on the OM table and I didn't really know, I didn't really know what was happening or why I wasn't doing demos any more. It didn't make sense to me. Then she said: Okay, Rafael is going to stroke you.

And so I undressed from the waist down and I just like, I remember kind of just being like, okay, you can just try and disassociate and get through it, just do this, do what she's asking you to do and get through it. And so he started, Rafael started stroking me. He did that for a few minutes. Then Rachel brushed him aside and was like, no, no, no, let me do this. And so she started stroking me.

I don't remember her asking me, if she did I don't know. I certainly did not want her to at all. And it was an incredibly, incredibly uncomfortable experience.

Because I knew that I was supposed to like project out to the room, that's what you do in a demonstration, you are supposed to let people feel your orgasm and your turn on. You're supposed to be making noises. You're supposed to be looking like you're really into it. And I was not into it. And I was freaking out. And it didn't feel good. I didn't want to be there, and I said no.

And then she said, she instructed Hamza to walk, it was a really long apartment, she instructed him to go to the end of the hallway where the door was, she said: Hamza tell me if you can feel her. Which meant, like, tell me if you can feel the orgasm that she's projecting, this energy, this turn on that I'm talking about. She kept calling to him, can you feel her yet? He said no. Can you feel her? No.

Q While she's saying that to you, is she still stroking you?

A Yes.

Q Continue.

A I'm like faking it and trying to do the right thing just to get out of it. And then she abruptly stops. And like this was not a timed OM, this was just sort of like its own weird thing. I sat up. And everybody is just like

staring at me. I'm there naked from the waist down.

And then she just starts like laying into me the way that she did at the virus thing, saying all the things that I -- why I'm not doing demos any more, my orgasm is broken, and I'm not good at this any more. And just repeating kind of this virus idea, that I'm infecting everybody with my bad ideas, and I'm going to drag everybody down with me.

And then I just, I just like I started shaking. The only other time I ever felt that was after a surgery or something. I was shaking so violently. I was crying and kind of trying to catch my breath. Because there was so -- it was just so insane. Then I couldn't, I couldn't stop crying.

She told Margaret Pixley to take me to Costco to do some sort of production thing to go shopping. I remember just like crying in Costco, which was so embarrassing, but I couldn't stop, I couldn't stop shaking for like hours. I don't really have any memory after that.

Q Did you speak with anyone at OneTaste after that happened?

A No, no one was talking to me.

Q Did you leave OneTaste right then and there?

A I did not. I probably should have, but I instead just requested like, please, get me out of New York.

Q Did you get out of New York?

A I did, yes.
Q Later on did you speak with any of the leaders at OneTaste about how Rachel had done this to you?
A Yes. I spoke to Yia Vang on the phone. And I don't remember exactly if I told her specifically what had happened, but I just remember begging her, like, Rachel and I can't be in the same place, can you please, I just I don't want to leave entirely but I need to get away.
Q What was Yia's response?
A She kind of understood to some degree. And like it was, it was not -- this was -- it was known that Rachel --
MS. COHEN: Objection, your Honor. Hearsay.
THE COURT: Sustained.
BY MS. FARRELL:
Q If you could just focus on what Yia's response was of you reporting this incident that you just described.
A Yia said to me on the phone --
MS. COHEN: Objection, your Honor, hearsay.
THE COURT: Government?
MS. FARRELL: Your Honor, Ms. Vang is one of the individuals we anticipate connecting consistent with what we discussed earlier.
THE COURT: You're offering this subject to connection?
MS. FARRELL: Yes, your Honor. Also for effect on